# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

                                  No. 19-CR-00077-JB

**vs.**

**MICHAEL NISSEN,**

    **Defendants.**

## MOTION TO DISMISS INDICTMENT

Defendant, Michael Nissen, by and through his attorneys Jack Mkhitarian and Kenneth A. Gleria, hereby moves the Court to dismiss the Indictment as 18 U.S.C.A. § 875(c), violates, Mr. Nissen's First Amendment right to free speech. In support of this motion, counsel states as follows:

Mr. Nissen is charged by indictment with two (2) counts of Interstate Communication with Intent to Injure the Person of Another, in violation of Title 18 U.S.C. §875(c).

## FACTS

On November 2, 2018, at approximately 5:45 p.m. New Mexico State Police (NMSP) Officer Burd stopped Michael Nissen on Interstate 40 in Torrance County, New Mexico, near mile marker 194 and issued him multiple traffic citations. Later that day, NMSP dispatch received multiple telephone calls from telephone number 505-819-1806, and caller ID listing Michael Nissen. The male caller referenced a NMSP officer that previously stopped him and issued him citations. During the calls, the caller made the following statements, "You guys got some of the stupidest fucking pigs on the road. The next time someone violates me like that on the road, I'm gonna put a bullet in that fucking pig's head." and, "He violated my 4th amendment constitution, he violated my 2nd and my 1st amendment and the next time he does it I'm gonna plead the 5th, but next time I'm gonna take my revolver out and put that mother fucker drop dead…"

On December 13, 2018, Nissen spoke with Bernalillo County Sheriff's Deputies at their office to complain about the NMSP. During their interview, Nissen had his mobile phone present and told deputies his phone number was 505-819-1806 and he lives at "1025 Walker." Mr. Nissen said he doesn't own a computer and does all his emailing and internet research from his mobile phone. Mr. Nissen said his email address is johnny2bravo1@gmail.com. Mr. Nissen stated he was stopped by NMSP near mile marker 194 and given multiple citations. Mr. Nissen said that after the traffic stop, he called the NMSP to "just get it done and then it got a little crazy" and, "I didn't make no threatening calls, but I kept calling them about the law." Nissen then said he called NMSP Internal Affairs to make a complaint against the NMSP State Police Officer.

## **ARGUMENT**

The First Amendment provides that "Congress shall make no law … abridging the freedom of speech." "The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." Virginia v. Black, 538 U.S. 343, 358 (2003), quoting Abrams v. United States, 250 U.S. 616, 630 (1919). Ordinarily, the First Amendment denies government "the power to prohibit dissemination of social, economic and political doctrine which a vast majority of its citizens believe to be false and fraught with evil consequence." Whitney v. California, 274 U.S. 357, 374 (1927).

The protections afforded by the First Amendment are not absolute. The government may lawfully regulate certain categories of speech consistent with the Constitution. See e.g., *Chaplinsky v. New Hamshire*, 315 U.S. 568, 571-72 (1942). True threats, like obscenity, defamation, and fraud are among the categories of speech the government may regulate. True threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S.

2

343, 359 (2003). "The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur." Id. A true threat must be "a serious threat as distinguished from words as mere political argument . . ." *United States v. Leaverton*, 835 F.2d 254, 256 (10th Cir. 1987).

The question in the instant case is whether Mr. Nissen's communications are political speech, exaggeration, or something said in a joking manner that is protected by the First Amendment or whether they fall within the definition of a "true threat that may be lawfully regulated under 18 U.S.C. § 875(C). While this would ordinarily be a question for a jury to determine, *United States v. Viefhaus*, 168 F.3d 392. 397 (10th Cir. 1999), "[i]f there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law." Id. See also, *United States v. Wheeler*, 776 F.3d 736, (10th Cir. 2015).

There is authority for the proposition that a conditional threat may not be the kind of statement that is proscribed by 18 U.S.C. § 875(c). For example, in *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), the defendant in that case was prosecuted for stating at a political gathering that, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id.* at 706, 89 S.Ct. at 1400–01. In holding that this was not a prosecutable threat against the President, the Court considered the conditional nature of the threat, the fact that it was made during a political discussion, and the fact that the response of the audience was laughter. In context, the statement is political hyperbole, albeit extreme.

Here Mr. Nissen contacted a police dispatcher to complain about rights violated, and the police dispatcher could not be a victim if the complaint or threat were carried out. Furthermore, Mr. Nissen's threat to "kill pigs" was figurative and conditioned on his constitutional rights being violated and him

3

defending himself in that event. In *United States v. Bozeman,* 495 F.2d 508, 510 (5th Cir.1974), *cert. denied,* 422 U.S. 1044, 95 S.Ct. 2660, 45 L.Ed.2d 696 (1975), the court reasoned that a threat is not to be construed as conditional if it had a reasonable tendency to create apprehension that its originator will act in accordance with its tenor. Applying that test here, a reasonable jury could not find that the figurative language stated by Mr. Nissen to the police dispatcher was a true threat, particularly in light of the fact that dispatcher was warned by hyperbole that "pigs" would be shot on the condition that Mr. Nissen's rights were violated.

## **CONCLUSION**

Mr. Nissen did not communicate a serious expression of an intent to commit an act of unlawful violence. He was engaged in political speech. And if it was misguided or repugnant to the majority, it is nonetheless protected by the First Amendment.

                                          Respectfully submitted:

                                          <u>Electronically filed</u>
                                          Jack Mkhitarian
                                          Attorney for Jason Michael Nissen
                                          1008 5th St. NW
                                          Albuquerque, NM 87102
                                          (505) 200-2982

I HEREBY CERTIFY that a copy of the foregoing was mailed/delivered to all counsel of record this 15th day of May 2019. Jack Mkhitarian