# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                        No. CR 19-0077 JB

MICHAEL JAMES NISSEN,

     Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) Defendant Michael J. Nissen's Motion for Bill of Particulars, filed April 24, 2019 (Doc. 22)("MBP"); (ii) Nissen's Motion to Dismiss for Lack of Jurisdiction, filed May 15, 2019 (Doc. 24)("Jurisdictional MTD"); (iii) Nissen's Motion to Dismiss Indictment, filed May 15, 2019 (Doc. 25)("MTD"); and (iv) Nissen's oral motion for a judgment of acquittal under rule 29 of the Federal Rules of Criminal Procedure. The Court held a hearing on July 26, 2019, and a jury convicted Nissen of two counts of transmitting a threat in interstate commerce. The primary issues are: (i) whether the Indictment, filed January 10, 2019 (Doc. 11), which tracks 18 U.S.C. § 875(c)'s statutory language, and provides no specific facts underlying the offenses, contains sufficient factual information to comport with rule 7(c) of the Federal Rule of Criminal Procedure; (ii) whether Plaintiff United States of America presented sufficient evidence showing that Defendant Michael Nissen communicated his threats via interstate commerce such that the Court has subject-matter jurisdiction; and (iii) whether the jury properly concluded that Nissen's statements amount to true threats such that his conviction is consistent with the First Amendment to the Constitution of the United States of America. The

Court concludes that: (i) the Indictment is sufficiently detailed, because it apprises Nissen of the charges against him; (ii) the United States has met its burden to establish the Court's subject-matter jurisdiction; and (iii) the First Amendment does not protect Nissen's statements, and sufficient evidence supports the jury's conclusion that Nissen's statements are true threats. The Court therefore denies the MBP, the Jurisdictional MTD, the MTD, and Nissen's oral motion.

## **FACTUAL BACKGROUND**

The Court takes its background facts from the Criminal Complaint, filed December 19, 2018 (Doc. 1);[1] from the Affidavit of Peter John Nystrom Ubbelohde (executed December 19, 2018), filed December 19, 2018 (Doc. 1-1)("Ubbelohde Aff."); and Nissen's MTD. The Court does not set forth these facts as findings or the truth, but the Court observes that the factual background reflects both the United States' and Nissen's version of events.

This case deals with alleged threats Nissen communicated to New Mexico State Police ("NM State Police") officers and dispatch employees on November 2 and 26, 2018. See Ubbelohde Aff. ¶¶ 6, 8, at 2-3; MTD at 1. On the evening of November 2, 2018, an NM State Police officer stopped Nissen on Interstate 40 in Torrance County, New Mexico, near mile marker 194 and issued several traffic citations. See MTD at 1. About a half-hour later, NM State Police dispatch received "multiple phone calls from telephone number (505) 819-1806 and caller ID listing Michael Nissen." Ubbelohde Aff. ¶ 6, at 3. In the calls, a male caller said that an NM State Police officer had just given him several citations. See Ubbelohde Aff. ¶ 6, at 3. The caller then said:

> You guys got some of the stupidest fucking pigs on the road. The next time someone violates me like that on the road, I'm gonna put a bullet in that fucking

---

[1]The United States filed a Complaint on December 19, 2018, and a two-count Indictment on January 10, 2019.

pig's head . . . .  He violated my Fourth Amendment constitution, he violated my Second and my First Amendment and the next time he does it I'm gonna plea the Fifth, but next time I'm gonna take my revolver out and put that motherfucker drop dead.

MTD at 1.  Later that month, NM State Police Internal Affairs personnel received an email from johnny2bravo1@gmail.com further complaining about the November 2, 2018, encounter on Interstate 40.  See Ubbelohde Aff. ¶ 7, at 3; MTD at 2.  On November 26, 2018, a NM State Police "District 5 administrative assistant received a call from phone number (505) 819-1806.  During the call, the male caller became verbally combative and threatened to shoot the [NM State Police] employee in the head."  Ubbelohde Aff. ¶ 8, at 3.

On December 13, 2018, Nissen visited the Bernalillo County Sheriff's Office, and spoke with Sheriff's Deputies to complain about the NM State Police.  See MTD at 2.  Nissen said that he was stopped by mile marker 194 on Interstate 40, and that, after the stop, he called NM State Police dispatch "just to get it done and then it got a little crazy . . .  I didn't make no threatening calls, but I kept calling them about the law."  MTD at 2.  Nissen also told Bernalillo County Sheriff's Deputies that he "owned multiple firearms including rifles and a revolver."  Ubbelohde Aff. ¶ 9, at 3.  The Ubbelohde Aff. states that Nissen told the Deputies he "carries his revolver on the streets and carrying his gun concealed is to protect himself from rouge [sic] cops."  Ubbelohde Aff. ¶ 9, at 3-4.

## PROCEDURAL BACKGROUND

The United States indicted Nissen in early 2019.  See Indictment at 1.  The Indictment charges Nissen with two violations of 18 U.S.C. § 875(c).  See Indictment at 1.  The Indictment's Count 1 asserts that, "[o]n about November 2, 2018, in Torrance County, in the District of New Mexico, the defendant, MICHAEL JAMES NISSEN, transmitted in interstate and foreign

commerce communications containing a threat to injure the person of another [i]n violation of 18 U.S.C. § 875(c)." Indictment at 1 (bold omitted). The Indictment's Count 2 asserts that, "[o]n or about November 26, 2018, in Bernalillo County, in the District of New Mexico, the defendant, MICHAEL JAMES NISSEN, transmitted in interstate and foreign commerce communications containing a threat to injure the person of another [i]n violation of 18 U.S.C. § 875(c)." Indictment at 1 (bold omitted).

1.     **The MBP**.

Nissen filed his MBP on April 24, 2019. See MBP at 1. Nissen asserts that

> the purpose of a bill of particulars is to apprise the defendant of the nature of the charges, in such a way, so as to ensure that he 1.) can prepare a defense, 2.) avoid prejudicial surprise at trial, and 3.) be protected against a second prosecution for the same alleged offenses in both State and Federal Courts.

MBP at 1 (citing United States v. Levine, 983 F.2d 165 (10th Cir. 1992)). Nissen asserts that the Indictment "fails to allege any overt acts allegedly committed by Michael Nissen which constitute threats in interstate or foreign commerce." MBP at 1.

Nissen first argues that the Indictment fails to give him adequate notice of the crimes with which he is charged. See MBP at 2. Nissen asserts that his lack of discovery compounds the Indictment's vagueness, which only "describes figurative language by Michael without accompanying acts in furtherance of alleged threats." MBP at 2. Accordingly, Nissen argues that the Indictment limits his "ability to prepare his defense, is thereby prejudicial . . . , and requires the Bill of Particulars as requested." MBP at 2.

Nissen then turns to a double jeopardy argument. See MBP at 3. Nissen asserts that the Sixth and Fourteenth Amendments to the Constitution of the United States of America "require that an indictment provides a defendant protection against double jeopardy, by enabling the

defendant to plead an acquittal or conviction to bar future prosecution for the same offense." MBP at 3 (citing <u>Russell v. United States</u>, 369 U.S. 749 763-64 (1962)). Nissen argues that the Indictment's vagueness renders it possible that he could prevail in this matter, only to be charged again by the State of New Mexico. <u>See</u> MBP at 3. Nissen asserts: "For example, Mr. Nissen is currently charged in the State of New Mexico, Bernalillo Metropolitan Court [sic], with Use of a Telephone to Terrify, Intimidate, Harass, Annoy or Offend, and Harassment regarding the same alleged threats charged in" the Indictment's Count 1. MBP at (citing <u>State of New Mexico v. Nissen</u>, No. T-4-DV-2018-003159). Nissen argues that the Indictment "in its current form does not guarantee protection against double jeopardy." MBP at 3. Accordingly, Nissen requests that the Court require the United States to issue a bill of particulars. <u>See</u> MBP at 3.

