TO; THE CLERK OF THE,

UNITED STATES DISTRICT COURT. I MICHAEL J. NISSEN, BEING INCARCERATED AND INDIGENT, UNDER COURT ORDERED FORMA PAUPERIS DO IMPOSE UPON THIS COURT TO MAKE A COPY OF THIS COMPLETE LEGAL FILE COURT STAMPED AND ENTERED AS LEGAL DOCUMENTATION FOR MY LEGAL FILES, TO BE SENT BACK TO MICHAEL J. NISSEN AT ADDRESS LISTED BELOW. I GREATLY APPRECIATE YOUR EFFORTS AND TROUBLES ON THIS MATTER AT HAND.

RESPECTFULLY SUBMITTED,

DATED: 02/10/2020

MICHAEL J. NISSEN
(DEFENDANT)

MICHAEL J. NISSEN
02508151
P.O. BOX 3540
CIBOLA COUNTY CORRECTIONAL CENTER
MILAN, NM   87021

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 1 9 2020

MITCHELL R. ELFERS
CLERK

**FILED**

| ATTORNEY OR DEFENDANT WITHOUT ATTORNEY (NAME, ADDRESS) | UNITED STATES DISTRICT COURT ALBUQUERQUE, NEW MEXICO |
|---|---|
| MICHAEL J NISSEN<br>02508151<br>P.O. BOX 3540<br>CIBOLA COUNTY CORRECTIONS CENTER<br>MILAN, NM 87021 | FEB 19 2020 |
| UNITED STATES DISTRICT COURT<br>333 LOMAS BLVD, NW<br>ALBUQUERQUE, NM 87102 | MITCHELL R. ELFERS<br>CLERK |
| DEFENDANT; MICHAEL J NISSEN   03/08/1965 | CASE # |
| PROOF OF SERVICE BY MAIL | 1:19-CR-00077-JB |

1) I AM OVER THE AGE OF 18 AND NOT A PARTY TO THIS ACTION

2) I SERVED THE FOLLOWING: MOTION TO DISMISS INFORMATION
OF ILLEGAL CONVICTIONS ON COUNTS I AND II FOR FEDERAL
ABUSE OF ARBITRARY POWER AND JUDICIAL MISCONDUCT, AND
EXHIBIT "A".

3) I SERVED A COPY OF THE DOCUMENTS ON 02/10/2020 AS FOLL
(DATE)

☑ BY MAIL; I SERVED THE DOCUMENTS BY ENCLOSING THEM
AN ENVELOPE AND DEPOSITING THE SEALED ENVELOPE WITH
THE UNITED STATES POSTAL SERVICE WITH THE POSTAGE FU
PREPAID TO THE ADDRESS SHOWN BELOW:

  UNITED STATES DISTRICT COURT
  333 LOMAS BLVD, NW
  ALBUQUERQUE, NM 87102

4) I AM:

☑ NOT A REGISTERED NEW MEXICO PROCESS SERVER.

5) MY NAME, ADDRESS, TELEPHONE NUMBER
  PAUL G. CARRILLO, JR.
  6503 KARLSON DR. NE
  ALBUQUERQUE, N.M.   87113

OFFICIAL SEAL
STEPHANIE RAMSEY
Notary Public
State of New Mexico
My Commission Expires 5/7/1

6) I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAW
OF THE STATE OF NEW MEXICO THAT THE FOREGOING IS
TRUE AND CORRECT:   DATE: 02/10/2020

PAUL G. CARRILLO, JR.
(TYPE OR PRINT NAME OF PERSON)
(WHO SERVED THE PAPERS)

(SIGNATURE OF PERSON WHO
SERVED THE PAPERS)

PROOF OF SERVICE BY MAIL

1    UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF NEW MEXICO

3

4    UNITED STATES OF AMERICA,          DATE: 02/05/2020

5              (PLAINTIFF)

6                                       MOTION TO DISMISS INFORMATION

7         VS.                           OF ILLEGAL CONVICTIONS ON COUNTS

8                                       I AND II FOR FEDERAL ABUSE OF

9    MICHAEL I. NISSEN                  ARBITRARY POWER AND JUDICIAL

10             (DEFENDANT)              MISCONDUCT.

11                                      EXHIBIT "A" PROVIDED

12                                      CASE # 1:19-CR-00077-JB

13

14       MOTION TO DISMISS INFORMATION OF ILLEGAL

15   CONVICTIONS ON COUNTS I AND II FOR FEDERAL ABUSE OF

16   ARBITRARY POWER AND JUDICIAL MISCONDUCT

17

18       NOW COMES, MICHAEL I. NISSEN, (HEREIN-AFTER,

19   DEFENDANT) IN THE ABOVE ENTITLED ACTION, RESPECTFULLY

20   MOVES THE HONORABLE CROWN COURT OF JUDGE JAMES

21   O' BROWNING TO ORDER A DISMISSAL OF INFORMATION

22   OF ILLEGAL CONVICTIONS ON COUNTS I AND II FOR

23   FEDERAL ABUSE OF ARBITRARY POWER AND JUDICIAL

24   MISCONDUCT. DEFENDANT AFFIRMATIVELY STATES IN NO

25   PARTICULAR ORDER THE FOLLOWING HEREIN, LAWS, ACTS,

26   ARE WRITTEN STATUTORY DEFINITIONS OF LAW PROVIDED

27   BY BLACKS LAW DICTIONARY. THE DEFENDANT WHOLE

28   HEARTEDLY BELIEVES THIS FEDERAL CROWN COURT

1  HAS OVERSTEPPED CONSTITUTIONAL LAW OF DUE PROCESS
2  AND EQUAL PROTECTION OF THE LAW GUARANTEED TO ALL
3  AMERICANS REGARDLESS TO THE FEDERAL MARITIME
4  COMMON LAW PRACTICE. ALL AMERICANS ARE PROTECTED
5  BY ARTICLE VI, SECTION II OF THE CONSTITUTION
6  WHICH ALL JUDGES ARE BOUND TO REGARDLESS TO THE
7  CONTRARY, NOTWITHSTANDING. THE SUPREME LAW OF THE
8  LAND SUPERCEDES ALL LAW AND IS THE PERFECT STATUTE
9  AS WRITTEN BY OUR FOUNDING FATHERS. SO IN ENDING
10  OF OPENING STATEMENT BY DEFENDANT, THE DEFENDANT
11  REQUESTS AN IMMEDIATE ORDER OF DISMISSAL OF
12  INFORMATION AND RELEASE FROM AN ILLEGAL WRONGFUL
13  INCARCERATION.
14
15      1) "MOBILE TELECOMMUNICATIONS SOURCING ACT" [4 U.S.C. § 116
16  -126]. NO MATTER WHERE CALL ORIGINATES, TERMINATES, OR
17  PASSES THRU, UPON JUDGEMENT IS INVALID BY FEDERAL
18  CROWN COURT LAW.
19
20      2) MOBILE TELECOMMUNICATIONS, [47 U.S.C. § 201],
21  IS UNENFORCEABLE AND UNLAWFUL.
22
23      3) "RELIGIOUS FREEDOM RESTORATION ACT", [47 U.S.C. §
24  2000BB-4]. LIMITS TO CONGRESSIONAL INTERSTATE AND
25  FOREIGN COMMERCE DO EXIST. CONGRESS MAY NOT, (1)
26  CREATE A STATUTORY RIGHT PROHIBITED BY SOME
27  OTHER PROVISION OF THE CONSTITUTION, (2) REMOVE
28  RIGHTS GRANTED BY THE CONSTITUTION, OR (3) CREATE

1   A RIGHT INCONSISTENT WITH AN OBJECTIVE OF A
2   CONSTITUTIONAL PROVISION.
3
4       4) FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO
5   THE UNITED STATES CONSTITUTION PROVIDES THAT "CONGRESS
6   SHALL MAKE NO LAW RESPECTING AN ESTABLISHMENT OF
7   RELIGION, OR PROHIBITING THE FREE EXERCISE
8   THEREOF... ET AL".
9
10      5) ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT
11  TO UNITED STATES CONSTITUTION WHICH PROVIDES THAT
12  "CONGRESS SHALL MAKE NO LAW RESPECTING AN
13  ESTABLISHMENT OF RELIGION, OR PROHIBITING THE
14  FREE EXERCISE THEREOF... ET AL", SUCH LANGUAGE
15  PROHIBITS A STATE OR THE FEDERAL CROWN COURT
16  GOVERNMENT FROM SETTING UP A CHURCH, OR PASSING
17  LAWS WHICH AID ONE, OR ALL, RELIGIONS, OR GIVING
18  REFERENCE TO ONE RELIGION, OR FORCING BELIEF OR
19  DISBELIEF IN ANY RELIGION.
20
21      6) DUE PROCESS CLAUSE STATES, TWO SUCH CLAUSES
22  ARE FOUND IN THE UNITED STATES CONSTITUTION, ONE
23  IN THE FIFTH AMENDMENT PERTAINING TO THE
24  FEDERAL GOVERNMENT, THE OTHER IN THE FOURTEENTH
25  AMENDMENT WHICH PROTECTS PERSONS FROM STATE
26  ACTIONS, THERE ARE TWO ASPECTS: PROCEDURAL, IN
27  WHICH A PERSON IS GUARANTEED FAIR PROCEDURES
28  AND SUBSTANTIVE WHICH PROTECTS A PERSON'S

1. PROPERTY FROM UNFAIR GOVERNMENTAL INTERFERENCE
2. OR TAKING.

4.     7) SUBSTANTIVE DUE PROCESS STATES, THAT SUCH
5. MAY BE BROADLY DEFINED AS THE CONSTITUTIONAL
6. GUARANTEE THAT NO PERSON SHALL BE ARBITRARILY
7. DEPRIVED OF HIS LIFE, LIBERTY, OR PROPERTY; THE
8. ESSENCE OF SUBSTANTIVE DUE PROCESS IS PROTECTION
9. FROM ARBITRARILY AND UNREASONABLE ACTION.

11.     8) EQUAL PROTECTION OF THE LAW / CLAUSE PROVISION
12. IN THE FOURTEENTH AMENDMENT TO UNITED STATES
13. CONSTITUTION. THE CONSTITUTIONAL GUARANTEE OF
14. EQUAL PROTECTION OF THE LAWS MEANS THAT NO PERSON
15. OR CLASS OF PERSONS SHALL BE DENIED THE SAME
16. PROTECTION OF THE LAWS WHICH IS ENJOYED BY
17. OTHER PERSONS OR OTHER CLASSES IN LIKE CIRCUMSTANCE
18. IN THEIR LIVES, LIBERTY, PROPERTY, AND IN THEIR
19. PURSUIT OF HAPPINESS.

21.     9) ARBITRARY STATES, THAT NOT DONE ACCORDING
22. TO REASON OR JUDGEMENT; DEPENDING ON THE WILL
23. ALONE; ABSOLUTELY IN POWER; CAPRICIOUSLY;
24. TYRANNICAL; DESPOTIC, WITHOUT FAIR SOLID AND
25. SUBSTANTIVE CAUSE; THAT IS, WITHOUT CAUSE BASED
26. UPON THE STATUTORY WRITTEN LAW, NOT GOVERNED BY
27. ANY FIXED RULES OR STANDARDS. ORDINARILY, ARBITRARY
28. IS SYNONYMOUS WITH BAD FAITH OR FAILURE TO

1   EXERCISE HONEST JUDGEMENT AND AN ARBITRARY ACT

2   WOULD BE ONE PERFORMED WITHOUT ADEQUATE

3   DETERMINATION OF PRINCIPLE AND ONE NOT FOUNDED

4   IN NATURE OF THINGS.

5

6      10) THE ENUMERATED POWERS SPECIFICALLY

7   DELEGATED BY THE CONSTITUTION TO SOME BRANCH OR

8   AUTHORITY OF THE NATIONAL GOVERNMENT, AND WHICH

9   ARE NOT DENIED TO THAT GOVERNMENT OR RESERVED

10   TO THE STATES OR TO THE PEOPLE. THE POWERS

11   SPECIFICALLY GIVEN TO CONGRESS ARE ENUMERATED

12   IN ARTICLE I OF THE UNITED STATES CONSTITUTION

13

14      11) THE INHERENT POWERS FOR THOSE WHICH ARE

15   ENJOYED BY THE POSSESSORS OF NATURAL RIGHTS,

16   WITHOUT HAVING BEEN RECEIVED FROM ANOTHER.

17   SUCH AS THE POWERS OF A PEOPLE TO ESTABLISH

18   A FORM OF GOVERNMENT, OF A FATHER TO CONTROL

19   HIS CHILDREN. SOME OF THESE ARE REGULATED AND

20   RESTRICTED IN THEIR EXERCISE BY LAW, BUT ARE

21   NOT TECHNICALLY CONSIDERED IN THE LAW AS POWERS,

22

23      12) THE SUPREMACY CLAUSE OF ARTICLE VI, OF

24   UNITED STATES CONSTITUTION, WHICH DECLARES

25   THAT ALL LAWS MADE IN PURSUANCE OF THE

26   CONSTITUTION AND ALL TREATIES MADE UNDER THE

27   AUTHORITY OF THE UNITED STATES SHALL BE THE

28   SUPREME LAW OF THE LAND AND SHALL ENJOY LEGAL

1  SUPERIORITY OVER ANY CONFLICTING PROVISION
2  OF A STATE CONSTITUTION OR LAW.
3
4      13) IN PURSUANT THEREOF FOLLOWING AFTER OR
5  FOLLOWING OUT. TO EXECUTE OR CARRY OUT IN
6  ACCORDANCE WHICH OR BY REASON OF SOMETHING. TO
7  DO IN CONSEQUENCE OR IN PROSECUTION OF ANYTHING.
8  PURSUANT TO, MEANS IN THE COURSE OF CARRYING
9  OUT; IN CONFORMANCE TO OR AGREEMENT WITH;
10  ACCORDING TO AND, WHEN USED IN A STATUTE, IS A
11  RESTRICTIVE TERM.
12
13      14) LEGISLATIVE POWERS ARE THE LAWMAKING
14  POWERS OF A LEGISLATIVE BODY, WHOSE FUNCTIONS
15  INCLUDE THE POWER TO MAKE, ALTER, AMEND AND
16  REPEAL LAWS. IN ESSENCE, THE LEGISLATURE HAS THE
17  POWER TO MAKE LAWS AND SUCH POWER IS REPOSED
18  EXCLUSIVELY IN SUCH BODY THOUGH IT MAY DELEGATE
19  RULE MAKING AND REGULATORY POWERS TO DEPARTMENTS
20  IN THE EXECUTIVE BRANCH. IT MAY NOT, HOWEVER
21  DELEGATE ITS LAW MAKING POWERS NOR IS THE
22  "JUDICIAL" BRANCH PERMITTED TO OBTRUDE INTO
23  ITS LEGISLATIVE POWERS. THE ENUMERATED POWERS
24  OF CONGRESS ARE PROVIDED FOR IN ARTICLE I OF THE
25  UNITED STATES CONSTITUTION.
26
27      15) DEFENDANTS CELL PHONE SERVICE UPON NOTICE
28  OF T-MOBILE WAS AND IS UNCAPABLE OF ALLEGED

1  PROSECUTORS PRESENTATION TO CROSS INTERSTATE

2  LINES FOR THAT SERVICE WASNT PRESENT FOR CELL

3  PHONE AGE. INTRASTATE SERVICE ONLY AS STATED AND

4  ALLEGED BY F.B.I. AGENT JON URREEBRODE [SIC] IN UNITED

5  STATES DISTRICT ATTORNEYS DISCOVERY.

6

7      16) [8 U.S.C. § 1101 (A)(21)] THE TERM "NATIONAL" MEANS A

8  PERSON OWING PERMANENT ALLEGIANCE TO A STATE

9

10     17) [8 U.S.C. § 1452] NON CITIZEN NATIONAL

11

12     18) PENNOYER RULE IS A RULE TO THE EFFECT THAT

13  A COURT WHICH HAS NO PERSONAL JURISDICTION OVER

14  A DEFENDANT MAY NOT ISSUE AN IN PERSONAM

15  JUDGEMENT OR DECREE AGAINST HIM. [PENNOYER V.

16  NEFF, 95 U.S. 714; 24 L. ED. 565].

17

18     19) LACK OF SUFFICIENT CALL SUMMARY EVIDENCE

19  FOR GRAND JURY INDICTMENT. F.B.I. USED A N.M.S.P

20  CALL LOG WHICH CLEARLY WITHOUT A DOUBT IS

21  INTRASTATE.

22

23     20) ALL FOLLOWING UNITED STATES CONSTITUTIONAL

24  AMENDMENTS VIOLATED BY THE FEDERAL CROWN COURTS

25  ARBITRARY ABUSE OF POWER AND JUDICIAL MISCONDUCT

26  OF ADHEREING TO UNITED STATES CONSTITUTION, WHICH

27  ALL JUDGES ARE BOUND TO REGARDLESS TO THE CONTRARY,

28  NOTWITHSTANDING BY WAY OF ARTICLE VI, SECTION II.

Pg 7 of

FIRST, SECOND, FOURTH, FIFTH, SIXTH, EIGHTH, NINETH, TEENTH, ELEVANTH, FOURTEENTH, TWENTY-THIRD.

21) FREEDOM OF SPEECH IS PURE SPEECH BESTOWED AND ENDOWED UPON HUMANS AS A NATURAL RIGHT BEFORE ANY GOVERNMENT CAME. "CONGRESS SHALL MAKE NO LAW RESPECTING AN ESTABLISHMENT OR PROHIBITING THE FREE EXERCISE THEREOF....".

22) THE RIGHT TO BEAR ARMS SHALL NOT BE INFRINGED UPON.

23) ILLEGAL CONFISCATION OF SHOTGUN WITHOUT SEARCH WARRANT BY NEW MEXICO STATE POLICE OFFICER JORDAN BURD AT INITIAL TRAFFIC STOP ON NOVEMBER 02, 2018. DEFENDANTS VEHICLE IS AN EXTENSION OF DEFENDANTS PROPERTY.

24) DEFENDANTS RIGHTS UNDER FED. R. CRIM. P., RULE 6, 12, 16 OF GRAND JURY, DEFENDANT WAS NEVER NOTIFIED OF GRAND JURY INVESTIGATION AGAINST HIM.

25) INEFFECTIVE ASSISTANCE OF COUNSEL BY FEDERAL PUBLIC DEFENDER, MELISSA A. MORRIS, ESQUIRE, PRIVATE PRACTICE BARRISTER KENNETH A. CLERIA, ESQUIRE, CONTRACT JUSTICE BARRISTER SUSAN PORTER, ESQUIRE.

26) CRUEL AND UNUSUAL PUNISHMENT PER EIGHTH

1  AMENDMENT OF UNITED STATES CONSTITUTION FOR

2  ILLEGAL WRONGFUL INCARCERATION DUE TO LACK OF

3  INSUFFICIENT, IMPROPER EVIDENCE OF CALL SUMMARY

4  PRESENTATION TO RECEIVE A GRAND JURY INDICTMENT

5  BY F.B.I. AGENT JON URREBRODE [sic].

6

7      27) ENUMERATED POWERS CLAUSE PREVENTS JUDICIAL

8  PROCEEDINGS OF INTERSTATE AND FOREIGN COMMERCE

9  BY WAY OF LEGISLATIVE POWER DEFINITION OF

10  WRITTEN STATUTORY LAW WHICH THE FEDERAL CROWN

11  COURT OF MARITIME LAW IS BOUND TO BY THE SUPREME

12  LAW OF THE LAND REGARDLESS TO THE CONTRARY,

13  NOTWITHSTANDING.

14

15      28) POWERS RESERVED TO STATE FOR CONSTITUTIONAL

16  DE JURE LAW. DEFENDANT IS NOT IN FEDERAL POSSESSION

17  OR DOMICILED ON FEDERAL TERRITORY, NATIONALITY

18  IS THAT OF THE NEW MEXICO REPUBLIC BY BIRTH AND

19  A NON CITIZEN NATIONAL SOVEREIGN OF A FREE AND

20  INDEPENDANT STATE, THEREFORE THE DE FACTO, DESPOTIC,

21  MALICIOUSLY EGREGIOUS FEDERAL CROWN COURT OF THE

22  DISTRICT OF COLUMBIA HAS NO IN PERSONAM

23  JURISDICTION OVER A [8 U.S.C. § 1101(A)(21)]; OR

24  AN [8 U.S.C. § 1452] NON CITIZEN NATIONAL OF THE

25  FOURTEENTH AMENDMENT OF UNITED STATES CONSTITUTION,

26

27      29) ELEVENTH AMENDMENT OF UNITED STATES

28  CONSTITUTION, STATES NO FOREIGN STATE CAN BRING

1  SUIT OF LAW OR EQUITY AGAINST DEFENDANTS

2  CITIZENSHIP STATUS.

3

4  30) FOURTEENTH AMENDMENT OF UNITED STATES

5  CONSTITUTION GUARANTEES RIGHTS OF CITIZENSHIP,

6  PRIVILEGES AND IMMUNITIES, DUE PROCESS CLAUSE AND

7  EQUAL PROTECTION OF THE LAW/CLAUSE PROVIDE

8  PROTECTION AGAINST ILLEGAL FEDERAL OBTRUSION

9  OF A NON CITIZEN SOVEREIGN NATIONAL OF THE

10  UNITED STATES OF AMERICA.

11

12  31) TWENTY-THIRD AMENDMENT TO UNITED

13  STATES CONSTITUTION REPEALED AUGUST 1978.

14  TYRANNY RULE OF THE DE FACTO, DESPOTIC, MONARCHY

15  FEDERAL CROWN COURT OF THE DISTRICT OF COLUMBIA

16  IS UNLAWFUL AND ILLEGAL BY WAY OF UNITED

17  STATES CONSTITUTION, AND THE DECLARATION OF

18  INDEPENDENCE.

19

20  32) EX POST FACTO LAW PERTAINING TO

21  STATUTORY INTERSTATE AND FOREIGN COMMERCE

22  ILLEGAL AND UNLAWFUL, UNENFORCEABLE UNDER

23  WRITTEN STATUTORY DEFINITION OF LAW.

24

25  33) UNDER $\left[ 18 \text{ U.S.C. } \S 875 (c) \right]$, ANY THREAT TO

26  INJURE A PERSON IS REQUIRED. DEFENDANT

27  CLEARLY STATED, AS MENTIONED ON TAPED

28  RECORDING, REFERENCED TO A PIG OF THE FOUR

1  LEGGED HOOFED FAMILY. JUDGE JAMES O' BROWNING
2  USED HIS ARBITRARY ABUSE OF POWERS FORBIDDEN
3  BY THE UNITED STATES SUPREME COURT TO RECONSTRUE
4  DEFENDANTS STATEMENT. SECOND COUNT WITH
5  CONVICTION THERE WAS NO STATEMENT WHEN ALL
6  CALLS MADE TO SAME NUMBER WERE RECORDED.
7
8      34) GOVERNMENT OF UNITED STATES DISTRICT
9  COURT LACKS SUBJECT MATTER JURISDICTION
10  OVER THE IN PERSONAM OF DEFENDANT
11
12      35) FALSE TESTIMONY AND HIDDEN EVIDENCE
13  OF SELECTIVE MALICIOUS MALPRACTICE OF
14  PROSECUTORIAL AND DEFENDANTS COUNSEL MISCONDUCT.
15
16      36) MONROE DOCTRINE EGREGIOUSLY VIOLATED
17  BY THIS BLATANT AND SHAMEFUL FEDERAL CROWN
18  COURT.
19
20      37) DEFENDANT WAS SHACKLED AT ANKLES
21  DURING TRIAL WHICH IS A DUE PROCESS AND
22  EQUAL PROTECTION OF THE LAWS VIOLATION, WHICH
23  CREATED PREJUDICE AGAINST DEFENDANT.
24
25      38) DEFENDANT NOT PRODUCED AT EVIDENTIARY
26  HEARING WHICH IS DUE PROCESS AND EQUAL
27  PROTECTION OF THE LAW VIOLATION.
28

Pg 11 of

1    39) CIVIL LIBERTIES ARE PERSONAL, NATURAL
2    RIGHTS GUARANTEED AND PROTECTED BY THE
3    CONSTITUTION; E.G. FREEDOM OF SPEECH, PRESS,
4    FREEDOM FROM DISCRIMINATION, ETC. BODY OF LAW
5    DEALING WITH NATURAL LIBERTIES, SHORN OF
6    EXCESSES WHICH INVADE EQUAL RIGHTS OF OTHERS.
7    CONSTITUTIONALLY, THEY ARE RESTRAINTS ON
8    GOVERNMENT.
9
10    40) CIVIL RIGHTS ACTS ARE FEDERAL
11    STATUTES ENACTED AFTER CIVIL WAR, AND MORE
12    RECENTLY, INTENDED TO IMPLEMENT AND GIVE
13    FURTHER FORCE TO BASIC PERSONAL RIGHTS
14    GUARANTEED BY THE CONSTITUTION. SUCH ACTS
15    PROHIBIT DISCRIMINATION BASED ON RACE, COLOR,
16    AGE, SEX OR RELIGION.
17
18    41) DEFENDANTS BILL OF RIGHTS ARE A
19    FORMAL AND EMPHATIC LEGISLATIVE ASSERTION
20    AND DECLARATION OF POPULAR RIGHTS AND
21    LIBERTIES. THAT PORTION OF THE CONSTITUTION
22    GUARANTEEING RIGHTS AND PRINCIPLES AND
23    PRIVILEGES TO THE INDIVIDUALS.
24
25    42) FEDERAL BUREAU OF INVESTIGATION IS
26    CHARGED WITH INVESTIGATING ALL VIOLATIONS
27    OF FEDERAL LAWS WITH "EXCEPTION" OF THOSE
28    WHICH HAVE BEEN ASSIGNED "LEGISLATIVE"

Pg 12 of

1  ENACTMENT OR OTHERWISE TO SOME OTHER

2  FEDERAL AGENCY.

3

4  43) UNCONSTITUTIONAL STATUTE IS A SELF

5  CONTRADICTING EXPRESSION SINCE A STATUTE IN CONFLICT

6  WITH THE CONSTITUTION IS NOT LAW BUT IS WHOLLY

7  VOID AND AS INOPERATIVE IN LEGAL CONTEMPLATION

8  AS IF IT HAD NEVER BEEN PASSED, NOTWITHSTANDING

9  IT HAS THE FORM AND NAME OF LAW. (2) WHEN A

10  STATUTE IS ADJUDGED TO BE UNCONSTITUTIONAL, IT

11  IS AS IF IT HAD NEVER BEEN. RIGHTS CANNOT BE

12  BUILT UP UNDER IT. CONTRACTS WHICH DEPEND UPON

13  IT FOR THEIR CONSTRUCTION ARE VOID. IT CONSTITUTES

14  A PROTECTION TO NO ONE WHO HAS ACTED UNDER

15  IT, AND NO ONE CAN BE PUNISHED FOR HAVING

16  REFUSED OBEDIENCE TO IT BEFORE THE DECISION

17  WAS MADE. AND WHAT IS TRUE OF AN ACT VOID

18  IN TOTO IS TRUE ALSO AS TO ANY PART OF AN

19  ACT WHICH IS FOUND TO BE UNCONSTITUTIONAL

20  AND WHICH CONSEQUENTLY IS TO BE REGARDED AS

21  HAVING NEVER AT ANY TIME BEEN PASSED AND IN

22  LEGAL EFFECT. (3) AS USED IN THE UNITED STATES

23  CODE, THE TERM "UNCONSTITUTIONAL" HAS REFERENCE

24  TO THE UNITED STATES CONSTITUTION, NOT A STATE

25  CONSTITUTION. [16 AM J2D CONST L § 177]

26  [RE RAHRER (CC KAN) 43 F 556. 3. ANNO; 83 L. ED. 1195]

27

28  44) CIVIL LAWS ARE THE BODY OF LAW WHICH

Pg 13 of

1  EVERY PARTICULAR NATION, COMMONWEALTH, OR CITY
2  HAS ESTABLISHED PECULIARLY FOR ITSELF; MORE
3  PROPERLY CALLED MUNCIPLE LAW, TO DISTINGUISH
4  IT FROM THE LAW OF NATURE, AND FROM INTER-
5  NATIONAL LAW. LAWS CONCERNED WITH CIVIL
6  OR PRIVATE RIGHTS AND REMEDIES, AS CONTRASTED
7  WITH CRIMINAL LAWS.
8
9      45) CIVIL OFFENSE TERM USED TO DESCRIBE
10 VIOLATIONS OF STATUTES OR ORDINANCES MAKING THE
11 PARTICULAR ACT A PUBLIC NUISANCE, ALSO DESCRIBES
12 AN OFFENSE WHICH IS MALUM PROHIBITUM AND NOT
13 CONSIDERED REPREHENSIBLE.
14
15     46) MARITIME JURISDICTION OVER MARITIME
16 CAUSES IS GRANTED TO FEDERAL DISTRICT COURTS.
17 [28 U.S.C. $ 1333]. PROCEDURE IN MARITIME ACTIONS
18 IS GOVERNED BY THE FED. R. CIVIL. P. AND SUPP.
19
20     47) MARITIME LAW IS THAT WHICH THE CONGRESS
21 HAS ENACTED OR THE FEDERAL COURTS, SITTING IN
22 ADMIRALTY OR IN THE EXERCISE OF THEIR MARITIME
23 JURISDICTION, HAVE DECLARED AND WOULD APPLY.
24 THAT SYSTEM OF LAW WHICH PARTICULARLY RELATES
25 TO MARINE COMMERCE AND NAVIGATION, TO BUSINESS
26 TRANSACTED AT SEA OR RELATING TO NAVIGATION,
27 TO SHIPS AND SHIPPING, TO SEAMEN, TO THE
28 TRANSPORTATION OF PERSONS AND PROPERTY BY SEA,

Pg 14 of

1  AND TO MARINE AFFAIRS GENERALLY. THE LAW
2  RELATING TO HARBORS, SHIPS, AND SEAMEN, DIVIDED
3  INTO A VARIETY OF SUBJECT AREA'S, SUCH AS
4  THOSE CONCERNING HARBORS, PROPERTY OF SHIPS,
5  DUTIES AND RIGHTS OF MASTERS AND SEAMEN,
6  CONTRACTS OF AFFREIGHTMENT, AVERAGE, SALVAGE,
7  ETC. IT EXTENDS TO CIVIL MARINE TORTS AND
8  INJURIES, ILLEGAL DISPOSSESSION OR WITHHOLDING
9  OF POSSESSION FROM THE OWNERS OF SHIPS,
10  MUNICIPAL SEIZURES OF SHIPS, ETC.
11       SUBSTANTIVELY, IN THE UNITED STATES,
12  IT IS FEDERAL LAW, AND JURISDICTION TO
13  ADMINISTER IT IS VESTED IN THE FEDERAL COURTS,
14  THOUGH NOT TO THE ENTIRE EXCLUSION OF THE
15  COURTS OF THE STATES.
16
17       WHEREFORE, THE DEFENDANT HUMBLY
18  PRAYS THIS FEDERAL MARITIME CROWN COURT
19  ORDERS A COMPLETE AND FULL DISCHARGE
20  OF ANY CRIMINAL WRONG DOING ON ONE OR
21  ALL OF THE POINTS OF AUTHORITY HEREBY
22  IN THIS MOTION, AND CONTINUES TO PRAY
23  FOR DISMISSAL OF INFORMATION ON COUNTS
24  I AND II BASED UPON THE CONSTITUTIONAL
25  LAW OF THE UNITED STATES OF AMERICA.
26  DEFENDANT HAS NOT TO DATE COMMITTED ANY
27  CIVIL DISRUPTION OF INTERSTATE AND FOREIGN
28  COMMERCE OF MARITIME LAW PUNISHABLE

1   ONLY BY CIVIL ADJUDICATION AND LITIGATION
2   OF THE FEDERAL RULE CIVIL PROCEDURE GUIDELINES.
3   SO UPON ORDER OF DISMISSAL OF INFORMATION
4   ON COUNTS I AND II BY THE FEDERAL DISTRICT
5   COURT VENUE OF JUDGE JAMES O' BROWNING,
6   DEFENDANT SEEKS IMMEDIATE REMOVAL FROM
7   AN ILLEGAL INCARCERATION OF WRONGFUL
8   ADJUDICATION BY THIS COURT. DEFENDANT
9   ALSO SEEKS A JUST, PROPER AND CIVILALLY
10  EQUITABLE RESOLVE FOR THE UNJUST, IMPROPER,
11  WRONGFUL MISCARRIAGE OF JUSTICE THAT THE
12  COURTS DEEM APPROPRIATE, MAY GOD BLESS
13  AMERICA AND THE FOUNDING FATHERS FOR THIS
14  GREAT CONSTITUTION OF THE UNITED STATES
15  OF AMERICA.

RESPECTFULLY SUBMITTED,

DATED: 02/05/2020      _Michael J. Nissen_

MICHAEL J. NISSEN
(DEFENDANT)

OFFICIAL SEAL
Birdie Jones
NOTARY PUBLIC-State of New Mexico
My Commission Expires 10-22-2023

# EXHIBIT "A"

EXHIBIT "A", RELATES TO MOTION TO DISMISS
INFORMATION OF ILLEGAL CONVICTIONS ON
COUNTS I AND II FOR FEDERAL ABUSE OF
ARBITRARY POWER AND JUDICIAL MISCONDUCT.
ONE OR ALL, FORTY SEVEN POINTS OF AUTHORITY
ARE HEREIN THE JURY TRIAL TRANSCRIPTS
OF MINUTES. MICHAEL J. NISSEN, DEFENDANT
OR ATTORNEY, MR ROMERO, ASSISTANCE OF
COUNSEL, WILL PRESENT THESE POINTS OF
AUTHORITY TO THE COURTS UPON ORAL
ARGUMENTS, IN DEFENDANTS DEFENSE OF
THIS ILLEGAL ABUSE OF ARBITRARY POWER
AND JUDICIAL MISCONDUCT OF JUDGE
JAMES O' BROWNINGS VENUE.

1           IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4                 Plaintiff,

5         vs.            NO:  1:19-CR-00077-JB

6    MICHAEL NISSEN,

7                 Defendant.

8

9

10        Transcript of Trial Proceedings before The

11   Honorable James O. Browning, United States District

12   Judge, Albuquerque, Bernalillo County, New Mexico,

13   commencing on August 6, 2019.