      **2.**        **The Jurisdictional MTD.**

In the Jurisdictional MTD, Nissen argues that the United States has established no facts showing that his "communications traveled through interstate commerce" as 18 U.S.C. § 875(c) requires. Jurisdictional MTD at 1. Nissen asserts that the United States must prove that the Court has jurisdiction by a preponderance of the evidence. <u>See</u> Jurisdictional MTD at 1 (citing <u>United States v. Bustillos</u>, 31 F.3d 931, 933 (10th Cir. 1994)). Nissen argues that the United States must also prove the facts that create jurisdiction beyond a reasonable doubt. <u>See</u> Jurisdictional MTD at 2 (citing <u>United States v. Roberts</u>, 185 F.3d 1125, 1139 (10th Cir. 1999)).

Nissen quotes the Criminal Complaint, filed December 19, 2018 (Doc. 1), which he asserts is "[t]he only reference to communications possible traveling in through [sic] interstate commerce[.]" Jurisdictional MTD at 3. The Complaint states:

T-Mobile uses a cellular network on a GSM[2] carrier with equipment physically located throughout the county. T-Mobile is headquartered in Bellevue, Washington. Based on my training and experience, even when individual's [sic] are physically located in the same state, it is common for their cellular phone communications to cross state lines based on the cellular provider's communication infrastructure and network efficiency.

Jurisdictional MTD at 3 (quoting Complaint at 4). Nissen avers that this description is insufficient to establish the Court's jurisdiction. See Jurisdictional MTD at 3. Nissen asserts that the "allegation only weakly assumes that such communications commonly cross state lines without proffering any evidence in the complaint or through the discovery process that" his communications crossed state lines. Jurisdictional MTD at 3. Accordingly, Nissen requests the Court dismiss the Indictment for lack of subject-matter jurisdiction. See Jurisdictional MTD at 3.

### 3. The First Amendment MTD.

Nissen also filed a Motion to Dismiss on First Amendment Grounds. See MTD at 1. Nissen begins by asserting that the "First Amendment denies government 'the power to prohibit dissemination of social, economic, and political doctrine which a vast majority of its citizens believe to be false and fraught with evil consequence.'" MTD at 2 (quoting Whitney v. California, 274 U.S. 357, 374 (1927)(Sanford, J.)). Nissen concedes, however, that the protections which the First Amendment affords "are not absolute" and that the "government may lawfully regulate certain categories of speech[.]" MTD at 2. One of these categories, Nissen notes, is speech containing true threats. See MTD at 2. Nissen describes that true threats "'encompass those statements where the speaker means to communicate a serious expression of an intent to commit

---

[2]"GSM" stands for Global System for Mobile Communication, and is one of the two dominant means in the telecommunications industry for converting cellular phone data into radio waves. "CDMA vs. GSM", Digital Trends, (Nov. 15, 2019), https://www.digitaltrends.com/mobile/cdma-vs-gsm-differences-explained/ (last accessed December 29, 2019).

an act of unlawful violence to a particular individual or group of individuals.'"  MTD at 2 (quoting

Virginia v. Black, 538 U.S. 343, 359 (2003)).

Nissen frames the inquiry as "whether [his] communications are political speech, exaggeration, or something said in a joking manner that is protected by the First Amendment or whether they fall within the definition of a true threat that may be lawfully regulated under 18 U.S.C. § 875(c)."  MTD at 3.  Nissen characterizes his communications as "conditional threats" which "may not be the kind of statement[s] that [are] proscribed by 18 U.S.C. § 875(c)."  MTD at 3.  Nissen analogizes his comments to those at issue in Watts v. United States, 394 U.S. 705 (1969)(per curiam), in which the defendant stated, at a political rally, that, "'if they ever make me carry a rifle, the first man I want to get in my sights is L.B.J.,'" then-president of the United States.  MTD at 3 (quoting Watts v. United States, 394 U.S. at 706).  Nissen describes that the Supreme Court of the United States of America held that the comments were "not a prosecutable threat," given the threat's "conditional nature . . . , the fact that it was made during a political discussion, and the fact that the response of the audience was laughter.  In context, the statement is political hyperbole, albeit extreme."  MTD at 3.  Nissen analogizes those comments to his own.  See MTD at 3.  He argues that he

> contacted a police dispatcher to complain about rights violated, and the police dispatcher could not be a victim if the complaint or threat were carried out. Furthermore, Mr. Nissen's threat to kill pigs was figurative and conditioned on his constitutional rights being violated and him defending himself in that event.

MTD at 3-4.  Nissen further argues that "a threat is not to be construed as conditional if it had a reasonable tendency to create apprehension that its originator will act in accordance with its tenor."  MTD at 4 (citing United States v. Bozeman, 495 F.2d 508, 510 (5th Cir. 1974)).  Nissen describes his alleged threats as "figurative language," which no reasonable jury could conclude amount to

true threats, "particularly in light of the fact that [the] dispatcher was warned by hyperbole that pigs would be shot on the condition that Nissen's rights were violated." MTD at 4. Accordingly, Nissen requests that the Court conclude that the Indictment "violates Mr. Nissen's right to free speech" and dismiss the Indictment. MTD at 1.

       **4.**      <u>**The Response**</u>.

       The United States filed a Response to Defense Motions to Dismiss Indictment on May 28, 2019 (Doc. 28)("Response"). The United States first argues against Nissen's jurisdictional argument. <u>See</u> Response at 1. The United States asserts that 18 U.S.C. § 875(c)'s jurisdictional element "can be met solely on the route of transmission, where sender and recipient were both in the same state." Response at (citing <u>United States v. Kammersell</u>, 196 F.3d 1137 (10th Cir. 1999)). The United States asserts that § 875(c) does not require that the threat's recipient be in another state, just that the threat itself crosses state lines on its way to the intrastate recipient. <u>See</u> Response at 1. The United States then avers that it "is willing and able to demonstrate that [Nissen's calls] were routed by T-Mobile through switch TTAS005, and that TTAS005 is located in Plano, Texas." Response at 2. On this point, the United States also asserts that the Indictment's allegations are sufficient, as it tracks § 875(c)'s language, which is "'ordinarily sufficient in itself to defeat an attack on the sufficiency of the indictment.'" Response at 2 (quoting <u>United States v. Moore</u>, 556 F.2d 479, 482 (10th Cir. 1977)). Accordingly, the United States requests that the Court deny Nissen's MBP and Jurisdictional MTD. <u>See</u> Response at 2.

       The United States then turns to Nissen's First Amendment argument. <u>See</u> Response at 2. The United States characterizes Nissen's argument as asserting that he "has a free-speech right to threaten in interstate commerce to shoot people in the head." Response at 2. The United States asserts that whether a statement amounts to a true threat is a jury issue, and that the United States

"will prove beyond any reasonable doubt that [Nissen] made true threats in interstate commerce to injury the person of another[.]"  Response at 3.  Accordingly, the United States requests the Court deny Nissen's MTD.  See Response at 3.

**5.      The July 26, 2019, Hearing.**

The Court held a hearing on July 26, 2019.  See Transcript of Motions Hearing at 1:4-7 (taken July 26, 2017)("Tr.").[3]  At the hearing, Nissen noted that, since he filed the Jurisdictional MTD, "the Government has provided some discovery regarding the particular element that the communication crossed interstate lines."  Tr. at 3:8-10 (Mkhitarian).  Nissen accordingly asked to "defer the motion to the time of trial," effectively converting the Jurisdictional MTD to one for a directed verdict.  Tr. at 3:10-16 (Court, Mkhitarian).  The United States opposed Nissen's request, arguing that jurisdictional elements "only have to be shown to the Court whenever they're challenged" and asserted that it had done so with Nissen's telephone records.  Tr. at 4:1-10 (Mysliwiec).  The United States argued that Nissen was now trying to convert his MBP into a motion for directed verdict in an effort to require the United States to prove jurisdiction at trial. See Tr. at 4:10-13 (Mysliwiec).  The United States conceded, however, that the United States Court of Appeals for Tenth Circuit's pattern jury instructions for § 875(c) require the United States to prove that communications were transmitted through interstate commerce.  See Tr. at 4:15-22 (Court, Mysliwiec).  Accordingly, Nissen stipulated to the Court's jurisdiction for the purpose of holding the July 26, 2019, motions hearing.  See Tr. at 6:19-7:4 (Mkhitarian, Court).