14   For the Plaintiff:   Mr. Paul Mysliwiec
                          Mr. Alexander Uballez
15
     For the Defendant:   Mr. Kenneth Gleria
16                        Mr. Jake Mkhitarian

17

18

19

20
          Jennifer Bean, FAPR, RDR, CRR, RMR, CCR
21            Certified Realtime Reporter
              United States Court Reporter
22                  NM CCR #94
               333 Lomas, Northwest
23          Albuquerque, New Mexico 87102

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                               I N D E X

2       EXAMINATION OF JORDAN BURD

3           By Mr. Mysliwiec                        30
            By Mr. Mkhitarian                       46
4           By Mr. Mysliwiec                        56

5       EXAMINATION OF VICTORIA GURULE

6           By Mr. Mysliwiec                        71
            By Mr. Gleria                           84
7           By Mr. Mysliwiec                        94

8       EXAMINATION OF KENNETH P. LECESNE

9           By Mr. Uballez                          98
            By Mr. Mkhitarian                      118
10          By Mr. Uballez                         122

11      EXAMINATION OF STEVEN CARROLL

12          By Mr. Uballez                         123
            By Mr. Mkhitarian                      131
13
        EXAMINATION OF BARBARA BEUZEKOM
14
            By Mr. Mysliwiec                       134
15          By Mr. Mkhitarian                      143

16      EXAMINATION OF JUAN CORDOVA

17          By Mr. Uballez                         156
            By Mr. Gleria                          162
18          By Mr. Uballez                         168

19      EXAMINATION OF PETER UBBELOHDE

20          By Mr. Mysliwiec                       171

21      REPORTER'S CERTIFICATE                     181

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

3

```
 1            THE COURT:  All right.  Good morning,
 2   everyone.  I appreciate everybody being here on time
 3   and ready to go.  Let me call for trial United States
 4   of America versus Michael Nissen, criminal matter
 5   number 19-CR-00077.  If counsel will enter their --
 6   let me double-check and make sure that's the correct
 7   number.  It is.
 8            All right.  If people will enter their
 9   appearances.  For the Government.
10            MR. MYSLIWIEC:  Paul Mysliwiec for the
11   United States.  Good morning, Your Honor.
12            THE COURT:  Mr. Mysliwiec, good morning to
13   you.
14            MR. UBALLEZ:  Alex Uballez, also from the
15   United States.  Good morning, Your Honor.
16            THE COURT:  Mr. Uballez, good morning to
17   you.
18            And for the defendant.
19            MR. GLERIA:  Good morning.  Kenneth Gleria
20   and Jake Mkhitarian, and Mr. Nissen who is present
21   before the Court.
22            THE COURT:  All right.  Mr. Gleria,
23   Mr. Mkhitarian, and Mr. Nissen.  Good morning to you.
24            All right.  So Ms. Wright is handing out to
25   you the jury instructions that I worked over last
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

4

```
 1   night and today.  It's a rough set.  It's being typed
 2   up so you'll get a clean one, but I thought I'd go
 3   ahead and give you the one that I put together.  One
 4   thing that I pulled out -- and I probably need
 5   y'all's guidance on this, or thoughts.  It did not
 6   seem to me that we ought to put the 404(b)
 7   instruction in here.  The only thing I can think of
 8   is another crime or wrong would be the traffic
 9   citations, and it seemed to me those are so minor
10   that it would not be a good idea, then, if the judge
11   said, "You have heard evidence of Mr. Nissen's other
12   crimes."  I don't see how that helps you.  So I'd be
13   inclined to leave that out and just not have a
14   404(b).  I probably will be looking more to the
15   defendant more on anything else.  What's your
16   thoughts, Mr. Gleria?  It seemed to me it didn't help
17   you; it kind of hurt you.
18             MR. GLERIA:  I agree, especially after the
19   hearing.
20             THE COURT:  After the hearing.
21             MR. GLERIA:  Yes, I'm in agreement.
22             THE COURT:  All right.  Is that all right
23   with you, Mr. Mysliwiec?
24             MR. MYSLIWIEC:  Yes, Your Honor.  I defer
25   to what the defendant wants on that.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  It's kind of like a limiting

2   instruction, and you're entitled to it.  But if you

3   don't want it -- a lot of times defendants don't want

4   it and we don't give it.

5          MR. MYSLIWIEC:  Yeah, I wouldn't even use

6   the word "crime."  It's really an infraction or -- in

7   New York we have things that are in penal law but not

8   crimes.  I know New Mexico is a little different.

9   But I agree.  It draws unnecessary attention to a

10  thing that's mostly res gestae, mostly, "You heard

11  this thing happened and that's what started the

12  story."  But that doesn't need to be a jury

13  instruction.

14          (A discussion was held off the record.)

15          THE COURT:  I'm trying to think if there is

16  anything else.  I can't think of anything.  I think

17  Ms. Bevel handed you out something.  I think she's

18  given it to you and I don't have it, something to do

19  with the jury, a seating chart, or what --

20          MR. MYSLIWIEC:  Yes, we have seating

21  charts.

22          THE COURT:  So I guess they randomly pulled

23  the names, and you now have the seating chart.  How

24  many are on there?

25          MR. MYSLIWIEC:  The seating chart goes up

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   to 49.  So we had some people that didn't show up,

2   which I'm sure is fine, but it looks like 49 showed

3   up.

4           THE COURT:  That still seems to me like a

5   lot of people to work with in here.  What would y'all

6   think if I left 3 down in the jury room and just had

7   46 in here?  Because I just don't think we're going

8   to need all those people for such a short trial.  It

9   doesn't have -- what do you think?

10          MR. MYSLIWIEC:  Well, the defense gets ten

11  strikes, we get six, and we need 14 jurors.  So...

12          THE COURT:  You get 14 peremptory -- or 16

13  peremptory, we're going to seat 14, so that's 30.

14  You get two extra on the alternatives, so that gets

15  you up to 32.  And then 33 -- I had one peremptory

16  challenge last week whenever I did the trial.  So I

17  think you need at least 33, and I was going to seat

18  46 in here.  Leave three.  If something happens,

19  we'll bring them up.  But I bet you we can get it

20  done, and just having those extra people is just

21  going to slow things down.  What do you think?

22          MR. MYSLIWIEC:  So if we have to call on

23  the extra three, we would have to basically start

24  jury selection over, but it seems like we have a

25  buffer of 13 or so that could be struck for cause but

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    we would still have enough, which seems like a lot of

2    strikes for cause.

3            THE COURT:  It does seem like a lot of

4    strikes on a two-day trial, and this one doesn't have

5    sexual abuse or anything like that.

6            What do you think?  Leave three down there,

7    Mr. Gleria?

8            MR. GLERIA:  Yes, Your Honor.  You know,

9    I'll defer to your judgment about that.

10           THE COURT:  Let's leave 47, 48, 49.  I

11   think that's more than enough.  I might even could be

12   talked into leaving a few more down there.

13           All right.  I think that's about all I can

14   think of to talk to you about.  Mr. Mysliwiec?

15           MR. MYSLIWIEC:  I have just two things from

16   the preliminary jury instructions, Your Honor.

17           THE COURT:  Oh, yeah.

18           MR. MYSLIWIEC:  One is that on page 2,

19   Mr. Uballez goes by Alex, so there's no need to do

20   full names, but I would say the Government is

21   represented by Assistant United States Attorneys Paul

22   Mysliwiec and Alex Uballez.

23           THE COURT:  Okay.

24           MR. MYSLIWIEC:  Then on the next page.

25           THE COURT:  All right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8

1          MR. MYSLIWIEC:  On the next page for the

2    first element of 875(c), it doesn't need to be

3    restricted to police, because 875(c) doesn't restrict

4    the prohibition against interstate threats to any

5    specific profession.  One of our two, you know,

6    quote, victims is a police officer.  The other,

7    Barbara Beuzekom, is -- I guess I would call her a

8    civilian employee of the New Mexico State Police.

9    There are some statutes where the official status of

10   the victim of the threat is important, like section

11   115 of Title 18.  But 875(c) is not such a section.

12   I think we're overcomplicating our lives by putting

13   the word "police" in there.  I'd just say:

14   "Mr. Nissen knowingly transmitted a communication

15   containing a threat to injure the person of another,"

16   which I think is what the pattern jury instruction

17   says.

18          THE COURT:  We had talked about this

19   earlier and you had said put in police.

20          MR. MYSLIWIEC:  That was before I saw the

21   pattern instruction.  So 875(c) doesn't have a

22   pattern instruction in the original 2011 jury

23   instructions.  It was added, I think, in the 2018

24   version, and Mr. Mkhitarian was kind enough to email

25   that to me.  But when I made that suggestion I was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   foolish to do so, because I wasn't working off a 2018

 2   version.

 3             THE COURT:  "Injure the person of another'."

 4             Is that all right with you, Mr. Mkhitarian,

 5   Mr. Gleria?

 6             MR. MKHITARIAN:  Yes, Your Honor, I

 7   apologize.  While I reviewed -- and I agree that that

 8   is the language from the 2018 version.  And I don't

 9   think there is any instruction or anything that says,

10   "Insert person's name here."  So I would agree with

11   the United States' assessment that "injure the person

12   of another" would be the --

13             THE COURT:  Do you have any other changes,

14   Mr. Mysliwiec?

15             MR. MYSLIWIEC:  No, sir.  Those are my only

16   two notes.

17             THE COURT:  Mr. Mkhitarian, did you have

18   anything on the preliminary instruction?

19             MR. MKHITARIAN:  No, Your Honor.

20             THE COURT:  All right.  So I'm going to

21   give those to Ms. Desai and ask her to make those

22   changes, and she'll give you another one.  Why don't

23   we file those as well.  We probably ought to file the

24   other set.

25             You said you had another issue,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Mr. Mysliwiec?

 2              MR. MYSLIWIEC:  That was it, sir.

 3    Mr. Uballez' first name being Alex, and then that

 4    first element of 875(c).  That's all I have.

 5              THE COURT:  I've got a brother-in-law named

 6    Max, so I must have had Max on my mind.

 7              MR. MYSLIWIEC:  Max is one of his names.

 8              Oh, the next thing is, we're going to

 9    strike Task Force Officer Wesley Cox from our witness

10    list, which will make him immune to the rule of

11    sequestration.  He'll be able to stay in the pews and

12    go back and grab witnesses and help coordinate.

13              As I mentioned before, Peter Ubbelohde of

14    the FBI is our case agent, so he's immune to the rule

15    for that reason and sits at the table with us.

16              Task Force Officer Cox is just going to be

17    out in the audience like a regular person.  But we're

18    taking him off our witness list so that he will be

19    able to stay in the courtroom, hear other witnesses'

20    testimony, fetch other witnesses, fetch exhibits,

21    things like that.

22              THE COURT:  You don't have any need to call

23    Officer Cox, do you, Mr. Gleria?

24              MR. GLERIA:  No, Your Honor.

25              THE COURT:  All right.  So he can remain in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the courtroom.

2         I may have asked this at the pretrial

3    hearing.  Did anybody have any issues with each

4    other's voir dire?  Mr. Mysliwiec, with the

5    defendant?

6         MR. MYSLIWIEC:  So his very last question

7    puts the jury in the position of the defendant, which

8    one is not supposed to do.  I mean, as I recall the

9    rule, the defense is not supposed to ask the jury to

10    put themselves in the position of the defendant.  The

11    Government is not supposed to ask the jury to put

12    themselves in the position of the victim.  But that's

13    really the only thing I saw that I wasn't 100%

14    comfortable with.  I don't expect it will be a big

15    scandal, but that's all I noticed.

16         THE COURT:  Well, I hear that asked all the

17    time.  It's kind of borderline.  But I'll let

18    defendant ask it if they want.  It may pick up

19    something that we need to discuss, so you just never

20    know.  They may look at him and don't like his

21    haircut or not wearing a jacket.  You just never

22    know.  So I'll kind of give the defendant the leeway

23    to ask that question if they want it.

24         Is that all you have on their voir dire,

25    Mr. Mysliwiec?

*ask what?*
*'reference*
*this*
*please.*



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      MR. MYSLIWIEC:  Yes, thank you, Your Honor.

2      THE COURT:  Mr. Gleria, Mr. Mkhitarian, do

3   you have any issues with the Government's --

4      MR. GLERIA:  No, I don't, Your Honor.

5      THE COURT:  Well, do y'all have any issues?

6   Did you have any other issues, Mr. Mysliwiec, we need

7   to address before we bring the jury in?

8      MR. MYSLIWIEC:  It doesn't need to be now.

9   I did want to bring in some more specifics about the

10  testimony that I would be able to adduce about the

11  revolver if I were able to ask about that.

12  Specifically, when I was in preparation with Officer

13  Cash, he is the one who interviewed Mr. Nissen, and

14  he has a relationship with Mr. Nissen.  They've

15  talked many times, and he asked Mr. Nissen

16  essentially, "Do you still carry that revolver?"

17  Mr. Nissen said something to the effect of, "Yes, I

18  carry it regularly or I always carry it."

19      And Mr. Nissen -- that was the interview in

20  which Mr. Nissen specified that it was a Smith and

21  Wesson and specified that he carried it to protect

22  himself from rogue state cops.  And from Mr. Cash's

23  conversations with Mr. Nissen, Mr. Cash believes that

24  by the phrase "rogue state cops" Mr. Nissen means

25  police officers who, in Mr. Nissen's view, violate



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

13

*Defendant Does not agree with this Hearsay conspiracy*

1    Mr. Nissen's rights.  And Mr. Cash's view is that

2    Mr. Nissen would agree with that definition.

3         The United States continues to take the

4    position that when it goes to Mr. Nissen's subjective

5    intent to convey a true threat in that third phone

6    call on November 2, 2018, when he said, "If a police

7    officer violates my rights again, I'm going to pull

8    out my revolver," that it's very relevant that he

9    possessed a revolver to which he was likely referring

10   when he said that.  And like I said before, I don't

11   think the ownership of a revolver, especially in New

12   Mexico, is itself prejudicial.  It's not illegal.

13   We're not claiming that it's illegal.  We talked

14   about the 404(b) instruction being not particularly

15   appropriate in this circumstance.  We don't claim

16   it's wrongful to possess the revolver.  We just think

17   it's important that the jury know that at the moment

18   he threatened to pull out his revolver, he did indeed

19   possess one.

20        So if that's a request to reconsider,

21   however the Court wants to take that, that's the last

22   thing I have.

23        THE COURT:  Okay.  Any thoughts on that,

24   Mr. Gleria, Mr. Mkhitarian?

25        MR. GLERIA:  I agree with the previous

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

14

1    rulings of the Court regarding the parameters of the

2    questioning, and I object to that proposed line of

3    questioning as extrinsic evidence that is not

4    relevant.  And that's my position.

5            THE COURT:  Well, I'll give it some

6    thought, but I'm inclined -- I worked on this over

7    the weekend.  I still need to finish up the opinion,

8    just a few more pages I need to edit, and I just ran

9    out of time and started working on jury instructions,

10   just in case this case moves quickly, which it might.

11   So I wanted to get you a set of those, so I kind of

12   stopped working on the opinion and went back to the

13   other.  But I'll take a look at it.

14           But right at the moment, let's keep the

15   actual existence of the revolver out.  It's going to

16   come in to some degree in the telephone calls, but

17   keep out the other evidence, and I'll continue to

18   think about it.

19           All right.  Anything else, Mr. Mysliwiec --

20           MR. MYSLIWIEC:  No, sir.

21           THE COURT:  -- before we bring the jury in.

22   Mr. Mkhitarian?  Mr. Gleria?

23           MR. MKHITARIAN:  There is only one issue to

24   one of the jurors.  I recognize one of the names as

25   somebody whose son or brother I might have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   represented, Ms. Linda Arbuckle.  So I just noted

 2   that on my juror questionnaire.  So that's the only

 3   thing I have.

 4              THE COURT:  Any thoughts on that,

 5   Mr. Mysliwiec?

 6              MR. MYSLIWIEC:  Part of the Court's regular

 7   questioning is:  "Do you recognize any of these

 8   folks?"  If it is Mr. Mkhitarian, maybe she

 9   recognizes him.  And I think Mr. Mkhitarian is a fine

10   attorney.  So if what she says is, "Yes, he

11   represented me and he's a fine attorney," that's not

12   scandalous or untrue.  So I think we just see how it

13   lies as we go through the regular process.

14              THE COURT:  Is that all right with you,

15   Mr. Mkhitarian?

16              MR. MKHITARIAN:  That's all right.  Just

17   full disclosure to the Court.

18              THE COURT:  I appreciate it.

19              Ms. Bevel, I think we agreed -- why don't

20   we just leave those bottom three.

21              THE CLERK:  I told them, and Judge, I just

22   got a message from jury that they finished

23   orientation and the jurors are on a quick bathroom

24   break, and they're ready to bring them up.

25              THE COURT:  Anything else, Mr. Mkhitarian,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Mr. Gleria?

2          MR. GLERIA:  No, Your Honor.

3          THE COURT:  All right.  They're going to

4   bring the jurors up.  They're on their bathroom

5   break.  If y'all want to go in there and use the jury

6   room, there are a couple of toilets in there, and

7   then we'll get them up here and we'll get ready.

8          So we'll go in recess for a few minutes

9   here while we're getting the jury up here.

10          (The Court stood in recess.)

11          (Voir dire was conducted and the jury was

12   selected.)

13          THE COURT:  The lady that's got to breast

14   pump for her baby made the jury.  So would it be all

15   right with y'all -- I think the Government is taking

16   one of the witness rooms out front.  Could I have the

17   other one?  Do you need it, Mr. Gleria?

18          MR. GLERIA:  The witness room?

19          THE COURT:  Yeah, the witness room out

20   front, the two conference rooms.

21          MR. GLERIA:  No.

22          THE COURT:  I'm going to mark one of those

23   as, "Private.  Do not enter."  So if you all do not

24   enter that one, that's where she'll do it.  She's

25   okay right at the moment, but --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       MR. MYSLIWIEC:  All right.  So the one

2   marked "Private" we're not going to use.  Okay.  The

3   agents know.

4       THE COURT:  And then I've got one juror

5   that's looking for eyeglasses, so we're waiting for

6   her to come up.  She's down in the jury assembly room

7   looking for her glasses.  But as soon as I get her up

8   there, we'll get started.

9       Are there any issues we need to discuss

10  before we bring the jury in?

11      MR. MYSLIWIEC:  So I was looking at the

12  final instructions.

13      THE COURT:  Yes.

14      MR. MYSLIWIEC:  And I just have the same

15  request that we change "police" back to the pattern.

16      THE COURT:  Ms. Desai, would you change --

17  on the elements, take out "police" and put whatever I

18  put into the preliminary instruction.

19      MR. MYSLIWIEC:  And that's all I could

20  notice.

21      THE COURT:  I'm going to put in -- I didn't

22  do it last night.  I'm going to put in an instruction

23  on knowingly, since that's one of the elements.  So

24  I'll put in the first sentence of the pattern

25  instruction.  The rest of it deals with the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

18

1    deliberate ignorance.  So I'll take all that out.  I

2    don't think this case has anything to do with

3    deliberate ignorance.  So I will just have the first

4    sentence of that pattern instruction.  I will insert

5    it behind the elements charge and before the "on or

6    about" charge.

7              So we've got all the jurors, all 14 of

8    them?

9              THE CLERK:  Yes, Your Honor.

10             THE COURT:  Anything else we need to

11   discuss?  Mr. Mysliwiec?

12             MR. MYSLIWIEC:  No, sir.

13             THE COURT:  How about you, Mr. Gleria?

14             MR. GLERIA:  No, Your Honor.

15             THE COURT:  It's up to y'all.  Do y'all

16   want to stand for the jury, or just go back to

17   regular protocol, given that we don't have any

18   jurors --

19             MR. GLERIA:  Leave it to you, Judge.

20             MR. MYSLIWIEC:  It's y'all's call as long

21   as Mr. Nissen doesn't mind.

22             THE COURT:  Well, he can stand too, I

23   think.  He's okay.

24             MR. GLERIA:  The chains might jangle.

25             THE COURT:  Well, I think they got it



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    pretty tight.  Mr. Nissen, do you mind standing and

2    let's listen to you?

3              THE DEFENDANT:  I think we should just stay

4    the way it's been.

5              THE COURT:  If it's all right with y'all,

6    I'll just say, "Stand," for the audience and for my

7    clerks, and y'all don't stand.

8              MR. MYSLIWIEC:  Yes, sir.  Correct.

9              THE COURT:  Is that okay?  Is that all

10   right with you, Mr. Nissen, Mr. Gleria?

11             THE DEFENDANT:  Yes.

12             MR. GLERIA:  Yes, sir.

13             THE CLERK:  They're lining up, Judge, and

14   I've already passed out the note pads.

15             THE COURT:  Okay.  Oh, does anybody want to

16   invoke the rule?

17             MR. GLERIA:  Yes, I'll invoke the rule.

18             THE COURT:  So I'll instruct the jury on

19   the rule when they come in.  I may ask on the record,

20   "Is it invoked" --

21             MR. GLERIA:  Yes, sir.

22             THE COURT:  -- and you can say it is.  Then

23   I'll give them the rule.

24             So on instruction number 6, the fifth line,

25   it had comma after "witnesses."  What it has in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

20

1    tenth instruction is that says "including the

2    defendant."  So it assumes that the defendant is

3    testifying.  Since it doesn't seem that's the way

4    it's going, I took that clause out.  But the comma

5    didn't come out, so I'm going to take the comma out

6    unless anybody has any objection to it.

7              MR. GLERIA:  No, Your Honor.

8              MR. MYSLIWIEC:  No, sir, thank you.

9              (The jury entered the courtroom.)

10             THE COURT:  All right.  Does either side

11   wish to have the rule invoked in this case?

12   Mr. Mysliwiec?  Mr. Gleria.

13             MR. GLERIA:  Yes, Your Honor.

14             THE COURT:  All right.  It is a rule of

15   law -- the rule has been invoked in this case, and

16   it's a rule of law that witnesses may be excluded

17   from the courtroom so that they cannot hear the

18   testimony of other witnesses.  This rule does not

19   apply to parties or expert witnesses.  The rule of

20   exclusion has been invoked in this case, and all

21   witnesses to whom the rule applies will be required

22   to remain outside of the courtroom until they are

23   called to testify.  Witnesses excluded from the

24   courtroom should not discuss with other witnesses

25   their testimony before they or the other witnesses

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

21

1   testify, but they may discuss their testimony with

2   the lawyers.

3            All right, Mr. Uballez, do you have an

4   opening statement for the Government?

5            MR. UBALLEZ:  Yes, Your Honor.

6            THE COURT:  Mr. Uballez.

7            MR. UBALLEZ:  May it please the Court.

8            THE COURT:  Mr. Uballez.

9            MR. UBALLEZ:  Counsel, ladies and

10  gentlemen, good afternoon.  Thanks for hanging with

11  us.  We will present hopefully a short case over the

12  course of today and tomorrow that's going to involve

13  the incidents -- two incidents that occurred or a

14  series of incidents that occurred in November of

15  2018, last year.

16           They began November 2 of 2018 where New

17  Mexico State Police Officer Jason Burd was doing his

18  job.  At that time, what his job involved was driving

19  on the freeways, checking for traffic infractions.

20  He was westbound on I-40 in the Moriarty area when he

21  came across Mr. Nissen's vehicle.

22           Now, running the vehicle through his

23  system, he found that the vehicle itself had not been

24  registered.  It had actually expired in May of 2018.

25  So as part of his job, he pulls him over and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

22

1    approaches.

2          As he does in every other traffic stop, he

3    approaches him, the driver.  He asks for proof of a

4    driver's license, insurance, registration.

5    Mr. Nissen hands him an ID, New Mexico ID, and does

6    not give him a driver's license.  Officer Burd

7    notices a shotgun in the vehicle and takes it for his

8    safety, takes the ID, goes back to his vehicle, runs

9    it.  He calls dispatch, which means he calls in the

10   name of Mr. Nissen and identifiers.  Dispatch says,

11   "No, no, he's got a driver's license.  You have an

12   ID, but he's got a valid driver's license," but

13   confirms other things that he pulled over Mr. Nissen

14   for.

15         So he goes back.  Instead of arresting or

16   towing Mr. Nissen's vehicle, he issues him two

17   citations for lack of current registration and lack

18   of proof of insurance and returns the shotgun to him,

19   and he goes on his way.

20         Very soon after that interaction, which was

21   about 5:45 in the afternoon, New Mexico State

22   dispatch receives a call.  That call, as you will

23   hear, goes through -- as well as the calls that

24   follow go through a switch, which you'll hear some

25   information about.  The switch is TTAS 005.  It's in



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Plano, Texas.  This is what satisfies the final

2   elements of the charge that you'll be evaluating,

3   which is a cellphone call was made and headed to a

4   switch outside of the state.

5        This call was made by Mr. Nissen.  Victoria

6   Gurule at New Mexico State Police takes that call.

7   She, in fact, is already familiar with Mr. Nissen

8   because she was the dispatcher who was on the other

9   end of the line when Officer Burd called in that he

10  was at a traffic stop.  She had already run

11  Mr. Nissen's information.

12       When Mr. Nissen gets on the line in his

13  first call, he educates her on some aspects of the

14  law.  Ms. Gurule, as you'll hear, says that -- knows

15  which officer Mr. Nissen is talking about, says,

16  "I'll refer your information over to the officer,"

17  and that answer does not satisfy Mr. Nissen.  He

18  hangs up, only to call back shortly later.  In about

19  30 minutes he calls Ms. Gurule again and she answers.

20       (Audio played.)

21       MR. UBALLEZ:  My apologies.  This is the

22  call I was going to play.

23       (Audio played.)

24       MR. UBALLEZ:  Following this call,

25  Ms. Gurule refers Mr. Nissen to her sergeant, Steve

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Carroll, who speaks with Mr. Nissen and attempts to

2    defuse the situation and is unsuccessful.

3         Mr. Nissen then calls back minutes later,

4    in the first call that I played for you, yelling at

5    Victoria not to threaten him.

6         On November 26 of 2018, nearly a month

7    later, still simmering, Mr. Nissen again calls New

8    Mexico State Police dispatch, this time talking to

9    Barbara Beuzekom.  After educating Ms. Beuzekom on

10   the law and speaking with her about speaking to her

11   superiors, he issues two statements to her.  "You

12   need to mind your own fucking business," he states,

13   "and I'm going to come and shoot you in your fucking

14   head."

15        Barbara transfers Mr. Nissen to Julian

16   Cordova, a state police officer, who records this

17   conversation with Mr. Nissen, during which time

18   Mr. Nissen continues to express his displeasure.

19        Those are the facts of the case.  And as

20   the Judge told you, your job here is to apply the law

21   to those facts.  We will not ask you to convict

22   Mr. Nissen for profane or offensive language, which

23   is obviously present.  We will ask you to convict

24   Mr. Nissen for the threats in between those lines,

25   for stating that he will take his revolver out and



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

25

*a pig
an animal
motherfucker
is not a
person or
name.*

1    put that, as he said, "motherfucker, drop dead."

2         This is a simple case from which you can

3    redact every one of those offensive statements and

4    still find that he's guilty.  Thank you.

5         THE COURT:  Thank you, Mr. Uballez.

6         Mr. Gleria, do you have an opening

7    statement for Mr. Nissen?

8         MR. GLERIA:  Yes, Your Honor.

9         THE COURT:  Mr. Gleria.

10        MR. GLERIA:  Thank you, Your Honor.  May I

11   please move the podium?  It's too close to the Elmo.

12        THE COURT:  You may.

13        MR. GLERIA:  Ladies and gentlemen, you

14   heard Judge Browning speak about our democratic

15   system, and we have the right in our country of free

16   speech, and that right is enshrined in the First

17   Amendment of the United States Constitution.  And

18   just as Mr. Uballez stated, it can be profane; it can

19   be offensive.  It doesn't have to be correct.  It can

20   be hate speech.  It's protected.  Today you as the

21   jurors have the power to determine the facts of this

22   case and to determine if Mr. Nissen crossed the line.

23        The Government is focusing on the words it

24   claims are the threats, threats that -- statements

25   that they claim show that these statements by

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

26

1   Mr. Nissen are serious and, therefore, intended by

2   him as threats.  However, the evidence is the

3   entirety of Mr. Nissen's recorded statements.

4   Mr. Nissen called police dispatch to educate police

5   regarding the traffic stop and for having stopped

6   him, in his words, for no good reason; and also to

7   complain about his feelings that his constitutional

8   rights were violated.

9           Mr. Nissen's statements are profane and

10  Mr. Nissen's statements include figurative language.

11  When he says "pigs," "You've got some of the

12  stupidest fucking pigs on the road," that is

13  figurative language.  Now, it's obviously offensive,

14  but it's figurative and, therefore, not literal, and

15  clearly exaggerated.  And that defines exaggeration,

16  because he is overtly using exaggerated language to

17  express his unhappiness.  Mr. Nissen is ranting about

18  his unhappiness for being stopped on the highway, for

19  his perception, whether he's right or wrong, that his

20  constitutional rights were violated for having been

21  issued citations for no insurance and no

22  registration.

23          The evidence is significant, also for what

24  it does not show.  It does not show any act in

25  furtherance of alleged threats.  It's important for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   me to emphasize that the statements are figurative,

2   "pigs" and therefore exaggerated and not literal.

3   Not literal.

4         This occurred over the telephone.

5   Mr. Nissen is somewhere on the telephone, driving or

6   stationary.  Who knows?  But he's nowhere near a

7   police dispatch.

8         He didn't make further statements such as,

9   "I'll be right there to put a bullet dead on that

10   pig's head."  He didn't say that.  And it's clearly

11   ranting because it occurred at the end of his

12   statements to dispatch.  The statements, at least the

13   first one that you heard, is conditional on a future

14   stop and violation of his rights by law enforcement,

15   something that did not occur.

16         The police are sensitive to security, as

17   they should be, and I understand that all such

18   statements should be looked into and taken seriously.

19   But when you look at the context of those statements,

20   these are words, words without any accompanying act

21   in furtherance of what they claim are threats.

22   Mr. Nissen is ranting.  He has a right to be upset.

23   He has a right to call dispatch to complain.  He

24   has -- you know, it's not very nice to use such

25   profanity and to raise his voice.  But these are

*I have a right to petition the government in a redress of grievances*

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

28

1    words unaccompanied by any act and, therefore, not a

2    crime.  He has the right to say it.

3              Mr. Uballez also touched upon the November

4    26 alleged threat directly to a New Mexico State

5    civilian employee, which you heard about.  What's

6    striking about that particular allegation is that

7    you're going to have to hear from the witness.  And

8    Mr. Nissen's statement is not in evidence.  It's not

9    in evidence like the other statements.  The other

10   statements, you'll be able to listen to them here in

11   court.  The other statement is not in evidence.

12   Mr. Nissen never threatened Victoria Gurule when he

13   called the initial two or three times.  He was

14   complaining, and he said that if he was stopped and

15   his rights were violated again, he would take some

16   kind of action.  It's unthinkable that a call by a

17   person to police dispatch wouldn't be recorded.  And

18   it's not recorded because it never happened.  Every

19   call to a police dispatch is recorded.  It didn't

20   happen.  Mr. Nissen did not threaten that civilian

21   police employee.  His statements to Victoria Gurule

22   were never a threat to her.  He was complaining about

23   his rights, and now the Government is saying in the

24   second instance, when the call is not even in

25   evidence for you to hear, suddenly now he's shifting

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


Dean & Associates, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  from complaining about police to directly threatening

2  the civilian police employee.  It didn't happen.  The

3  only evidence that you have is her testimony about

4  it.  You don't have the dispatch call yourself to

5  hear, which is unthinkable, because every single call

6  is recorded.  **Every single call**.

7          How is it that the call is not recorded?

8  And now this lady can say -- this testimony is going

9  to be that he directly threatened her.  It didn't

10 happen.  These are words.  Nobody wants to be -- you

11 know, nobody wants to be sweared at; nobody wants to

12 be yelled at.  But his speech is protected.  They

13 were not threats.  There was not a single act in

14 furtherance of these activities.  **They were**

15 **conditioned on a future stop and violation of rights**

16 **by law enforcement which did not occur.**

17         And they were also separated by time and

18 space.  Mr. Nissen was on the road.  The dispatch is

19 in a different place.  **The police were not even**

20 **named**.  It's not a threat.  It's words.  Thank you.

21         THE COURT:  Thank you, Mr. Gleria.

22         MR. GLERIA:  You're welcome.

23         THE COURT:  All right.  Does the Government

24 have its first witness or evidence, Mr. Mysliwiec?

25         MR. MYSLIWIEC:  We do, Your Honor.  The

*(handwritten margin note:)* True threat / Definition / clearly / says / "contingency"

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

30

1    United States would like to call Officer Burd of the

2    New Mexico State Police.

3            THE COURT:  Mr. Burd, if you'll come up and

4    stand next to the witness box on my right, your left,

5    before you're seated, my courtroom deputy, Ms. Bevel,

6    will swear you in.

7            MR. MYSLIWIEC:  And you can leave your

8    computer on the table.

9                    JORDAN BURD,

10      after having been first duly sworn under oath,

11      was questioned, and testified as follows:

12            THE CLERK:  Please be seated.

13            THE COURT:  Mr. Burd, Mr. Mysliwiec.

14                DIRECT EXAMINATION

15   BY MR. MYSLIWIEC:

16      Q.   Officer, could you please introduce

17   yourself to the jury by telling them your full name,

18   occupation, and current assignment?

19      A.   I'm Officer Jordan Burd with the New Mexico

20   State Police.  I've been with the New Mexico State

21   Police for about five and a half years now, and I'm

22   currently assigned to the Albuquerque District 5

23   area, as well as the subdistrict Edgewood area.

24      Q.   What is the Albuquerque District 5 area?

25      A.   It covers the areas of Los Lunas,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

31

1   Albuquerque, Cuba, as well as the East Mountains,

2   Edgewood area.

3        Q.   Is that the assignment that you had back on

4   November 2, 2018?

5        A.   It is, sir.

6        Q.   And does that cover Moriarty?

7        A.   It does, sir.

8        Q.   And is Moriarty east of Albuquerque?

9        A.   It is, sir.

10       Q.   Did you have any other jobs before your job

11   as a patrol officer with the New Mexico State Police?

12       A.   I did not, sir.

13       Q.   So do you remember whether you were on duty

14   on November 2 of 2018?

15       A.   I was, sir.

16       Q.   What was your shift?

17       A.   I was on night shift, which I believe at

18   the time was 4:00 p.m. to 1:00 a.m. in the morning.

19       Q.   And were you on foot or in a patrol car?

20       A.   I was in a fully marked patrol unit.

21       Q.   And were you, yourself, in uniform?

22       A.   Full uniform displaying my New Mexico State

23   Police badge of office.

24       Q.   And do you remember whether you effected

25   any traffic stops during that evening shift on




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    November 2, 2018?

2         A.   I did, sir.

3         Q.   And just one, or more than one?

4         A.   Several.

5         Q.   Were any of those stops involving Michael

6    Nissen?

7         A.   It was, sir.

8         Q.   At the time that you originally made the

9    traffic stop, did you know that the driver of the

10   vehicle was Michael Nissen?

11        A.   Not at all, sir.

12        Q.   What caused you to initiate that traffic

13   stop of the person you later learned was Michael

14   Nissen?

15        A.   On that day, sir, I ran a vehicle

16   registration through my LEADS computer system, and it

17   notified me that that vehicle had expired

18   registration as well as no active insurance.

19        Q.   And it's normal for you to run vehicle

20   information that you see as you're patrolling?

21        A.   Standard patrol operation, sir.

22        Q.   And as far as you know, that's not against

23   any rule?

24        A.   Not at all, sir.

25        Q.   And when you ran this information of the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

33

1    truck that later turned out to be Mr. Nissen's, you

2    were traveling westbound on Interstate 40 towards

3    Albuquerque?

4        A.    Yes, sir.   Just, I believe, outside the

5    city limits of Moriarty westbound.

6        Q.    So definitely within the state of New

7    Mexico?

8        A.    Yes, sir.

9        Q.    When you learned that -- your computer told

10   you that he had no current registration or insurance,

11   what did you do next?

12       A.    The next thing I did is, I engaged my

13   emergency equipment, called out the traffic stop

14   through my dispatch, who then repeated the vehicle

15   registration, coming back with expired registration

16   and no active insurance.