Nissen then turned to his MTD.  See Tr. at 9:12-16 (Court, Mkhitarian).  The Court indicated its view that Nissen's First Amendment argument seems more fact-specific than

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

constitutional or categorical.  See Tr. at 9:17-10:4 (Court).  The Court noted that whether a statement is a true threat is largely context-specific, as few statements can categorically be labeled true threats.  See Tr. at 10:8-22 (Court).  The Court identified, and Nissen agreed, that the "crux" of his argument is whether his statements were reasonably understood as true threats.  Tr. at 14:5-9 (Court, Mkhitarian).  Nissen responded, however, that in "today's political climate," Nissen intended, and a reasonable listener would conclude, that his statements were "political speech with regard to whether or not someone's rights could be violated and what happens if their rights are violated."  Tr. at 14:12-23 (Mkhitarian).  Nissen agreed, however, that his First Amendment argument would more properly be couched as a directed verdict, and so reserved his motion for trial.  See Tr. at 16:6-8 (Mkhitarian).  Accordingly, the Court denied the MTD without prejudice so Nissen could renew that argument as a motion for a directed verdict.  See Tr. at 18:20-25 (Court).

6. **The Trial**.

On the morning of the trial's first day, the parties first discussed the Court's proposed jury instructions.  See Transcript of Jury Trial Volume 1 at 3:1-14 (taken August 6, 2018)(Court)("Aug. 6 Tr.").[4]  The parties agreed to remove the rule 404(b) instruction, as the only relevant crime or wrong would be Nissen's traffic citations.  See Aug 6 Tr. at 3:2-5 (Court).  The United States requested the instructions be amended to reflect that Nissen's directed his alleged threats at NM State Police employees, which the Court declined as not required by the statute.  See Aug 6 Tr. at 6:19-7:11 (Mysliwiec, Court).  The Court held a jury trial on August 6 and 7, 2019.  See Aug 6.

---

[4]The Court's citations to the trial transcripts refer to the Court Reporter's original, unedited versions.  Any finalized transcript may contain slightly different page and/or line numbers.

Tr. at 4:6-9 (Court); Transcript of Jury Trial Volume 2 at 79:1-6 (Taken August 7, 2019)(Court)("Aug. 7 Tr.").

At the close of the United States' case in chief, Nissen moved for a directed verdict. See Aug. 7 Tr. at 5:15-17 (Mkhitarian). Nissen first asserted his First Amendment argument, averring that the NM State Police officers "agreed that Nissen was making political arguments with regard to their jurisdiction over him." Aug. 7 Tr. at 5:18-20 (Mkhitarian). Nissen argued that he made his statements "in regard to future violations, not unlike threats that are made every day, [for example] 'if you break into my house you know I will kill you,' things like [these] are made every day and are protected by free speech." Aug 7. Tr. at 6:4-10 (Mkhitarian). On this point, Nissen also observed that "no specific person was mentioned" in his Count 1 statements, which, along with the conditional nature of the threat and its political substance, Nissen argued, renders the statement not a true threat. See Aug. 7 Tr. at 6:13-19 (Mkhitarian). Accordingly, Nissen requested that the Court dismiss the Indictment's Count 1. See Aug 7. Tr. at 6:22-24 (Mkhitarian). The United States responded, pointing to the Court's jury instruction that describes true threats as "serious statement[s] expressing intent to instill fear which, under the circumstances, would cause apprehension in a reasonable person, as distinguished from mere political argument, idle talk, exaggeration, or something said in a joking manner." Aug 7. Tr. at 8:1-6 (Mysliwiec). The United States argued that "there is nothing joking or idle about the threats by an armed man to shoot people in the face," and that, even if Nissen subjectively did not intend to do so, the statement is a true threat and thus should be submitted for the jury's decision. Aug 7. Tr. at 8:8-11 (Mysliwiec). The United States then argued that Nissen "subjectively intended" the Count 1 statements as a threat: "when you look at the evidence . . . Mr. Nissen was upset that he had been traffic stopped," and "believed State Police don't have any right to write him tickets or haul him into court." Aug

7. Tr. at 8:23-9:9 (Mysliwiec). The Court indicated its belief that the Tenth Circuit's pattern jury instructions on § 875(c) reflect that the jury gets to decide whether speech amounts to a true threat. See Aug 7. Tr. at 10:19-11:2 (Court). The Court noted that the evidence, taken in the light most favorable, was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Nissen is guilty of the two Counts, and so was inclined to deny the rule 29 motion. See Aug 7. Tr. at 11:13-18 (Court). The Court stated it would, however, take Nissen's motion under advisement. See Aug 7. Tr. at 11:23-25 (Court). Nissen did not allude to his Jurisdictional MTD in any argument at trial. On August 7, 2019, the jury convicted Nissen on both counts. See Aug. 7. Tr. at 79:1-4 (Court).

## LAW REGARDING AN INDICTMENT'S SPECIFICITY AND SUFFICIENCY

Rule 7(c) states that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). The indictment must sufficiently apprise the defendant of what he or she must be prepared to meet. See Cochran v. United States, 157 U.S. 286, 290 (1895). The court should consider the entire document in determining whether the indictment is sufficient. See United States v. Mobile Materials, Inc., 871 F.2d 902, 906-07 (10th Cir. 1989).

An indictment also must allow the defendant to plead a former acquittal or conviction as a defense to subsequent proceedings against him for the same or similar acts. See Russell v. United States, 369 U.S. at 763-64; United States v. Lepanto, 817 F.2d 1463, 1465 (10th Cir. 1987). Thus, an indictment is sufficient when it contains the offense's elements and apprises the defendant of the charges he must meet so that a judgment returned on the indictment will protect him against double jeopardy. See United States v. Bedonie, 913 F.2d 782, 790 (10th Cir. 1990); United States

v. Mobile Materials, Inc., 871 F.2d at 906. The specificity requirements ensures that a defendant: "(1) should be called to answer charges actually brought by the Grand Jury and not a prosecutor's interpretation of those charges; (2) be apprised of the charge against him in order to permit preparation of a defense; (3) be protected against double jeopardy." United States v. Haas, 583 F.2d 216, 219 (5th Cir. 1978).

A bill of particulars is "not a discovery device but may serve to 'amplif[y] the indictment by providing additional information.'" United States v. Dunn, 841 F.2d 1026, 1029 (10th Cir. 1988)(quoting United States v. Johnson, 575 F.2d 1347, 1356 (5th Cir. 1978)). A defendant, however, is "not entitled to all of the *evidence* the government intends to produce, but only the *theory* of the government's case." United States v. Dunn, 841 F.2d at 1030 (emphasis in original). In United States v. Dunn, the Tenth Circuit explained: "[If an] indictment . . . tracks the statutory language, that fact alone will not defeat it." 841 F.2d at 1029. Instead, "[s]ufficiency is determined by practical rather than technical considerations." United States v. Dunn, 841 F.2d at 1029. The Tenth Circuit then noted that the indictment quoted the statutory language under which the defendant was charged, and "included the dates of the illegal activity, the place, and the specific controlled substance." 841 F.2d at 1029. The Tenth Circuit concluded: "An indictment need not go further and allege in detail the factual proof that will be relied upon to support the charges." 841 F.2d at 1029 (quotation omitted).

### LAW REGARDING MOTIONS FOR JUDGMENT OF ACQUITTAL

Rule 29 of the Federal Rules of Criminal Procedure provides:

**(a)** **Before Submission to the Jury.** After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the

evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

**(b)** **Reserving Decision.** The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

**(c)** **After Jury Verdict or Discharge.**

**(1)** **Time for a Motion**. A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later.

**(2)** **Ruling on the Motion**. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

**(3)** **No Prior Motion Required**. A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

**(d)** **Conditional Ruling on a Motion for a New Trial.**

**(1)** **Motion for a New Trial.** If the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. The court must specify the reasons for that determination.

**(2)** **Finality**. The court's order conditionally granting a motion for a new trial does not affect the finality of the judgment of acquittal.

**(3)** **Appeal.**

**(A)** **Grant of a Motion for a New Trial.** If the court conditionally grants a motion for a new trial and an appellate court later reverses the

> judgment of acquittal, the trial court must proceed
> with the new trial unless the appellate court orders
> otherwise.
>
> **(B)      Denial of a Motion for a New Trial.**
> If the court conditionally denies a motion for a new
> trial, an appellee may assert that the denial was
> erroneous. If the appellate court later reverses the
> judgment of acquittal, the trial court must proceed as
> the appellate court directs.