17       Q.    So when you typed in the information to

18   check in your computer system, that wasn't the time

19   that you asked dispatch to double-check for you?

20       A.    Can you rephrase that?   I'm sorry.

21       Q.    So what you've described is that you

22   originally ran the information that you saw with your

23   eyes, and your computer told you that the vehicle had

24   expired registration and no insurance.   When you

25   called the stop in to dispatch and you say they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

34

1    confirmed, is that like double-checking?

2         A.   It is, because dispatch runs it on their

3    end as well, sir.

4         Q.   And you do that so you make sure you don't

5    pull over people for no reason?

6         A.   It double-confirms that they saw the same

7    thing I saw.

8         Q.   And did the truck that you later learned

9    was driven by Mr. Nissen pull over in a timely

10   fashion?

11        A.   It did, sir.

12        Q.   When you approach a vehicle on the highway,

13   when you're doing this traffic stop, do you approach

14   on the driver's side in the middle of the traffic, or

15   on the passenger side on the shoulder?

16        A.   Always on the passenger side, sir, for

17   officer safety.

18        Q.   And is that what you did here?

19        A.   Yes, sir.

20        Q.   And while you were walking up to the truck

21   that you later realized Michael Nissen was driving,

22   did you see anything that caught your attention?

23        A.   The first thing I did, sir, is, I

24   introduced myself as Officer Burd of the New Mexico

25   State Police.  I notified the driver the reason for



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

*[handwritten margin notes: I told him it was true so he wouldn't shoot me. Felon from cruiser shows the truth, lack of Gleria's being evidence to offset that truthful statement.]*

*[handwritten margin notes: Shotgun? what does it have to do with anything]*

the stop today, and I immediately observed, I

believe, a green or a camouflage-in-color shotgun in

his passenger side seat.

MR. MYSLIWIEC:  Your Honor, may I move

about the well?

THE COURT:  You may.

BY MR. MYSLIWIEC:

Q.    I'm going to show you a shotgun that is in

evidence.

MR. MYSLIWIEC:  Is it 8, Alex?

Q.    And it's zip-tied into this box for safety.

But can you tell me whether this shotgun here

resembles what you saw in Michael Nissen's truck?

THE COURT:  I'm not sure that we've moved

exhibits, but is there any objection to this one?

MR. GLERIA:  No, Your Honor.

THE COURT:  All right.  So what is the

number on it?

THE CLERK:  Nine.

MR. MYSLIWIEC:  Nine.  And I thought we had

a talk about the preadmission of exhibits not

objected to.

THE COURT:  Well, is that all right, the

ones that are on the exhibit list, document 60, any

objection to any of those?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

36

1     MR. GLERIA:  No, Your Honor.

2     THE COURT:  All right.  So Government's

3  Exhibits 1, 2, 3, 4, 5, 6, 7, 8 and 9 will be

4  admitted into evidence.

5     MR. MYSLIWIEC:  And demonstrative exhibits

6  1-A, 2-A, 3-A, and 4-A, the transcripts?

7     THE COURT:  Any objection to those?

8     MR. GLERIA:  No, Your Honor.

9     THE COURT:  All right.  Government's

10 demonstrative exhibits -- are they going to be

11 admitted into evidence or just used as demonstrative

12 exhibits as we have with the jury instruction?

13    MR. MYSLIWIEC:  We put them on the JERS

14 disc, but they're demonstrative.

15    THE COURT:  Do you care if -- they can go

16 either way.  We can make them exhibits for the jury,

17 or we can just make the audio the exhibit and the

18 transcripts can be demonstratives.

19    MR. GLERIA:  I prefer --

20    THE COURT:  You prefer the latter?

21    MR. MYSLIWIEC:  That's what the instruction

22 says.

23    THE COURT:  Yeah.  Are you okay with that?

24    MR. MYSLIWIEC:  Yes, sir.

25    THE COURT:  So we'll admit -- well, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    transcripts will just be demonstratives, then.

2          MR. MYSLIWIEC:  Yes, sir.

3          THE COURT:  All right.  So I don't need to

4    admit those.

5          MR. MYSLIWIEC:  Yes, sir.

6    BY MR. MYSLIWIEC:

7     Q.   So I might have lost my place.  But Officer

8    Burd, can you confirm that this shotgun I'm holding

9    right now, Government's Exhibit 9, as far as you can

10   tell is the same shotgun that you saw on the

11   passenger seat of Mr. Nissen's truck when you

12   encountered him?

13    A.   It is, sir.

14    Q.   And you can confirm this is not a water

15   balloon?

16    A.   I can confirm that, sir.

17    Q.   So after you introduced yourself to

18   Mr. Nissen and told him the reason for the stop, did

19   he respond at all to you?

20    A.   He did, sir.

21    Q.   And how did he respond to you?

22    A.   He responded by basically saying that I had

23   no legal authority to be stopping his vehicle; that

24   he identified himself as, I believe the word he used,

25   as a traveler.  He stated at this moment in time he


*S. Ct. ruling of Sept. # 2015 "I want [illegible] for money"*

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    was traveling, and again, I did not have the legal

2    authority nor the means to apply traffic laws to him,

3    that they did not apply to him because he was a

4    traveler, and everything basically I was doing was

5    illegal.

6        Q.   Before he said those words to you, have you

7    had any training on the existence of folks who

8    believe those things?

9        A.   We've had prior training as well as prior

10   experiences in my law enforcement career.  Typically,

11   I would say anyone that might possibly identify

12   themselves as a traveler may apply themselves to a

13   specific group of people who don't -- believe that

14   our specific state or county laws don't apply, and

15   believe that -- I believe he kept quoting the

16   Constitution.

17       Q.   And do you have training in how to make

18   sure that encounters with folks like that don't get

19   more hectic than is necessary?

20       A.   Yes, sir.  Basically to just stick to the

21   standard patrol operations, not to delve into any

22   arguments of the law, but rather, just stay

23   straightforward and enforce the legal state law.

24       Q.   So after he revealed those beliefs to you,

25   what did you do next?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.    I again requested again for his license as

2    well as vehicle information.   Again, it was several

3    minutes of riff-raff about my legal authority to be

4    stopping -- to have the legal authority to stop his

5    vehicle.   Eventually he did provide me with his New

6    Mexico identification cards   He didn't provide any

7    other vehicle information.

At this point I found for my safety I was

going to remove that shotgun out of his vehicle.   I

did.   I reached in and removed the shotgun from the

vehicle.   I believe I told him, "This will be

returned to you at the conclusion of this stop, but

for my safety it's not going to be in your presence."

14    Q.    And did he respond to that in any way?

15    A.    He did.   He began to raise his voice.   His

16    face, I believe, got a little redder.   He was stating

17    I didn't have the legal authority to de-arm him, I

18    believe was the word he used, and it was -- my

19    feelings were, he was pretty agitated with that

20    situation.

21    Q.    What did you do after temporarily taking

22    custody of that firearm and informing him of why you

23    did it?

24    A.    At this point, that's when I went back to

25    my patrol unit.   I secured the shotgun there

*[handwritten left margin]* Film of Police cruiser never mentioned asked requested by defendant of K. S Lewis to provide for Evidence.

2nd and 4th amendment Constitutional violations.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

40

1    momentarily while I ran his driver's license -- or

2    his identification information.  His driver's license

3    came back valid in the state of New Mexico, so he

4    did --

5        Q.   When you say the driver's license came back

6    valid, is that from your typing into your own

7    computer, or did you call that in to dispatch and

8    dispatch told you?

9        A.   I typed that into my computer, sir.

10       Q.   And were you communicating with dispatch

11   during this process?

12       A.   I was.

13       Q.   Do you know who at dispatch you were

14   communicating with during this?

15       A.   No, I don't, off the top of my head, sir.

16       Q.   Do you know who Victoria Gurule is?

17       A.   I'm familiar with her.

18       Q.   Do you know if she was on duty at the time?

19       A.   I believe she was.

20       Q.   After you ran your computer checks, were

21   you able to confirm whether his vehicle had insurance

22   or not?

23       A.   Sorry, can you rephrase?

24       Q.   Did you confirm whether his vehicle had

25   insurance or not?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.    It did not have insurance, sir.

2    Q.    Not just proof of insurance, but actually

3  whether it had insurance.

4    A.    Both, sir.  He didn't provide me with any

5  vehicle information during our encounter, and

6  confirmed, when I went back through my computer and

7  dispatch, the vehicle was not insured.

8    Q.    And what about the registration status; do

9  you remember?

10    A.    It had been expired for, I believe, over

11  six months.

12    Q.    Now, at that time, knowing those things and

13  confirming them through the process you've described

14  to us, did you have the authority to arrest him and

15  tow his vehicle?

16    A.    I would have had the authority to arrest

17  him if he refused to sign my citations.  I did have

18  the authority to tow his vehicle, though.

19    Q.    So you could have made him walk home from

20  I-40?

21    A.    I could have.

22    Q.    Did you?

23    A.    I did not.

24    Q.    What did you do instead?

25    A.    At this point I issued him two traffic

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    citations, one for expired registration, as well as

2    no proof of vehicle insurance; our financial

3    responsibility.  I walked back to the vehicle.  Is

4    that part of the question?

5         Q.   Sure.

6         A.   At this point, I walked back to the

7    vehicle.  I advised Mr. Nissen that I was going to be

8    issuing him two traffic citations for the reasons I

9    stopped him.  I did advise him that I did have the

10   authority to tow his vehicle, which I was not going

11   to do. I advised him if he did refuse again to sign

12   my traffic citations, he would be under arrest.

13        Q.   When you say "refuse again," was he

14   originally enthusiastic to sign the citations?

15        A.   No.

16        Q.   How did he convey to you that he was not

17   happy or excited to sign those citations?  What did

18   he say or do?

19        A.   Basically saying everything I was doing was

20   illegal; that I had no legal authority to be stopping

21   him.  He did keep elevating his voice.  I believe at

22   one point he pulled out his phone and tried to show

23   me a YouTube video.  I can't even testify to what it

24   was, because I refused to watch it.

25        Q.   The first time that he told you he didn't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    want to sign the citations and you had no authority

2    to be doing any of this, did you at that time have,

3    as far as you understand, the legal authority to

4    arrest him and tow his vehicle?

5           A.   I could have.

6           Q.   Did you do that, or did you keep trying?

7           A.   I kept trying, sir.

8           Q.   And why did you keep trying not to escalate

9    your enforcement and arrest him and tow his vehicle?

10          A.   Basically, sir, for -- well, for my officer

11   safety was one.  I wanted to try and de-escalate the

12   situation as much as I could.  I understand he was

13   very agitated.  Based off my training and experience,

14   he was very agitated at the stop.  I felt that I was

15   trying to give him a fair chance to comply with our

16   state laws and sign the citations.  And I don't tow

17   every single vehicle that is not registered or

18   insured, so I felt like I was trying to give him the

19   fair opportunity to comply.

20          Q.   Did your diplomacy eventually succeed?

21          A.   It did, sir.

22          Q.   So he signed the citation?

23          A.   He signed the citations.  I believe he said

24   he was going to educate me later on the law and

25   everything I was doing, but he did agree to sign the

*Handwritten marginal notes:* New Mexico's constitution is that of federal constitution supercedes atl laws.  1st amendt violation.  2015 Sept 13, S. CT. Ruling



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

44

1    citations. At that point I placed the shotgun, I

2    believe, in the backseat of his vehicle where it was

3    no longer close within reach to him.

4        Q.   So you didn't keep the shotgun; you

5    returned it to him?

6        A.   I did, sir.

7        Q.   And then as far as you were aware, was the

8    traffic stop essentially over?

9        A.   At that point, sir, I believe that the

10   traffic stop had concluded.

11       Q.   Now, I want to ask you a little bit about

12   the process.  You write the citation, which then

13   Mr. Nissen signed as you described.  Do you turn that

14   in to someone when you get back to the office?

15       A.   It's a computer automated system.  So as

16   soon as the citation is signed, I scan in the

17   signature so it shows to the Court that it was signed

18   by the driver.  And then an administrative secretary

19   actually sends them out to the different court

20   agencies.

21       Q.   And one of the things that gets sent out

22   from the court agency is a court date where someone

23   would appear as a result of your having written that

24   ticket and the defendant having signed it?

25       A.   They sign knowing that this is the date and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    time that you should be appearing.

2         Q.    Okay.   So on the face of the ticket at the

3    time, Mr. Nissen, if he read it, would have seen what

4    his court date was expected to be?

5         A.    Yes, sir.

6         Q.    Was that in the Torrance County Magistrate

7    Court?

8         A.    I believe at the time I had cited him into

9    Bernalillo County Metro Court.   And later on, as the

10   events had progressed, I had spoken with the district

11   attorney who advised that the traffic citation should

12   be issued into Torrance, because that's where the

13   stop was.

14        Q.    So you complied with that instruction?

15        A.    Yes, sir.

16        Q.    As far as you are aware, did you comply

17   with all laws that exist and all instructions that

18   you got in how you conducted this traffic stop with

19   Mr. Nissen?

20        A.    To my best knowledge, yes, sir.

21        Q.    As far as you are aware, were you trying to

22   violate any of Mr. Nissen's rights?

23        A.    Not at all, sir.

24        Q.    At the end of your traffic stop with him,

25   was he free to go, and did he indeed drive away?

*Double jeopardy 2 sets of tickets with real court dates. Defendant in messages of evidence clearly asked for this issue to be cleared so I could resolve this issue in court.*

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   He did, sir.

2            MR. MYSLIWIEC:  I'll pass the witness, Your

3    Honor.

4            THE COURT:  Thank you, Mr. Mysliwiec.

5            Mr. Mkhitarian, do you have

6    cross-examination of Mr. Burd?

7            MR. MKHITARIAN:  Thank you, Your Honor.

8            THE COURT:  Mr. Mkhitarian.

9            MR. MKHITARIAN:  Thank you, ladies and

10   gentlemen of the jury.  I am Mr. Jack Mkhitarian.  I

11   apologize, I didn't get a chance to speak earlier

12   today, so I'll take the time now to do that.

13                    CROSS-EXAMINATION

14   BY MR. MKHITARIAN:

15       Q.   Good afternoon.  Is it Officer Burd?

16       A.   It's officer.

17       Q.   Officer Burd, did I hear it correctly that

18   you have five and a half years' experience in law

19   enforcement prior to coming here today?

20       A.   Yes, sir.  I started the law enforcement --

21   New Mexico State Police Law Enforcement Academy in

22   January of 2013.

23       Q.   And did you serve all that time --

24       A.   2014.

25       Q.   -- that whole time as an officer, has that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    all been for State Police?

2         A.   Yes, sir.

3         Q.   So for a total of five and a half years?

4         A.   Yes, sir.

5         Q.   Would you agree that you've arrested, you

6    know, more than 100 people?

7         A.   Yes, sir.

8         Q.   Hundreds?

9         A.   A fair assessment, I would say.

10        Q.   And would you say you've probably pulled

11   over thousands of people?

12        A.   Yes, sir.

13        Q.   Now, in your experience in the five and a

14   half years, have you arrested people for putting you

15   in threatening situations?

16        A.   Can you define that, sir?

17        Q.   Are you familiar with the term felony or

18   high-risk stop?

19        A.   Yes, sir.

20        Q.   Could you explain to the jury what that is?

21        A.   A felony stop, as far as our lingo is

22   concerned, would be a stop where immediately my

23   handgun or duty weapon would be drawn, knowing that

24   the person has already actively committed a felony or

25   possibly have the -- we had the reasonable suspicion

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

48

1    to believe they had already committed a felony.  An

2    example of that would be a stolen vehicle that is

3    ran.  You would immediately stop that vehicle with

4    your gun drawn, knowing that the vehicle is returning

5    stolen.

6         Q.   How about if a vehicle you light up to pull

7    over starts driving erratically and thereby putting

8    the motoring public and yourself in danger?  Is that

9    also grounds for a felony or high-risk stop?

10        A.   It is.

11        Q.   And did that happen in this situation?

12             MR. MYSLIWIEC:  Objection, relevance.

13             THE COURT:  Overruled.

14   BY MR. MKHITARIAN:

15        Q.   Did that happen in this situation?

16        A.   It didn't.

17        Q.   So in a felony stop, would it be fair to

18   say that you're threatened by the driver's conduct

19   either sometime before he got into the car or while

20   he's in the car, thereby justifying you to pull your

21   weapon upon pulling him over?

22        A.   Are you trying to define as me with prior

23   knowledge of his threatening level?  I don't get what

24   you're saying.

25        Q.   What I'm saying, if you have reason to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    conduct a felony stop, part of a felony stop is that

2    that person's conduct was threatening either before

3    or while he was in the vehicle; is that correct?

4        A.   Correct.

5        Q.   But in this case, you were not threatened

6    when pulling over Mr. Nissen, so there was no reason

7    to do a felony stop?

8        A.   I did not felony stop him.

9        Q.   Okay.  So now moving on to other people you

10   had pulled over.  You had mentioned you had pulled

11   over hundreds.  After a traffic citation or a DUI,

12   has anyone ever gotten aggressive with you to where

13   you had to arrest them and take them in?

14       A.   Yes, sir.

15       Q.   That didn't happen in this case, did it?

16       A.   No, sir.

17       Q.   Now, going back to the reason you pulled

18   Mr. Nissen over, there are a lot of things you

19   actually didn't see as well; is that correct?

20       A.   What do you mean by that, sir?

21       Q.   You didn't see Mr. Nissen speeding, did

22   you?

23       A.   Are you talking about moving violations?

24       Q.   Correct.

25       A.   I didn't observe a moving violation.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   He was driving within his lane; correct?

2    A.   He was.

3    Q.   He was obeying all traffic signals;

4    correct?

5    A.   He was on the interstate so there wasn't

6    any.

7    Q.   When he pulled over, did he pull over

8    immediately?

9    A.   I believe so.

10   Q.   That would be something you'd be looking

11   for as well; correct?  If he didn't pull over

12   immediately, that could be a sign that something is

13   wrong?

14   A.   Possibly.

15   Q.   But in this case he followed your commands,

16   pulled over in a safe location?

17   A.   As safe as it could be.

18   Q.   In an appropriate location?

19   A.   Yes.

20   Q.   He didn't stop in the middle of the

21   freeway?

22   A.   No.

23   Q.   He didn't slam his brakes?

24   A.   No.

25   Q.   Now, upon making contact with Mr. Nissen,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    you said that he immediately began to talk about

2    travelers and his rights and things like that.  Did I

3    hear that correctly?

4         A.   Yes, sir.

5         Q.   And if I'm not mistaken, the United States

6    Attorney told you that -- or asked you if you got

7    training about people like this; is that correct?

8         A.   We have.

9         Q.   And is that because -- did you get training

10   because it's so common to run into people with these

11   types of political beliefs?

12        A.   It's not common, sir.

13        Q.   Common enough to get training on it;

14   correct?

15        A.   Exactly.

16        Q.   So it's something that your department is

17   aware of and actively tries to educate you on; is

18   that correct?

19        A.   That's correct.

20        Q.   So you knew going into this that

21   immediately upon talking to him, your training kicked

22   in and said, "Oh, wait.  Our department told us there

23   are people like this on the road."

24        A.   I don't know if I'd use those words, but

25   yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


1    Q.   Okay.  So you were not surprised and you're

2    actually trained to deal with some of the comments

3    that Mr. Nissen was making.

4    A.   You can't be trained on driver's

5    statements, sir.

6    Q.   But you were trained about the traveler

7    sovereign citizen questioning that Mr. Mysliwiec told

8    you about; is that correct?

9    A.   We were trained on sovereign citizen

10   beliefs that certain individuals identify themselves

11   as travelers.  But we can't specifically train for

12   each individual.

13   Q.   And I'm not saying you're specifically

14   trained to pull over Mr. Nissen.  But you and your

15   department are aware of these types of political

16   beliefs.

17   A.   Yes, sir.

18   Q.   Okay.  Now you got training to do this, and

19   so it's not unusual for you to pull people like this

20   over.  And as a matter of fact, Mr. Nissen tried to

21   educate you by explaining to you what his thoughts

22   were on -- I'm going to use his words -- his beliefs

23   or his politics; isn't that correct?

24   A.   Well, I'd have to recant what you said

25   before when you said it's not unusual to stop.  It



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

53

1    was unusual.

2        Q.   Okay.  That's fine.  But you received

3    training on these types of stops?

4        A.   Yes.

5        Q.   So throughout the course of your encounter

6    of Mr. Nissen, he was trying to show you articles,

7    trying to show you YouTube videos, trying to explain

8    to you why he thought you had no authority; is that

9    correct?  Did I hear that right?

10       A.   Yes, sir.

11       Q.   So would you characterize him as trying to

12   teach you his political beliefs?  Is that a way to

13   characterize what he was trying to communicate to

14   you?

15       A.   I think he was trying to basically get out

16   of the traffic stop, is the way I saw it.

17       Q.   By explaining to you how he felt about your

18   authority in the terms of his political beliefs?

19       A.   Yeah, my authority to be -- to have

20   authority to make a traffic stop on him.

21       Q.   So, now, throughout the traffic stop,

22   Mr. Nissen never made a motion for a gun, did he?

23       A.   He never motioned for it.

24       Q.   Did he make any threatening lunges at you

25   to make you feel like you were going to be battered



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

54

1  in any way?

2      A.   He was in his driver's seat, so no.

3      Q.   Did he ever threaten you that he was going

4  to shoot you or hurt you if you gave him a ticket?

5      A.   No.

6      Q.   After completing your business with him,

7  did Mr. Nissen drive off in an aggressive manner?

8      A.   I can't recall his manner.

9      Q.   Did you identify anything that was unusual

10  after completing the traffic stop?

11      A.   No.

12      Q.   Did he chase you and threaten you or

13  tailgate you or flip you off or anything like that?

14      A.   I waited until he left before I left the

15  area.

16      Q.   So is it safe to say that at the conclusion

17  of the traffic stop, you did not fear Mr. Nissen

18  battering you or harming you in any way?

19      A.   No.

20      Q.   Did you have any concerns, concern enough

21  to notify dispatch that "I just got through with this

22  traffic stop; I want to alert other officers that

23  there is this threatening person on the road"?  Did

24  you do that afterwards?

25      A.   What do you mean?  Did I contact my

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    dispatch?

 2         Q.   Correct.

 3         A.   They were notified that I was out with a

 4    combative subject.  They were.

 5         Q.   Did you feel like the stop was threatening

 6    enough to let other officers know that Mr. Nissen

 7    could be a danger?

 8         A.   Yes, because two sheriff's deputies did

 9    arrive on my stop.

10         Q.   Okay.  But after the stop was done, you had

11    no reason to believe that Mr. Nissen was going to

12    harm you or any other officer?

13         A.   No, not and come back.  I didn't believe he

14    was going to come back to my stop.

15         Q.   At the time after you let him go?

16         A.   Yeah.

17         Q.   So you were completely safe with Mr. Nissen

18    leaving the traffic stop after you concluded the

19    business?

20         A.   Yes.

21              MR. MKHITARIAN:  May I have a moment, Your

22    Honor?

23              THE COURT:  You may.

24    BY MR. MKHITARIAN:

25         Q.   And one of the reasons why you felt safe is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    because you actually put the gun back in Mr. Nissen's

2    car; is that correct?

3          A.    No.  I didn't feel safe giving it back to

4    him, but it was his legal property I couldn't deprive

5    him of unless it was for officer safety while we were

6    conducting our traffic stop.

7          Q.    You didn't feel threatened enough by

8    Mr. Nissen to keep his firearm?

9          A.    I didn't have the legal authority to not

10   return to it him if he wasn't under arrest.

11         Q.    So you had returned the firearm and you had

12   let Mr. Nissen go, and at that point your business

13   had concluded?

14         A.    Yes, sir.

15              MR. MKHITARIAN:  I'll pass the witness,

16   Your Honor.

17              THE COURT:  Thank you, Mr. Mkhitarian.

18              Mr. Mysliwiec, do you have redirect of

19   Mr. Burd?

20              MR. MYSLIWIEC:  Brief.

21              THE COURT:  Mr. Mysliwiec.

22                    REDIRECT EXAMINATION

23   BY MR. MYSLIWIEC:

24         Q.    Mr. Burd, we've been talking about

25   Mr. Nissen.  Just for the jury's benefit, could you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    tell us if you see Mr. Nissen in the courtroom today?

2        A.    I do, sir.

3        Q.    And could you describe where he's sitting

4    and maybe an article of clothing he's wearing so the

5    jury can know who you mean?

6        A.    He's wearing a blue, long-sleeved shirt and

7    sitting at the very end of the defense's table.

8            MR. MYSLIWIEC:  Your Honor, can the record

9    reflect that the witness has identified the

10   defendant?

11           THE COURT:  The record will so reflect.

12   BY MR. MYSLIWIEC:

13       Q.    So Mr. Mkhitarian asked you if you were

14   trained on sovereign citizens because they are so

15   common, and you said no.  Do you know why the New

16   Mexico State Police trains patrol officers on the

17   existence of sovereign citizens?

18       A.    Definitely, because it's for officer safety

19   purposes, because this specific group does not

20   identify local or state law enforcement as having the

21   authority to enforce laws on this specific group.  A

22   lot of times we've been trained that they see county

23   sheriffs as the only ones that can enforce laws,

24   because their chief is an elected official.

25       Q.    As far as you are aware, is the belief that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

58

1    the New Mexico State Police is invalid or somehow

2    lacks authority to conduct traffic stops -- is that a

3    political belief?

4         A.    I don't know how I'd define that, honestly.

5         Q.    Were you trained that it's a political

6    belief?

7         A.    It could be.

8         Q.    Mr. Mkhitarian asked you if at the time of

9    the traffic stop you felt threatened.  And

10   essentially, you said not enough to arrest him over

11   it; is that correct?

12        A.    Yes, sir.

13        Q.    Did you later learn that Mr. Nissen

14   threatened to kill you?

15        A.    I did.

16        Q.    And how did you later learn that?

17        A.    From the dispatcher that received a phone

18   call from him approximately a half-hour after the

19   traffic stop was conducted.

20        Q.    And did you ever receive any guidance on

21   what to do if you ever encountered Mr. Nissen again,

22   after having learned about that threat?

23        A.    What do you mean by that, sir?  I'm sorry.

24        Q.    Did you ever get an all-officer bulletin or

25   a briefing before another shift or some kind of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    guidance from the NMSP leadership about Michael

2    Nissen after he called in the threat to kill you?

3         A.    That came about later, yeah.

4         Q.    What guidance did you get?

5         A.    I believe there was a photo of him placed

6    in our office.  I believe also for our administrative

7    staff who worked during the day shift and let people

8    in and out of the building, I believe they were -- I

9    believe our administrative staff was told to avoid

10   the individual and let law enforcement deal with him

11   based off of threats, prior threats that had been

12   made.

13        Q.    And since you're law enforcement, did you

14   get any instructions on what to do if you were on

15   patrol and saw this truck again with its lack of

16   insurance?

17        A.    That he should definitely be in a

18   heightened security phase, that this individual had

19   made threats towards law enforcement.

20             MR. GLERIA:  Objection, Your Honor.  May we

21   approach?

22             THE COURT:  You may.

23             (The following proceedings were held at the

24   bench.)

25             MR. GLERIA:  So I don't want to have to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    move for a mistrial.  But now he's eliciting

2    testimony about prior threats, something that there

3    is no evidence about.

4            MR. MYSLIWIEC:  That's not happening.

5            THE COURT:  Why don't we do this?  Why

6    don't you kind of clean it up that there are no prior

7    threats.

8            MR. MYSLIWIEC:  Well, that would be false.

9    First of all, I don't know whose witness he is.

10           MR. GLERIA:  Lower your voice, please.

11           THE COURT:  Second of all, Mr. Mkhitarian

12   opened this line of questioning.

13           MR. GLERIA:  Lower your voice, please.

14           MR. MYSLIWIEC:  I need to be heard on the

15   record, Mr. Gleria.  Mr. Mkhitarian asked on cross

16   whether at the time of this traffic stop Officer Burd

17   felt threatened.  So I'm asking about what Officer

18   Burd learned after this traffic stop was over.  I'm

19   not talking about any threats before November 2nd.

20   I'm asking Officer Burd only about the instructions

21   that he got after Mr. Nissen called in to Victoria

22   Gurule the specific threat to kill Officer Burd,

23   which is the subject of Count 1.

24           THE COURT:  Well, I'm open to suggestions

25   to make sure the jury doesn't have any thoughts about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1     any prior threats.  Is there a way that we can

2     eliminate that issue for the jury?

3              MR. MYSLIWIEC:  I haven't brought the issue

4     up.  It hasn't been the subject of any questions or

5     the subject of any answer.

6              MR. GLERIA:  He testified about prior

7     threats and then he did it again.  And that's not the

8     subject matter of the trial.

9              MR. MYSLIWIEC:  Mr.  Gleria's recitation of

10    the facts is inaccurate.

11             MR. GLERIA:  Let me speak.

12             THE COURT:  Hold on a second.  Let me just

13    look at the transcript and see what we've got here.

14    The question is:  "Did you later learn that

15    Mr. Nissen threatened to kill you?"

16             And he said, "I did."

17             "And how did you later learn that?"

18             It would seem to me that the jury would

19    just think it's the threat we've heard in opening

20    statements.

21             MR. GLERIA:  See, I don't think so, Judge.

22             THE COURT:  What would you think?  It

23    didn't click with me, because I don't know of any

24    prior threats.

25             MR. GLERIA:  The police officer testified
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

62

1    about prior threats.

2               MR. MYSLIWIEC:  It didn't happen.

3               MR. GLERIA:  The naked language is that

4    they have a prior experience with Mr. Nissen.  He's

5    previously threatened them.

6               MR. MYSLIWIEC:  That's contrary to the

7    testimony.

8               MR. GLERIA:  He's looking it up right now.

9               THE COURT:  I don't see it.

10              MR. GLERIA:  It's just toward the end when

11   I objected to --

12              THE COURT:  Let me go down here.  All it

13   says -- where does it say it?  I'm not sure the jury,

14   given what they've heard -- it didn't to me, because

15   I don't know of any prior threats before this.  But

16   I'm open to anything to sort of eliminate that.

17   But --

18              MR. MYSLIWIEC:  Any attention Mr. Gleria

19   wants to draw to prior threats, he can.  But I

20   didn't --

21              MR. GLERIA:  Can you find it there, Judge?

22   Because the officer twice stated "prior threats."

23              THE COURT:  Well, it says right there -- it

24   says, "I believe our administrative staff was told to

25   avoid the individual and let law enforcement deal

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    with him based off of threats, prior threats that had

2    been made."

3              MR. GLERIA:  I would just ask that those

4    statements be stricken, that testimony be stricken,

5    that the jury be instructed to disregard that and the

6    previous statements, in that it's irrelevant to the

7    case.

8              MR. MYSLIWIEC:  That's improper.  First of

9    all, the defense opened the door to --

10             THE COURT:  Hold on.  Tell me what you

11   would want me to say, Mr. Gleria, because I fear

12   that --

13             MR. GLERIA:  I fear repeating it is going

14   to make it worse.

15             THE COURT:  Well, the reason I think it is,

16   because I'm not sure, just like I know this case as

17   well or better than the jury, and it didn't ring any

18   bells with me.  I just thought he was referencing the

19   phone calls that had been made.  That's when the

20   bulletins and everything went out, is after he called

21   in.  Tell me what you want me to do.

22             MR. GLERIA:  Have Mr. Mysliwiec clean it

23   up.

24             THE COURT:  How does he clean it up without

25   making it worse?  I'm not sure there is a problem

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

64

1    right now, but if you want it cleaned up, we'll work

2    on it.

3              MR. MKHITARIAN:  May I speak, Your Honor?

4              THE COURT:  Yeah.

5              MR. MKHITARIAN:  The leading question, no

6    prior threats were made prior to pulling him over.

7              MR. MYSLIWIEC:  That's false, though.  I'm

8    not going to elicit false testimony.  I have not

9    asked about it.  I'm happy not to ask about it.  But

10   I'm not going to elicit false testimony.

11             THE COURT:  Well, I don't know of any prior

12   threats the jury doesn't know of.

13             MR. GLERIA:  I've got a concern because

14   it's right there.

15             THE COURT:  Tell me what you want to do.

16             MR. MKHITARIAN:  Not make more mention of

17   it.

18             MR. GLERIA:  Instruct the jury to disregard

19   those.

20             MR. MKHITARIAN:  We don't need to draw more

21   attention to it.  Just leave it.

22             MR. GLERIA:  Yeah.  Well, if it happens

23   again, you can count on me to object.

24             MR. MYSLIWIEC:  So here's my objection.

25             MR. GLERIA:  He lost --



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. MYSLIWIEC:  Are we doing the

2    one-attorney-one-witness rule?

3          THE COURT:  I want to get this right.  I'll

4    take what help I can get on this one.  Probably we

5    need to do it.  But let's get it right there.  Is

6    there anything you can think of that you need?  It

7    seems to me there is a 90 percent, 100 percent chance

8    that the jury doesn't have a clue what we're talking

9    about.  Because I heard the words and nothing clicked

10   for me and I know the case.  But I'm open to

11   suggestions.  I'll probably do --

12         MR. GLERIA:  Recess, move on.

13         MR. MKHITARIAN:  Move on with the warning

14   not to talk about prior threats.

15         THE COURT:  Why don't you come up, Officer.

16         (The witness approached the bench.)

17         THE COURT:  In your testimony do not

18   mention any prior threats.  Do not use the word

19   "prior."  So don't.

20         MR. MYSLIWIEC:  Anything that happened

21   before your traffic stop on November 2, pretend that

22   doesn't exist.

23         THE COURT:  Mr. Mysliwiec is not going to

24   ask you about any questions about prior threats.

25   Mr. Mkhitarian is not going to ask you any questions

*Before Nov 2, 2018 Defendant never had anything to Do with this so called mischief*

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    about prior threats.

2            THE WITNESS:  Yes.

3            MR. MYSLIWIEC:  So you weren't asked about

4    anything that happened prior to November 2, and you

5    didn't say anything about anything that happened

6    prior to November 2.  But in addition to continuing

7    not to say anything about anything that happened

8    prior to November 2, also don't use the word "prior."

9            THE WITNESS:  So don't use the word

10   "prior."  Yes, Your Honor.

11           THE COURT:  Why don't you lead him through

12   this so he can maybe answer some yes/no questions.

13           MR. MYSLIWIEC:  I'm almost done.

14           MR. GLERIA:  And then when it's the

15   appropriate time I'd like to take a break so I can --

16   I don't know when that is -- just to use the

17   restroom.

18           MR. MYSLIWIEC:  I have three witnesses.

19   We've been going for an hour since we came back from

20   lunch.  I have three witnesses I absolutely need to

21   get through today.  I don't know how much time this

22   took about a thing that never happened, but I do need

23   to move at least three.

24           THE COURT:  Okay.  Do you want to take a

25   break after this witness?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        MR. GLERIA:  That would be great.

2        THE COURT:  Okay.

3        (The following proceedings were held in

4   open court.)

5        THE COURT:  All right, Mr. Mysliwiec.

6   BY MR. MYSLIWIEC:

7        Q.   The last thing I would like you to do,

8   Officer Burd, is, I'm going to play a phone call for

9   you and I want to ask you if you are able to identify

10  the speaker in the phone call.  This is in evidence

11  as Exhibit 2.  I'm not going to show you the

12  transcript, because I don't want you to see who I

13  think the speaker might have been.  Tell me if you

14  know.