Fed. R. Crim. P. 29 (bold in original).  In <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), the Supreme

Court noted that the long-settled practice of allowing federal courts to enter judgments of

acquittal when evidence is insufficient to sustain a conviction "only . . . highlight[s] the

traditional understanding in our system that the application of the beyond-a-reasonable-doubt

standard to the evidence is not irretrievably committed to jury discretion."  443 U.S. at 317 n.10.

A judgment of acquittal thus enables a federal district court to protect a defendant's due process

rights by removing from jury consideration a charge with respect to which no rational trier of

fact could find guilt beyond a reasonable doubt.  See <u>Jackson v. Virginia</u>, 443 U.S. at 317-19.

In deciding a motion for judgment of acquittal, the court must ask "only whether taking

the evidence -- both direct and circumstantial, together with the reasonable inferences to be drawn

therefrom -- in the light most favorable to the government, a reasonable jury could find the

defendant guilty beyond a reasonable doubt."  <u>United States v. McKissick</u>, 204 F.3d 1282, 1289

(10th Cir. 2000).  The court relies on the jury, "as the fact finder, to resolve conflicting testimony,

weigh the evidence, and draw inferences from the facts presented."  <u>United States v. McKissick</u>,

204 F.3d at 1289.   <u>See</u> <u>United States v. Brooks</u>, 438 F.3d 1231, 1236 (10th Cir.

2006)("Furthermore, it is not our duty to weigh conflicting evidence nor to consider the

credibility of witnesses.").  The court must refrain from "examining the evidence in 'bits and

pieces,'" and must instead "evaluate the sufficiency of the evidence by 'consider[ing] the collective inferences to be drawn from the evidence as a whole.'" United States v. Brooks, 438 F.3d at 1236 (quoting United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997))(alteration in United States v. Wilson).

The court's role is to determine whether the evidence, if believed, would establish each element of the crime. See United States v. Delgado-Uribe, 363 F.3d 1077, 1081 (10th Cir. 2004)(citing United States v. Vallo, 238 F.3d 1242, 1247 (10th Cir. 2001)). "[T]he evidence necessary to support a verdict 'need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.'" United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000)(quoting United States v. Wilson, 182 F.3d at 742). The court should enter a judgment of acquittal only if no reasonable juror could have found the defendant guilty. See United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997)("We will not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict." (citing United States v. Chavez-Palacios, 30 F.3d 1290, 1294 (10th Cir. 1994); United States v. Hoenscheidt, 7 F.3d 1528, 1530 (10th Cir. 1993)). The court should not find that there is enough evidence to support a conviction, however, if a conviction can only be "obtained by piling inference upon inference. 'An inference is reasonable only if the conclusion flows from logical and probabilistic reasoning.'" United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998)(quoting United States v. Taylor, 113 F.3d 1136, 1144 (10th Cir. 1997); and citing United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995)). The Tenth Circuit stated in United States v. Summers, 414 F.3d 1287 (10th Cir. 2005):

> The rule prohibiting the stacking of inference upon inference merely indicates that at some point along a rational continuum, inferences may become so

attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion. In other words, "the chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one." United States v. Shahane, 517 F.2d 1173, 1178 (8th Cir. 1975).

United States v. Summers, 414 F.3d at 1294-95.

## **RELEVANT LAW REGARDING 18 U.S.C. § 875(c)**

Section 875(c) of Title 18 of the United States Code makes it a crime to transmit in interstate commerce "any communication containing any threat . . . to injure the person of another." Congress enacted the statute was in 1934 and last amended it in 1939. See United States v. Kammersell, 196 F.3d at 1138 ( "At that time, the telegraph was still the primary mode of interstate communication").

### 1. **Transmission Through Interstate Commerce**.

Section 875(c)'s jurisdictional element requires the threatening communication be transmitted in interstate commerce. See 18 U.S.C. § 875(c). The Tenth Circuit reads this requirement literally: once the communication crosses state lines, however briefly, the jurisdictional element is satisfied even if sender and recipient are both located in the same state. See United States v. Kammersell, 196 F.3d at 1139. Of course, the United States must prove that the communication actually crossed state lines; mere possibility is not enough. See United States v. Oxendine, 531 F.2d 957, 957 (9th Cir. 1976)

The jurisdictional element is satisfied when the threat crosses state lines, however briefly, and no one in another state need see the threat. In United States v. Kammersell, the defendant noted that Congress enacted § 875(c) when the telegraph was still the dominant means of interstate communication and urged the Tenth Circuit to interpret the statute "in light of the sweeping changes in technology over the past 60 years," so as to avoid "immeasurably

broaden[ing] federal criminal jurisdiction without any discussion by Congress of the matter." 196 F.3d at 1139. The defendant was indicted for violating § 875(c) when he sent a bomb threat via Instant Message from his home in Riverdale, Utah, to his girlfriend's workplace in Ogden, Utah, "hoping that the threat would enable her to leave work early so they could go on a date." 196 F.3d at 1138. The message was "automatically transmitted through interstate telephone lines from his computer in Utah to the [America On Line] server in Virginia and then back to Utah to his girlfriend's terminal" in Ogden. 196 F.3d at 1138. The defendant challenged only the jurisdictional element under what was a statutory interpretation argument. See 196 F.3d at 1139. The defendant noted that an Instant Message could only be sent if the recipient was online at the time of the transmission, meaning that the message could not be stored such that anyone outside the state could have seen the threat. See 196 F.3d at 1139. The Tenth Circuit rejected that argument, giving effect to the statute's plain language, and concluding that a "threat that was unquestionably transmitted over interstate telephone lines falls within the literal scope of the statute and gives rise to federal jurisdiction." 196 F.3d at 1139. The Tenth Circuit also rejected any requirement that someone outside the state had to see the threat, as § 875(c)'s plain language contains no such element. See 196 F.3d at 1139.

### 2. Section 875(c) Requires the Defendant Intend the Communication be Threatening.

Section 875(c) contains no explicit scienter requirement, but the Tenth Circuit interprets the statute to require the defendant intend subjectively that the communication be threatening. See United States v. Wheeler, 776 F.3d 736, 740 (10th Cir. 2015). Section 875(c) regulates speech and so "must be interpreted with the commands of the First Amendment clearly in mind." Watts v. United States, 394 U.S. at 707. Accordingly, to be prosecutable under § 875(c), the

defendant must subjectively intend to threaten, and the communication must amount to a true threat. See United States v. Wheeler, 776 F.3d at 740. "[W]hether a defendant's statement is a true threat or mere political speech is a question for the jury." United States v. Viefhaus, 168 F.3d 392, 397 (10th Cir. 1999).

Despite § 875(c)'s absence of a scienter element, the statute is interpreted to include a mens rea somewhere beyond negligence. In United States v. Elonis, 135 S. Ct. 2001 (2015), a man was indicted under § 875(c) after a posting a series of rap-music missives on social media against, among others, his ex-wife, his former employer, a judge, and a Federal Bureau of Investigation agent. See 135 S. Ct. at 2005-07. One of the posts featured his take on a popular comedy skit, in which he said:

> Did you know that it's illegal for me to say I want to kill my wife? . . . . It's one of the only sentences that I'm not allowed to say. . . . Now it was okay for me to say it right then because I was just telling you that it's illegal for me to say I want to kill my wife.. . . . Um, but what's interesting is that it's very illegal to say I really, really think someone out there should kill my wife.. . . . But not illegal to say with a mortar launcher. Because that's its own sentence. . . .
>
> I also found out that it's incredibly illegal, extremely illegal to go on Facebook and say something like the best place to fire a mortar launcher at her house would be from the cornfield behind it because of easy access to a getaway road and you'd have a clear line of sight through the sun room. . . . Yet even more illegal to show an illustrated diagram. [diagram of the house]. . . . Art is about pushing limits. I'm willing to go to jail for my Constitutional rights . . . are you?