15        (Audio played.)

16        Q.   Do you know who that was?

17        A.   That's Mr. Michael Nissen's voice, sir.

18        Q.   Can you tell the jury how you recognize

19  that voice?

20        A.   I recognize that voice because I was on a

21  traffic stop with him for approximately 10 minutes.

22        Q.   During that traffic stop, as far as you

23  know, were you derelict of your duty?

24        A.   I was not, sir.

25        Q.   As far as you know, are you a neo-Nazi?





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

68

1    A.    I am not, sir.

2    Q.    As far as you are aware, are you a traitor?

3    A.    I am not a traitor, sir.

4          MR. MYSLIWIEC:  That's all I have, Your

5    Honor.

6          THE COURT:  Thank you, Mr. Mysliwiec.

7          Anything further, Mr. Mkhitarian?

8          MR. MKHITARIAN:  No, Your Honor.

9          THE COURT:  All right, Mr. Burd, you may

10   step down.

11         Is there any reason Mr. Burd cannot be

12   excused from the proceedings?  Mr. Mysliwiec?

13         MR. MYSLIWIEC:  No, Your Honor.

14         MR. MKHITARIAN:  No, Your Honor.

15         THE COURT:  All right.  You're excused from

16   the proceedings.  Thank you for your testimony.

17         THE WITNESS:  Thank you, Your Honor.

18         THE COURT:  All right.  Let's be in recess

19   for about 15 minutes, and we'll come in and continue

20   the Government's case.

21         (The jury left the courtroom.)

22         THE COURT:  All right.  Anything we need to

23   discuss before we take our break, Mr. Mysliwiec?

24         MR. MYSLIWIEC:  No, thank you, Your Honor.

25         THE COURT:  Mr. Gleria?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



**DEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1          MR. GLERIA:  No, Your Honor.

 2          THE COURT:  All right.  We'll be in recess

 3     for about 15 minutes.

 4          (The Court stood in recess.)

 5          THE COURT:  On the jury instruction on your

 6     expert, is it going to be this FBI agent?

 7          MR. MYSLIWIEC:  The only guy who could

 8     conceivably be an expert for us is a T-Mobile guy.

 9     He's just kind of explaining how phone calls work.  I

10     don't know how expert it is.  But he personally knows

11     because of his interaction with the phone company and

12     how phone networks have evolved over the last decade

13     or so.

14          THE COURT:  Well, the jury instruction

15     says -- you didn't give a name of the person who

16     expressed opinions concerning modern telephone

17     transmission technology.  Is that the T-Mobile

18     person?

19          MR. MYSLIWIEC:  Yes, sir.

20          THE COURT:  So what do you want,

21     Mr. Gleria, Mr. Mkhitarian?  Do you want the expert

22     witness instruction given and put the name of the

23     T-Mobile person in, or do you want to just pull it

24     and not talk about it?

25          MR. GLERIA:  Just pull it.
```

*[Handwritten marginal note:]* Criton? for the F.B.I.? NMSP? WHO IN GODS NAME IS THIS?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  I don't use the word "expert,"
 2   so I'm not going to be putting that in, but...
 3            MR. GLERIA:  I'd just rather pull it and
 4   not talk about it.
 5            THE COURT:  Are you okay with that,
 6   Mr. Mysliwiec?
 7            MR. MYSLIWIEC:  He's essentially a fact
 8   witness.  I don't think we need the instruction.
 9            THE COURT:  All right.  Just pull it.
10            Anything else before we bring the jury in?
11   Anything else I can do for you?
12            MR. MYSLIWIEC:  No, sir.  We're all here,
13   we're all seated.  We're all ready.
14            THE COURT:  Mr. Gleria?
15            MR. GLERIA:  Yes.
16            (The jury entered the courtroom.)
17            THE COURT:  All right.  Mr. Mysliwiec, does
18   the Government have its next witness or evidence?
19            MR. MYSLIWIEC:  The United States would
20   call Victoria Gurule to the witness stand.
21            THE COURT:  All right.  Ms. Gurule, if
22   you'll come up and stand next to the witness box on
23   my right, your left, before you're seated, my
24   courtroom deputy, Ms. Wright, will swear you in.
25
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                    VICTORIA GURULE,

2         after having been first duly sworn under oath,

3         was questioned, and testified as follows:

4              THE CLERK:  Go ahead and be seated.

5              THE COURT:  All right, Ms. Gurule,

6    Mr. Mysliwiec.

7                    DIRECT EXAMINATION

8    BY MR. MYSLIWIEC:

9         Q.   Ms. Gurule, now that you're sworn in, could

10   you please introduce yourself to the jury by telling

11   them your full name, occupation, and current

12   assignment?

13        A.   My name is Victoria Gurule.  I work for the

14   New Mexico State Police as a 911 dispatcher.

15        Q.   How long have you been a 911 dispatcher?

16        A.   A little over 13 years.

17        Q.   Has all that time been with the New Mexico

18   State Police?

19        A.   No, sir.  Only two years with the State

20   Police.  Previously was with the Bernalillo County

21   Sheriff's Department.

22        Q.   And were you working on November 2, 2018,

23   last year?

24        A.   Yes.

25        Q.   And what shift were you working; do you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

 

**Dean & Associates**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1   remember?

2         A.   Swing shift.

3         Q.   And what hours are swing shift?

4         A.   2:00 to 10:00.

5         Q.   So you were working around 5:45 p.m. local

6   time?

7         A.   Yes.

8         Q.   Did you supervise or participate in any

9   traffic stops that happened around that time?

10        A.   Yes.

11        Q.   Do you remember if Officer Burd was

12  conducting one of the traffic stops that you

13  participated in?

14        A.   Yes, sir.

15        Q.   And did you know from supervising Officer

16  Burd on that traffic stop that he had a traffic

17  encounter with a person named Michael Nissen?

18        A.   Yes.

19        Q.   Did you ever receive any phone calls from

20  Michael Nissen later that day after the traffic stop

21  was over?

22        A.   Yes.  Not long after Officer Burd cleared

23  his traffic stop, I got a phone call from him.

24        Q.   And how do you know that it's Michael

25  Nissen that called you when you say you got a phone

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    call from him?

2        A.    Because I was on the radio that took

3    Officer Burd's traffic stop, so I knew who he was out

4    with.

5        Q.    And did you recognize Mr. Nissen's voice

6    when you heard it?

7        A.    Yes.

8        Q.    And we're going to play it in just a

9    moment, but just for now, would you describe to the

10   jury how that first phone call sounded to you?

11       A.    He was extremely agitated, very upset that

12   he was pulled over, just very aggressive.  A lot of

13   yelling.

14       Q.    Do you have a process as a dispatcher that

15   you're supposed to follow when you get what you would

16   describe as a complaint phone call?

17       A.    Yes.

18       Q.    What's that process?

19       A.    If it's an initial complaint, we have a

20   standardized form that we fill out that goes straight

21   up to the captain.

22       Q.    And did you receive a second phone call

23   from Mr. Nissen that same day?

24       A.    Yes, sir.

25       Q.    Would you describe that second phone call

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

74

1   as a mere complaint phone call?

2       A.   It escalated.  It wasn't just a normal

3   complaint for me.

4       Q.   In your view, based on your training and

5   experience, what did that second phone call escalate

6   to?

7       A.   It escalated into him threatening to hurt

8   any law enforcement officer that he came in contact

9   with.

10      Q.   And what is the difference -- as you are

11  trained to take these calls and to do whatever you do

12  next, what's the difference between a complaint phone

13  call and a threat phone call?

14      A.   That second phone call told me that -- I

15  mean, basically any law enforcement officer that

16  comes in contact with him is at risk.  Clear disdain

17  for law enforcement.  He was clearly upset,

18  threatening to hurt them.  So that wasn't a typical

19  phone call for me.

20      Q.   Do you treat threat phone calls the same

21  way, where you fill out a form and put it in the

22  captain's inbox?

23      A.   No, sir.

24      Q.   What do you do when it's a threat phone

25  call?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    You notify the on-duty sergeant.

 2        Q.    And who was the on-duty sergeant that

 3   night, if you remember?

 4        A.    Sergeant Steven Carroll.

 5        Q.    Are you experienced in working with

 6   Sergeant Carroll?

 7        A.    Yes.

 8        Q.    Do you know -- and only answer if you

 9   know -- what he does after you send him such a

10   notification?

11        A.    No, that's --

12        Q.    If you don't know, just say you don't know.

13   I'm never going to ask you to guess.

14        A.    I don't know.

15        Q.    Are you familiar with Sergeant Carroll's

16   demeanor when he deals with members of the public?

17        A.    Yes.

18        Q.    If I told you that I thought that Sergeant

     Carroll threatened me, would you be skeptical or

     would you believe that he probably did?

          A.    I would be skeptical.

          Q.    Why would you be skeptical if a person told

     that you Sergeant Carroll threatened them?

24        A.    I don't know him to operate that way.  I've

25   worked on a shift with him for a while now, and it's
```

Why this statement is two faur le skeptical but defendent says it and I'm guilty? she doesn't know more cus she states about Carroll



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

76

1    just not his demeanor from what I've experienced.

2        Q.   I'm going to play the first of the three

3    phone calls for you, and if you look on your screen

4    there is going to be a transcript also displayed.

5    The transcript is a demonstrative, which means it's

6    not an exhibit in evidence like the phone call is.

7    The phone call is the evidence.  But while the jury

8    is here, I want you to be paying attention to both

9    the transcript and what you're hearing and if

10   anything is wrong in the transcript, I'm going to ask

11   you later about your opinion on that.

12       A.   Okay.

13       Q.   We're going to play the phone call that's

14   Exhibit 1.

15            (Audio played.)

16       Q.   So can you confirm for us that you

17   recognize the speaker on that phone call to be

18   Michael Nissen?

19       A.   Yes.

20       Q.   There is a part where the transcript says

21   (Inaudible), where he says, "Learn what your

22   (inaudible) is all about."  Did you hear that

23   Mr. Nissen said, "Learn what your oath is all about"?

24       A.   Yes.

25       Q.   Do dispatchers swear an oath when they take

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   their job?

2        A.   No.

3        Q.   The next thing I noticed in the transcript

4   is that the transcript indicates that Mr. Nissen

5   referred to you as a treasonous trader, as in one who

6   trades goods.  Is that what you heard?

7        A.   Yes.

8        Q.   Could he also have been saying "treasonous

9   traitor," as in one who betrays their country?

10       A.   Yes.

11       Q.   Is there anything else in the transcript

12  that you heard differently than is currently listed?

13       A.   No.

14       Q.   Now, that was the phone call you described

15  as a complaint but not a threat; right?

16       A.   Yes.

17       Q.   And so after that, you filled out the form

18  that goes up to the captain; right?

19       A.   Yes.

20       Q.   Do you know if the captain read that form

21  before you got the second phone call we talked about?

22       A.   I'm not sure.

23       Q.   I'm about to play the second phone call we

24  talked about, and we're going to put up the

25  transcript for it as well.  I'm going to ask you to



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

78

1    pay attention not only to the speaker, not only to

2    what's said, but if you see anything in the

3    transcript that you think is not correct based on

4    what you hear or remember, I'm going to ask you about

5    that later.  Okay?

6        A.   Yes.

7        Q.   So we'll play Exhibit 2, is what we're

8    about to play now.

9            (Audio played.)

10       Q.   As far as you could tell, does that

11   transcript look accurate?

12       A.   Um-hum.

13       Q.   Now, on the first phone call you said,

14   "I'll pass that complaint on to the officer."

15       A.   Um-hum.

16       Q.   Did you mean that?

17       A.   Yes.

18       Q.   At the time that you took that first phone

19   call, did you know that it was Officer Burd who had

20   pulled Mr. Nissen over?

21       A.   Yes.

22       Q.   And that's because you were on duty

23   supervising Officer Burd during that stop.

24       A.   Um-hum.

25       Q.   So you were being truthful with Mr. Nissen



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    on the first phone call.

2       A.   Yes.

3       Q.   Is that second phone call the one that you

4    told us you considered a threat?

5       A.   Yes.

6       Q.   And was there any specific language in

7    there that you thought was political in nature?

8       A.   Not necessarily.  I was more focused on the

9    fact that he threatened any law enforcement officer

10   he comes into contact with.

11      Q.   As far as you know, none of the things you

12   considered to be threatening had anything to do with

13   politics or elections?

14      A.   No.

15      Q.   What did you do after you fielded this

16   second phone call?

17      A.   After I took that phone call, I notified

18   the on-duty sergeant and let him know that it was an

19   individual from Officer Burd's traffic stop, and told

20   him the nature of the phone call, who it was.  Gave

21   him the contact number just in case he wanted to do

22   anything with it at that point.

23      Q.   And then I'm going to play for you -- did

24   you indeed get a third phone call that same night

25   from Mr. Nissen?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

80

1      A.   I believe so.

2      Q.   I'm going to play for you what's been put

3   into evidence already as Government's Exhibit 3, and

4   we're going to show a transcript at the same time,

5   just like we've been doing.

6           (Audio played.)

7      Q.   Did you hang up on Mr. Nissen there, or did

8   he hang up on you?

9      A.   I don't recall.  I think he might have hung

10  up on me.

11     Q.   Okay.  Do you have training on the

12  difference between a complaint phone call and a

13  threat phone call, or is it just your experience over

14  time?

15     A.   It's my experience over time.  I haven't

16  had any training directly correlated to that itself,

17  but I've experienced a lot of it in my career.

18     Q.   Do you have training on whether it's a good

19  idea to ignore things that you consider threatening,

20  given your experience?

21          MR. GLERIA:  Objection, leading.

22     A.   Yes.

23          THE COURT:  Don't lead.

24          MR. MYSLIWIEC:  I'll rephrase.

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

81

BY MR. MYSLIWIEC:

    Q.   What are you supposed to do if you consider a phone call to be threatening rather than merely complaining?

    A.   So if I deem something threatening in my experience and in my training, it doesn't hurt to notify the on-duty sergeant just to be aware of the situation.  It's not going to do any harm just to notify him, just in case.

    Q.   Did you let Officer Burd directly know that you had gotten these phone calls?

    A.   Yes.

    Q.   Why did you tell Officer Burd directly?

    A.   So I told him directly because of the area that he pulled him over in, it's a little farther out from centralized Albuquerque, so his backup is a little farther out than anyone else's.  And I told him directly just in case he comes into contact with him again, because, again, you never know.  It's better to be safe than sorry.

    Q.   I have an exhibit that I'm going to pull up on the screen that is already in evidence as Government's Exhibit 5.  It's some phone records.  I'm going to ask you if you can identify whether you recognize any of the phone numbers on this record.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

82

1      And tell me if you need to zoom in.

2           A.   So I recognize the dispatch number to New

3      Mexico State Police.

4           Q.   Which one is that?

5           A.   841-9256.

6           Q.   So dialed number 841-9256?

7           A.   Yes.

8           Q.   So the first one, two, three, four, five,

9      six, seven, eight, nine, ten, 11, 12, 13, 14, 15 --

10     the first many phone calls were to your number?

11          A.   Yes.

12          Q.   And if I told you that these times listed

13     on the left side were six hours in the future because

14     of a time zone change, meaning that the first call

15     listed was actually November 2 at 6:16 p.m. and 27

16     seconds, is that about the time you reckon you got

17     that first phone call from Mr. Nissen?

18          A.   I believe so.

19          Q.   And does it comply with your recollection

20     that the next phone call from Mr. Nissen was about

21     four minutes later?

22          A.   Yes.

23          Q.   And does it comply with your recollection

24     that the next phone call from Mr. Nissen is about

25     four minutes after that?



where is
Barbara's
recording?
I said
that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

83

1    A.   Yes, sir.

2    Q.   I'm not going to ask you anything you're

3  not certain of, but as far as you can tell, does this

4  record show the three phone calls that you got from

5  Mr. Nissen that we just listened to that are

6  Government's Exhibits 1, 2, and 3?

7    A.   Yes, sir.

8    Q.   And then when I call that number, does it

9  directly connect me to emergency dispatch, or do I

10  have to select emergency for it to go to you?

11    A.   It's an automated system.  You have to

12  select the number.

13    Q.   If I select not emergency, does that go to

14  you?

15    A.   Yes.

16    Q.   It still goes to you?

17    A.   Yes.

18    Q.   Do you know who Barbara Beuzekom is?

19    A.   Yes.

20    Q.   What do I have to select to have my call go

21  to her?

22    A.   I'm not sure.  I'm not sure of the

23  extension.

24    Q.   But not the same thing I select to go to

25  you?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

84

1        A.    No, sir.

2        Q.    Do you know if all phone calls to you are

3    recorded?

4        A.    Yes.

5        Q.    Do you know if all phone calls to Barbara

6    Beuzekom are recorded?

7        A.    I'm not sure.

8             MR. MYSLIWIEC:  That's all I have.  I'll

9    pass the witness, Your Honor.

10            THE COURT:  Thank you, Mr. Mysliwiec.

11            Mr. Gleria, do you have cross-examination

12    of Ms. Gurule?

13            MR. GLERIA:  Thank you, Your Honor.

14            THE COURT:  Mr. Gleria.

15                    CROSS-EXAMINATION

16   BY MR. GLERIA:

17       Q.    Good afternoon, Ms. Gurule.

18       A.    Good afternoon, sir.

19       Q.    Ms. Gurule, Mr. Nissen called you -- do you

20   remember what time the first call came in?

21       A.    I'm not sure of the exact time, sir.

22       Q.    You said you were on a swing shift?

23       A.    Yes.

24       Q.    Is that nighttime?

25       A.    Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

85

1      Q.   And you were not threatened by any of the

2   three calls yourself, were you?

3      A.   No.

4      Q.   Okay.  And regarding the first call, you

5   had a chance to hear that call again today?

6      A.   Yes.

7      Q.   Does that refresh your memory about the

8   content of the call?

9      A.   Yes.

10      Q.   And Mr. Nissen called to tell you, I guess,

11   about federal law and a way to put it would be to say

12   that he called to educate you or have you educate

13   other police about the law?

14      A.   Yes.

15      Q.   Okay.  And that's what he told you; right?

16   That that was the purpose of his call?

17      A.   Um-hum.

18      Q.   Okay.  And he also complained quite a bit;

19   is that right?

20      A.   Yes.

21      Q.   And he was complaining about his

22   constitutional rights being violated.  Isn't that

23   what he said?

24      A.   Yes.

25      Q.   And he had some choice statements to make?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

86

1      A.    Yes.

2      Q.    Some profanities.  It must not feel good to

3  hear that.

4      A.    No, sir.

5      Q.    But you've been doing this for 13 years.

6  I'm sure it's not the first time that you've had

7  profanity on a dispatch call.

8      A.    Correct.

9      Q.    And you state to Mr. Nissen, after he talks

10 about having his day in court, you state, "Good luck

11 with that"; isn't that right?

12     A.    Um-hum.

13     Q.    And you sound calm; right?  I mean, you're

14 seated in a dispatch office somewhere; right?

15     A.    Yes, sir.

16     Q.    You're nowhere near Mr. Nissen; right?

17     A.    No.

18     Q.    And Mr. Nissen and his contact with Officer

19 Burd was over; right?

20     A.    Right.

21     Q.    And he didn't have any further contact with

22 Officer Burd.

23     A.    No, not that I'm aware of.

24     Q.    And you knew that Mr. Nissen was traveling

25 westbound?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Correct.

 2        Q.    So he was already outside of the service

 3   area of Officer Burd by the time he had called.  Or

 4   you don't know where he was, do you?

 5        A.    I don't know.

 6        Q.    Last we knew, he was traveling westbound.

 7        A.    Correct.

 8        Q.    But Officer Burd's a Torrance County

 9   sheriff; is that right?

10        A.    Correct.

11        Q.    And we're not in Torrance County at that

12   point.

13        A.    Correct.

14        Q.    You testified that he also stated that in

15   the second call, I believe it was, or maybe the third

16   call, or maybe the second call -- I'm getting

17   confused -- that he states that "All I've been doing

18   is practicing my First Amendment with you guys."  You

19   heard that; right?

20        A.    Correct.

21        Q.    Okay.  And is it your protocol to contact

22   the sheriff every time you have someone making

23   aggressive statements?

24        A.    No, it's not protocol.

25        Q.    It's not protocol?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

88

1      A.    Hum-um.

2      Q.    All right.  So is it your protocol to

3  contact the sheriff, like -- well, what you said was

4  that -- what you said was, "It doesn't hurt to notify

5  the sergeant."

6      A.    Correct.

7      Q.    Okay.  So that's what you did, if you deem

8  it to be threatening, which you already testified

9  that you did --

10     A.    Yes.

11     Q.    -- that it doesn't hurt to notify the

12  sheriff -- or the sergeant?

13     A.    Correct.

14     Q.    Is that why you notified the sergeant?

15     A.    Yes.

16     Q.    And then you testified that you called

17  Officer Burd, too; right?

18     A.    Yes.

19     Q.    Okay.  But isn't it correct that Mr. Nissen

20  spoke in figurative language?  And if you don't

21  understand what I'm saying, say so.

22         MR. MYSLIWIEC:  Objection, calls for an

23  opinion from a fact witness.

24         MR. GLERIA:  Oh.

25         THE COURT:  Well, I'll let her give her

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    interpretation of what occurred.

2    BY MR. GLERIA:

3        Q.   So a pig is not a human being; right?

4        A.   Because of the context of what he was

5    saying, that's how I interpreted it.

6        Q.   Well, context is very important in this

7    particular case.  But when he refers to pigs on the

8    road, I mean, isn't that the definition of figurative

9    speech?

10       A.   Yes, sir.

11       Q.   Okay.  And clearly exaggerated because a

12   human being can't be a pig; right?

13       A.   Right.

14       Q.   And, therefore, not literal; right?  He's

15   not literal in his statements that he made to you?

16            MR. MYSLIWIEC:  Objection.  It's a compound

17   question because it refers to multiple statements in

18   one question.

19            THE COURT:  Well, why don't you take them

20   one at a time.

21   BY MR. GLERIA:

22       Q.   Okay.  So if he's referring to unnamed

23   individuals as pigs, then that is figurative, is it

24   not?

25       A.   Yeah.  Yes, sir.

*Handwritten margin note: Arbitrary abuse of Power by Judge to misconstrue Defendants statements*

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

90

1    Q.    And it's therefore exaggerated, is it not?

2    A.    Again, because of the context of the

conversation.

3    Q.    And I understand.  I understand what you're

saying.  I mean, it can't be pleasant and I

understand that.  But it's clearly not literal.

7            MR. MYSLIWIEC:  Objection.  Is that a

8    question?

9            MR. GLERIA:  It is a question.

10           THE COURT:  It's proper.  Overruled.

11   BY MR. GLERIA:

12   Q.    It's clearly not literal.  And this

13   occurred on the telephone; right?

14   A.    Correct.

15   Q.    So Officer Burd is nowhere around.

16   A.    Correct.

17   Q.    I mean, we don't know where Officer Burd

18   is; isn't that right?

19   A.    Correct.

20   Q.    And we don't really know where Mr. Nissen

21   is.

22   A.    Correct.

23   Q.    So there is a big separation of space.  I

24   mean, isn't that correct?

25   A.    Correct.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.    Okay.  And when Mr. Nissen -- would you

2    describe his complaints or his statements as a rant?

3    A.    Somewhat.

4    Q.    He was ranting, wasn't he?

5    A.    Somewhat.

6    Q.    All right.  What he said was, in the second

7    call -- no, I'm sorry.  Take that back.  And what he

8    said was, "The next time I get stopped, I'm going to

9    do this and that to your stupid pigs."  Isn't that

10   right?

11   A.    Correct.

12   Q.    Okay.  But there was never a next time.

13   Isn't that true?

14   A.    Correct.

15   Q.    So it was conditioned on being stopped.  He

16   was never stopped a second time.

17   A.    Correct.

18   Q.    Correct?  And you contacted the sergeant in

19   this particular case because you wanted to notify him

20   of these statements; isn't that right?

21   A.    Correct.

22   Q.    And were you instructed to contact Officer

23   Burd?

24   A.    No.

25   Q.    And you stated that you called Officer Burd

*Contengencies*
*True threat*
*matter*
*statutory*
*law*

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

92

1    because, quote, you never know.

2        A.    Correct.

3        Q.    That's the reason; right?  You never know,

4    like, as a precaution?

5        A.    Correct.

6        Q.    Okay.  But not because you believed

7    anything was going to happen.

8        A.    As a precaution, yes.

9        Q.    As a precaution.  You did this as a

10   precaution?

11       A.    Yes.

12       Q.    Not because of imminent threat; right?

13       A.    Somewhat.

14       Q.    Somewhat?

15       A.    Yes.

16       Q.    Okay.  So here we are on the telephone,

17   separated by distance; right?  We don't know what the

18   distance exactly is.  Mr. Nissen tells you that,

19   "Next time, if it happens again, this is what I'm

20   going to do to pigs"; right?

21       A.    Right.

22       Q.    You already said it's figurative and not

23   literal; right?

24             MR. MYSLIWIEC:  Objection.  It was

25   describing Officer Burd as a pig that she says was

*[handwritten in left margin: prosecutor misconstruing my words]*



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

93

1   figurative.

2          THE COURT:  Well, I think she can answer

3   the question.  Overruled.

4   BY MR. GLERIA:

5      Q.   Isn't it true that one of the main things

6   Mr. Nissen had to say was that his rights were being

7   violated, and that's the reason he called?

8      A.   Correct.

9      Q.   Okay.  And his statements were political,

10  because he's talking about the constitution and his

11  rights?

12     A.   Correct.

13     Q.   And those are the statements he made to

14  you; right?

15     A.   Correct.

16     Q.   Okay.  And he never said, "I'm going to

17  hurt you, Ms. Gurule; I'm going to harm you"?

18     A.   No.

19     Q.   Okay.  All right.

20          MR. GLERIA:  If I could just have a moment,

21  Your Honor.

22          THE COURT:  You may.

23          MR. GLERIA:  Just a couple more questions,

24  Your Honor.

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN &
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   BY MR. GLERIA:

2       Q.   So when he said, "I'm going to have my day

3   in court," and you said, "Good luck with that," you

4   didn't seem alarmed.

5       A.   No.

6       Q.   And is that how you're trained to

7   responded?  "Good luck with that"?

8       A.   My safety wasn't in question at that point.

9       Q.   Okay.  But no, I'm talking about the

10  statement he said, "I'm going to have my day in

11  court," and you said, "Good luck with that."

12      A.   Yeah, that was my way of ending the

13  conversation.

14          MR. GLERIA:  All right.  Thank you.

15          THE COURT:  All right.  Thank you,

16  Mr. Gleria.

17          MR. GLERIA:  You're welcome.

18          THE COURT:  Mr. Mysliwiec, do you have

19  redirect of Ms. Gurule?

20          MR. MYSLIWIEC:  Brief.

21          THE COURT:  Mr. Mysliwiec.

22                    REDIRECT EXAMINATION

23  BY MR. MYSLIWIEC:

24      Q.   Ms. Gurule, just to be clear, do you know

25  if Officer Burd works for the Torrance County

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Sheriff's Office or the New Mexico State Police?

2         A.   He works for the New Mexico State Police.

3         Q.   Okay.  But he works in Torrance County for

4    the New Mexico State Police.

5         A.   Yes.

6         Q.   So he has interaction with the Torrance

7    County sheriff's deputies?

8         A.   Yes.

9              MR. MYSLIWIEC:  Alex, can I ask you to pull

10   up 2-A.

11        Q.   Do you know Officer Burd?

12        A.   Somewhat.

13        Q.   Did you like Mr. Nissen referring to him as

14   a pig?

15        A.   No.

16        Q.   When you say that you considered the second

17   phone call to be threatening rather than merely a

18   complaint, was it the "pig" comment that was

19   threatening?

20        A.   It was the fact that he's saying he's going

21   to put a bullet in the pig's head.  That's an

22   imminent threat, to me.

23        Q.   But it wasn't -- it wouldn't have been okay

24   to you if the caller had said, "I'm going to put a

25   bullet in Officer Burd's head"?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

96

1    A.   That wouldn't have been okay.

2    Q.   Because the pig comment isn't the part that

3  mattered to you, was it?

4    A.   That's not the part that mattered.

5    Q.   And when we go later in the phone call, and

6  we say, "I'm going to put that motherfucker drop

7  dead," you did not consider that a threat because of

8  the word "motherfucker," did you?

9    A.   No.

10    Q.   What did you consider a threat about that

11  paragraph, if anything?

12    A.   The "drop dead" comment.  Again, telling me

13  he's going to hurt a law enforcement officer.

14    Q.   Did he say he was going to pull out a water

15  balloon and put that motherfucker drop dead?

16    A.   Yes.

17    Q.   Do you know what a revolver is?

18    A.   Yes.

19    Q.   What's a revolver?

20    A.   A firearm.

21    Q.   As far as you're aware, a revolver is equal

22  to water balloons in dangerousness or more dangerous

23  than water balloons?

24    A.   More dangerous.

25    Q.   Can you confirm for us that even though you



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    might not like a person you know being called a

2    motherfucker, can you confirm for us that you did not

3    believe this to be a threatening phone call because

4    of that word?

5         A.    That's correct.

6         Q.    Would you have treated this phone call

7    exactly the same if none of the "pigs" and none of

8    the curse words were in it?

9         A.    That's correct.

10        Q.    The pig language was figurative.  We've met

11   Officer Burd.  He is a human.  But did you take the

12   two threats in this phone call to be real threats?

13        A.    Yes.

14              MR. MYSLIWIEC:  That's all I have.

15              THE COURT:  Thank you, Mr. Mysliwiec.

16              Anything further, Mr. Gleria?

17              MR. GLERIA:  No, Your Honor.

18              THE COURT:  All right.  Ms. Gurule, you may

19   step down.

20              Is there any reason that Ms. Gurule cannot

21   be excused from the proceedings, Mr. Mysliwiec?

22              MR. MYSLIWIEC:  No, sir.

23              THE COURT:  Mr. Gleria?

24              MR. GLERIA:  No, Your Honor.

25              THE COURT:  All right.  Ms. Gurule, you are



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    excused from the proceedings.  Thank you for your

 2    testimony.

 3              All right.  Does the Government have its

 4    next witness or evidence, Mr. Uballez?

 5              MR. UBALLEZ:  Yes, the United States calls

 6    Kenneth Lecesne.

 7              THE COURT:  All right.  If you'll come up

 8    and stand next to the witness box on my right, your

 9    left, before you're seated, my courtroom deputy,

10    Ms. Wright, will swear you in.

11                    KENNETH P. LECESNE,

12         after having been first duly sworn under oath,

13         was questioned, and testified as follows:

14              THE CLERK:  You may be seated.

15              THE COURT:  Would you state your name?

16              THE WITNESS:  My name is Kenneth P.

17    Lecesne.

18              THE COURT:  All right.  Mr. Lecesne,

19    Mr. Uballez.

20              MR. UBALLEZ:  Thank you, Your Honor.

21                    DIRECT EXAMINATION

22    BY MR. UBALLEZ:

23         Q.   Good morning.

24         A.   Good morning, sir.

25         Q.   Mr. Lecesne, where do you work?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   I work for T-Mobile, a cellular telephone

2    company, in Richardson, Texas.

3        Q.   What do you do for T-Mobile?

4        A.   My official title is records

5    custodian/testifier.

6        Q.   What are the responsibilities of a records

7    custodian?

8        A.   When I'm assigned to a specific trial, I

9    usually travel.  I attend court and I authenticate,

10   explain, and certify the T-Mobile phone records

11   involved in a specific trial.

12       Q.   How long have you held this role?

13       A.   Since August of 2011.

14       Q.   Is it all for T-Mobile?

15       A.   Back in 2011, I actually started doing this

16   for Metro PCS.  In 2012, 2013, T-Mobile acquired

17   Metro PCS, so I moved over to T-Mobile as a records

18   custodian also.

19       Q.   Your relevant job experience before August

20   of 2011?

21       A.   Well, I actually retired twice before then.

22   I retired from the Dallas Police Department after 28

23   years of service.  I worked patrol, narcotics, and

24   ran the task force for the DEA.  I left there and I

25   retired from DPD in 2005, and I went to an IT

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   company, Perot Systems Corporation, and I was the

2   physical security director there for five years, and

3   then I went to Metro PCS in 2011.

4      Q.   In that experience prior to 2011, did you

5   have experience working with cellular phones and

6   their manners of routing?

7      A.   Yes.  When I was assigned to the Drug

8   Enforcement Administration, I ran a task force, and

9   that team that I led, we did wiretaps on cellular

10  telephones involving drug-trafficking from Mexico

11  into the United States and following the money back

12  to Mexico.

13     Q.   So you're familiar, then, with the manner

14  in which cellphones, I guess you could say,

15  historically have routed their calls from one device

16  to another?

17     A.   That's correct.

18     Q.   And you had described a changeover from

19  Metro PCS to T-Mobile in around 2013.  Were there any

20  adaptations in technology in the way cellphones were

21  routed between units, 2011 to current?

22     A.   Yes.  Well, Metro PCS was on a different

23  network, the CDMA network, which was a totally

24  different network than the current network it's on

25  now, which is a GSM network.  That's a little bit



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    technical, and I'm not an engineer or anything, but

2    it was two different types of networks.

3         Q.   Can you describe the network that's

4    currently in place at T-Mobile?

5         A.   T-Mobile uses the GSM network.  That is the

6    most prevalent network used in the cellular telephone

7    business now.  It's just a different type of way.

8    There is a switching station involved.  The switching

9    stations for T-Mobile are all over the United States,

10   but the switching station has no bearing on where a

11   particular phone was.  The switching station is the

12   computer that creates the call detail records with

13   the cell site information to show where a particular

14   phone was during a specific call being made or

15   received by the T-Mobile customer.

16        Q.   If you could describe for the jury, then,

17   the process that happens currently when a T-Mobile

18   subscriber uses his or her cellphone to call another

19   cellphone.

20        A.   It's going to be very basic, because I'm

21   not an engineer.  When you use your cellphone to

22   either make a call or receive a call, you hit the

23   "send" button.  A signal, a radio wave, will go from

24   your phone and usually goes to the nearest tower from

25   where the phone is located during the duration of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

Bean
& Associates, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    call.

2    In this day and age, in 2018, 2017, most

3    calls are what are called Wi-Fi calls, and it's done

4    automatically using an LTE cell site.  You hear

5    things like 3G, 4G.  Now you're hearing about 5G.

6    Smartphones now, when you use your cellphone, it will

7    automatically either direct your call to an LTE site

8    or a conventional tower.  Most cellphone companies,

9    especially T-Mobile now and the other two larger

10   companies, use LTE sites.  They're more prevalent now

11   than the conventional towers.

12       Q.   So explain the role of the switch in

13   relationship to the towers.

14       A.   The switching station is the computer that

15   facilitates the hold process of the call.  The call

16   detail records for T-Mobile subscribers, T-Mobile

17   customers that use our network, and other companies

18   that use our network, that information is stored on

19   the switching station that handled the incident, the

20   phone calls that are made or received by the T-Mobile

21   customers; or a partner, like Ultra or Boost, who

22   also use our particular network.

23   When a legal demand comes into T-Mobile in

24   the form of a search warrant, a court order, or a

25   subpoena from a government entity, from the police,



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    DA's office, FBI, Homeland Security, DEA, that legal

2    demand is processed by a person that works in the law

3    enforcement relations section of the subpoena

4    compliance unit for T-Mobile.  We have three offices.