135 S. Ct. at 2005-06 (ellipses and alterations in opinion). A grand jury indicted the defendant for transmitting in interstate commerce threats against his ex-wife, an FBI agent, and police officers, in violation of § 875(c). See 135 S. Ct. at 2007. The defendant moved to dismiss the indictment, arguing it failed to allege that he intended to threaten anyone. See 135 S. Ct. at 2007. The district court denied the motion, holding that § 875(c) requires only that the defendant intentionally made the communication and not that he intended to make threats. See 135 S. Ct. at 2007. At trial, the

defendant's ex-wife and co-workers all testified that they viewed the defendant's posts as serious threats. See 135 S. Ct. at 2007. The jury was instructed:

> "A statement is a true threat when a defendant intentionally makes a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily injury or take the life of an individual."

135 S. Ct. at 2007 (quoting United States v. Elonis, 730 F.3d 321, 327 (3d Cir. 2013)). Concluding that a reasonable person would interpret the defendant's posts as threats, a jury convicted the defendant of violating 18 U.S.C. § 875(c). See 135 S. Ct. at 2007. The United States Court of Appeals for the Third Circuit affirmed Elonis' conviction. See 135 S. Ct. at 2007.

The Supreme Court reversed. See 135 S. Ct. at 2007. Chief Justice Roberts began the Supreme Court's opinion by rejecting the United States' argument that § 875(c)'s omission of a criminal intent element, when observed alongside § 875(a) and (b)'s inclusion of such an element, means that § 875(c) lacks a mens rea element. See 135 S. Ct. at 2010. Instead, the Chief Justice noted, courts must read a mens rea requirement into such statutes to "separate wrongful conduct from otherwise innocent conduct." 135 S. Ct. at 2010 (internal quotation marks omitted). The Chief Justice said that this rule of construction reflects the basic principle that "wrongdoing must be conscious to be criminal" and that a defendant must be "blameworthy in mind" before he can be found guilty of a crime. 135 S. Ct. at 2009 (internal quotation marks omitted). The Chief Justice said that the trial judge erred in using a reasonable person standard, because that standard did not require proof that the defendant was aware of his wrongdoing. See 135 S. Ct. at 2009-12. Without specifying the intent that § 875(c) requires, the Chief Justice said only that "negligence is not sufficient." 135 S. Ct. at 2013. The Chief Justice provided dictum that "[t]here is no dispute that the mental state requirement in Section 875(c) is satisfied if the defendant transmits a

communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." 135 S. Ct. at 2012. <u>Elonis v. United States</u> thus leaves open § 875(c)'s precise mens rea standard. The concurring and dissenting justices criticized the majority opinion for its lack of a governing standard. <u>See</u> 135 S. Ct. at 2014 (Alito, J., concurring in part); <u>id.</u> at 2018 (Thomas, J., dissenting). Justice Alito, in his concurring opinion, argued for a recklessness standard, <u>see</u> 135 S. Ct. at 2014, and Justice Thomas, dissenting, asserted that § 875(c) requires only a general intent to communicate a threat, <u>see</u> 135 S. Ct. at 2022. Nonetheless, <u>Elonis v. United States</u> leaves unresolved § 875(c)'s precise mens rea standard. <u>See</u> 135 S. Ct. at 2013 (Alito. J., concurring in part)(criticizing the majority providing "only what the law is not," without holding "what type of intent was necessary," and leaving "[a]ttorneys and judges . . . to guess.").

Before <u>United States v. Elonis</u>, § 875(c)'s mens rea element was unclear in the Tenth Circuit. In <u>United States v. Teague</u>, 443 F.3d 1310 (10th Cir. 2006), the Tenth Circuit held that it was not plain error to instruct the jury that § 875(c) requires that the defendant "knowingly transmitted a communication containing a threat to injure the person of another as charged in the Indictment." 443 F.3d at 1318. The defendant argued that § 875(c) requires proof that he intended the message be perceived as a threat and not just that he knowingly communicated a message which contained a threat. <u>See</u> 443 F.3d at 1318. The Tenth Circuit rejected this argument:

> [N]either the Supreme Court nor this court has spoken on the mens rea issue [the defendant] raises on appeal. And in the circuits to address the matter, there is hardly unanimity in his favor. At best (from his point of view), there is a split of authority. Indeed, it is not clear to us that any circuit has adopted the contention advanced by [the defendant]. Several circuits have considered the mens rea necessary to violate § 875(c). The issue is generally discussed in terms of whether the statute requires specific intent or merely general intent, with only the Ninth Circuit requiring specific intent, *see United States v. Twine*, 853 F.2d 676, 680 (9th Cir. 1988). The others state that general intent is all that is required.

United States v. Teague, 443 F.3d at 1319 (compiling cases). A later case, United States v. Heineman, 767 F.3d 970 (10th Cir. 2014), interpreted the First Amendment to require the government prove the defendant subjectively intended to threaten. See 767 F.3d at 982. A year later, another Tenth Circuit case read United States v. Heineman as imposing the specific intent requirement as a matter of statutory construction, and not as First Amendment safeguard. See United States v. Wheeler, 776 F.3d at 743 n.3. Subsequent cases have adopted this view of United States v. Heineman's holding as statutory interpretation. See, e.g., United States v. Stevens, 881 F.3d 1249, 1253 n.3 (10th Cir. 2018), cert. denied, 139 S. Ct. 353 (2018). Accordingly, the Tenth Circuit now holds that § 875(c) requires the defendant subjectively intended to threaten.

**3.     The Communication Must Amount to a True Threat.**

The Chief Justice in United States v. Elonis purported not to address Elonis' statements in the First Amendment's light, despite granting certiorari, in part, on whether the First Amendment requires that the "defendant be aware of the threatening nature of the communication." 135 S. Ct. at 2004. Justice Alito offered some guidance, asserting that the First Amendment requires only the defendant's recklessness in making a threat before exposing him to prosecution under § 875(c). See 135 S. Ct. at 2017. Dissenting, Justice Thomas argued that applying a general intent standard to § 875(c) would be consistent with the First Amendment's historical application. See 135 S. Ct. at 2024. Accordingly, United States v. Elonis, which requires something more than a negligence standard as a matter of statutory construction, offers no guidance as to the First Amendment's true-threat requirement.

Most Courts of Appeals gauge true threats by a reasonable-person standard. See, e.g., United States v. Stock, 728 F.3d 287, 299 (3d Cir. 2013)("[A] reasonable jury could find that the [social media] posting, in context and as a whole, constitutes a threatening communication.");

United States v. Nicklas, 713 F.3d 435, 438-40 (8th Cir. 2013); United States v. White, 670 F.3d 498, 506-12 (4th Cir. 2012); United States v. Jeffries, 692 F.3d 473, 477-81 (6th Cir. 2012)(concluding that Virginia v. Black, 538 U.S. 343, "says nothing about imposing a subjective standard on other threat-prohibiting statutes" and that true threats require only that the defendant "knowingly says the words"); United States v. Nishniandze, 342 F.3d 6, 16 (1st Cir. 2003)("The ultimate standard is an objective one -- whether a reasonable person would understand the statement to be threatening."). Only the Ninth Circuit consistently interprets the First Amendment as requiring proof of a specific intent to threaten. See United States v. Bagdasarian, 652 F.3d 1113, 1122 (9th Cir. 2011)

The Tenth Circuit recently held that the First Amendment requires that the government prove the defendant's subjective intent to threaten. See United States v. Heineman, 767 F.3d at 982. In United States v. Heineman, the Tenth Circuit reversed a § 875(c) conviction in which the district court held, after a bench trial, that the defendant's communications amounted to true threats because they "would cause a reasonable person to conclude that the sender . . . intended to cause bodily injury." 767 F.3d at 972. After a lengthy discussion of Virginia v. Black, 538 U.S. 343, the Tenth Circuit held that the First Amendment "require[s] the government to prove in any true-threat prosecution that the defendant intended the recipient to feel threatened." United States v. Heineman, 767 F.3d at 975.

A year later, however, the Tenth Circuit used the majority standard: "We have consistently held that statements amount to true threats when a reasonable person would interpret the statements to be threats." United States v. Wheeler, 776 F.3d at 744. In that case, the Tenth Circuit asserted that United States v. Heineman "does not alter this standard," insisting instead that "*Heineman* dealt solely with the mens rea required under § 875(c)," and "simply added a separate element the

government must prove -- that the defendant possessed a subjective intent to threaten." 776 F.3d at 743 n.3. That the Honorable Robert Baldock, United States Circuit Judge for the United States Court of Appeals for the Tenth Circuit, dissented in United States v. Heineman, and described the majority as holding that "the First Amendment requires" proof of "the defendant's subjective intent to threaten," despite the Tenth Circuit being "duty bound not to reach constitutional questions unnecessarily," 776 F.3d at 982, contradicts United States v. Wheeler's characterization of United States v. Heineman. Subsequent Tenth Circuit cases, however, describe the true-threats standard as whether "a reasonable person would understand the communication to be a threat." United States v. Stevens, 881 F.3d at 1253.