5    One is in New Jersey, one is in Pennsylvania, and one

6    is in Richardson, and that's the office that I work

7    in.

8            We also get legal demands from insurance

9    companies.  We get legal demands from nongovernmental

10   entities, and we process those legal demands also.

11   And that information is sent back to the requester,

12   specifically responding to the legal demand, what is

13   requested, and the date range that is requested if

14   the information is still available.

15       Q.   Without the switch playing its role, does

16   the call go from one phone to another?

17       A.   The switch is a very important part of the

18   actual whole function.  The switch is the computer

19   that creates the call detail records, but it's also

20   where the information is actually stored.  It's a

21   computer.  We have them all over the country.

22   T-Mobile is nationwide, and we have switches all over

23   the country, in almost all 50 states.  Not all 50

24   states have a switch in their particular area.

25       Q.   Are you aware of any switch that exists in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   New Mexico?

2        A.    No, sir, I'm not.

3        Q.    Are you aware of any switches that exist in

4   Texas?

5        A.    There's multiple switches in Texas, yes,

6   sir.

7        Q.    In preparation for today, you reviewed an

8   item which I showed you that appeared to be certain

9   records from T-Mobile.  Do you remember looking at

10  those?

11       A.    Yes, sir.

12       Q.    I'm going to show you -- does this appear

13  to be the first page of that document that I showed

14  you?

15       A.    Yes, sir.

16            MR. UBALLEZ:  And Your Honor, for the

17  record, this is what's been already moved in and

18  admitted as Exhibit 5 for the record.

19       Q.    And can you tell me what this first page

20  is?

21       A.    This is a certification document that was

22  actually created by the specialist who actually

23  processed the legal demand that came into the

24  company.

25       Q.    And have you prepared similar documents

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    yourself?

2        A.    Yes, sir.

3        Q.    And are you aware with the language that's

4    on these documents under the statement "I further

5    state that"?

6        A.    Yes.

7        Q.    You're familiar with that language?

8        A.    Yes, that's the standard form that we send

9    back when a certification is actually requested.

10        Q.    And is that true and correct with relation

11    to the records that you have previously reviewed that

12    we're representing as Exhibit 5?

13        A.    That's correct.

14        Q.    I'm going to show you page 2.  And just so

15    we know, who is Peggy Shelley?

16        A.    Peggy Shelley is a specialist, a subpoena

17    compliance specialist for T-Mobile.  She works in the

18    Richardson office.  I know her personally.  I've

19    worked with her before.  And she processed the legal

20    demand and she created the actual sheet, the previous

21    sheet that you just saw.

22        Q.    With regard to these records, you've also

23    verified that these are the true and correct records?

24        A.    That's correct.  Whenever I'm assigned to a

25    specific case, I'm usually sent the T-Mobile phone

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    number that was actually involved in the case.  And

2    what I will do is, I will go into our system and I

3    will pull the records to make sure that the records

4    that I received are the same records that we sent.

5        Q.    These records I'm showing you -- let's

6    start with talking about the columns and what they

7    mean.  There is obviously a date and a time column.

8    Can you describe those for us?

9        A.    Yes, the date is the date of a specific

10   phone call or text message, in this instance.   I

11   believe on these records it's phone calls, either

12   incoming phone calls or outgoing phone calls.

13       Q.    Is that in Mountain Standard time?

14       A.    The time zone, it depends on the actual --

15   it's in Mountain.  It could be in Mountain Standard

16   or Mountain Daylight Saving time.

17       Q.    In your review of these specific records,

18   they're in universal time; is that correct?

19       A.    Universal coordinated time.  It's not a

20   time zone.  So you'd have to do a conversion to get

21   Mountain Standard Time or Mountain Daylight Time.

22       Q.    Is this standard in these types of records,

23   to be in the UTC?

24       A.    Yes.  All of our records from the specific

25   time zone.  I know in 2018, 2017, and parts of 2016,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

107

1    they're all in UTC.  And everything going forward

2    will be UTC.

3         Q.    What is the difference in time between UTC

4    and Mountain Standard?

5         A.    I have a sheet right here that I made up

6    myself in Mountain Standard Time.  You'd have to

7    subtract seven hours from the time stamp on the

8    records themselves to get New Mexico time.

9         Q.    That's during standard --

10        A.    During Mountain Standard Time; that's

11   correct.

12        Q.    And is it different during Daylight

13   Standard Time?

14        A.    You have to subtract six hours.

15        Q.    So then if you could do some quick math for

16   us, that first one there at the top, can you see it?

17   Can you read it okay?

18        A.    Yes, 11/3 of 2018.

19        Q.    And the time listed is 001627.  Was that,

20   in fact, the -- if you convert it to Mountain

21   Daylight Time, what would that be?

22        A.    Well, 11/3 of 2018.  Daylight Saving Time

23   started on March 11, 2018, at 2:00 a.m.  So that's

24   going to be, in Mountain Standard Time, 11:30.  So

25   you'd have to subtract seven hours from that time

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

108

1    stamp on that record.

2         Q.   When did the Daylight Saving Time end,

3    again?

4         A.   Daylight Saving Time started at 2:00 a.m.

5    on March 11, 2018.  I looked it up, yes, sir.

6         Q.   And when did it end?

7         A.   It ended on November 4 of 2018.  I'm sorry,

8    yes, it ended on November 4 of 2018.  So it's still

9    Daylight Saving Time on that particular date, yes.

10        Q.   It's still Daylight Saving Time and you

11   subtract six?

12        A.   Six.  Yes, I'm sorry.

13        Q.   And after the 4th of November, would it be

14   as you stated, you subtract seven?

15        A.   Seven, yes.

16        Q.   Let's talk about the next column.  It says

17   "duration."  What measure of time is that in?

18        A.   That's seconds.  That's how long the call

19   lasted, whether it's an incoming or outgoing call.

20        Q.   Call type?  What is that?

21        A.   The call type, MOC stands for mobile

22   outgoing call, an outgoing call from the T-Mobile

23   number to another phone number.

24        Q.   The direction?

25        A.   The direction is outgoing.  It was an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




Bean
& Associates, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    outgoing call.

2        Q.   And then let's skip over to -- can we

3    assume the dialed number, the called number,

4    destination number, are the number which we would

5    collectively understand to be the one that the phone

6    was placing a call to?

7        A.   That's correct.  The calling number would

8    be the T-Mobile number that was requested to be

9    searched.  The dialed number would be the number that

10   was dialed by the caller.  The destination number

11   would be the number that was reached by the caller.

12       Q.   What is an IMSI and IMEI?

13       A.   The IMSI is the International Mobile

14   Subscriber Information.  That's how we bill the

15   customer for using our network.

16       Q.   And the IMEI?

17       A.   The IMEI is the serial number of the

18   cellphone itself that was used by the customer.

19       Q.   And I want to direct your attention here to

20   the middle column.  It's entitled "switch name."  Do

21   you see that there?

22       A.   That's correct.

23       Q.   Is that the switches that you were

24   referring to earlier through which calls must be

25   routed and information is gathered?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

110

1      A.    That's correct.  That's where the

2  information is also stored, and when a legal demand

3  comes into the company, it's a computer; the

4  information that's requested and the date range is

5  actually pulled from that and sent back to the

6  requester.

7      Q.    These switches here -- or I should say

8  singular switch, because they appear to be all the

9  same; is that correct?

10     A.    They're all the same on this document, yes,

11 sir.

12     Q.    And it's identified as TTTAS 005; is that

13 correct?

14     A.    That's correct.

15     Q.    Where is that switch?

16     A.    That switch is in Plano, Texas.

17     Q.    Moving down, there is a column entitled --

18 two columns entitled, first tower lat, first tower

19 long.  What do those refer to?

20     A.    That would be the exact location of the --

21 in this instance it's an LTE site, because it was a

22 Wi-Fi call that was made.  With Smartphones, it

23 automatically will either send you to a conventional

24 tower or an LTE site.  LTE site stands for long-term

25 evolution.  You hear these things about 2G, 3G, 4G,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  and now they're talking about 5G.  With Smartphones,

2  automatically -- you don't have to do anything to

3  make a Wi-Fi call.  And a Wi-Fi call was handled by

4  an LTE site, long-term evolution site.

5      Q.    Then following that directly is a first

6  tower address, first tower city, first tower state.

7  Do you see those?

8      A.    That's correct.

9      Q.    Describe what those are.

10     A.    If an individual, an investigator, was

11 trying to map where the phone was in relation to the

12 tower that handled the call, they would actually use

13 that information.  The first tower latitude, which is

14 a positive decimal number, and the first tower

15 longitude, which is a negative decimal number, you

16 would put that into whatever software you're using,

17 GoogleMaps, to actually create a map onto where the

18 cell phone was in relation to the tower that handled

19 the call.

20     Q.    So this would be the tower to which the

21 call and the person placing the call connected first?

22     A.    That's correct.

23     Q.    And so this first call, then, on line 1,

24 dated 11/3/18, at 001627, would have first routed to

25 a tower in Edgewood; is that correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

112

A.   That's correct.   Edgewood, New Mexico.   And
that's the closest physical address.   The latitude
and longitude is the exact location of where that
particular LTE site is.

Q.   And that second one, then, would have been
routed to a tower in Tijeras?

A.   That's correct.

Q.   And the third one is Bernalillo east?

A.   That's correct.

Q.   And the fourth and remaining in the city of
Albuquerque, New Mexico.

A.   That's correct.

Q.   Go to the final page of Exhibit 5.   What is
on this page?

A.   This is subscriber information for the
phone number that was requested to be searched.   That
phone number is (505) 819-1806.

Q.   And does it indicate -- so that first
section under "subscriber details," what type of
information is contained there?

A.   You have the subscriber name, the name of
the person, who was a Michael Nissen who opened the
account.   That was the name given by the customer
when they opened the account.

Q.   And then the device details section, the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    first line begins IMSI.  What type of information is

2    contained in here?

3         A.   The IMSI is the International Mobile

4    Subscriber Information.  That's also listed on the

5    caller detail records.  I'm sorry, I put my finger

6    there.  That is how T-Mobile bills the customer for

7    using the service.

8         Q.   Then down -- there is a number, the IMEI

9    number.  Remind us what that is again.

10        A.   That is the international mobile equipment

11   identifier.  That is the unique number for that

12   specific telephone itself.  That is made at the

13   factory.  That is put on that phone at the factory

14   where the phone was actually made.  It's usually

15   underneath the battery in the back of the phone.

16        Q.   Now, here it lists the final number in the

17   IMEI as 2, and I believe if we go back to page 1, the

18   final number is zero.  Do you know why that is?

19        A.   The call detail records of that final

20   number will always be zero.  The other numbers will

21   be the exact same numbers that are in the IMEI

22   number.  On the records, the final number is zero.

23   But they'll match -- the rest of the numbers will

24   match everything but that last digit.

25             MR. UBALLEZ:  If I may approach with the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

114

```
 1    exhibit which has been marked as United States

 2    Exhibit 8?

 3              THE COURT:  You may.

 4    BY MR. UBALLEZ:

 5         Q.   I've handed the witness, Your Honor, what's

 6    been marked and admitted as United States Exhibit 8.

 7              Can you tell us generally what this thing

 8    is?

 9         A.   This is a Galaxy Note, Samsung Galaxy Note

10    5.

11         Q.   And you described the IMEI number being the

12    number which identifies a specific device?

13         A.   That's correct.

14         Q.   And do you see an IMEI number on this

15    device?

16         A.   It's usually in the back of the phone.  You

17    would have to take the phone apart to do it,

18    underneath the battery.

19         Q.   Could you take a quick look at the back and

20    see if we can see that number?

21         A.   You'd have to open it up.

22         Q.   Just the back of the case.

23         A.   There is no number on the back of the case.

24         Q.   The back of the case or the phone, my

25    apologies.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          A.    If there is a number on here, it's very,

2    very small and I can't see it.  There is a number on

3    the bottom down here.

4          Q.    Okay.  Can you -- and that number on the

5    bottom there, does it look the length of an IMEI

6    number?

7          A.    It could be, yes, sir.

8          Q.    But it's too small for you to see?

9          A.    Yes.  I have a Samsung phone, myself, but I

10   never take it out of my case to look at the back of

11   it.  I usually have the box with my phone, and I have

12   my IMEI number on my box.

13         Q.    Is there an indication where an IMEI number

14   might be on a physical device?

15         A.    It would also be behind the battery, if you

16   take the battery out of a phone.

17              MR. UBALLEZ:  May I retrieve, Exhibit 8,

18   Your Honor?

19              THE COURT:  You may.

20         A.    But to be honest with you, I can't see it.

21   BY MR. UBALLEZ:

22         Q.    So you're describing, then, the subscriber

23   information on page 3 of Exhibit 5?

24         A.    That's correct.

25         Q.    Under "billing details," what type of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    information is contained here?

2        A.    The bill name.   The name is Michael

3    N-I-S-S-E-N.

4        Q.    Does that include any identifiers for that

5    individual?

6        A.    The birth date, 3/8 of 1965.

7        Q.    And also a social?

8        A.    Social Security number.   There is an

9    address, bill address.

10       Q.    Why do you keep these items of information?

11       A.    That information -- this is a post date

12   account.   In other words, a credit check was done so

13   the information was verified.   This information is

14   actually entered in when the customer opens the

15   account.

16       Q.    And why is that type of information

17   important to keep for T-Mobile?

18       A.    Because number one, it's a post paid

19   account.   A credit check was done so the information

20   was put on there.   We also have prepaid accounts,

21   where a person's identity is not verified because

22   there is no credit check done.   They pay as they go.

23   They pay monthly.   You pay $40 for 30 days of

24   service, you've got to pay another $40 for the 30

25   days.   If you don't pay, you don't get your phone

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    anymore.

2        Q.    So it would be important for this

3    information to be current, then?

4        A.    Yes.  On this particular account, this is a

5    post pay account.  A credit check was done and that

6    information was there and that person pays by the

7    month.

8        Q.    So we're absolutely clear, without the

9    switch that you identified in Plano, Texas, these

10   calls made from this number with this subscriber

11   would not have gone to the people, whoever it was,

12   that he was calling?

13       A.    That's right.  On this particular instance,

14   that switching station was the switching station that

15   facilitated the calls, and the call detailed records

16   that you have in front of you.

17            MR. UBALLEZ:  If I may have a moment, Your

18   Honor?

19            THE COURT:  You may.

20            MR. UBALLEZ:  Pass the witness.

21            THE COURT:  Thank you, Mr. Uballez.

22            Mr. Mkhitarian, do you have

23   cross-examination for Mr. Lecesne?

24            MR. MKHITARIAN:  Yes, Your Honor.

25            THE COURT:  Mr. Mkhitarian.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

118

1          MR. MKHITARIAN:  Thank you, Your Honor.

2                    CROSS-EXAMINATION

3     BY MR. MKHITARIAN:

4          Q.    Good afternoon, sir.

5          A.    Good afternoon sir.

6          Q.    How do you pronounce your last name, again?

7          A.    Lecesne.  It's a New Orleans name.

8          Q.    Thank you, Mr. Lecesne, for being here

9     today.  I'm going to keep it really short.  So you

10    had talked about earlier how you're not an engineer,

11    and I'm going to hold you to that.

12         A.    Right.

13         Q.    So I'll just try to keep it within your

14    knowledge base.  So you testified earlier that when

15    you make a phone call, it goes to a switch.  Do all

16    phone calls go to a switch?

17         A.    When you make or receive a phone call on a

18    T-Mobile network, there is going to be a switch that

19    handles the call.  We have switches all over the

20    country.  The switch has no bearing on where the

21    phone is.  The tower information will tell you where

22    the phone is, but the switching -- the switching

23    station, which is a computer, facilitates that call.

24         Q.    So is it entirely possible to -- for

25    instance, if you lived in Plano, Texas, and you made

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    a T-Mobile phone call, will that phone call go to

2    that Plano, Texas, switch because it's the nearest

3    one, or is it completely random on where these go?

4         A.   It's computerized.  It could be on a switch

5    in New York City.  It could be on a switch in

6    Atlanta.  That's the GSM network.  There used to be a

7    CDMA network and you had to be -- when you used your

8    phone, which the CDMA network is not working anymore;

9    we discontinued that on T-Mobile in Metro PSC.  You

10   would have to use the Dallas switch to make a phone

11   call in Dallas.

12        Q.   Okay.  So based on the current technology,

13   even if there is a switch where you live and you use

14   the Dallas example, so there is a switch in Dallas,

15   you make a phone call from a Dallas number to a

16   Dallas number, that phone call could still go to New

17   York?

18        A.   It could go to a different switch.  But

19   that has no bearing on where the phone is.

20        Q.   I understand.  So the phone call could go

21   to a different switch regardless if there's a

22   switch -- you're making a phone call next door to the

23   switch, it could still go to a different switch.

24        A.   That's correct.  The record would only show

25   what happened.  It would not show something that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   didn't happen.

2       Q.   Is it common knowledge that these phone

3   calls could go to different switches?

4           MR. MYSLIWIEC:  Objection, relevance.

5           THE COURT:  Overruled.

6   BY MR. MKHITARIAN:

7       Q.   Is it common knowledge that your phone

8   call --

9       A.   I've seen it happen in many different

10  situations.  I've seen phone calls in Dallas on a GSM

11  network that use a switch in California.  The

12  switching station is a computer that facilitates the

13  completion of the call.

14      Q.   So even if you call a local number and

15  there's a local switch, the phone call can go to any

16  switch?

17      A.   It goes to any switch that's available at

18  that time.

19      Q.   Does your phone tell you it's going to a

20  different switch when you're actually making the

21  call, or is it something you find out later?

22      A.   No, sir.  You won't find it out unless you

23  get the call detail records.  Your phone doesn't tell

24  you that.

25      Q.   Oh.  Does your phone bill tell you that?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   No, sir, it doesn't.

2      Q.   Is that something that you have to subpoena

3  to find out?

4      A.   An individual can't subpoena their own

5  records because they get billing records.  They'd

6  have to get an attorney.  But you could get it with a

7  subpoena.  The Government has to have certain types

8  of call detail records with tower information.  With

9  the information that you saw on this, on those call

10 detail records, they could only get it with a search

11 warrant.

12     Q.   So I guess with that in mind, I'll kind of

13 boil it down.  So a customer in the regular course of

14 making phone calls and getting bills might not ever

15 find out that his phone call went to a switch

16 somewhere else?

17          MR. MYSLIWIEC:  Objection, relevance.

18          THE COURT:  Overruled.

19     A.   No.  I have a T-Mobile phone and I never

20 requested my call detail records to find out which

21 switch handled my calls.  I just make my calls.  As

22 long as my phone is working right, I'm fine.

23 BY MR. MKHITARIAN:

24     Q.   If I was a T-Mobile customer, could I call

25 them and say, "Make sure none of my phone calls go to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Texas"?

2       A.   No, sir, I don't believe that's possible,

3  because the store has nothing to do with the tower

4  information and the call detail records.

5            MR. MKHITARIAN:  May I have a moment, Your

6  Honor?

7            THE COURT:  You may.

8            MR. MKHITARIAN:  I'll pass the witness.

9            THE COURT:  Thank you, Mr. Mkhitarian.

10           Mr. Uballez, any redirect of Mr. Lecesne?

11           MR. UBALLEZ:  Briefly, Your Honor.

12                   REDIRECT EXAMINATION

13  BY MR. UBALLEZ:

14       Q.   Would it be possible to use a T-Mobile

15  network without passing through the system of

16  switches which are national that you've described to

17  us today?

18       A.   That would not be possible.

19           MR. UBALLEZ:  No further questions.

20           THE COURT:  Thank you, Mr. Uballez.

21           All right.  Mr. Lecesne, you may step down.

22           Is there any reason Mr. Lecesne cannot be

23  excused from the proceedings, Mr. Uballez?

24           MR. UBALLEZ:  No, Your Honor.

25           THE COURT:  Mr. Mkhitarian.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      MR. MKHITARIAN:  No, Your Honor.

2      THE COURT:  All right.  You are excused

3  from the proceedings.  Thank you for your testimony.

4      THE WITNESS:  Thank you, sir.

5      THE COURT:  All right.  Does the Government

6  have its next witness or evidence, Mr. Uballez?

7      MR. UBALLEZ:  Yes, Your Honor.  The United

8  States calls Sergeant Steven Carroll with New Mexico

9  State Police.

10      THE COURT:  Mr. Carroll, if you'll come up

11  and stand next to the witness box on my right, your

12  left, before you're seated, my courtroom deputy

13  Ms. Wright, will swear you in.

14                  STEVEN CARROLL,

15      after having been first duly sworn under oath,

16      was questioned, and testified as follows:

17      THE CLERK:  You may be seated.

18      THE COURT:  Mr. Carroll, Mr. Uballez.

19      MR. UBALLEZ:  Thank you, Your Honor.

20              DIRECT EXAMINATION

21  BY MR. UBALLEZ:

22      Q.   Please introduce yourself to the jury and

23  where you work and what your role is there.

24      A.   My name is Steven Carroll.  I'm a sergeant

25  with the New Mexico State Police, stationed out of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

1    our District 5 office here in Albuquerque, New

2    Mexico.

3         Q.    Where is District 5?

4         A.    It's our Albuquerque office.

5         Q.    And what are your responsibilities as a

6    sergeant with the State Police?

7         A.    So I'm a patrol sergeant, so I supervise

8    five officers.  I also deal with our daily -- part of

9    our role as a supervisor is also to deal with

10   complaints coming in from citizens, also dealing with

11   approving reports, responding to critical incidences,

12   and anything else that might happen during the day of

13   our shift.

14        Q.    Do you do basic routing and calling of

15   officers when they call in traffic stops?

16        A.    No, I don't do that.

17        Q.    How long have you been with the State

18   Police?

19        A.    I've been employed with the New Mexico

20   State Police now a little over 11 years.

21        Q.    And any prior law enforcement?

22        A.    No, sir.

23        Q.    And when did you become a sergeant?

24        A.    I promoted to the rank of sergeant in

25   August of 2014.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   I want to ask you, then, about a series of

2    events on November 2 of 2018.  Do you recall that

3    date?

4    A.   Yes, sir.

5    Q.   And were you a New Mexico State Police

6    sergeant with District 5 on that date?

7    A.   Yes, I was.

8    Q.   What shift were you working?

9    A.   I was working the swing shift, which are

10   the hours of 4:00 p.m. to 1:00 a.m.

11   Q.   And were your duties then similar to the

12   ones you just described to us today?

13   A.   Yes, sir.

14   Q.   Do you recall being brought into a

15   conversation with an individual identified as

16   Mr. Nissen?

17   A.   I was, yes.

18   Q.   How were you brought into that?

19   A.   One of our dispatchers, a dispatcher whose

20   name is Victoria Gurule, informed me that Mr. Nissen

21   wanted to complain on an Officer Burd.

22   Q.   Did you specifically identify Officer Burd

23   as that person that the complaint was about?

24   A.   Yes.

25   Q.   Is it standard for you take calls from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

DEAN& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   civilians?

2        A.   Yes, it is.

3        Q.   And so what did you do?

4        A.   I contacted the complainant, Mr. Nissen,

5   over the phone.

6        Q.   Did you speak with him?

7        A.   Yes, I did.

8        Q.   And describe the things that he said to you

9   during that conversation.

10       A.   So it was back in November, and again, I

11  don't recall the specific conversation, the specific

12  wording.  Mr. Nissen, however, was fairly upset over

13  the traffic stop that Officer Burd initiated on him

14  and wished to complain on Officer Burd.

15       Q.   How could you tell that he was upset?

16       A.   His voice was raised, his tone was

17  aggressive.  And again, I don't recall specific words

18  that were exchanged between myself and Mr. Nissen,

19  but it was apparent that Mr. Nissen was upset.

20       Q.   Did Mr. Nissen threaten you directly during

21  that call?

22       A.   Again, I don't recall specifically.

23       Q.   If you recall.

24       A.   I don't recall specifically Mr. Nissen

25  directly threatening myself, no.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And during that call -- approximately how

2    long would you say you were on the phone with him?

3        A.   It had to be less than five minutes.

4        Q.   And what is your standard procedure for

5    receiving complaints in this manner as the sergeant

6    who takes complaints?

7        A.   A typical complaint would be:  The validity

8    of the complaint would be taken into consideration.

9    And again, if it turns out it's a legitimate

10   complaint, we do a formal complaint process.  This

11   particular situation, I did not follow up on that

12   process.

13       Q.   Why did you not follow up on that process?

14       A.   The complaint, Mr. Nissen's complaint,

15   again, was more toward issuing the citations and how

16   the traffic stop was done, and those complaints can

17   be handled via the court process.

18       Q.   Have you issued traffic citations yourself?

19       A.   Yes, sir.

20       Q.   And you supervise officers who issue

21   traffic citations?

22       A.   Yes, sir.

23       Q.   And been to court yourself?

24       A.   Yes, sir.

25       Q.   Describe that process.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Going to court?  By going to court, again,

2   you're not guilty.  By going to court, you have the

3   opportunity to present evidence in front of a judge

4   or jury.  The officer has the opportunity to present

5   evidence in front of a judge and jury, and the

6   independent judiciary system makes a determination

7   whether the defendant is guilty or innocent.

8      Q.   So when you said you didn't initiate a

9   formal complaint process within State Police, it was

10  because there was a court process to handle the

11  complaints --

12     A.   Correct.

13     Q.   -- as you understand it?

14     A.   Correct.

15     Q.   Did you advise Mr. Nissen of this fact?

16     A.   I don't believe so.  I don't recall.

17     Q.   But did you take his complaints?

18     A.   I did.  I listened to him.

19     Q.   Did you threaten Mr. Nissen?

20     A.   Not that I'm aware, no, sir.

21     Q.   I'm going to play for you what's been

22  marked and admitted as United States' Exhibit Number

23  2, and I want you to tell me if you recognize this

24  voice.

25          (Audio played.)



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    Start with that first one.  Whose voice is

2   that?

3      A.    That's our dispatcher, Victoria Gurule.

4            (Audio played.)

5      Q.    Can you identify that voice?

6      A.    Yeah, that voice sounds familiar to the

7   voice I talked to over the phone on November 2.

8      Q.    Were those complaints relating to the

9   Constitution and the violation of his rights

10  consistent with those that were being made to you?

11     A.    Again, I don't directly recall a

12  conversation, but it sounds familiar.

13     Q.    After you took his complaints, did you have

14  any further interactions?  Well, on that day, did you

15  have any further interaction with Mr. Nissen?

16     A.    No.

17           MR. UBALLEZ:  May I have a moment, Your

18  Honor?

19           THE COURT:  You may.

20  BY MR. UBALLEZ:

21     Q.    After receiving -- in addition to speaking

22  with Mr. Nissen, did you speak with anyone else about

23  their interactions with Mr. Nissen?

24     A.    So I did speak to Ms. Gurule.

25     Q.    Did you speak with Officer Burd, as well?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

130

1      A.   I did speak to Officer Burd.  Afterwards

2   they relayed threats that were given, and I actually

3   pushed out an email warning the whole district as a

4   whole about the threats that were relayed over the

5   phone.

6      Q.   Describe that email.

7      A.   The email was basically a warning email to

8   all the officers stating, again, with the threat of

9   putting -- shooting a pig with a gun, and just to be

10  on the lookout, be a warning; so I put Mr. Nissen's

11  information on the email so in case any other officer

12  had contact with him, just to be aware.

13     Q.   Is that standard procedure every time you

14  receive a complaint?

15     A.   No.

16     Q.   Have you heard the term "pig" before?

17     A.   Yes.

18     Q.   And what's your understanding that it

19  refers to?

20     A.   So besides the obvious fact of the pig, of

21  the animal variety, "pig" is also very common slang

22  to describe a law enforcement officer.

23          MR. UBALLEZ:  Thank you.  I pass the

24  witness, Your Honor.

25          THE COURT:  Thank you, Mr. Uballez.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Mr. Mkhitarian, do you have

2   cross-examination of Mr. Carroll?

3          MR. MKHITARIAN:   Thank you, Your Honor.

4          THE COURT:   Mr. Mkhitarian.

5                CROSS-EXAMINATION

6   BY MR. MKHITARIAN:

7      Q.   Good afternoon.

8      A.   Hello, sir.

9      Q.   You testified earlier that you don't recall

10  being threatened by Mr. Nissen; is that correct?

11     A.   Correct.

12     Q.   That would be something you would remember,

13  if someone threatened your life; right?

14     A.   Yes, sir.

15     Q.   So would it be fair to say that he did not

16  threaten you?

17     A.   Correct.

18     Q.   You also mentioned that when he was calling

19  to complain, he was talking about the Constitution

20  and things like that; is that correct?

21     A.   I don't think I said -- specifically I said

22  Constitution, but I think I said his tone was

23  agitated.  I don't specifically recall the exact

24  conversation I had with Mr. Nissen.

25     Q.   Okay.  So he was -- would you describe the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   way he was talking you to as maybe ranting about the

2   stop?

3        A.    It's possible.

4        Q.    And would you say that -- when you said

5   that you determined it wasn't a real complaint but

6   something suited for the courts, is that because he

7   was arguing about the law and things like that with

8   you over the phone?

9        A.    Again, that's possible, yes, sir.

10        Q.    So based off of him calling you and arguing

11   about the law, you felt that it wasn't a real

12   complaint, and his complaints should be directed for

13   the court process?

14        A.    Yes, sir.

15        Q.    But it is true that he was trying to

16   educate you on what he thought the officer should

17   have done.  Did I hear that correctly?

18        A.    Possibly, yes, sir.

19        Q.    And after you concluded the phone call, how

20   long after you concluded the phone call did you talk

21   to Ms. Gurule and Officer Burd?

22        A.    Probably within -- it had to have been

23   within 10 to 15 minutes.  It wasn't a long period of

24   time.

25        Q.    Okay.  And at that time did you -- within

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   10 to 15 minutes of that time, were you notified that

2   there was a threat or was it some other call at a

3   later time?

4       A.   It was during that time, yes, sir.

5       Q.   After your phone call to Mr. Nissen, did

6   you feel it necessary to, immediately after your

7   contact with him, notify everybody that there was a

8   threatening individual?

9       A.   After my phone call, no, sir.

10      Q.   It was only after talking to dispatch that

11  you decided to make that communication; is that

12  correct?

13      A.   Yes, sir.

14          MR. MKHITARIAN:  I'll pass the witness.

15          THE COURT:  Mr. Mkhitarian.

16          Mr. Uballez, any redirect of Mr. Carroll?

17          MR. UBALLEZ:  No follow-up.

18          THE COURT:  All right, Mr. Carroll, you may

19  step down.

20          Mr. Uballez, is there any reason that

21  Mr. Carroll cannot be excused from the proceedings?

22          MR. UBALLEZ:  No, Your Honor.

23          THE COURT:  Mr. Mkhitarian, can Mr. Carroll

24  be excused?

25          MR. MKHITARIAN:  Yes, Your Honor.

a statue
of a character
of an
innocent
man

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9492
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

154

1        THE COURT:  All right.  You're excused from

2   the proceedings.  Thank you for your testimony.

3        THE WITNESS:  Thank you, Your Honor.

4        THE COURT:  All right.  Does the Government

5   have its next witness or evidence?

6        MR. MYSLIWIEC:  Yes, Your Honor.  The

7   United States calls Barbara Beuzekom of the New

8   Mexico State Police.

9        THE COURT:  Ms. Beuzekom, if you'll come up

10  and stand next to the witness box on my right, your

11  left, before you're seated, my courtroom deputy,

12  Ms. Bevel, will swear you in.

13                 BARBARA BEUZEKOM,

14     after having been first duly sworn under oath,

15       was questioned, and testified as follows:

16        THE CLERK:  Thank you.  You may be seated.

17  All right, Ms. Beuzekom, Mr. Mysliwiec.

18                 DIRECT EXAMINATION

19  BY MR. MYSLIWIEC:

20        Q.   Ma'am, have I been pronouncing your name

21  correctly?  Beuzekom?

22        A.   Yeah.

23        Q.   Okay.  Now that you've been sworn in, could

24  you please introduce yourself to the jury by telling

25  them your name, occupation, and current assignment?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    My name is Barbara Beuzekom.  I work at the
2  New Mexico State Police office on Carlisle, which is
3  District 5, and I'm a district administrator.
4      Q.    And how long have you been a district
5  administrator?
6      A.    Five years.
7      Q.    Was that your job right out of school, or
8  did you do something before that?
9      A.    I worked for nine years for APS Police as a
10  campus security at one of the high schools.
11      Q.    So you were essentially a police officer
12  for some time?  Can you answer yes?
13      A.    Not really.  I mean, I was campus security.
14  We did have arresting capabilities.  I mean, I don't
15  know how to say it.  We patrolled the campuses.  We
16  had search privileges.  We had basically anything
17  that went on for the school in security.
18      Q.    Were you trained on how to interact with
19  people while respecting their rights?
20      A.    Yes.
21      Q.    And what are your duties now that you're an
22  administrator with the New Mexico State Police?
23      A.    I'm first contact with the public over the
24  phone or that come into our office, and decide best
25  ways to help them and do what they need.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

156

1    Q.   If I dial (505) 841-9256, is that dispatch?

2    A.   That is the main number that comes in, and

3  it gives you a list of options to hit, 1 through, I

4  believe, 8, whether it's dispatch, investigations,

5  administrators, or fingerprinting, whatever you need.

6    Q.   What do I select to get you?

7    A.   I believe it says for uniform

8  administration you push whatever -- I'm not sure what

9  number.  It's changed recently.

10   Q.   So the automated voice is not lying when it

11  says, "Please listen because the numbers have

12  recently changed"?

13   A.   Yes.

14   Q.   Are all phone calls that go to you through

15  that selection process recorded?

16   A.   No.

17   Q.   Did you ever have a phone conversation with

18  a person named Michael Nissen?

19   A.   Yes.

20   Q.   Can you identify whether you see Michael

21  Nissen in the courtroom today or not?

22   A.   I can't see.

23   Q.   I'll step out of your way.  I'm --

24   A.   He's wearing a blue shirt, at the end of

25  the table over there.


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      MR. MYSLIWIEC:  Your Honor, may the record
2  please reflect that the witness has identified the
3  defendant?
4      THE COURT:  The record will so reflect.
5  BY MR. MYSLIWIEC:
6      Q.   Can you tell us if you recall what day you
7  had that phone call with him on?
8      A.   Without looking at notes, no.  I don't
9  remember the exact date.
10      Q.   If I showed you on this screen a call
11  record -- we're going to plug this computer in.  Do
12  you see these calls on November 26 of 2018 and then
13  November 27 of 2018?
14      A.   Yes.
15      Q.   Does that refresh your recollection as to
16  when you actually talked to Mr. Nissen?
17      A.   I talked to him on -- I would say there was
18  one day that I talked to him, and then he called the
19  next day, also, but I did not speak with him.
20      Q.   Do you think it was the 26th of November?
21      A.   Probably.  It was in the morning.
22      Q.   And at least reasonably near, in terms of
23  the jury instruction, reasonably around November 26,
24  2018?
25      A.   Definitely.


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

158

1    Q.   Could you describe to the jury how that

2    phone call went?

3    A.   I answer in my usual way and I ask if there

4    is anything I can do for whoever is calling.  And the

5    gentlemen said that he needed to speak to a

6    supervisor.  And when I started asking him what it

7    was he needed to speak to, he became -- his voice got

8    very angry.  He got very loud.  He proceeded to tell

9    me that if -- you know, he would just come down to

10   the office and shoot me in my fucking face.

11   Q.   When you told him you needed more

12   information, were you being genuine with him?

13   A.   Definitely.  Because we have a chain of

14   command where it can be about an officer.  Each

15   officer has a sergeant, which follows up another

16   chain of command.  So it's just a procedure on who we

17   put the phone call to.

18   Q.   What information would you need -- if I

19   called you and said, "I want to complain about a

20   traffic stop that happened to me a little while ago,"

21   what would you need from me to know which supervisor

22   to route me to?

23   A.   The person's name that was stopped, the

24   area that they were stopped in, depending if it was

25   Albuquerque, Cuba, Los Lunas, East Mountains.

*[handwritten left margin: no record of all calls taped or recorded - perjury. she has 3 other statements in discovery]*



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And is that the type of information you

2  attempted to get from this caller on the 26th of

3  November, 2018, who you now know to be Michael

4  Nissen?

5    A.   Yes.

6    Q.   Like I said, I'll just ask again, were you

7  being genuine in trying to get that info to attempt

8  to help him?

9    A.   Yes, because I was not familiar who he was,

10  so I just needed his name.

11    Q.   Could you describe to me how long it took

12  between you asking that question trying to help him

13  and this escalation of his voice that you described?

14    A.   I would say I didn't even get out of him

15  where the location of the traffic stop was, so it was

16  a very short period of time.

17    Q.   Would you describe the escalation of his

18  volume and his voice as gradual or sudden?

19    A.   It escalated very quickly.

20    Q.   And I don't remember exactly the words that

21  you used, but do you remember exactly the words that

22  Mr. Nissen used to say things that you considered a

23  threat?

24    A.   That he was going to come shoot me in my

25  fucking face.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN &
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

140

1    Q.   And was there anything that he said that
2  made you believe that he was joking?
3    A.   No.
4    Q.   Was there anything that he said that made
5  you believe that he was being figurative or not
6  serious?
7    A.   I took it completely serious, and proceeded
8  to go get someone else to talk to him.
9    Q.   Do you go get someone else to talk to every
10  caller who has a complaint about police action?
11    A.   No.
12    Q.   What's the difference between a complaint
13  you receive that you don't go get someone else to
14  finish the phone call and a complaint you receive
15  where you would do that?
16    A.   Typically people -- when you start talking
17  to them and trying to -- telling them that you're
18  just trying to help them, that they'll come through
19  with the information that you need to be able to find
20  their citation, to find what they're looking for.
21  There was absolutely no way that he would let me even
22  get to the point of saying, "I'm just trying to help
23  you."
24    Q.   You described to the jury just now that
25  there was some profanity that Mr. Nissen used on the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    phone call.  Was it the profanity that you made you

2    feel threatened?

3         A.   No, it was just the intensity of his voice.

4    I mean, he was very angry.  I just got the impression

5    that there was no way he was going to listen to

6    anything that I had to say.

7         Q.   If he in a loud voice had not said the part

8    about shooting you in your face, but was just loud in

9    his complaints about whatever it was, would you have

10   considered that a threat?

11        A.   No.

12        Q.   So just so the jury understands what you

13   were thinking at the time and only what was inside

14   your own mind, it was the threat to shoot you in the

15   face that was the thing that was threatening?

16        A.   Yes.

17        Q.   Now, do you remember who it was that you

18   got to handle the rest of the call?

19        A.   I went to the squad room and Officer Juan

20   Cordova was in the squad room, and I asked him to

21   come handle the phone call.

22        Q.   And did you take any action after passing

23   that call to Mr. Cordova with respect to Nissen and

24   what he said to you?

25        A.   The -- I took -- since it was a threat and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

142

1    I felt threatened, I took the number, the phone

2    number, off of my caller ID so that if the person

3    called back in, I would know that that was Mr. Nissen

4    immediately calling back in.

5        Q.   And did you request authorization to put a

6    poster up by administrative workers' work stations so

7    that if he did hypothetically come by, the person

8    working there would be warned?

9        A.   Yes.

10       Q.   And did you receive the authority to put

11   Mr. Nissen's face on a poster that was posted in your

12   office to warn people in the case that he might come

13   by in the future?

14       A.   Yes.  That day I asked my captain, after

15   reading the traffic stop and finding that it was just

16   traffic citations that he was angry about, then I

17   asked my captain if it was all right to get that

18   picture to put up by the stations that have an

19   intercom phone.

20       Q.   And you did receive the authority to put

21   the warning up?

22       A.   Yes.

23       Q.   And do you do that with everybody who

24   curses on the phone?

25       A.   No.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    Do you do that with everyone who speaks in

2  a loud voice on the phone?

3      A.    No.

4      Q.    Was it because of the threats or anything

5  else?

6      A.    The threats.

7            MR. MYSLIWIEC:  No further questions.

8            THE COURT:  Thank you.

9            Mr. Mkhitarian, do you have

10  cross-examination of Ms. Beuzekom?

11           MR. MKHITARIAN:  Thank you, Your Honor.

12           THE COURT:  Mr. Mkhitarian.

13                  CROSS-EXAMINATION

14  BY MR. MKHITARIAN:

15     Q.    Now, is it Ms. Beuzekom?  Is that how you

16  pronounce it?

17     A.    Yes.

18     Q.    Ms. Beuzekom, did you ever have a chance to

19  meet Mr. Nissen prior to that phone call?

20     A.    No.

21     Q.    How about after that phone call?

22     A.    Did I ever meet him?  No.

23     Q.    How did you come to recognize the way he

24  looks?

25     A.    From the picture that was printed out that


*Discovery clearly shows al says this undercover is lying*

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

144

1  I had asked my captain for that day of the threat.

2       Q.   And was that printed from a driver's

3  license picture or something like that?

4       A.   Yes.

5       Q.   But you never actually saw Mr. Nissen in

6  person; is that correct?

7       A.   No.

8       Q.   Now, you mentioned that the call tone

9  escalated quickly.  Did I hear that correctly?

10      A.   Yes.

11      Q.   Did Mr. Nissen complain about his rights in

12 any part of that phone call?

13      A.   Not really to me.  I don't believe he did.

14      Q.   Was he complaining about the stop?

15      A.   Yes, he just said he needed to talk to a

16 supervisor.

17      Q.   And when he was -- and when you were asking

18 him why he needed to speak to somebody, is that when

19 you got the response?

20      A.   Yes.

21      Q.   And did you ever transfer him to a

22 supervisor?

23      A.   No.

24      Q.   Did he ever hash out his complaint with

25 you?


she clearly
stated
she handed
the call
over to
a supervisor



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

DEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   No.

2      Q.   Do you have the means to record a phone

3  call at your desk?

4      A.   No.

5      Q.   Do you have the means to, I guess, notify

6  someone to record a phone call or anything like that?

7      A.   I believe there is.  They since then have

8  requested a recorded line, but I don't know if it's

9  in place yet.

10     Q.   But you didn't have one at the time?

11     A.   No.

12     Q.   And when you mentioned that you had gone

13 and got someone else to talk to him, who did you go

14 get to talk to him?

15     A.   An officer.

16     Q.   And was that officer assigned to, I guess,

17 talk to escalated calls or was it just an officer

18 that you found in the office?

19     A.   He was in the office, in the squad room,

20 doing a report at the computer station.  So that's

21 who I went and got.

22     Q.   And that's not necessarily his job.  It's

23 just that you secured the nearest officer you could

24 find?

25     A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

146

1      Q.   Now, was Mr. Nissen complaining about

2   police in general during this phone call?

3      A.   He never got around to really exactly what

4   it was he was wanting.  He accepted to talk to a

5   supervisor.  So he didn't actually articulate to me

6   what his concerns were, what the problem was.

7      Q.   How long would you say the phone call was

8   in minutes, seconds, to the best of your knowledge?

9      A.   I would say maybe 30 to 45 seconds.

10      Q.   So basically he called, asked for a

11   supervisor, you asked him why, he threatened to shoot

12   you, and that was the end of the phone call?

13      A.   On my part.  I went and got the officer and

14   the officer finished the phone call.

15      Q.   Okay.  Were you -- was the phone on speaker

16   when the officer was talking to him?

17      A.   When Officer Cordova was speaking to him?

18      Q.   Right.

19      A.   I don't remember if he continued -- if it

20   was on speaker phone or if he talked directly.

21      Q.   Did you hear the contents of that

22   conversation at all?

23      A.   No, I didn't go back in the office, because

24   the phone is right up at the front window, so it was

25   kind of crowded.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

147

1          Q.    Just to the best of your knowledge, because
2      I know he wasn't speaking to you at that point, was
3      the officer you got threatened in any way?
4          A.    I don't know.
5          Q.    Now, once again, to the best of your
6      knowledge was Mr. Nissen anywhere near you when he
7      allegedly threatened you over the phone?
8          A.    He was on the phone.
9          Q.    Okay.  Could you see where he was?  Did you
10     know where he was?
11         A.    No.  It was just a phone call.
12         Q.    Did Mr. Nissen indicate that he was going
13     to come down and do it at a certain time?
14         A.    No.
15         Q.    Did he -- when you said that he threatened
16     to shoot you in the face, was that because you would
17     not get a supervisor or did he condition it on you
18     getting a supervisor?
19         A.    He just -- I felt like it was just because
20     I questioned him.  I was asking him questions.
21     That's why he got angry.
22         Q.    And so roughly -- it was a very short phone
23     call after you received that communication from him;
24     your communication with him ended after you received
25     the threat, and you got the other officer, you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

148

1    essentially stopped talking to him?

2         A.   Correct.

3         Q.   Did you talk to him at any time after that?

4         A.   No.

5              MR. MKHITARIAN:   If I may have a moment,

6    Your Honor?

7              THE COURT:   You may.

8    BY MR. MKHITARIAN:

9         Q.   Just to be clear, whenever someone calls

10   the New Mexico State Police phone number -- and I

11   believe the phone number that the United States said

12   was the 841-9256, is that the number that you know is

13   the State Police number?

14        A.   It is.

15        Q.   And there is an option to directly go to

16   you; is that correct?

17        A.   Yes.

18        Q.   And there is also one option to go to

19   dispatch?  Do I understand that correctly?

20        A.   Yes.

21        Q.   So the phone calls to dispatch, to the best

22   of your knowledge, are recorded, but you don't know

23   if any of the other phone lines are recorded?

24        A.   I don't believe they are, but I couldn't be

25   100 percent sure.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. MKHITARIAN:  Okay.  I'll pass the

2     witness.

3          THE COURT:  Thank you, Mr. Mkhitarian.

4          MR. MYSLIWIEC:  May we approach, Your

5     Honor?

6          THE COURT:  You may.

7          (The following proceedings were held at the

8     bench.)

9          MR. MYSLIWIEC:  So our information is

10    that -- I didn't ask about this because of your

11    404(b) ruling.  But our information is that

12    Ms. Beuzekom actually did come face-to-face with

13    Mr. Nissen on December 11 and what we have previously

14    talked in hearings about being the bomb scare date.

15    Now, I didn't ask about that on direct because of how

16    you ruled on 404(b).  But now that Mr. Mkhitarian

17    asked questions to the tune of, "Did you ever see him

18    after that, have you ever met him in person," I need

19    to give her a chance to correct her testimony so

20    she's not in a perjury situation.

21         MR. MKHITARIAN:  If she doesn't remember,

22    she doesn't remember.  I don't think that's a perjury

23    situation.  Of utmost concern here, I asked her, "To

24    the best of your knowledge."

25         THE COURT:  Let me ask you this.  Was there

*[handwritten in left margin:]* This lady is clearly fraudulent false Testimony & Hidden Evidence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    anything you could ask to clean up this record that

2    would be more satisfactory than letting Mr. Mysliwiec

3    do it?

4              MR. MKHITARIAN:  I could think about it.

5              THE COURT:  What question would you ask?

6              MR. MKHITARIAN:  I guess I could

7    respectfully ask Paul if this is a question he wants

8    me to ask that would clean it up.

9              MR. GLERIA:  Can I weigh in on this?

10             THE COURT:  Sure.

11             MR. GLERIA:  Mr. Mysliwiec asked the

12   witness to identify Mr. Nissen, and I didn't object

13   because it didn't rise to -- I didn't want to

14   interrupt the proceedings.  But I mean, that was a

15   reference to 404(b) information, because the lady had

16   only seen -- the witness had only seen the defendant

17   on December 11.  He should have never asked her to

18   identify the witness and then in the same examination

19   ask if she ever met him.

20             THE COURT:  Why don't we do this.  Why

21   don't you -- "You answered my question that you

22   hadn't seen Mr. Nissen, but you identified him, but

23   you did see him at whatever" -- you want to fill in

24   the blank and let it go at that.  That way it points

25   out why you're asking this question, and if --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. MKHITARIAN:  I just want to be careful,

2    Your Honor, if I ask her, "Did you identify him from

3    the picture.  You had also seen him, I guess one time

4    before."

5          MR. MYSLIWIEC:  I would say, "Did you also

6    see him when he came to visit the office on December

7    11?"  We don't talk about the flowers, we don't talk

8    about the bomb squad being called.

9          MR. GLERIA:  I think that's unnecessary

10   because she testified that she recognized him from

11   the picture.

12          THE COURT:  I don't want to get a witness

13   in trouble over this, and I think that's a perfectly

14   innocuous thing, and you get to ask the question to

15   clear it up.

16          MR. MKHITARIAN:  Your Honor, just in due

17   caution, I don't know, because the witness hasn't

18   been instructed to not say anything about a bomb

19   threat or anything like that.

20          THE COURT:  You lead her.  Just say, "This

21   is a yes-or-no question."  Just lead her.

22          MR. MKHITARIAN:  And the date is December

23   11?

24          MR. MYSLIWIEC:  Of the same year, 2018.

25          MR. GLERIA:  Can we take a break after

Wow even the judge is feeling this file!



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that?
 2               THE COURT:  Yeah, we'll take a break.
 3               (The following proceedings were held in
 4    open court.)
 5               THE COURT:  All right, Mr. Mkhitarian, do
 6    you have another question?
 7               MR. MKHITARIAN:  Just to clear something
 8    up.
 9    BY MR. MKHITARIAN:
10        Q.   Now, going back to the way you identified
11    Mr. Nissen, you had originally identified him by
12    driver's license photo; correct?
13        A.   Be able to see who he was, yes.
14        Q.   Now, a yes-or-no question.  Is it also true
15    that you did see Mr. Nissen at the New Mexico Police
16    station on December 11, yes or no?
17        A.   Did I see him on December 11?
18        Q.   Correct.  Did you see him in person, either
19    through video or in person, to the best of your
20    knowledge?  Did you, yourself, witness Mr. Nissen
21    there?
22        A.   I believe it was -- I'm not sure of the
23    date.
24        Q.   Okay.  But yes or no, did you also identify
25    him by seeing him in person?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Yes.

2           MR. MKHITARIAN:  No further questions.

3           THE COURT:  Thank you, Mr. Mkhitarian.

4           Mr. Mysliwiec, any redirect of --

5           MR. MYSLIWIEC:  No, sir.  Thank you.

6           THE COURT:  All right.  Ms. Beuzekom, you

7      may step down.

8           Is there any reason Ms. Beuzekom cannot be

9      excused from the proceedings, Mr. Mysliwiec?

10          MR. MYSLIWIEC:  No, sir.  Thank you.

11          THE COURT:  Mr. Mkhitarian, can

12     Ms. Beuzekom be excused from the proceedings?

13          MR. GLERIA:  Yes, Your Honor.

14          THE COURT:  All right.  You're excused from

15     the proceedings.  Thank you for your testimony.

16          All right.  I need to give Ms. Bean a

17     little bit of a break, so we're going to take a

18     15-minute break and then we're going to go about 25

19     minutes, and I'll try to get you out of here around

20     5:30.  But I'd like to keep us moving here so we do

21     what we committed to you and get this case to you in

22     two days.

23          So we're taking actually our second break

24     during the Government's presentation of its case, but

25     I want to remind you of a few things that are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   especially important.  Until the trial is completed,

2   you're not to discuss this case with anyone, whether

3   it's members of your family, people involved in the

4   trial, or anyone else.  And that includes your fellow

5   jurors.  If anyone approaches you and tries to

6   discuss the trial with you, please let me know about

7   it immediately.  Also, you must not read or listen to

8   any news reports of the trial.  Don't get on the

9   internet and do any research for purposes of this

10  case.  And finally, remember that you must not talk

11  about anything with any person who is involved in the

12  trial, even if it doesn't have anything to do with

13  the trial.

14          If you need to speak with me, simply give a

15  note to one of the court security officers or

16  Ms. Bevel or Ms. Wright.  I'll probably repeat these

17  before we go home tonight, but if I don't at any time

18  in our breaks, do keep them in mind each time we do

19  take a break.

20          All right.  We'll be in recess about 15

21  minutes, and then we'll work about another 25 and

22  then call it a day.

23          (The jury left the courtroom.)

24          THE COURT:  All right.  Anything we need to

25  discuss before we take our break?  Anything else I



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    can do for you?

2         MR. MYSLIWIEC:  I just want to let you

3    know, sir, we have Juan Cordova, who took the second

4    half of that phone call.  Then I plan to call Peter

5    Ubbelohde from the FBI.  It's already in evidence,

6    but to explain that Exhibit 8, which is the physical

7    phone, is indeed Mr. Nissen's phone and to read the

8    IEMI number off the back so that folks can see that

9    it matches the phone records.  It will be very quick.

10        THE COURT:  Anything else, Mr. Gleria?

11        MR. GLERIA:  No, Your Honor.

12        THE COURT:  All right.  We'll be in recess

13   about 15 minutes.

14        (The Court stood in recess.)

15        THE COURT:  All right.  We'll go back on

16   the record.  Anything we need to discuss before we

17   bring the jury in, Mr. Mysliwiec, Mr. Uballez?

18        MR. MYSLIWIEC:  No, sir.  We just have

19   those two witnesses left.  Mr. Uballez is going to do

20   Officer Cordova.  I don't know how many minutes, 10

21   minutes.  Peter Ubbelohde from the FBI is just to

22   match up the phone to the unique number we see on the

23   phone records; maybe five minutes on direct.

24        THE COURT:  Anything we need to discuss,

25   Mr. Gleria, Mr. Mkhitarian?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

156

1          MR. GLERIA:  No, Your Honor.

2          (The jury entered the courtroom.)

3          THE COURT:  All right.  Everyone be seated.

4          All right.  Does the Government have its

5     next witness or evidence?

6          MR. UBALLEZ:  Yes, Your Honor.  The United

7     States calls New Mexico State Police Officer Juan

8     Cordova.

9          THE COURT:  Mr. Cordova, if you'll come up

10    and stand next to the witness box on my right, your

11    left, before you're seated, my courtroom deputy,

12    Ms. Wright, will swear you in.

13                    JUAN CORDOVA,

14        after having been first duly sworn under oath,

15        was questioned, and testified as follows:

16          THE CLERK:  You may be seated.  Thank you.

17          THE COURT:  Mr. Cordova, Mr. Uballez.

18          MR. UBALLEZ:  Thank you, Your Honor.

19                  DIRECT EXAMINATION

20    BY MR. UBALLEZ:

21        Q.  Good afternoon.

22        A.  Good afternoon.

23        Q.  If you could please introduce yourself to

24    the jury and let them know where you work, in what

25    capacity.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    I'm Juan Cordova.  I work for the New
 2   Mexico State Police in Albuquerque.
 3        Q.    And what is your position with New Mexico
 4   State Police?
 5        A.    I investigate crimes against children.
 6        Q.    And are you a sworn law enforcement
 7   officer?
 8        A.    Yes, I am.
 9        Q.    How long have you been so?
10        A.    About five and a half years.
11        Q.    Any prior law enforcement experience?
12        A.    No.
13        Q.    And so where -- what region are you
14   assigned to?
15        A.    District 5, which encompasses Albuquerque
16   metro and the surrounding areas.
17        Q.    And what shift?  We've been talking about
18   an incident in November of 2018.  What shift were you
19   working back then?
20        A.    Day shift.
21        Q.    What are the hours of day shift?
22        A.    7:00 to 4:00.
23        Q.    So I'm going to direct your attention to a
24   specific day, the 26th of that month.  Do you recall
25   that date?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Yes, I do.

2      Q.   And do you recall an incident that involved

3 Mr. Nissen?

4      A.   Yes, I do.

5      Q.   And where were you when that incident came

6 up?

7      A.   I was in the squad room in Albuquerque at

8 the District 5 office.

9      Q.   And who came to you to bring you that

10 issue?

11      A.   Barbara Beuzekom.

12      Q.   And who is she?

13      A.   She's an administrative assistant.

14      Q.   And as a result of that interaction, did

15 you speak with Mr. Nissen?

16      A.   Yes, I did.

17      Q.   Did you call him yourself, or did you

18 receive the call?

19      A.   When I walked into Ms. Beuzekom's office,

20 Mr. Nissen was on speaker phone.

21      Q.   Did you observe the number from which he

22 was calling?

23      A.   Yes, I did.

24      Q.   On the phone.  Do you recall that, off the

25 top of your head?



Barbara's statement doesn't match this period.



DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1       A.   I don't recall it off the top of my head.

 2       Q.   Did you produce a report after your

 3  interaction with Mr. Nissen?

 4       A.   Yes, I did.

 5       Q.   Was that closer in time to the actual

 6  events, November 26, 2018?

 7       A.   Yes.

 8       Q.   And if you -- and did you record on that

 9  report the specific number that he was calling from?

10       A.   Yes, I did.

11       Q.   And would reviewing a copy of that report

12  help refresh your recollection as to the specific

13  phone number?

14       A.   Yes.

15            MR. UBALLEZ:  If I may approach, Your

16  Honor?

17            THE COURT:  You may.

18  BY MR. UBALLEZ:

19       Q.   I'm going to ask you to review this report

20  and let me know once you're done reviewing it for

21  that phone number.

22            Did that help refresh your recollection?

23       A.   Yes, it did.

24       Q.   What is that?

25       A.   (505) 819-1806.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

160