Thus, while the Tenth Circuit caselaw is clear that § 875(c) requires that the United States prove the defendant's subjective intent to threaten, the point at which First Amendment protections attach to threatening speech is less clear in the Tenth Circuit. While this lack of clarity may prove troublesome in other true-threat contexts, it is immaterial[5] in § 875(c)'s context, as the statute is already interpreted to require the defendant's subjective intent to threaten. See United States v. Wheeler, 776 F.3d at 743 n.3. A statutorily sufficient § 875(c) conviction thus is unlikely to run afoul of the First Amendment. Accordingly, in a § 875(c) prosecution, the United States must prove both that the defendant transmitted the communication subjectively intending to issue a threat or with knowledge that the communication would be viewed as a threat, and that a

---

[5]It is perhaps possible that a defendant might subjectively intend to threaten, satisfying § 875(c), but a reasonable person would not view the communication as threatening, barring prosecution under the First Amendment. Given the context-heavy true-threats analysis, however, this is unlikely. See Nielander v. Bd. of Cty. Comm'rs of Cty. of Republic, Kan., 582 F.3d 1155, 1167-68 (10th Cir. 2009). As stated by the United States Court of Appeals for the First Circuit, "[i]t is rare that a jury would find that a reasonable speaker would have intended a threat under the particular facts of a case but that a competent defendant did not." United States v. Clemens, 738 F.3d 1, 12 (1st Cir. 2013).

reasonable person would view the communication as a threat.  See United States v. Elonis (Elonis II), 841 F.3d 589, 596 (3d Cir. 2016).

The prosecution satisfies the objective component by showing that "those who hear or read the threat reasonably consider that an actual threat has been made." United States v. Wheeler, 776 F.3d at 743 (quoting United States v. Viefhaus, 168 F.3d at 396)(internal quotation marks omitted). "[T]he statement itself must be one that a reasonable person in the circumstances would understand 'as a declaration of intention, purpose, design, goal, or determination to inflict [bodily injury] on another.'" United States v. Wheeler, 776 F.3d at 743 (quoting United States v. Heineman, 767 F.3d at 972).  This standard amounts to a "a fact-intensive inquiry, in which the language, the context in which the statements are made, as well as the recipients' responses are all relevant." Nielander v. Bd. of Cty. Comm'rs of Cty. of Republic, Kan., 582 F.3d at 1167-68.  Conditional statements may still be true threats, as threats are often contingent when "used to intimidate or dissuade an individual from taking a particular action." United States v. Dillard, 795 F.3d 1191, 1200 (10th Cir. 2015).  A true threat "convey[s] a gravity of purpose and likelihood of execution so as to constitute speech beyond the pale of protected vehement, caustic . . . unpleasantly sharp attacks on government and public officials." United States v. Crews, 781 F.2d 826, 832 (10th Cir. 1986)(internal quotation marks omitted).  While the defendant need not specifically intend to or be capable of carrying out the threat, see Virginia v. Black, 538 U.S. at 360, evidence of the defendant's ability or intent may be relevant to determining whether the communication was a true threat, see United States v. Stevens, 881 F.3d 1249, 1256 (10th Cir. 2018).

Nor do the true threats need to be made directly to the proposed victim.  In United States v. Martin, 163 F.3d 1212 (10th Cir. 1998), the defendant told an informant that he would "unload six bullets into" a federal law enforcement officer's brain.  163 F.3d at 1213.  The defendant was

indicted under 18 U.S.C. § 115(a)(1)(B) for threatening a federal law enforcement officer.  See 163 F.3d at 1213.  The defendant had asked the informant to buy him ammunition and showed the informant three firearms.  See 164 F.3d at 1214.  Further, the threatened officer "began taking special precautions when he learned about the threats."  164 F.3d at 1216.  The Tenth Circuit upheld the defendant's conviction, noting that the defendant's firearm possession and multiple reiterations of the threat provided ample support for a reasonable person to view the statements as true threats.  See 164 F.3d at 1216.  That the threats were not made directly to the officer did not lessen the officer's reasonable perception that he was in danger.  See 164 F.3d at 1216. Accordingly, § 875(c) requires the communication be one that the defendant subjectively intended as a threat, and which a reasonable person would perceive as a threat.

## ANALYSIS

Although Nissen focused his oral motion for directed verdict on whether his speech was constitutionally protected, the Court also examines whether he is entitled to a judgment of acquittal on the basis of any of § 875(c)'s elements.  The Court relies on the "jury, as fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented," United States v. Stiger, 413 F.3d 1185, 1194 (10th Cir. 2005), and must "accept the jury's resolution as long as it is within the bounds of reason," United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997).  After carefully reviewing the evidence adduced at trial, the Court concludes that the United States introduced sufficient evidence for a reasonable jury to conclude that Nissen is guilty of both Counts.

# I. THE INDICTMENT IS SUFFICIENT TO APPRISE NISSEN OF THE ESSENTIAL ELEMENTS OF THE CRIMES CHARGED, AND TO INFORM HIM OF THE CHARGES AGAINST WHICH HE MUST PREPARE A DEFENSE.

Nissen argues that the "Indictment fails to allege any overt acts" and "fails to give Michael Nissen adequate notice of the alleged crimes, and presents the risk of double jeopardy." MBP at 1-2. Contrary to Nissen's assertions, the Indictment is sufficient to apprise him of the essential elements of the crimes charged, and to inform him of the charges against which he must prepare a defense. The Indictment tracks the statutory language of the offense charged, the § 875 provisions which he is alleged to have violated and includes the time and location of the alleged threats. See Indictment at 1. The Court concludes that the Indictment contains the elements of the offense and apprises the defendant of the charges he must meet so that a judgment returned on the indictment will protect him against double jeopardy. See United States v. Bedonie, 913 F.2d at 790; United States v. Dunn, 841 F.2d at 1029. Moreover, Nissen filed two other motions attacking the substance of the United States' allegations, so any lack of detail in the Indictment has not hampered his defense. It is clear to all involved what the alleged crime is. Because the Indictment contains all of the essential elements and apprises Nissen of the charges he must meet, and because the Tenth Circuit has cautioned against the use of a Bill of Particulars as a discovery device, the Court denies Nissen's MBP. See United States v. Dunn, 841 F.2d at 1029 ("An indictment need not go further and allege in detail the factual proof that will be relied upon to support the charges.").

# II. THE UNITED STATES INTRODUCED SUFFICIENT EVIDENCE FOR A REASONABLE JURY TO CONCLUDE NISSEN IS GUILTY OF EACH COUNT.

In his MTD, Nissen requested that the Court dismiss the Indictment on the grounds that the First Amendment protects his speech. See MTD at 1. At the hearing, Nissen agreed that his First Amendment argument would be couched more properly as a directed verdict, and so reserved his

motion for trial.  See Tr. at 16:6-8 (Mkhitarian).  Nissen renewed his First Amendment argument at the close of the United States' evidence against him and moved, pursuant to rule 29 of the Federal Rules of Criminal Procedure, for a judgment of acquittal on both Counts.  See Aug. 7 Tr. at 6:22-25 (Mkhitarian).  Nissen argues that his alleged threats are in fact political speech, as demonstrated by the NM State Police officers' familiarity with views' nature for having encountered them elsewhere.  See Aug. 7 Tr. at 5:15-23 (Mkhitarian).  Nissen notes that he referred to his constitutional rights in the November 2, 2018, call to the NM State Police dispatch as further support that he was engaging in protected political speech.  See Aug. 7. Tr. at 5:23-6:3 (Mkhitarian).  Finally, Nissen asserts that his alleged threats amount to exaggeration and hyperbole, and that his alleged threats' conditional nature renders them short of true threats.  See Aug. 7 Tr. at 6:4-8 (Mkhitarian).  The United States responded by pointing to the Tenth Circuit's pattern jury instructions on true threats, and characterized Nissen's comments as "serious statement[s] expressing intent to instill fear which[,] under the circumstances[,] would cause apprehension in a reasonable person . . . ."  Aug 7. Tr. at 7:23-8:4 (Mysliwiec).  The United States introduced enough evidence for a reasonable jury to convict Nissen on two counts of violating 18 U.S.C. § 875(c).  In deciding a motion for judgment of acquittal, courts are not permitted to weigh the evidence or assess witness credibility, see Burks v. United States, 437 U.S. 1, 16-17 (1978), but instead must ask "only whether taking the evidence -- both direct and circumstantial, together with the reasonable inferences to be drawn therefrom -- in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Stiger, 413 F.3d at 1193.  Further, "absent an 'unusual set of facts,' the question whether statements amount to true threats 'is a question generally best left to a jury.'"  United States v. Wheeler, 776 F.3d at 742 (quoting United States v. Malik, 16 F.3d 45, 51 (2d Cir. 1994)).  Entry

of a judgment of acquittal is thus "confined to cases where the prosecution's failure is clear."