```
 1              MR. UBALLEZ:  If I may approach the witness
 2     again?
 3              THE COURT:  You may.
 4     BY MR. UBALLEZ:
 5        Q.   Was that the number that you observed on
 6     the screen on the phone saying what number the call
 7     was coming from?
 8        A.   Yes.
 9        Q.   Was there also caller ID?
10        A.   Yes.
11        Q.   What did that show?
12        A.   Michael Nissen.
13        Q.   I'm going to play for you what's been
14     marked as and admitted United States Exhibit 4.
15              MR. UBALLEZ:  And Your Honor, I'm going to
16     put on the screen for the jury what we've marked as
17     United States Exhibit 4-A, a demonstrative exhibit.
18        Q.   And I want you to tell me who you hear in
19     this audio.
20              (Audio played.)
21        Q.   There were two sets of hellos there.  Who
22     is the first?
23        A.   The first was me.  And the second was
24     Mr. Nissen.
25              (Audio played.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Was that the call that you took on November
2  26, 2018, following your conversation with Barbara?
3    A.   Yes.
4    Q.   And those two individuals as you previously
5  identified were yourself and Mr. Nissen?
6    A.   Yes.
7    Q.   During the course of that phone call --
8  well, how was that phone call recorded?
9    A.   It's recorded on my digital recorder that's
10 issued to me.
11   Q.   Okay.  So it wasn't through an automatic
12 system at the office?
13   A.   No.
14   Q.   And had you pulled over Mr. Nissen prior to
15 talking to him on November 26, 2018?
16   A.   No.
17   Q.   You're, in fact, in a different type of
18 investigation entirely; correct?
19   A.   Yes.
20        MR. UBALLEZ:  If I may have a moment, Your
21 Honor?
22        THE COURT:  You may.
23 BY MR. UBALLEZ:
24   Q.   And would you characterize anything that
25 Mr. Nissen told you during that recorded phone call

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    as a threat to you?

2         A.   No.

3              MR. UBALLEZ:  I'll pass the witness.

4              THE COURT:  All right.  Thank you,

5    Mr. Uballez.

6              Mr. Gleria, do you have --

7              MR. GLERIA:  Is it okay, Judge?

8              THE COURT:  Sure.  Do you have

9    cross-examination of Mr. Cordova?

10                      CROSS-EXAMINATION

11   BY MR. GLERIA:

12        Q.   Is it Sergeant Cordova?

13        A.   No, sir, it's officer.

14        Q.   Officer Cordova?

15        A.   Yes, sir.

16        Q.   Officer Cordova, how is it that you came to

17   speak with Mr. Nissen on the phone?

18        A.   I was in the squad room, and Barbara

19   Beuzekom came into the squad room, and asked me to

20   take over this phone call that she was on.

21        Q.   So the same phone call is unrecorded when

22   she takes it; then suddenly, when you take the same

23   call on the same line, now it's recorded?

24        A.   Whenever I have a conversation with

25   somebody, I turn on my own personal digital
```

lies
false
testimony
never
materializd



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   recording.  So my recording begins when I start

2   recording that piece of the conversation.

3        Q.   What did Barbara Beuzekom tell you?  "Take

4   this call"?

5        A.   She came into the squad room.  She stated

6   to me that there was somebody on the phone that was

7   being -- and I don't recall specifically exactly the

8   wording that she said, but something to the effect

9   that he was being combative or he was being hostile,

10  and she appeared to be upset over this phone call.

11       Q.   When you say "upset," why don't you

12  describe that.  Was she crying?  Was she shaking?

13  How was she upset?

14       A.   So Barbara and -- I talk to Barbara every

15  day.

16       Q.   I just asked you how she was upset.  I

17  didn't ask you how --

18       A.   She's a very bubbly person.  She's always

19  smiling and laughing.  And when she came in, her

20  demeanor was different on that day.  She was not

21  smiling.  She had a very blank stare, a very serious

22  look to her, which was different than what she

23  normally is.

24       Q.   I just find it incredible that a simple

25  phone call --



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

164

1          MR. UBALLEZ:  Objection.

2          THE COURT:  Well, let's see if he asks the

3     question.

4          MR. GLERIA:  It is a question, if you allow

5     me to ask it.

6          THE COURT:  Hold on.  Just ask the

7     question.

8     BY MR. GLERIA:

9          Q.  I find it incredible that a single phone

10    call can be to a police station or a police

11    dispatcher, or whatever it is, can be partially

12    unrecorded, then recorded.  Is that how it is at your

13    station?

14         A.  I don't know which phones are recorded in

15    the station.  I know that dispatch phones are and so

16    forth.  But as far as what's recorded at the front

17    desk, just citizens calling in to the main number, I

18    don't know what the issue is with the recording

19    there.  I just know that when I have contact with

20    citizens, I use my own digital recorder and record

21    that.

22         Q.  You're using a personal phone?

23         A.  It was a speaker phone in the office.  It's

24    my own personal digital recorder that's issued to me.

25         Q.  Is there a system in place now to record

*(handwritten margin note)* He stated his own digital call recorder now its same other? phone that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    calls?
2         A.   I don't know that, sir.
3         Q.   Now, when you spoke to Mr. Nissen -- I
4    mean, listening to the recording that we all heard,
5    he was complaining about his rights being violated;
6    is that right?
7         A.   Yes, sir.
8         Q.   He didn't threaten you, did he?
9         A.   No, he didn't.
10        Q.   Okay.  And he didn't use any -- much
11   profanity; right?
12        A.   He did.
13        Q.   One time?
14        A.   Correct.
15        Q.   Okay.  And you didn't take the call
16   seriously because you hung up on him; isn't that
17   right?
18        A.   I did hang up on him.
19        Q.   You hung up on him.  You didn't take it
20   seriously.  You kept asking, "How can I help you?"
21   Right?
22        A.    Once.  And what I stated to him was, "If
23   you continue to cuss at me, I'm going to hang up the
24   phone."  He starts calling us thugs, and so forth.
25   That's just -- I hung up the phone on him.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   You didn't think it was a serious call?

2    A.   I hung up on him when he started cussing

3  and saying -- calling me -- saying the police are

4  thugs.

5    Q.   Okay.  Well, he cussed one time.  I mean,

6  this is one of the more lengthy recordings that we

7  have.  It's like four pages on the transcript.  So he

8  said the word "fuck" one time; right?  That's it.  He

9  didn't repeat it over and over; right?

10    A.   Correct.  He said it one time.

11    Q.   Okay.  And you kept asking toward the end,

12  "What is it -- why are you calling?"  Right?

13    A.   Yes.

14    Q.   "What can I do for you?"  And then you hung

15  up; right?

16    A.   Yes.

17    Q.   Isn't it fair to say that you didn't take

18  this call seriously; right?

19    A.   No, that's not fair to say.

20    Q.   That's not fair?

21    A.   No.

22    Q.   Did you contact some other higher-up at

23  your -- in the police station to look into this?

24    A.   Yes, I did.

25    Q.   You did?  Who did you contact?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



DEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   I researched if anybody else had contact
2 with this person, and learned that another officer
3 did have contact with this person, and I added a
4 supplemental to their -- to his report, and I learned
5 that there was ongoing involvement with this person
6 with regards to the other officer.
7      Q.   Okay.  And you don't know where Mr. Nissen
8 was; isn't that right?
9      A.   During the phone call, sir?
10      Q.   Yes.
11      A.   No, I did not.
12      Q.   He separated -- it's a phone call; right?
13 I mean, he's in one place, you're at your office?
14      A.   Yes, sir.
15      Q.   And the main message that he had was that
16 he got stopped for no good reason; isn't that right?
17 I mean, isn't that what he said repeatedly?
18      A.   Yes.
19      Q.   One page after another on this transcript?
20      A.   Yes.
21      Q.   Didn't he tell you, quote, "What I'm trying
22 to do is educate you guys because you can't just pull
23 people over for no God good reason"?
24      A.   Yes, that is what he said.
25      Q.   Okay.  And he also referenced his -- the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

168

1   violation of his constitutional rights.  Isn't that

2   also something he said more than once?

3        A.   I believe so.

4        Q.   And then he complained about having to go

5   to court to prove his innocence.  So you heard the

6   call; is that right?

7        A.   Yes.

8        Q.   There's nothing threatening about it.

9        A.   He didn't threaten me, sir.

10            MR. UBALLEZ:  Okay.  If I could just have a

11   moment, Your Honor?

12            THE COURT:  You may.

13            MR. GLERIA:  No further questions.

14            THE COURT:  Thank you, Mr. Gleria.

15            Mr. Uballez, do you have redirect of Mr.

16   Cordova?

17                   REDIRECT EXAMINATION

18   BY MR. UBALLEZ:

19        Q.   Why did you take this call?

20        A.   I took this call because I was on duty and

21   I was present, and I was the only officer, I believe,

22   that was immediately available in the squad room.

23        Q.   When you asked Mr. Nissen what you could do

24   to help him, did that come from a genuine interest in

25   how you could help him?


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Yes.

2      Q.   When you're describing Barbara, you were

3  about to say something about interacting with her

4  every day.  I'd like you to complete that?

5      A.   My interaction with Barbara -- she's a very

6  bubbly person.  She's always smiling, and that's

7  generally -- that's her character.  She's always

8  laughing and just smiling, and she's generally happy.

9  And my interaction that day was different, in that

10  when she came in, I observed that she had a very

11  blank stare about her, she had a very serious

12  demeanor about her, and she was coming in

13  specifically wanting help.  She looked to me that she

14  was in distress, that something was going on,

15  different than my normal interaction with her.

16      Q.   What did she tell you?

17      A.   She stated to me that there was a person on

18  the phone that was becoming combative with her.  And

19  I don't want to use the word "combative," but that's

20  from -- what I remember, that's what she was saying,

21  that this person was upset, was becoming combative

22  with her, and he threatened to shoot her in the head.

23          MR. UBALLEZ:  If I may have a moment, Your

24  Honor?

25          THE COURT:  You may.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**DEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    MR. UBALLEZ:  No further questions.

2    THE COURT:  Thank you, Mr. Uballez.

3    Anything else, Mr. Gleria?

4    MR. GLERIA:  No, Your Honor.

5    THE COURT:  All right.  Mr. Cordova, you

6  may step down.

7    Is there any reason that Mr. Cordova cannot

8  be excused from the proceedings, Mr. Uballez?

9    MR. UBALLEZ:  No, Your Honor.

10    THE COURT:  Mr. Gleria, can he be excused?

11    MR. GLERIA:  Yes, Your Honor.

12    THE COURT:  All right.  You're excused from

13  the proceedings.  Thank you for your testimony.

14    Well, what do you think?

15    MR. MYSLIWIEC:  Very quick witness.  Last

16  witness.

17    THE COURT:  How quick?

18    MR. MYSLIWIEC:  I need him to read a number

19  off the back of this phone.

20    THE COURT:  All right.

21    MR. MYSLIWIEC:  The United States calls

22  Peter Ubbelohde of the FBI.

23    THE COURT:  Mr. Ubbelohde, if you'll raise

24  your right hand, before you're seated, Ms. Wright

25  will swear you in.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           PETER UBBELOHDE,

2      after having been first duly sworn under oath,

3      was questioned, and testified as follows:

4           THE CLERK:  Thank you.  Please be seated.

5           THE COURT:  Mr. Ubbelohde, Mr. Mysliwiec.

6           DIRECT EXAMINATION

7  BY MR. MYSLIWIEC:

8      Q.   Special Agent Ubbelohde, we're going to --

9  it is after 5:00 p.m., so we're going to narrow it

10 down.  Can you confirm that you're an FBI special

11 agent?

12     A.   I can.

13     Q.   And are you, in fact, the case agent on

14 this investigation?

15     A.   I am.

16     Q.   And does that mean that you managed the

17 investigation and that you participate in other

18 officers doing their bits and pieces?

19     A.   Yes, it does.

20     Q.   Through being a case agent, did you come to

21 obtain a phone from Mr. Nissen?

22     A.   Yes, I did.

23     Q.   And did he agree with you that it is his

24 phone that you obtained from him?

25     A.   I don't know that he direct -- New Mexico

*Handwritten margin note:* Blacks law Definition about F.B.I



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

172

1   State Police had his phone and some personal

2   briefcase items when they detained him.  They gave it

3   to me.  I believe he confirmed the bag was his, and I

4   want to say the phone was inside the bag.

5        Q.   Okay.  Without any further details on all

6   that, it's your belief that I'm holding in my hand

7   Mr. Nissen's phone that I got out of a bag that's in

8   evidence as Government's Exhibit 8?

9        A.   Yes.

10            MR. MYSLIWIEC:  And may I approach, Your

11   Honor?

12            THE COURT:  You may.

13   BY MR. MYSLIWIEC:

14        Q.   I'm going to hand you Government's Exhibit

15   8.  Do you see a number on there, even though it's

16   very faint and small, called an IEMI number?

17        A.   IMEI?

18        Q.   Yes.

19        A.   Yes.

20        Q.   And I know this is also very small, but can

21   you see whether -- I'll let Alex do that part.  Can

22   you see whether the number on the back of the

23   physical phone you're holding right now -- let's go

24   to the subscriber page -- matches the corresponding

25   number on the subscriber page from T-Mobile, the one

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    ending in 12?

2         A.   Yes, they match.

3         Q.   And you were here when the T-Mobile

4    representative said the number on the call record is

5    the same except the last digit is replaced with a

6    zero?

7         A.   I was.

8         Q.   Oh, and then when we go to the call record,

9    do you see in the top few phone calls some city

10   names, in the third column from the right?

11        A.   Yes, I do.

12        Q.   First tower city.  Just because the jury is

13   from all over, can you confirm that Edgewood is

14   further east than Tijeras?

15        A.   I can.

16        Q.   And that Tijeras is further east than

17   Bernalillo east?

18        A.   Yes.

19        Q.   And that Bernalillo east is further east

20   than Albuquerque?

21        A.   It is.

22        Q.   So in this sequence of phone calls, does

23   this record represent a person who is traveling west

24   making these phone calls?

25        A.   That would be the assumption based on the

why doesn't this go east to plano TX?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    different towers.

2        Q.   Don't assume, but based on what you know

3    about the geography of New Mexico and based on what

4    you know on the timing listed on these phone calls

5    and the city, is each phone call successively west of

6    the phone call before, until we get to Albuquerque?

7        A.   Yes.

8            MR. MYSLIWIEC:  I'll pass the witness, Your

9    Honor.

10           THE COURT:  All right.  Thank you,

11   Mr. Mysliwiec.

12           Mr. Gleria, any cross-examination of

13   Mr. Ubbelohde?

14           MR. GLERIA:  No, Your Honor.

15           THE COURT:  All right, Mr. Ubbelohde, you

16   may step down.

17           MR. MYSLIWIEC:  And I'll retrieve Exhibit 8

18   from him.

19           THE COURT:  Thank you for your testimony.

20           MR. MYSLIWIEC:  Your Honor, for evidence, I

21   just want to make sure that Exhibit 6, a dictionary

22   definition, and Exhibit 7, some printed-out song

23   lyrics, are in evidence, I think without objection.

24           THE COURT:  That's true.  Correct, Mr.

25   Gleria?  Those are in.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      MR. GLERIA:  Yes, Your Honor.

2      THE COURT:  Those are in evidence.

3      MR. MYSLIWIEC:  That's what we have, Your

4  Honor.  The Government rests.

5      THE COURT:  So the Government rests.

6      Why don't we stop for the evening, and

7  we'll come back tomorrow.

8      Let me talk to the attorneys real quickly

9  here, and then I'll let everybody go.

10      While they're coming up, I'm going to

11  remind you of a few things that are especially

12  important, because we are taking our first break for

13  the evening here.

14      Until the trial is completed, you're not to

15  discuss the case with anyone, whether it's members of

16  your family, people involved in the trial, or anyone

17  else, and that includes your fellow jurors.  So if

18  you go home and you've become good friends, don't get

19  on the internet and talk to each other about this

20  case.  Just go home and relax tonight.  If anyone

21  approaches you and tries to discuss the trial with

22  you, please let me know about it immediately.

23      Also, you must not read or listen to any

24  news records of the trial.  Again, don't get on the

25  internet and do any research for purposes of this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    case.  And finally, remember you must not talk about

2    anything with any person who is involved in the

3    trial, even if it doesn't have anything to do with

4    the trial.

5              If you need to speak with me, simply give a

6    note to one of the court security officers,

7    Ms. Bevel, Ms. Wright.

8              I'll try not to repeat these every time we

9    take a break, but we are moving along pretty quickly

10   so I probably will, as we go to different stages,

11   keep reminding you of these, so we bring this case in

12   for a good landing.

13             Let me speak to the attorneys just a moment

14   here to try to decide on scheduling in the morning.

15             (The following proceedings were held at the

16   bench.)

17             THE COURT:  Do y'all need to do anything

18   before you put on your case, or will you rest before

19   the jury?

20             MR. GLERIA:  No.

21             THE COURT:  All right.  So are these jury

22   instructions in good enough shape?  I added an

23   interstate commerce instruction.  We didn't have one

24   in there, and the advisory notes to 875 suggested we

25   use one, so I used the one there.  Also, there is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  that instruction about not considering anybody else

2  might be guilty of a crime.  I just don't think those

3  paragraphs are very appropriate, so I pulled them

4  out.  If somebody thinks -- I'm afraid if I give it,

5  it might cause them to wonder.

6          MR. GLERIA:  I agree.

7          MR. MYSLIWIEC:  That's usually -- it's an

8  unusual fact pattern to be clean of one defendant.

9          MR. MYSLIWIEC:  One thing I'd like to do,

10  whenever the Court thinks is the best time, but

11  outside the presence of the jury, is if we could

12  inquire of Mr. Gleria on the record in a way that Mr.

13  Nissen can hear to confirm that they've consulted and

14  it's his choice not to testify, even though he has an

15  absolute right if he wants to.  I don't want him to

16  be unfairly saying that "My lawyer wouldn't let me."

17  I want to protect the record.

18          THE COURT:  We'll do that maybe first thing

19  in the morning.

20          MR. GLERIA:  Thank you.

21          THE COURT:  Should I just have them all

22  back here at 8:30, and we'll try to get started at

23  8:30, or build in 15 minutes?

24          MR. MYSLIWIEC:  I have one thing to bring

25  up, so maybe 8:45 or 9:00.  I will absolutely be here

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

178