Burks v. United States, 437 U.S. at 17.  There is no clear evidentiary failure here.  To the contrary, the jury reasonably concluded that Nissen's communications crossed state lines, that he subjectively intended his statements as threats, and that a reasonable observer would perceive Nissen's statements as true threats.

### A. THE JURY REASONABLY CONCLUDED THAT NISSEN TRANSMITTED A COMMUNICATION IN INTERSTATE COMMERCE.

Nissen argued, first in his Jurisdictional MTD, that the United States must prove that Nissen transmitted his alleged threats in interstate commerce to satisfy his conviction under § 875(c).  See Jurisdictional MTD at 1-2.  At the hearing on Nissen's pretrial motion, Nissen asked to "defer the [Jurisdictional MTD] to the time of trial," effectively converting the Jurisdictional MTD to one for a directed verdict.  Tr. at 3:10-16 (Court, Mkhitarian).   At trial, the Court instructed the jury that, to find Nissen guilty of violating § 875(c), Nissen's "communication was transmitted in interstate commerce."  Jury Instruction No. 9, at 11, filed August 7, 2019 (Doc. 69)("Jury Instructions").  The Court further instructed the jury that "[i]nterstate commerce means commerce or travel between one state, territory or possession of the United States and another state, territory or possession of the United States," and that "[c]ommerce includes travel, trade, transportation and communication."  Jury Instruction No. 11, at 13.

Kenneth Lecesne, records custodian for T-Mobile, testified that each mobile telephone call in its network is routed through a "switch," which is "the computer that creates the call detail  . . . where the information is actually stored."  Aug. 6 Tr. at 252:1-7 (Lecesne).   Lecesne noted that "the switching station is the computer that facilitates the [entire] process of the call."  Aug. 6 Tr. at 250:24-25 (Lecesne).  "The switch is a very important part of the actual" telephone calls, as

"the switch is the computer that creates the call detail" by ensuring that a mobile telephone call is properly directed to the recipient telephone, "but it's also the computer where the information is actually stored." Aug. 6 Tr. at 251:25-252:3 (Lecesne).  See id. at 250:20-25 (Lecesne).  Lecesne testified that there are no T-Mobile switches in New Mexico and that it "would not be possible" for a mobile telephone call to not be routed through a switch.  Aug. 6 Tr. at 269:18-21 (Uballez, Lecesne).  See id. at 251:1-8 (Uballez, Lecesne).

Lecesne identified an outgoing telephone call from Nissen's cellphone in Edgewood, New Mexico, to NM State Police dispatch, routed through switch TTAS005 in Plano, Texas, on November 2, 2018.  See Aug. 6 Tr. at 258:14-20 (Uballez, Lecesne); id. at 260:2-8 (Uballez, Lecesne).  Lecesne also identified several outgoing telephone calls from Nissen's cellphone to NM State Police Dispatch on November 26, 2018.  See Aug. 6 Tr. at 260:2-21 (Uballez, Lecesne).  FBI Agent Peter Ubbelohde testified that Nissen's cellphone's IMEI number[6] -- its unique serial code -- matched that of the T-Mobile records listing Nissen's calls to NM State Police.  See Aug. 6 Tr. at 316:19-5 (Uballez, Ubbelohde).

Section 875(c)'s interstate commerce element is satisfied when a communication actually crosses state lines, however briefly.  See United States v. Kammersell, 196 F.3d at 1139.  In the light most favorable to the United States, Lecesne's and Ubbelohde's testimony amount to ample evidence supporting the jury's conclusion that Nissen's telephone calls to NM State Police dispatch on November 2 and 26, 2018, actually crossed state lines.  Accordingly, the Court denies Nissen's Jurisdictional MTD.

---

[6]"IMEI" is an initialism for International Mobile Equipment Identity.  Aug. 6 Tr. at 257:17-19 (Mysliwiec, Lecesne).

**B.    THE    JURY    REASONABLY    CONCLUDED    THAT    NISSEN INTENTIONALLY TRANSMITTED A TRUE THREAT.**

The Court instructed the jury that, to find Nissen guilty of violating § 875(c), he must have "transmitted the communication with the intent to make a threat, or with knowledge that the communication will be viewed as a threat." Jury Instruction No. 9, at 11. Whether a statement amounts to a true threat is a question for the fact finder. See United States v.Viefhaus, 168 F.3d at 397. "This principle rings especially true where a defendant alleges an alternative, non-threatening interpretation to the statement or statements that underline an indictment." United States v. Cardozo, 2019 WL 2603096, at *5 (D. Mass. June 24, 2019)(Burroughs, J)(citing United States v. Clemens, 738 F.3d 1, 13 (1st Cir. 2013)). "If the court determines a 'reasonable jury could find that the [ ] communication[s] constitute[ ] . . . true threat[s],' then it may deny the defendant's motion to dismiss." United States v. Stevens, 881 F.3d at 1252 (quoting United States v. Stock, 728 F.3d 287, 298 (3d Cir. 2013))(alterations in United States v. Stevens).

The Indictment alleges that Nissen violated § 875(c) on November 2 and 26, 2018. See Indictment at 1. Nissen's rule 29 motion is centered largely around his argument that the statements he made on November 2 and 26, 2018, do not amount to true threats. See MTD at 2; Aug. 7 Tr. at 5:15-17 (Mkhitarian). Nissen argues that his statements to the NM State Police dispatch are protected political speech. See Aug. 7 Tr. at 5:15-18 (Mkhitarian). Nissen points to his references to the Constitution as support for this contention. See Aug 7. Tr. at 5:20-25 (Mkhitarian). Nissen also characterizes his comments as conditional, such that a reasonable person would not view those comments as true threats. See Aug 7 Tr. at 6:2-6 (Mkhitarian).

Nissen's interactions with NM State Police began when Officer Jordan Burd pulled Nissen over on November 2, 2018. See Aug. 6 Tr. at 183:23-184:6 (Uballez, Burd). Burd testified that

Nissen had a loaded shotgun in his vehicle when Burd stopped him.  See Aug. 6. Tr. at 190:19-25

(Burd).  Burd described Nissen as being "very agitated" and "elevating his voice" during the traffic

stop.  Aug. 6. Tr. at 194:4-24 (Mysliwiec, Burd).  Victoria Gurule, NM State Police Dispatcher,

testified that Nissen called NM State Police dispatch several times on the evening of November

2, 2018, after Burd issued him citations for traffic violations.  See Aug. 6 Tr. at 222:16-24

(Mysliwiec, Gurule).  The United States played these call's recordings for the jury.  See Aug. 6

Tr. at 228:5-12 (Court, Mysliwiec, Gurule); id. at 226:12-16 (Mysliwiec, Court, Gurule); id. at

229:20-230:1 (Court, Mysliwiec, Gurule).  Gurule said that Nissen seemed "extremely agitated,

very upset" and was "just very aggressive, a lot of yelling."  Aug. 6 Tr. at 223:12-14 (Gurule).