```
1    at 8:30.
2              THE COURT:  What do you think?  8:45 or
3    9:00?  I don't mind bringing them back at 8:45.  And
4    that way --
5              MR. MYSLIWIEC:  Sure.
6              THE COURT:  -- if they have to wait, I'll
7    tell them they have to wait.
8              MR. MYSLIWIEC:  My thing is not long.  I
9    have one thing to bring up.
10             MR. GLERIA:  Is there something else?
11             THE COURT:  I'll give you a set of jury
12   instructions.  Take them home and if you see
13   anything, shoot me an email.  Tell me if you have any
14   objections or thoughts or suggestions or anything.
15   But if you'll wait a minute here, we'll try to give
16   you a set before you leave.
17             MR. MYSLIWIEC:  Yes, sir.
18             THE COURT:  All right.  Let me talk to them
19   and get them out of here then.
20             (The following proceedings were held in
21   open court.)
22             THE COURT:  I'm going to let you go.  And
23   normally I'd bring you back about 8:30, but I think
24   I'm going to have about 15 minutes of work.  So if
25   you will be in the jury room at 8:45, that will give
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    me about 15 minutes to work with the lawyers and the

2    parties.  And that way, you won't just be waiting.

3    There is a possibility you may have to wait a little

4    bit, but I'm estimating that I need about 15 minutes

5    with them in the morning.  So if you'd be in the jury

6    room about 8:45, ready to go.  Ms. Wright and

7    Ms. Bevel will have some goodies in there for you, so

8    it won't be wasted time if you come a little early.

9    But try to be there about 8:45, and I'll try to have

10   my work done and ready for you at that time.

11            Thank you for your hard work.  Be safe on

12   your travels.  It's been cloudy back over there.

13   It's windy.  But I guess we've got our afternoon

14   monsoons.

15            All right.  Y'all have a good afternoon.

16   Thank you for your hard work.

17            (The jury left the courtroom.)

18            THE COURT:  All right.  Anything we need to

19   discuss before we take our break?  Anything else I

20   can do for you?

21            MR. GLERIA:  Yes, Your Honor.

22            THE COURT:  Yeah.

23            MR. GLERIA:  I would like to leave most of

24   my stuff.

25            THE COURT:  You can leave it here.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

180

1          MR. GLERIA:  I'll wait for the jury

2    instructions.

3          THE COURT:  Everybody is gone.  Court

4    security is ready to go home.  We're done.

5          MR. MYSLIWIEC:  One thing I'll ask, Your

6    Honor, is if the defense wants to do their Rule 29

7    motion tomorrow morning.  It's pretty late today.

8          THE COURT:  Yes, we'll do it tomorrow, if

9    you want to.  If you don't have a motion, we'll take

10   up whatever else.  Anything else, Mr. Mysliwiec?

11         MR. MYSLIWIEC:  No, sir.  Thank you.

12         THE COURT:  Anything else, Mr. Gleria?

13         MR. GLERIA:  No, Your Honor.

14         THE COURT:  All right.  Y'all have a good

15   evening.  I appreciate your hard work.  Would y'all

16   just wait to pick up these copies?  We'll hand them

17   to you, so you can take them home with you.

18         Mr. Gleria, would you wait, so we can give

19   you a copy of the jury instructions?

20         MR. GLERIA:  I'm waiting.

21         (The Court stood in recess.)

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   UNITED STATES OF AMERICA

 2   STATE OF NEW MEXICO

 3

 4                 C-E-R-T-I-F-I-C-A-T-E

 5        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 6   Official Court Reporter for the State of New Mexico,

 7   do hereby certify that the foregoing pages constitute

 8   a true transcript of proceedings had before the said

 9   Court, held in the District of New Mexico, in the

10   matter therein stated.

11        In testimony whereof, I have hereunto set my

12   hand on this 19th day of November, 2019.

13

14        _____

15        Jennifer Bean, FAPR, RMR-RDR-CCR, CRR
          Certified Realtime Reporter
16        United States Court Reporter
          NM Certified Court Reporter #94
17        333 Lomas, Northwest
          Albuquerque, New Mexico 87102
18        Phone:  (505) 348-2283
          Fax: (505) 843-9492
19        License expires:  12/31/19

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

181

<pre>
 1                THE UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF NEW MEXICO

 3       UNITED STATES OF AMERICA,

 4                      Plaintiff,

 5            vs.              NO:  1:19-CR-00077-JB

 6       MICHAEL NISSEN,

 7                      Defendant.

 8

 9                           DAY 2

10         Transcript of Trial Proceedings before The

11       Honorable James O. Browning, United States District

12       Judge, Albuquerque, Bernalillo County, New Mexico,

13       commencing on August 7, 2019.

14       For the Plaintiff:   Mr. Paul Mysliwiec
                              Mr. Alexander Uballez
15
         For the Defendant:   Mr. Kenneth Gleria
16                            Mr. Jake Mkhitarian

17

18

19

20
                   Jennifer Bean, FAPR, RDR, CRR, RMR, CCR
21                     Certified Realtime Reporter
                      United States Court Reporter
22                            NM CCR #94
                          333 Lomas, Northwest
23                    Albuquerque, New Mexico 87102

24

25
</pre>

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    THE COURT:  All right.  Good morning,

2    everyone.  I appreciate everybody making themselves

3    available to me this morning.  Does Mr. Nissen have

4    anything he needs to raise before we bring the jury

5    in?

6        MR. MKHITARIAN:  No, Your Honor.  His

7    family brought him a different shirt today, didn't

8    want him sitting in black today.  I would just ask

9    that he be allowed to change into that shirt.

10       THE COURT:  All right.  So when the jury

11   comes in, Mr. Nissen will rest?

12       MR. GLERIA:  Yes, Your Honor.

13       MR. MKHITARIAN:  Yes, Your Honor.

14       THE COURT:  All right.  Well, let's talk

15   about jury instructions.  What -- does anybody have

16   any?  The ones that were passed out to you should

17   have had a different cover sheet.  It should have

18   said "Court's second proposed jury instructions."

19   Are there any changes to them?

20       MR. GLERIA:  We have the Court's first.

21       THE COURT:  It says first, but it's

22   actually the second.  It just didn't have the right

23   cover sheet on it.  So the ones that you got last

24   night, they say first, but it should say second,

25   because, remember, you got one in the morning.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. GLERIA:  On the internet?

2          THE COURT:  Well, we handed it to you when

3    you came in in the morning yesterday, so that was the

4    first set.  And then we revised it.  Remember, we

5    talked about taking out the expert?

6          MR. GLERIA:  Yes, Your Honor.

7          THE COURT:  So we made changes throughout

8    the day.  So at the end of the day, this is what I

9    handed out.  So it says Court's first, but it

10   actually reflects that we took out some paragraphs

11   of, don't consider the guilt of other people, things

12   like that.  We changed "police."  We made changes

13   throughout the day, so this was the one that was

14   resolved.  It will be clear on the CM/ECF.  But the

15   one you got -- do you have any changes,

16   Mr. Mysliwiec?

17         MR. MYSLIWIEC:  No, everything we had has

18   already been incorporated.  Thank you.

19         THE COURT:  How about you, Mr. Gleria?  Do

20   you have any changes?  Mr. Mkhitarian, do you have

21   any changes to the set that was handed out last

22   night?

23         MR. MKHITARIAN:  No, Your Honor.

24         THE COURT:  All right.  So other than the

25   cover sheet, that will be the jury instructions I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

184

```
1    give.  Does anybody need to make any -- besides

2    suggestions, comments, criticism, anybody need to

3    make any objections for the record?

4              MR. MYSLIWIEC:  I don't know if I have

5    objections, but the two things I wanted -- three

6    things I wanted to talk about.  One was if the

7    defense wanted to make a Rule 29 motion, I figure

8    before the jury gets lined up, this may be the best

9    time to do that, so the jury doesn't have to wait on

10   us doing that at the bench in some less ideal way.

11             The next thing is, I would like for the

12   Court to inquire on the record of counsel about

13   Mr. Nissen's knowing and voluntary decision not to

14   testify.

15             THE COURT:  All right.

16             MR. MYSLIWIEC:  Then the third thing is,

17   whenever the Court wants to hear about it, I'd like

18   to preview some concerns that I have based on lines

19   of questioning that the defense has pursued during

20   the presentation of evidence yesterday that I hope

21   won't mature into illegal arguments contrary to the

22   judge's instruction to be made during closing

23   argument.

24             THE COURT:  All right.  Well, anything you

25   want to do on a Rule 29, or do you want to go
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    straight to the colloquy with Mr. Nissen?

2          MR. MKHITARIAN:  I agree with the United

3    States.  I think since we haven't officially

4    rested -- well, we haven't rested yet.

5          MR. GLERIA:  They haven't rested.

6          THE COURT:  They did rest yesterday.

7          MR. GLERIA:  Okay.

8          MR. MKHITARIAN:  So I agree with Paul.  I

9    do believe that hashing out Mr. Nissen's right to

10   testify would probably be appropriate first, and then

11   the defense would rest and then --

12         MR. GLERIA:  No, we need to do the Rule 29.

13         MR. MKHITARIAN:  Then the Rule 29.  Or the

14   Rule 29 first, then Mr. Nissen's colloquy with regard

15   to his right to testify, and then we would rest.

16         THE COURT:  If you're going to make a Rule

17   29, why don't you proceed to do it?

18         MR. MKHITARIAN:  Thank you, Your Honor.

19   With regard to the previous motions that were filed,

20   specifically the First Amendment motion, Your Honor,

21   I do believe there has been testimony by the officers

22   that they were trained on this type of political

23   speech, that they knew about it, that they agreed

24   that Mr. Nissen was making political arguments with

25   regard to their jurisdiction over him.  And with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

186

1    respect to that, Your Honor, with them recognizing

2    that it is an actual, legitimate political stance

3    that they commonly deal with, and Mr. Nissen calling

4    to complain, citing various laws, his First

5    Amendment, Second Amendment, Fourth Amendment rights

6    that were violated, him exaggerating and ranting

7    about the consequences regarding future violations,

8    you know, threats made in regard to future

9    violations, Your Honor, not unlike threats that are

10   made every day:  If you trespass on my property,

11   you'll be shot.  If you break into my house, you

12   know, I will kill you.  Things like these, threats

13   like these, Your Honor, are made every day and are

14   protected by free speech.

15          The fact that he didn't call with regard to

16   make a threat only, the fact that he was making

17   political statements, was trying to educate them and

18   exercising his right to educate them with regard to

19   what he believes their duties were, Your Honor, I

20   think at a bare minimum would allow for an acquittal

21   of Count 1 with regard to the conditional threat to

22   pigs, Your Honor.  No specific person was mentioned.

23   It was conditioned on future rights being violated,

24   and I would argue that my previous motion entered in

25   the Court's records that we have referred to decide

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

True
Threat
Definition

of written
statutory
law

1   today should at least dismiss Count 1, that being for

2   the reason of being a political argument, not

3   serious, conditioned on future actions, and clearly

4   exaggerated.  So I would renew that motion for at

5   least Count 1, Your Honor.

6          THE COURT:  All right.  Thank you,

7   Mr. Mkhitarian.

8          Mr. Mysliwiec, do you have a response to

9   the Rule 29 motion?

10         MR. MYSLIWIEC:  We do, Your Honor.  And

11   I'll try to make it brief, because I know the Court

12   has been paying close attention to the evidence and

13   knows the law very well.

14         The first element, knowingly transmitted a

15   communication containing a threat to injure the

16   person of another.  Mr. Nissen dialed the phone.

17   That's an intentional act.  We have the phone records

18   in that show all the calls to New Mexico State Police

19   were outgoing calls from Mr. Nissen's phone.  We have

20   the evidence that that was indeed Mr. Nissen's phone,

21   that it was his phone number, that the unique factory

22   identifier for the phone showed that it was his.  So

23   knowingly transmitted communication.  The jury can

24   reasonably find that and indeed should.

25         Containing a threat to injure the person of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    another.  "I'm going to put a bullet in that fucking

2    pig's head.  I'm going to pull out my revolver and

3    put that motherfucker drop dead, and I'm going to

4    shoot you in the fucking face," are all true threats.

5    We know they're true threats because we look at the

6    Court's instruction for what a true threat is.  It's

7    a serious statement expressing intent to instill fear

8    which, under the circumstances, would cause

9    apprehension in a reasonable person as distinguished

10   from mere political argument, idle talk,

11   exaggeration, or something said in a joking manner.

12   There is nothing joking or idle about the threats by

13   an armed man to shoot people in the face or put

14   bullets in their head.  He may or may not

15   subjectively have intended to do those things, but on

16   their face, they're a true threat that goes to the

17   jury.

18          Second element.  Mr. Nissen transmitted the

19   communication with the intent to make a threat or

20   with knowledge that the communication will be viewed

21   as a threat.  In reverse order, knowledge means

22   something done voluntarily and intentionally, not by

23   accident or mistake.  This is not a miscommunication

24   case.  This is not a case like Elonis where someone

25   posted song lyrics that a recipient took in a




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    threatening manner but may or may not have been

2    intended that way.  These statements were conveyed

3    directly, and Mr. Nissen conveyed them knowing that

4    any reasonable person who heard them would take them

5    as a threat.

6            Additionally, he subjectively intended them

7    as a threat.  When you look at the evidence in this

8    case, Mr. Nissen was upset that he had been

9    traffic-stopped.  He was upset that he had been

10   written a citation.  He was upset that he had a court

11   date as a result of having been written a citation.

12   And so the only motive that makes sense for him to

13   have made these threats is in response to that police

14   action, and in an attempt to avoid the legal

15   consequences that he thought he shouldn't be subject

16   to, because he believes State Police don't have any

17   right to write him tickets or haul him into court.

18   He was very upset, you heard, on the recorded call

19   with Juan Cordova, Exhibit 4, that he had a court

20   date, and he was very upset that he felt that he

21   would have to go to court and prove his innocence,

22   when he didn't think the guy had the right to draft

23   him a ticket in the first place.  So that goes to the

24   jury, as well.

25           Third, that a communication was transmitted



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

190

1   in interstate commerce.  We have the testimony of

2   Kenneth Lecesne from T-Mobile matching up the phone

3   to the phone numbers, to the phone call log, to show

4   that each of the calls in question -- the second call

5   to Victoria Gurule on November 24 and the call to

6   Barbara Beuzekom that later got transferred to Juan

7   Cordova on November 26 of 2018 -- both went through

8   switch Tango Tango Tango Alpha Sierra 005, which is

9   in Plano, Texas.  You have Kenneth LeCesne's

10  testimony that the calls could not have been

11  completed or transmitted without the switch, and

12  therefore, that each of those calls went from New

13  Mexico to the switch in Plano, Texas, back to New

14  Mexico to be received by Victoria on November 2 and

15  Barbara on November 26.  And that's enough to go to

16  the jury on the third element for each of the two

17  counts.

18          So I don't want to take up the Court's

19  time.  The Court is going to hear a longer version of

20  all this in closing arguments, too.  But subject to

21  the Court's questions, that's why I think the

22  defendant's Rule 29 motion must fail as to each of

23  the two counts.

24          THE COURT:  All right.  Thank you,

25  Mr. Mysliwiec.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Mr. Mkhitarian, do you have anything

2    further on the Rule 29?

3        MR. MKHITARIAN:  No, Your Honor, nothing

4    outside of the motion that's already been filed.

5        THE COURT:  Well, I will try to give you

6    orders, opinions on those two motions.  We left them

7    for this moment in this trial.  I don't know this

8    area of the law extremely well, but I think the

9    pattern instructions reflect what the Tenth Circuit

10   has done in this area, that the jury gets to decide

11   whether the talk, the speech, was political argument

12   or it was something else.  And that's the way we have

13   the jury instructions written, and I think they

14   reflect the Tenth Circuit law on this.

15       I think if the evidence were all one way in

16   this case, that it was all political argument, that I

17   could grant a directed verdict.  But I think the

18   evidence taken in the light most favorable to the

19   United States, which is what I have to do at the Rule

20   29 stage, there is evidence that some of it was not

21   political speech and that it was more than political

22   speech, but it was -- there is evidence that it was a

23   threat, and that he believed it to be a threat, and

24   that the officers took it as a threat.

25       So I think there is evidence that the jury

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

192

1   could conclude beyond a reasonable doubt that

2   Mr. Nissen is guilty of the crimes charged.  So I'm

3   not going to take it away from the jury.  I'm going

4   to submit it to the jury.  I'm going to take, in a

5   calmer moment, when we're not in the middle of a

6   trial and look a little bit at the law so I

7   understand this area a little better.  But I think

8   the Tenth Circuit pattern instructions that we're

9   submitting do reflect accurately the law as I

10  understand it, and that I should not take this away

11  from the jury.

12          So I'll not grant the Rule 29 motions and

13  at a little bit calmer time, I'll try to issue

14  opinions and orders that reflect more fully what I

15  think the law is on this issue.

16          All right.  Mr. Nissen, I think this is the

17  colloquy that all the lawyers need me to have with

18  you.  You understand that in the United States, you

19  have a right to take the stand and testify in your

20  own defense.  You understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  And that's a

23  decision you make.  It's not a decision Mr. Gleria

24  makes.  It's not a decision Mr. Mkhitarian makes.

25  It's certainly not a decision the Government makes,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and it's not a decision I make.  It's a very personal

2    decision that you make, and you have.  And do you

3    understand that you and you alone are the one?

4    Everybody can advise you.  There is nothing wrong

5    with advice from counsel.  But you understand this is

6    a decision you make, and it's one that you make

7    alone.

8              THE DEFENDANT:  I do understand.

9              THE COURT:  And have you had a chance to

10   discuss with Mr. Mkhitarian, Mr. Gleria --

11             THE DEFENDANT:  No, I haven't.

12             THE COURT:  Okay.  Do you want to take a

13   moment to talk to them?

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right.  And if you decide

16   to take the stand, then I think everybody is in

17   agreement you have the right to do it.  And if you

18   decide that you don't want to take the stand, you're

19   the only one that can make that decision, too.

20             So why don't y'all take a moment and maybe

21   we can deal with this shirt issue, too, and then

22   we'll hear from Mr. Mysliwiec about it.

23             (The Court stood in recess.)

24             THE COURT:  All right.  We'll go back on

25   the record.  Mr. Nissen, have you had an opportunity

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   to talk to Mr. Mkhitarian and Mr. Gleria about

2   testifying today?

3           THE DEFENDANT:  Yes, I have.

4           THE COURT:  What's your decision,

5   Mr. Nissen?

6           THE DEFENDANT:  I don't think I want to

7   testify.

8           THE COURT:  All right.  Okay.  And

9   Mr. Mysliwiec, is there any further colloquy that you

10  want me to have from the Government's standpoint with

11  Mr. Nissen?

12          MR. MYSLIWIEC:  No, sir.  If the Court is

13  satisfied, I think that's all we need.

14          THE COURT:  How about you, Mr. Gleria,

15  Mr. Mkhitarian?  Is there anything further you'd like

16  for me to ask Mr. Nissen?

17          MR. GLERIA:  No, Your Honor.

18          THE COURT:  All right.  Thank you,

19  Mr. Gleria.

20          Mr. Mysliwiec, you had some issues you

21  wanted to raise about the closing arguments?

22          MR. MYSLIWIEC:  Yes.  There are two lines

23  of questioning that the defense pursued yesterday,

24  one of which I definitely timely objected to, but the

25  witness was able to answer the question upon the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    overruling of my objection.  And the other one I

2    think I objected to, but I'm not sure.

3           The first is:  We know that the law does

4    not require that anybody know or expect that their

5    communication crossed state lines.  That is simply

6    not the law in this Circuit.  We have to prove that

7    the communication did cross state lines, and we did.

8    And if the Court looks at instruction 9, the

9    knowingly mens rea is not applied to the interstate

10   commerce element.  And so I don't want to hear during

11   closing argument any illegal statement that defendant

12   should be found not guilty because he didn't know

13   that the communication crossed state lines or that he

14   didn't intend for the communication to cross state

15   lines or that he didn't expect the communication to

16   cross state lines.

17          The defense has a lot of leeway in arguing

18   what elements were proven by the facts that were

19   presented and the evidence that was adduced at the

20   case.  But what the law requires is not a

21   he-said-she-said element subject to argument, and the

22   Court's instructions on what the Constitution demands

23   and what the law prohibits and what the law allows is

24   not subject to argument of the parties.  It is the

25   truth.  It is the exclusive province of the judiciary

*[Handwritten margin note next to lines 10–16: "Declaration in Support to Desire? WTF?"]*



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  to determine what the law is.

2          So that's one illegal form of argument I

3  would prefer not to hear, and I'd like the Court to

4  ask that it not happen.

5          THE COURT:  Well, let's hear anybody -- are

6  you doing closing, Mr. Mkhitarian?

7          MR. MKHITARIAN:  Yes, Your Honor.

8          THE COURT:  Do you intend to make any

9  argument along the lines Mr. Mysliwiec is concerned

10 about?

11         MR. MKHITARIAN:  I was going to mention it

12 briefly.  It wasn't going to be the focus of my

13 closing, and I guess my response to that would be

14 that, Your Honor, I think that the instructions are

15 clear.  I agree with the United States that it

16 doesn't require an intent element.  I don't think it

17 prohibits me from arguing that Mr. Nissen had no idea

18 that it was going to cross interstate lines.  If they

19 follow the instruction and they convict him based off

20 of the instructions, and I'm sure Mr. Mysliwiec will

21 tell them Mr. Nissen doesn't have to know it goes

22 across state lines, but I don't necessarily think it

23 prohibits me from arguing that there is no way he

24 could have known that it was going to do that.

25         The T-Mobile expert stated that the only

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    way you could find out that it even does is when a

2    subpoena is filed and you get the actual switch

3    information back.  So I think it's clear that -- I

4    mean, I, for one, didn't know that it does that, and

5    it's probably safe to say that Mr. Nissen didn't know

6    that.  It's a statement of fact.  So whether or not

7    that's an element in the case -- I mean, there's tons

8    of things that are not elements in the case that

9    we're going to argue:  Whether it's political speech,

10   whether -- political speech is not defined.  You

11   know, rants, exaggerations are not defined.  But I

12   don't think it prohibits Mr. Nissen from touching on

13   them and moving on.  I would keep it as a factual

14   assertion that -- based on what the T-Mobile person

15   already testified to, and then I'm going to move on.

16   I'm not going to make it the focus of my closing

17   argument, Your Honor.

18           THE COURT:  Would you agree that you should

19   not say that the jury should not find him -- should

20   find him not guilty because he did not know that it

21   would cross interstate lines?

22           MR. MKHITARIAN:  I will not make that

23   statement.  I will say that Mr. Nissen did not even

24   know it was going across state lines.

25           THE COURT:  I think that's where I'd draw

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

198

```
 1   the line.

 2             MR. MKHITARIAN:  Yes, Your Honor.

 3             THE COURT:  Don't put me in a situation.

 4   Just be careful about me.  Don't put me in a

 5   situation where I have to correct what you argue.  I

 6   don't want to do that.  You don't want me to do that.

 7             MR. MKHITARIAN:  Yes, Your Honor.

 8             THE COURT:  So if you cross the line and

 9   say, "Find him not guilty," or, "He's not guilty of

10   the crime because he didn't know that element," then

11   I might have to correct the record.

12             MR. MKHITARIAN:  I will not instruct them

13   to find him not guilty.

14             THE COURT:  Can you live with that line,

15   Mr. Mysliwiec?  And then that gives you full rein to

16   show them the jury instructions and emphasize that he

17   doesn't have to know that.

18             MR. MYSLIWIEC:  So it's the position of the

19   United States that there is no proper purpose for

20   which the defense would mention at all that the

21   defendant didn't know that the phone call crossed

22   state lines, leaving only improper purposes for him

23   to mention it.  But if the Court's question is, can I

24   live with it, yes, sir, I can.

25             THE COURT:  All right.  Let's draw the line
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   there.  Just be careful.  Don't get me in a situation

2   where I have to correct something you say.

3           MR. MKHITARIAN:  Yes, Your Honor.

4           THE COURT:  Keep it factual.  What's the

5   next, Mr. Mysliwiec?

6           MR. MYSLIWIEC:  The second thing is, mostly

7   Mr. Gleria pursued lines of questioning related to

8   whether acts were taken to carry out the threat.  He

9   asked a lot of witnesses yesterday, "He wasn't even

10  there in the room with you, it was a phone call."

11          As the Court can see in the Court's

12  instruction 9, the threat is the crime.  There is a

13  specific line at the end of the true threat

14  definition that informs us correctly that it is not

15  required that he intend to carry out the threat or

16  act to carry out the threat.  And so it's the

17  position of the United States that there is no proper

18  purpose for mentioning the arguably true fact that

19  the defendant did not commit attempted murder by

20  acting to carry out these murder threats.  It is

21  not -- there is no proper purpose in this threat

22  trial for which the jury is instructed only to

23  consider the charges before them to point out that

24  the defendant did not, in fact, murder anyone,

25  because it was the threat to murder that is the crime

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

200

1    in and of itself.

2            And so despite the questions being allowed

3    yesterday about all the different ways and at all the

4    different times the defendant did not murder anyone

5    or did not take actions that we can prove towards

6    murdering anyone, I don't think it would be proper to

7    argue on defendant's behalf that he should be found

8    not guilty because he did not actually murder or

9    attempt to murder anyone, or even really to talk

10   about the lack of acts that the jury instruction

11   makes clear is legally irrelevant.

12           THE COURT:  Your thoughts, Mr. Mkhitarian?

13           MR. MKHITARIAN:  Your Honor, once again,

14   Mr. Nissen's acts or lack of acts go directly to the

15   seriousness of --

16           THE COURT:  Hold on just a second.

17           (A discussion was held off the record.)

18           THE COURT:  Go ahead, Mr. Mkhitarian.

19           MR. MKHITARIAN:  Your Honor, Mr. Nissen has

20   a right to present a case to show what the evidence

21   does not show; and what goes directly to the

22   seriousness of a threat, as we talked about in voir

23   dire or anything else, is what acts someone might

24   take, and jurors agreed that, you know, a water

25   balloon versus a gun in someone's hand when a threat

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   was made is a very loose example, but the act of

2   having the water balloon versus a gun changes the

3   serious nature of the threat.

4            So what Mr. Nissen did or did not do goes

5   directly to the seriousness of or, you know, what the

6   threat actually is.  His acts of not being aggressive

7   during a traffic stop, his acts of not pulling out a

8   gun, his acts of being compliant, things of those

9   nature, go directly to how seriously the threat

10  should be taken.  So I don't agree that his abilities

11  to carry out the threat -- while in the jury

12  instructions, I agree, it is the jury instruction,

13  and the United States is right that to find him

14  guilty, his ability to carry it out is not relevant,

15  but it is relevant to the seriousness of the threat,

16  and we should be allowed to argue that where

17  Mr. Nissen was, what he did or did not do, is

18  relevant to whether or not the threat should have

19  been taken seriously at all.

20            THE COURT:  All right.  Anything further on

21  that, Mr. Mysliwiec?

22            MR. MYSLIWIEC:  To say that the threat is

23  not serious because it was not accompanied by acts is

24  directly contrary to the Court's instruction, and

25  counsel is not at liberty to quibble at this stage

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

202

1    about what the law is.  That is the exclusive

2    province of the judiciary.  The Court's instructions

3    are clear.  The defendant has not lodged objections

4    to instruction 9.  And to argue contrary to it, to

5    say that one of the elements is not met because acts

6    that are explicitly not required are not present,

7    would be an improper argument meant to confuse the

8    jury and to request that they make a determination in

9    the defendant's favor that is contrary to the clear

10   law.

11              THE COURT:  Well, I think I have given both

12   sides a fair amount of leeway in this case to try to

13   put in context the statements so that the jury can

14   have a good sense of the context in which Mr. Nissen

15   made his statements.  We've had a robust discussion

16   of the traffic stop.  Nothing really was kept out

17   about the traffic stop.  So I think we've set the

18   context.

19              I'm not inclined to clip your wings,

20   Mr. Mkhitarian, about what didn't occur, because I

21   think some things that didn't occur can go to

22   context.  But again, just be careful in your argument

23   not to make a statement about the law that I would

24   have to correct.  The fact you're pointing out things

25   that didn't occur I think might go to his -- you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

203

*I stated all this in a motion of the court.*

*The first one I wrote.*

1   know, the intent element in the second element.  So I

2   do think that some leeway -- these are closing

3   arguments, after all, and I think to give you an

4   opportunity to tell the jury, in that second element,

5   Mr. Nissen transmitted the communication with the

6   intent to make a threat, I think I need to give you

7   some leeway, but just don't get me in a position

8   where I have to correct any legal statement you make.

9   So don't tell the jury that because he didn't commit

10  any violent acts or something like that, you've got

11  to find him not guilty, that that's not a threat.

12  Okay?

13          MR. MKHITARIAN:  To be clear, Your Honor,

14  what I would be arguing would be that he intended to

15  state a political position; that he intended to

16  notify them of the consequences of violating his

17  rights.  But I would never tell them that because he

18  didn't have a gun, they should find him not guilty.

19          THE COURT:  Okay.  Just help me out.  I

20  don't want to correct your closing.  I never like to

21  do that.  And you don't want me to do it, either.

22  It's just not a good moment.  So I'll give you a lot

23  of leeway to make your closing argument, because I do

24  think it's a contextual issue.  But just be careful

25  with the law so that I don't have to be in a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   situation of giving some supplemental instruction or

2   something like that.

3           Mr. Gleria?

4           MR. GLERIA:  Judge, can I just run out and

5   use the restroom before the jury comes in?

6           THE COURT:  Sure.

7           THE CLERK:  We do have all the jurors here.

8           THE COURT:  Let me just ask, before we take

9   a break, is there anything else we need to discuss on

10  jury instructions, closings, anything else?  Because

11  what I intend to do is bring them in, the Government

12  has already rested.  I'll ask Mr. Gleria,

13  Mr. Mkhitarian, does Mr. Nissen have any witnesses or

14  evidence he wishes to present?  You can rest.  And

15  then I intend to go right into the reading of the

16  instructions.  I think if we go now, probably the

17  Government ought to be prepared, as soon as I

18  conclude, to go into its closing.