Gurule said she viewed this call as a complaint, albeit an aggressive one.  See Aug 6. Tr. at 227:13-

15 (Mysliwiec, Gurule).  Gurule testified that Nissen called dispatch a second time on November

2, 2018, in which "it escalated.  It wasn't just a normal complaint for me."  Aug 6. Tr. at 224:3-4

(Gurule).  Instead, Gurule viewed the second call as a sincere threat in light of her fifteen years of

experience as a 911 dispatcher and did not view this call as pertaining to politics.  See Aug 6. Tr.

at 224:8-10 (Gurule); id. at 229:3-11 (Mysliwiec, Gurule); id. at 230:6-12 (Mysliwiec, Gurule).

Gurule said that the call involved Nissen "threatening to hurt any law enforcement officer that he

came into contact with."  Aug. 6 Tr. at 224:8-10 (Gurule).  "It was the fact that he's saying he's

going to put a bullet in the pig's head.  That's an imminent threat to me."  Aug. 6. Tr. at 244:19-

21 (Gurule).  Gurule later acknowledged that Nissen was talking about his constitutional rights.

See Aug. 6 Tr. at 242:17-19 (Mkhitarian, Gurule).  After getting off the call with Nissen, Gurule

told Burd about the Nissen's comments and advised precaution should he again come into contact

with Nissen.  See Aug. 6 Tr. at 231:6-13 (Mysliwiec, Gurule).  NM State Police Sergeant Steven

Carroll testified that, after speaking with Nissen and learning of Nissen's call to NM State Police

Dispatch, he warned his officers of the dangers that Nissen presented "in case any other officer had contact with" Nissen. Aug. 6 Tr. at 277:1-6 (Carroll). Carroll asserted that this was not his standard procedure for complaints, and that he did it because he perceived Nissen's communications as threatening. See Aug. 6 Tr. at 277:4-9 (Uballez, Carroll).

The Court instructed the jury that, to find Nissen guilty of violating 18 U.S.C. § 875(c), the United States must prove that Nissen "transmitted the communication with the intent to make a threat, or with knowledge that the communication will be viewed as a threat." Jury Instruction No. 9, at 11. The Court instructed the jury that a threat is "a serious statement expressing intent to instill fear, which, under the circumstances, would cause apprehension in a reasonable person, as distinguished from mere political argument, idle talk, exaggeration, or something said in a joking manner." Jury Instruction No. 9, at 11. Nissen argued to the jury that his statements were political speech. See Aug. 6 Tr. at 178:23-179:3 (Mkhitarian). Nissen asserted in his opening statement that he "called police dispatch to educate police regarding the traffic stop" and to "complain about his feelings that his constitutional rights were violated." Aug. 6 Tr. 178:19-14 (Mkhitarian). Nissen peppered his cross-examination of the United States' witnesses with questions about the political nature of Nissen's statements. See, e.g., Aug. 6 Tr. at 202:14-17 (Mkhitarian); id. at 242:13-15 (Mkhitarian). Nissen also argued to the jury that his statements were conditional, such that no reasonable person should construe those statements as true threats. See, e.g., Aug. 5 Tr. at 179:16-19 (Mkhitarian). The jury nonetheless concluded that Nissen's statements on November 2 and 26, 2018, to the NM State Police dispatch amounted to true threats. See Aug. 7 Tr. at 78:15-79:3 (Court).

There is sufficient evidence to support the jury's finding that Nissen intended to communicate a threat and that a reasonable person would construe Nissen's statements as threats.

See Elonis v. United States, 135 S. Ct. at 2012. Nissen's statement that the "next time [an NM State Police Officer pulls him over] I'm gonna take my revolver and put that mother fucker drop dead," Complaint ¶ 6, at 3, the audio of which was played for the jury, see Aug. 6. Tr. at 230:1 (Court), along with his palpable agitation and aggression, see, e.g., Aug. 6 Tr. at 223:9-14 (Mysliwiec, Gurule), support the jury's finding that he intended to communicate a threat on November 2, 2018. Nissen's statement that "the next time someone violates me like that on the road, I'm gonna put a bullet in that fucking pig's head," along with Nissen's gun possession, of which the NM State Police was aware, support that a reasonable person would take Nissen's November 2, 2018, communications as serious and sincere threats. See United States v. Sutcliffe, 505 F.3d 944, 959 (9th Cir. 2007)(defendant's gun possession relevant evidence of § 875(c)'s subjective and objective components).

The Indictment's Count 2 alleges that, on November 26, 2018, Nissen "transmitted in interstate and foreign commerce communications containing a threat to injure the person of another." Indictment at 1. Barbara Beuzekom, NM State Police District Administrator, testified that, when Nissen called her to complain on November 26, 2018, Nissen "got very angry . . . . He proceeded to tell me that if[,] you know, he would just come down to the office and shoot me in my fucking face." Aug 6 Tr. at 284:13-20 (Beuzekom). Beuzekom said that "it escalated very quickly." Aug. 6 Tr. at 286:4 (Beuzekom). Beuzekom did not believe Nissen was joking and "took it completely serious, and proceeded to get someone else to talk to him." Aug 6 Tr. at 286:11-18 (Uballez, Beuzekom). Beuzekom said that it was not Nissen's profanity that made her feel threatened, but "it was just the intensity of his voice; he was very angry." Aug. 6 Tr. at 287:9-15 (Uballez, Gurule). After speaking with Nissen, Beuzekom posted Nissen's picture and phone number in her office's common area to warn anyone else who might come in contact with Nissen.

See Aug. 6 Tr. at 288:15-289:3 (Uballez, Beuzekom).  NM State Police Officer Juan Cordova

testified that Beuzekom appeared scared and intimidated when she sought his help in talking with

Nissen on November 26, 2018.  See Aug. 6 Tr. at 308:16-21 (Cordova).

The Court instructed the jury that, to find Nissen guilty of violating § 875(c), the United

States must prove beyond a reasonable doubt that Nissen "transmitted the communication with

the intent to make a threat, or with knowledge that the communication will be viewed as a threat."

Jury Instruction No 9, at 11. The Court also instructed the jury:

> A "threat" is a serious statement expressing intent to instill fear, which, under the
> circumstances, would cause apprehension in a reasonable person, as distinguished
> from mere political argument, idle talk, exaggeration, or something said in a joking
> manner. It is not necessary that Mr. Nissen intended to or had the ability to carry
> out the threat.

Jury Instruction No. 9, at 11.   The jury reasonably concluded that Nissen's statements on

November 26, 2018, amounted to true threats, and that he either intentionally made those threats

or knew that NM State Police dispatch would view his statements as threats.  See United States v.

Wheeler, 776 F.3d at 743.  The jury listened to Nissen's calls and heard from Beuzekom that she

felt threatened.   See Aug. 6 Tr. at 288:22-6 (Uballez, Beuzekom); id. at 306:1-3 (Court,

Mysliwiec).  The jury was entitled to agree.  The Tenth Circuit has instructed district courts, in

considering true-threat prosecutions, to consider statements' context, including "where a

statement was made and how an audience reacted."  United States v. Stevens, 881 F.3d at 1254

(citing Watts v. United States, 394 U.S. at 708).  Nissen's gun possession, his language, and the

reactions of those who heard his threats all support the jury's finding that Nissen intended to

communicate a threat, and that a reasonable person would construe Nissen's statements as "serious

expression[s] of an intent to commit an act of unlawful violence to a particular individual or group

of individuals." United States v. Wheeler, 776 F.3d at 743.  Accordingly, the Court denies Nissen's oral motion for judgment of acquittal and his MTD.

**IT IS ORDERED THAT**: (i) the Motion for Bill of Particulars, filed April 24, 2019 (Doc. 22), is denied; (ii) the Motion to Dismiss Indictment for Lack of Jurisdiction, filed May 15, 2019 (Doc. 24), is denied; (iii) the Motion to Dismiss Indictment, filed May 15, 2019 (Doc. 25), is denied; and (iv) Defendant Michael Nissen's oral motion for a judgment of acquittal under rule 29 of the Federal Rules of Criminal Procedure is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

John C. Anderson
  United States Attorney
Paul Mysliwiec
Jack Burkhead
Alexander Mamoru Max Uballez
  Assistant United States Attorneys
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Jack Mkhitarian
Hakop J. Mkhitarian
Jack Mkhitarian Attorney at Law, LLC
Albuquerque, New Mexico

-- and --

Kenneth Gleria
Kenneth A. Gleria Attorney at Law
Albuquerque, New Mexico

        *Attorneys for the Defendant*