19          MR. MYSLIWIEC:  Yes, sir.

20          THE COURT:  Does that work for everybody?

21          MR. GLERIA:  Yes, sir.

22          THE COURT:  All right.  It seemed like

23  there was one other thing I was going to mention, but

24  I can't think of what it is.  So why don't we take a

25  break and we'll come back in.  We do have all the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

205

```
1    jurors, so they're ready to go.  Let's be in recess
2    for a few minutes.
3              (The Court stood in recess.)
4              THE COURT:  All right.  We'll go back on
5    the record.  Is the podium set up the way you want
6    it, Mr. Mysliwiec?
7              MR. MYSLIWIEC:  Yes, thank you, Your Honor.
8              THE COURT:  Anything we need to discuss?
9    Anything I can do for you before we bring in the
10   jury?
11             MR. MYSLIWIEC:  No, sir.  We're all sitting
12   down behind the table.  I think we're ready.
13             THE COURT:  How about you, Mr. Gleria,
14   Mr. Mkhitarian?
15             MR. MKHITARIAN:  Yes, Your Honor.  We're
16   ready.
17             THE COURT:  I can see the top of their
18   heads.  But rarely can they see in the courtroom.
19   But that juror -- we've got to make sure we have
20   Mr. Nissen in this room before we even get the jury
21   lined up, because that man is 6'6".  Tall man.  He
22   can see me and see in here.  That other fellow was
23   tall, too.  We've got two tall jurors.
24             All rise.
25             (The jury entered the courtroom.)
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  All right.  Everyone be seated.

2          Well, I brought you back a little later

3    than I usually do, and I still made you wait.  I hope

4    Ms. Bevel and Ms. Wright had some goodies for you.

5    It's been a good morning.  It wasn't too much longer

6    of a wait, but we went ahead and took our break

7    before we brought you in.  So maybe we can go a while

8    without us having to take a break, even though we've

9    been working this morning since 8:30 ourselves.

10          Thank you for being back, on time, and

11   ready to go.  I appreciate the way y'all have

12   approached your task.  You've been a great bunch to

13   work with.  Ms. Bevel and Ms. Wright have told me

14   you're a good bunch, and I appreciate it very much.

15   I look forward to working with you today.

16          All right.  Mr. Gleria, Mr. Mkhitarian,

17   does Mr. Nissen have any witnesses or evidence he

18   wishes to present?  Mr. Gleria?

19          MR. GLERIA:  No, Your Honor.  The defense

20   rests.

21          THE COURT:  All right.

22          (The jury was instructed.)

23          THE COURT:  All right, Mr. Mysliwiec.  Do

24   you have a closing argument on behalf of the

25   Government?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. MYSLIWIEC:  I do, Your Honor.

2          THE COURT:  Mr. Mysliwiec.

3          MR. MYSLIWIEC:  Thank you.

4          Ladies and gentlemen, thank you very much

5    for paying close attention during voir dire, for

6    expounding honestly and openly, for paying attention

7    during the presentation of evidence yesterday, and

8    hopefully for paying attention.  I'll try not to take

9    up too much of your time now in my closing argument.

10         This is my opportunity to go over the

11   evidence we heard and saw yesterday, compare it to

12   the Court's instruction that your oath requires you

13   to follow on what the law is, so that you can be

14   prepared to go back there and discuss for as long as

15   you need whether Michael Nissen is guilty or not

16   guilty as to each of Count 1 and Count 2.

17         Alex and I have tried to be precise in

18   presenting the evidence to you.  We got it done in

19   one day.  And now I think you're going to have

20   everything you need to determine that on November 2

21   Michael Nissen threatened to injure Jordan Burd in

22   interstate commerce, and then on November 26, also of

23   2018, that he threatened to injure Barbara Beuzekom

24   in interstate commerce.

25         The defense has done a good job of trying

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to focus you on things that I don't need to prove to

2    you.  Mr. Gleria and Mr. Mkhitarian have worked very

3    diligently to make sure that you know that the

4    defendant didn't actually murder Officer Burd or

5    Barbara Beuzekom.  They have pointed out several

6    phone calls in which he didn't threaten to kill

7    anyone.  They have pointed out parts of phone calls

8    in which he threatened to kill people that, in those

9    parts, he wasn't threatening anyone.  They have done

10   their job well.

11         But what I want to take just a few moments

12   for is to go over what the United States does have to

13   prove for you.  The defendant is charged with two

14   counts of the same offense, and the elements are the

15   same for each.  On your screen you should see

16   instruction 9.  There are three elements, and then

17   there is an explanatory paragraph about what a threat

18   means in the law as instructed by Judge Browning.  I

19   hope it doesn't bother anyone, but I want to go

20   through these elements in reverse order.

21         Element 3 is that the communication was

22   transmitted in interstate commerce.  Interstate

23   commerce is defined in the context of the law in

24   instruction 11.  Instruction 11 tells us that

25   interstate commerce includes communication or travel



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN &ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

209

1   between one state and another.  There can be no

2   reasonable doubt that that happened in each of the

3   two counts here.  Exhibit 5, which you'll have to

4   review, is the phone records that show that the three

5   calls to Victoria Gurule on November 2, 2018, and the

6   phone call to Barbara Beuzekom on November 26, 2018,

7   all went through the T-Mobile system through switch

8   TTTAS 005.  And those records, as well as the

9   testimony of Kenneth Lecesne yesterday, told you that

10  switch TTTAS 005 is in Plano, Texas.  Kenneth

11  Lecesne, you recall, testified that the phone call

LIE

12  could not happen without the switch, and that the

13  phone calls that he was asked about that match up the

14  three calls to Victoria Gurule and that match up to

15  the phone call to Barbara Beuzekom on November 26 all

16  went through that switch in Plano, Texas.

17          You have Michael Nissen's phone, which is

18  Exhibit 8.  And on that phone, it's faint, and so you

19  may want to rely on the jurors among you who have the

20  sharper eyesight, like Peter Ubbelohde.  But they

21  will be able to point out to anyone who, like me, is

22  not great at reading small numbers, that on the

23  bottom right of the back of the case you have the

24  factory stamped number that matches the billing

25  record that you see in Exhibit 5 and that matches the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    call log that you see in Exhibit 5, except that as

2    Kenneth Lecesne explained yesterday, the last digit

3    in the call log is always zero.  So the last digit in

4    the subscriber record and on the physical phone is

5    going to end in 112, and on the call log it's going

6    to end in 110.  That's just how T-Mobile prints their

7    call logs.  Please don't be confused by that.

8            So we know that these phone calls could not

9    have happened but for the switch.  We know the switch

10   is in Plano, Texas.  We know these phone calls went

11   to Plano, Texas.  And that's true even though the

12   defendant was in New Mexico and even though the

13   person receiving his calls was in New Mexico.  That

14   satisfies the law.  Count 3 is done, or element 3 is

15   done.

16           Element two is that the defendant

17   transmitted the communication with the intent to make

18   a threat or with knowledge that the communication

19   would be viewed as a threat.  The judge has defined

20   knowledge for you.  It's instruction 10.  Instruction

21   10 tells us that knowledge within the context of the

22   law in this case is something done voluntarily and

23   intentionally, not by mistake or accident.  The

24   defendant telling Victoria Gurule that he would put a

25   bullet in Jordan Burd's head was not accident.  That

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  was not mistake.  When he said he would pull out his

2  revolver and drop Jordan Burd dead, that was not a

3  mistake.  He said that on purpose.  The defendant

4  telling Barbara Beuzekom that he would shoot her in

5  her face was not a mistake.  It was not an accident.

6  This is not a case about misunderstood communications

7  or communications that could be reasonably taken

8  multiple ways.  The defendant knew that those words

9  would be taken as threat.

10          And additionally, even though element 2

11  requires that you only find one or the other, you

12  also have all the information you need to know that

13  the defendant personally intended those words to be

14  taken as a threat.  How do we know that?  We know

15  that because Michael Nissen is a man who is desperate

16  to be taken seriously.  He calls people up to lecture

17  them about his fantasy of what the Constitution

18  means.  He instructs people that they need to go to

19  someone's Twitter account or to Google some topic to

20  realize that he is secretly a legal genius and their

21  entire profession is a lie and actually the New

22  Mexico State Police doesn't have the authority to

23  pull anyone over.

24          When he makes these threats, it is not

25  because he wants to be perceived as a joke.  It is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    because he wants to be taken seriously.  He doesn't
2    want his car towed.  He doesn't want to walk home,
3    and so he will sign Jordan Burd's citation, but then
4    he calls to complain about it three times within
5    about an hour to Victoria Gurule and then again on
6    November 26 to Barbara Beuzekom.  And in those calls
7    there is no humor, there is no fun.  There is only
8    blood lust.  A joke is not going to get the police to
9    back off.  A joke is not going to get him out of his
10   court date.  He needs them to believe that if they
11   continue to interact with him, if they make him go to
12   court and prove his innocence, like he complained to
13   Juan Cordova, **he may put a bullet in Jordan Burd or**
14   **another friend of theirs' head.**
15          First things last, we get to element 1.
16   **The defendant knowingly transmitted a communication**
17   **containing a threat to injure the person of another.**
18   **The defendant knew he dialed the New Mexico State**
19   **Police those multiple times that are shown in the**
20   **call log in Exhibit 5.**  There is no reason in the
21   evidence to believe that those were a misdial or that
22   it was in his pocket when he sat down and he called
23   dispatch by mistake.  Those calls were made
24   intentionally.  So the knowingly making the
25   communication is satisfied.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          So the last remaining thing we have to talk

2     about is the second part of the first element,

3     containing a threat to injure the person of another.

4     A threat is defined within this instruction itself

5     within the meaning of the law and it says right there

6     in instruction 9, if you scroll down a bit, Alex, "A

7     threat is a serious statement expressing intent to

8     instill fear which, under the circumstances, would

9     cause apprehension in a reasonable person as

10    distinguished from mere political argument, idle

11    talk, exaggeration, or something said in a joking

12    manner."

13         It is not necessary that Mr. Nissen

14    intended to carry out the threat or had the ability

15    to carry out the threat, even though we know that he

16    was armed and he does possess that shotgun that's on

17    the table now.

18         If we bring up the transcript, that's 2-A,

19    this is not a case about profanity.  This is not a

20    case about disliking police even to the point of

21    calling them pigs.  This is not a case about

22    complaining about a false arrest on some petty proof

23    of insurance violation.  This is a case about a man

24    who told a dispatcher that if any cop pulled him over

25    while driving, he would put a bullet in that cop's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

214

1    head, that he would pull out a revolver and drop that

2    cop dead; who told a civilian administrative employee

3    who didn't do what he wanted fast enough that he

4    would therefore shoot her in her face.

5            There was some figurative language in the

6    phone call.  We met Officer Burd.  He's a human.

7    He's not a swine.  So calling him a pig is not

8    literal.  And I don't think anyone believes that

9    Officer Burd ever had sex with his own mother.  Those

10   statements are not why we're here.  This is not a

11   profanity case.  This is not a case of disrespect of

12   cop.  Nor is exaggerated language a proper way to

13   describe these threats.

14           One of the words we have to describe a very

15   exaggerated statement in the English language is

16   hyperbole.  And hyperbole, like many words in the

17   English language, has definition.  I took the liberty

18   of putting into evidence several different

19   definitions of hyperbole.  That's Exhibit 6.  A

20   figure of speech in which exaggeration is used for

21   emphasis or effect, as in, "I could sleep for a

22   year," or, "This book weighs a ton."

23           Another example of hyperbole comes from --

24   I don't know if any of you are familiar with Weird Al

25   Yankovic.  He's a comedian.  This is a song about how

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    he's not upset that he has broken up with his
2    ex-girlfriend, and in this song Weird Al Yankovic
3    says, "I would rather jump naked on a huge pile of
4    thumb tacks or stick my nostrils together with crazy
5    glue."  He said, "I would rather dive into a swimming
6    pool filled with double-edged razor blades" than
7    spend one more minute with his ex-girlfriend.
8    Statements not intended to be taken seriously.
9    Statements intended as a joke.  You can think Weird
10   Al's funny or not, but he's clearly trying to be
11   funny.  "I'm going to put a bullet in that fucking
12   pig's head.  I'm going to pull out my revolver and
13   put that motherfucker drop dead.  I'm going to shoot
14   you in your fucking face," are not statements that
15   are intended be funny.  They are intended to be taken
16   seriously.  They are intended as threats.
17          Threats, true threats, are not protected by
18   the First Amendment.  We all work hard here to guard
19   our constitutional rights, no one harder than Judge
20   Browning.  And he has given you the instruction you
21   see in instruction 9 defining a true threat.  The
22   things that are protected by the First Amendment are
23   therefore not a crime.  Mere political talk, idle
24   talk, joking talk, talk not intended to be taken
25   seriously.  Those things are protected even if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


DEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   they're offensive, even if I like police officers but

2   you call them names, or vice versa.  That is not what

3   this case is about.  This case is about true threats

4   intended to be taken as threats.

5           Even if Mr. Nissen were correct that

6   Officer Burd violated his rights, even if Officer

7   Burd had arrested Mr. Nissen for failure to show

8   paper proof of insurance and only having proof of

9   updated insurance on his phone when the car was

10  insured, the answer still is not to threaten to put a

11  bullet in his head.

12          But Burd didn't violate his rights.  You

13  heard from Officer Burd.  He was questioned about

14  this.  He testified he didn't tow the car, even

15  though his department said he had the authority to do

16  it because it wasn't registered, updated, and it

17  didn't have insurance; that he didn't arrest Nissen

18  even when the defendant refused originally to sign a

19  citation, and that he gave the shotgun back even

20  though he didn't feel safe to do so because he

21  thought he didn't have the right to take a man's

22  property if he wasn't going to arrest him, which he

23  explained he had already decided he wasn't going to

24  do even though he could have.

25          Officer Burd figuratively bent over

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    backwards to respect Mr. Nissen's rights and in

2    return, Mr. Nissen threatens to shoot him in the

3    head.

4             The State Police were reasonable to take

5    these threats seriously.  They were reasonable to

6    email out bulletins warning patrol officers that this

7    armed man was on the road who had threatened Officer

8    Burd.  They were reasonable to put up posters warning

9    anyone at the office about this fellow and his

10   threats and the fact that he was armed, and

11   Mr. Nissen wanted them to take him seriously.  Their

12   reaction was not a mistake or accident.  He knew that

13   they would take it seriously when he said the things

14   he said the way he said them.

15             And don't take my word for it.  You are

16   going to be able to listen to these phone calls to

17   Victoria Gurule as many times as you need to to be

18   firmly convinced that the defendant, beyond any

19   reasonable doubt, made these threats in interstate

20   commerce, knowing they would be taken as threats

21   intending that they would be taken as threats.  And

22   that's why you have all the evidence you need to find

23   beyond any reasonable doubt that on November 2, 2018,

24   Mr. Nissen, while he was in the district of New

25   Mexico, threatened to injure Jordan Burd in a way

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  that affected interstate commerce by going through

2  Plano, Texas; and that on November 26, he threatened

3  to kill Barbara Beuzekom while he was in New Mexico

4  in a way that affected interstate commerce by that

5  call being routed through Plano, Texas.  That's all

6  you need to write guilty as to Count 1 and guilty as

7  to Count 2, and that's what I ask you to do.  Thank

8  you.

9           THE COURT:  Thank you, Mr. Mysliwiec.

10          Mr. Mkhitarian, do you have a closing

11  argument on behalf of Mr. Nissen?

12          MR. MKHITARIAN:  I do, Your Honor.

13          THE COURT:  Mr. Mkhitarian.

14          MR. MKHITARIAN:  Thank you.  Ladies and

15  gentlemen of the jury, Your Honor.

16          THE COURT:  Mr. Mkhitarian.

17          MR. MKHITARIAN:  Counsel.  Thank you very

18  much for being here today.  I'm sure when all of you

19  woke up and drove here for jury duty, none of you

20  thought that we'd be talking about First Amendment,

21  free speech, what we can and cannot talk about.  And

22  it's probably a surprise to you that we're going to

23  be talking about that today.

24          So the essential thrust of what's going on

25  is, we're going to be deciding today what speech is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    limited; when someone crosses a line; when someone's
2    speech is not protected by the First Amendment.
3    There is a reason why it's the First Amendment.
4    There is a reason why it was the first thing our
5    Founders thought they should write down and protect.
6    It's the right to speak, to speak freely.  The right
7    to have opinions, to be angry; the right to talk
8    about whatever it is that you want and not be
9    punished by it.  That's why they wrote it down first.
10          Our freedom of speech shall not be abridged
11   in any way.  So we're here to decide whether or not
12   Mr. Nissen's political rant should be criminalized.
13   And make no mistake, it is political rant.  The
14   officer recognized it's political rant.  You do not
15   have to agree with Mr. Nissen's political beliefs.
16   You don't have to agree with how he expresses them,
17   but you do have to agree that he has a right to
18   express his political beliefs.
19          Now, Mr. Nissen -- he was upset.  He was
20   upset about being pulled over.  He gets pulled over,
21   and through the officer's own testimony, not for any
22   moving violations, not for speeding, not for failing
23   to maintain his lane, not for driving too slow or
24   failing to use his turn signals.  Mr. Nissen was
25   driving completely normal, and he gets pulled over

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    because the officer is fishing for violations on the
 2    road, looking for no insurance, looking for no
 3    registration.  So Mr. Nissen, being a law-abiding
 4    citizen that he is, pulls over in a safe manner,
 5    pulls over when the officer asks him to, complies
 6    with the officer, does as the officer says, makes no
 7    aggressive movements, expresses to him his belief
 8    that the officer has no authority over him, tells the
 9    officer that he had no reason for pulling him over,
10    because he was following all the laws; and the
11    officer himself states there was nothing threatening
12    made during the stop; that Mr. Nissen was completely
13    compliant with all of his demands, so much so that he
14    returns his gun to him and lets him drive off.
15             Now, Mr. Nissen, upset about this, upset
16    about being pulled over for not making any moving
17    violations, calls dispatch.  He calls dispatch to
18    basically rant about his belief that his rights were
19    violated.  He says -- he uses figurative language
20    basically conditioned on future conduct.  "If the
21    police do this, I'm going to do this.  If my rights
22    are violated, I'm going to do that."
23             The statement doesn't name a specific
24    person.  It doesn't say, "I'm going to kill Officer
25    Burd."  It doesn't say, "I'm going to hurt this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  person specifically."  There was no imminent danger

2  from the statements.  They were separated by space

3  and time.  Moreover, it was political.  He talks

4  about his First Amendment, his Second Amendment, his

5  Fourth Amendment.  Not random amendments.  He's

6  saying, "My right to free speech was violated.  My

7  right to carry a firearm, which was taken away from

8  me during the stop, was violated.  My right to be

9  free from illegal searches and seizures, the Fourth

10  Amendment, was violated."

11          He's not spouting out random amendments

12  here.  They're all relevant to what he believed was

13  violated when he was pulled over that day.  And he

14  states it in an angry manner, as is his right.

15          Now, the jury instructions define what a

16  serious threat is, and they specifically exclude

17  political talk and exaggeration.  Political talk and

18  exaggeration.  We heard from the officer that what

19  Mr. Nissen was saying could be construed as political

20  argument, him trying to show him videos about his

21  politics and his beliefs.  There is no question and

22  there's plenty of evidence to show that Mr. Nissen

23  was trying to educate everybody on what he thought

24  the policy and politics of his belief should be.  So

25  I don't think there is a question that Mr. Nissen was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

DEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    making a political argument.  Whether or not you

2    agree with it is another question, but that's not

3    what we're here to decide.

4            Now, we move to whether or not Mr. Nissen's

5    political speech is even something that no one

6    believes in.  And the officer says that they received

7    special training on these types of people, so much so

8    that they actually have to have a training to sit

9    down and talk to them about how to deal with

10   ·sovereign citizens, how to deal with people who don't

11   look up to their authority; how people like

12   Mr. Nissen only respect the authority of county

13   elected officials.

14           This is not some sort of fringe political

15   argument that Mr. Nissen made up in his head.  This

16   is people that they get training on.  They're seeing

17   it more and more.  It's prevalent throughout the

18   country, so much so that they have to have a sit-down

19   with officers and tell them, "This is how you're

20   supposed to deal with it.  This is what you might

21   see.  This is what's going to happen.  There are

22   people like this people who believe this.  This is

23   how you should deal with this."

24           So it's not like Mr. Nissen made this up

25   after he drove away.  It was talked about during the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    traffic stop, it was talked about in the call

2    afterwards, and it was talked about on later

3    occasions when officers called to follow up with what

4    Mr. Nissen was trying to say.

5           Now, the United States is trying to make

6    some sort of connection that Mr. Nissen didn't have

7    the right to make a statement like that; that it was

8    so outlandish that it should be taken seriously; that

9    this is something that nobody says.  But Mr. Nissen's

10   statement is not unlike statements that some of you

11   might have even made, statements that some of you

12   might have even heard said to you.  Take this, for

13   example.  Has anyone ever heard the statement, "If

14   you trespass onto my property, you will be shot.  If

15   you try to break into my house, you will be shot.  I

16   will shoot anybody who tries to break into my house

17   at night."

18          Now, through the same logic that the United

19   States tries to use, this is a true threat.  We

20   should be arrested for this.  People who have signs

21   posted saying, "You will be shot upon trespassing,"

22   those people are making serious threats to everybody

23   in the community.  Breaking into somebody's house

24   doesn't allow for someone being shot.  Maybe you

25   should ask them to leave.  Shooting somebody for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

224

1    coming into your house, that's not appropriate under

2    the United States' analysis of the way threats are

3    made.

4            So Mr. Nissen is making a statement:  "I do

5    not believe that my rights should be violated," and

6    if they do, he makes the exaggerated statement that

7    he might shoot pigs.  And once again, this is in the

8    context of an angry rant about a traffic stop that

9    should not be taken seriously.

10           Now, make no mistake.  You will not receive

11   an instruction from the Court saying that New Mexico

12   State Police gets special treatment with regard to

13   the First Amendment.  There is no jury instruction

14   that says state police have the right to take certain

15   statements more seriously than the average citizen.

16   There is no instruction that says that you cannot

17   make political talk, political exaggeration,

18   political rants at police.  They get treated the same

19   just as the rest of us.  If these statements are made

20   to us, the statements are made to police, they should

21   be looked at the same, through the eyes of a

22   reasonable citizen.  There is no elevated seriousness

23   for who you make the threat to, and there is no

24   instruction like that.  So I'm asking you to look at

25   the statements that Mr. Nissen made in the context of



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    just a regular person, because that's what we're here

2    to talk about.

3              There are no recorded statements with

4    regard to Officer Bredbach (phonetic).  I'm going to

5    ask you to disregard that.  It's interesting that

6    when Officer Cordova was initially examined, he said

7    the only thing he could remember was that Officer

8    Bredbach told him that Mr. Nissen was being combative

9    initially.  Then after some cross-examination by the

10   United States and some jogging of his memory, he

11   goes, "Oh, by the way, oh, yeah, and he told me that

12   she (sic) was going to shoot him in the face."

13             That would be something that he would

14   remember immediately.  If he was pulled over by

15   Officer Bredbach by saying, "This person is going to

16   shoot me in the face," he wouldn't remember that he

17   was being combative; he would remember a threat to

18   kill an administrator was made.  He remembered there

19   at the end checking off the threat-to-a-person box.

20             All of Mr. Nissen's recorded statements are

21   consistent with him making political rants.  He's

22   always talking about his rights.  He's always talking

23   about the Constitution.  He's always talking about

24   his right to be free from searches and seizures.

25   He's always talking about the consequences from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    violating citizens' rights in an exaggerated way and

2    in no way, shape, or form did he ever act on or put

3    any officers in the position to believe that those

4    threats were going to be carried out.  Every time

5    officers talk to him in the recorded statements that

6    we have, every time the officers met with him to see

7    what was going on as an instance of the traffic stop,

8    he was completely normal and made no overt or direct

9    threats.

10            We're all protected by the First Amendment.

11   We're all protected, and we all have the right to

12   make angry, dumb political rants from time to time.

13   And we should not be convicted of a crime for trying

14   to express those beliefs, even though we might not

15   agree with the beliefs that are trying to be

16   expressed.  And when a government seeks to crack down

17   on our right to speak, all of our rights to speak, we

18   have to treat these cases with respect.  Despite what

19   you might think of what Mr. Nissen's beliefs are or

20   whether they should be respected or whether they're

21   true, you have to look at them in the context of what

22   the First Amendment seeks to protect, and that's our

23   right to express those beliefs.

24            I'm asking you to see this case for what it

25   is.  It's a nonserious, angry political argument, one

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that we are all allowed to make.  And because of

2    that, I want you to go back and look at the evidence.

3    Look at what we actually have.  Look at the actual

4    recorded statements.  Look at the fact that

5    Mr. Nissen was making political arguments.  And after

6    going through all the evidence and listening to all

7    the things that Mr. Nissen had to say, then and only

8    then should you guys come to a vote.  And when you

9    come to a vote, I ask you to respect Mr. Nissen's

10   right to speak, respect his political beliefs, as in

11   all of our political beliefs and our rights to

12   express them, and I ask you to find him not guilty of

13   both charges.  Thank you.

14            THE COURT:  Thank you, Mr. Mkhitarian.

15            Mr. Mysliwiec, do you have rebuttal on

16   behalf of the Government?

17            MR. MYSLIWIEC:  Some, Your Honor.  Thank

18   you.

19            THE COURT:  Mr. Mysliwiec.

20            MR. MYSLIWIEC:  Ladies and gentlemen, this

21   is called the rebuttal closing.  Because the United

22   States has the burden, it is my honor and privilege

23   to talk to you last.  And the first thing I want to

24   tell you is that there is no attorney I know who

25   could do a better job for his client than

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Mkhitarian just did in that argument.  So these

2    criticisms I have are not of him or his lawyering;

3    they're of the position the defendant is in, because

4    the facts are the facts and the law is the law.

5            I want to talk about Counts 1 and 2

6    separately here, because the defense talked about

7    them separately.  The defense said a true thing about

8    this case.  The defense said this case is about when

9    someone crosses a line.  That's accurate.  The

10   defense said this case is about whether Mr. Nissen's

11   political rant should be criminalized.  That's not

12   true.

13           Alex, can we bring up 2-A?

14           Thank you for your patience, ladies and

15   gentlemen.  There are parts of this speech that are

16   arguably political.  Those are not why we're here.

17   If it's true that the defendant is a member of a

18   group that believes only county sheriffs have legal

19   authority, he could have said that in any number of

20   ways that didn't threaten to kill anyone, and we

21   would not be here.

22           When he said, "He violated my Fourth

23   Amendment Constitution, he violated my Second and my

24   First," which Mr. Mkhitarian expertly explained,

25   that's not why we're here.  "The next time he does

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   it, I'm going to plead the Fifth," which is to say,

2   "I contemplate doing something illegal, but I

3   wouldn't talk about it," which, when he says it in

4   this phone call, you can consider.  You can't

5   consider, as the judge instructed, whether he

6   testifies or not here.  He has an absolute right not

7   to.  You're not allowed to hold that against him.

8   But in this phone call, you're allowed to consider

9   what he means.

10          The part where he says, "I'm going to do

11   whatever I'm going to do because he broke the law,

12   he's a derelict of his duties," that's not the part

13   of the phone call that brings us here.  His opinion

14   that Officer Burd is derelict in his duties, that's

15   his right as an American to have that opinion, to

16   call and express that opinion, to call and shout that

17   opinion.  He can shout that opinion into my face all

18   he wants.  That's not a crime.  It's the "make him

19   drop dead" part that's the crime.  This is a case

20   about whether a line has been crossed.

21          Mr. Mkhitarian describes Mr. Nissen as a

22   law-abiding citizen.  I think that's -- most

23   importantly, that's irrelevant.  The judge has

24   instructed you that Mr. Nissen is only on trial for

25   Count 1 and Count 2.  He's not on trial for the proof

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of insurance.  He's not on trial for the expired

2    registration.  He's not on trial to carrying a

3    nondriver ID when really he had a driver ID.  Nobody

4    cares.  That's just context for how Officer Burd

5    treated him fairly and how Officer Burd was treated

6    in return.  He's not on trial for whether he's a

7    law-abiding citizen or not.

8            Mr. Mkhitarian said that Officer Burd

9    testified that Nissen was completely compliant.

10   That's not true.  He's allowed to argue what the

11   facts are and to argue facts that are not true.  He's

12   allowed to do that.  That's not wrong lawyering, but

13   that's not what Officer Burd testified to.  Officer

14   Burd testified that when he first demanded proof of

15   insurance and registration, he got some speech about

16   how Mr. Nissen didn't have to give it.  Officer Burd

17   didn't escalate.  Officer Burd de-escalated.  Officer

18   Burd had been trained to deal with these folks, not

19   because they're so numerous, but because without

20   training, an untrained officer might go a route that

21   Officer Burd didn't, might escalate the situation,

22   might think he was in danger and cause violence that

23   didn't need to happen.  Officer Burd was more

24   circumspect than that.  Officer Burd was more patient

25   than that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Mr. Mkhitarian argued that we are not aware

2  of anybody being in imminent danger from Michael

3  Nissen, and that as far as we know, everybody who

4  received a threat was protected by time and space

5  from Mr. Nissen.   That is irrelevant.   Instruction 9

6  says it doesn't even matter if Mr. Nissen intended to

7  carry out the threat.   All that matters is whether he

8  meant it as a threat and whether he knew it would be

9  taken seriously as a threat, which it was.

10      Mr. Mkhitarian argues that Mr. Nissen's

11  beliefs are not fringe political beliefs.   That's

12  untrue, but it doesn't matter.   If he said, "I

13  support candidate X for president and that's why I'm

14  going to shoot you in the head," it would not be the

15  candidate support that brings us here.   It's the

16  threat to shoot people in the head.   And I don't

17  treat Officer Burd differently than I treat anybody,

18  and the law doesn't treat Officer Burd differently.

19  And in America, we are all equal under the law.   I'm

20  a little offended, but it's within proper argument to

21  complain that we're asking the threat laws to be

22  enforced differently as against police, but I'm

23  telling you we're not, and you can see the evidence

24  that we're not.   If that threat was given about

25  anybody, Victoria Gurule would have taken it



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  seriously, Barbara Beuzekom would have taken it

2  seriously, any reasonable person would take these

3  threats and the way they're delivered seriously.

4          And that's what the law requires you to

5  find in this case.  This is not about the political

6  parts of the phone call.  It's not about whether the

7  beliefs are fringe or mainstream.  We are not here to

8  punish someone's political ideas being weird.  That

9  doesn't matter.  All that matters is the threats.

10         So we get to Count 2, the threats to

11  Barbara Beuzekom.  You are allowed to consider not

12  only Barbara Beuzekom's testimony, but you're allowed

13  to consider Officer Cordova's testimony that when

14  Barbara Beuzekom came into his office with Michael

15  Nissen waiting on hold, she looked different than she

16  usually did.  It was his view that she was upset;

17  that she was usually bubbly; that she looked very

18  serious, and she relayed to him that the caller had

19  threatened to shoot her in the head, which is not

20  exactly the same words as "I'm going to shoot you in

21  your fucking face," but as the judge has instructed

22  you, some differences in recollection is normal.

23  There is nothing sinister in that, no matter what the

24  defense wants you to believe.

25         In order for you to acquit the defendant on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501 ·
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Count 2, in order to follow the defendant's theory

2    that the call didn't happen, you would have to

3    assess -- and it's within your power to assess -- you

4    would have to assess that Barbara Beuzekom lied to

5    your face, that the calls that are clearly shown on

6    the log on November 26, 2018, didn't happen; I guess

7    that the log is fake; that Officer Cordova lied about

8    it and that his half of the conversation, which is

9    recorded, is actually the whole conversation.

10           Now, we know there is no mechanism for a

11   person calling to complain about the police to be

12   connected with a crimes-against-children detective.

13   You heard from Victoria and you heard from Barbara

14   how the call gets connected to her.  Someone calls

15   the New Mexico State Police line, the automated voice

16   says, "Please listen.  Our options have recently

17   changed."  Gives the options.  One of the options is

18   administration.  If you select administration, it

19   goes to Barbara.  That line is not recorded.  Barbara

20   said that since then they have been working on

21   upgrading their system so that maybe that line could

22   be recorded.  Whether that's as a result of this case

23   or not, it doesn't matter.  Who cares?

24           You would have to believe that Barbara lied

25   to your face and you didn't notice; that Officer

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Cordova lied to your face and you didn't notice; that

2    he, a sworn officer, sworn here to tell the truth,

3    which is the important oath, made up her reaction and

4    what she said to him about the phone call that she

5    had just received.

6         Now, I would love to have a recording of

7    that first half of that phone call on November 26.

8    But you don't need it to lack a reasonable doubt as

9    to what happened.  You have Michael Nissen's phone

10   calls.  In some of them he didn't threaten to kill

11   anyone, true.  But you hear what it sounds like when

12   he did threaten to kill someone, and you heard

13   Barbara Beuzekom's testimony, and it's your power as

14   the judges of the facts to determine credibility,

15   just like the judge instructed.  It's your power to

16   believe Barbara Beuzekom.  And that's what you should

17   do.

18         And she's corroborated not only by Officer

19   Cordova, by his phone call that was recorded, by him

20   saying what it was like to interact with her at that

21   time; but also corroborated by the way that you hear

22   Michael Nissen with your own ears make these threats

23   in Exhibit 2 and make the nonthreatening speech that

24   he makes in Exhibits 1, 3, and 4.  That's all you

25   need.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          You should have no reasonable doubts when

2     you're done reviewing all this evidence.  And even

3     though you have listened respectfully to all of the

4     defense's arguments, they should not convince you.

5     And instead, what you should do is find Michael

6     Nissen guilty as to Count 1 and guilty as to Count 2.

7     Thank you.

8          THE COURT:  Thank you, Mr. Mysliwiec.

9          (The jury was instructed.)

10          (The jury left the courtroom.)

11          (Verdict was returned.)

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    UNITED STATES OF AMERICA

2    STATE OF NEW MEXICO

3

4                    C-E-R-T-I-F-I-C-A-T-E

5        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

6    Official Court Reporter for the State of New Mexico,

7    do hereby certify that the foregoing pages constitute

8    a true transcript of proceedings had before the said

9    Court, held in the District of New Mexico, in the

10   matter therein stated.

11       In testimony whereof, I have hereunto set my

12   hand on this 20th day of November, 2019.

13

14       _____

15       Jennifer Bean, FAPR, RMR-RDR-CCR, CRR
         Certified Realtime Reporter
16       United States Court Reporter
         NM Certified Court Reporter #94
17       333 Lomas, Northwest
         Albuquerque, New Mexico 87102
18       Phone:   (505) 348-2283
         Fax: (505) 843-9492
19       License expires:   12/31/19

20

21

22

23

24

25




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



MICHAEL NIELSEN
02508151
P.O. BOX 3540
CIBOLA COUNTY CORRECTIONAL CENTER
MILAN, NM 87021

*Legal Mail*

CLERK OF
UNITED
ATTN: JUD
333 LOM
ALBUQUER

**UNITED STATES POSTAL SERVICE**

**USPS TRACKING #**

9114 9023 0722 4598 0965 17

Label 400 Jan. 2013
7690-16-000-7948



U.S. POSTAGE ›› PITNEY BOWES

ZIP 87021
02 4W
0000363673 FEB 11 2020

$ 008.25⁰

THE COURT,

STATES DISTRICT COURT

JAMES O BROWNING

AS BLVD, NW

QUE, NM 87/02

TRACKED
INSURED

Label 107R, July 2013

PRIORITY MAIL

UNITED STATES
POSTAL SERVICE ®

For Domestic Use Only