IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

          Plaintiff,

vs.                                        No. 19-CR-0077-JB

MICHAEL NISSEN,

          Defendant.

## SENTENCING MEMORANDUM IN SUPPORT OF A DOWNWARD DEPARTURE AND A DOWNWARD VARIANCE

Defendant Michael Nissen, by and through his counsel of record, Joe M. Romero, Jr. (Romero & Winder, PC), respectfully moves this Court both for a downward departure and downward variance resulting in a time served sentence and supervised release requiring Mr. Nissen's participation in mental health treatment.[1] A downward departure is warranted based on Mr. Nissen's diminished capacity under U.S.S.G. § 5K2.13, and (2) a downward variance is warranted pursuant to a consideration of the factors under 18 U.S.C. § 3553(a), particularly Mr. Nissen's mental health condition (*see* U.S.S.G. § 5H1.3).

## BACKGROUND

On January 10, 2019, Mr. Nissen was indicted on two felony counts of "interstate and foreign commerce communications containing a threat to injure the person of another" in

---

[1] Undersigned counsel informs the Court that as of the time of the filing of this sentencing memorandum, the Defendant declined to cooperate with undersigned counsel in the review of the his PSR and in the preparation of this motion. He also declined to cooperate with Dr. Julie Brovko, a psychologist retained by undersigned counsel to prepare a Presentence Study pursuant to 18 U.S.C. § 3552(b). This sentencing memorandum will be supplemented prior to a final sentencing hearing upon the receipt of additional information either from the Defendant or from any related psychological evaluation(s).

violation of 18 U.S.C. § 875(c). On August 7, 2019, a jury returned a guilty verdict, and Mr. Nissen was convicted of the charges in both felony counts.

The Amended PSR disclosed on November 7, 2019, calculated an Adjusted Total Offense Level of 22 for Mr. Nissen's convictions. Doc. 88, ¶ 37. When combined with a Criminal History Category I, the PSR calculates Mr. Nissen's Guidelines sentence at 41-51 months. *Id.*, ¶ 65.

Under the Sentencing Guidelines ("Guidelines"), Mr. Nissen is eligible to be sentenced with incarceration and supervised release. Doc. 88, ¶¶ 64-73. The PSR indicates that pursuant to the statutory guideline sentence under 18 U.S.C. § 3583(b)(2), the Court may impose a term of supervised release of not more than three (3) years for each of Counts I and II. *Id.*, ¶ 67. Additionally, the PSR affirms that 18 U.S.C. § 3624(e) requires that multiple terms of supervised release must run concurrently. *Id.*, ¶ 68.

Ultimately, the PSR also indicates that in consideration of the factors specified in 18 U.S.C. §3553(a)(1)-(7), "a downward variance outside the advisory guideline range may be warranted in this case." Doc. 88, PSR, ¶ 84. Specific factors in Mr. Nissen's case supporting a downward variance are that Mr. Nissen has a minimal criminal history, he never acted out or followed through on his alleged threats, and Mr. Nissen suffers from significant mental health issues that played a powerful role in his offense conduct.

Mr. Nissen is a 55-years old. Little is known about Mr. Nissen's personal history, childhood, and family life because Mr. Nissen has refused to cooperate with the Probation Office or his attorneys. His lack of cooperation is reasonably believed by undersigned counsel to be a symptom of his diagnosed Persecutory Delusional Disorder, previously diagnosed by Dr.

2

Mercedes Marshall.  *See*, Michael Nissen Psychological Competency Evaluation, Mercedes Marshall, Ph.D., Doc. 29, at p. 9.

Based on a review of the discovery provided to the defense and from background information obtained by Dr. Marshall, it appears that at the time of his arrest, Mr. Nissen was living alone with his dog. He is divorced, has no children, and was supporting himself, earning a modest income, doing odd jobs or "handy man" type work. Also, during Dr. Marshall's pre-trial psychiatric evaluation to determine competency for trial, *see infra*, the examiner did confirm that at least one of Mr. Nissen's family members had schizophrenia.  Doc. 88, ¶ 58.

Dr. Marshall's evaluation was based on a four-hour clinical interview, observation of Mr. Nissen, mental status exam, and collection of information by CCCF personnel and two of Mr. Nissen's prior attorneys. *Id.,* at 1. Dr. Marshall concluded that Mr. Nissen "is *presently insane*, [though] he is found to be factually but limitedly rationally competent." *Id.*, at 12.  Dr. Marshall qualified her finding of Mr. Nissen's competence by a condition that Mr. Nissen "can factually and limitedly rationally assist in his own defense *but only if he trusts his attorney* . . . he is found to be seriously mentally ill."  Doc. 29, at 11 (emphasis added).

As previously indicated, Dr. Marshall concluded that Mr. Nissen "[met] the criteria for Delusional Disorder[2], mixed with paranoid and grandiose delusions," and determined that "Schizophrenia could not be ruled out at this time but it is examiner's clinical opinion that a schizophrenic process is more probable than not." Doc. 29, at 9-10, *see also* Doc. 88, ¶¶ 57-58 (same).

---

[2] Criteria established in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 5th Edition (aka DSM-V), 297.1 (F22) Delusional Disorder, with bizarre content, mixed with Persecutory and Grandiose Delusions.

Mr. Nissen has expressed statements and has exhibited conduct that reflects and seems to confirm the diagnosis of paranoid and grandiose delusions. The PSR states that in a conversation with a state crisis intervention officer, Mr. Nissen

> talked about numerous subjects including constitutional rights, conspiracies, robots, free masons, President Donald Trump, and 'judges in black cloaks that think they are gods.' At one point in the conversation, Nissen stated he was on a secret mission from the 'Prime Creator' and he stated the CIA wanted to clone him because he is the perfect male.

Doc. 88, ¶ 11.

As the Court is fully aware (*see* Doc. 135, memorandum Opinion and Order), Mr. Nissen's expresses a fervent belief in sovereign citizen principles and ideologies. Mr. Nissen's offense conduct reflecting Mr. Nissen's sovereign citizen ideologies presumably is affected by his mental illness. "Sovereign citizens believe that they -- not judges, juries, law enforcement or elected officials -- get to decide which laws to obey and which to ignore, and they don't think they should have to pay taxes." *Sovereign Citizens Movement*, Southern Poverty Law Center, https://bit.ly/3awcY0N (last visited April 23, 2019).

As this Court has experienced, "[t]he weapon of choice for sovereign citizens is paper. A simple traffic violation or pet-licensing case can end up provoking dozens of court filings containing hundreds of pages of pseudo-legal nonsense." *Id.* Mr. Nissen's offenses related to sovereign citizen ideologies are outside the heartland of typical cases contemplated by the Guidelines. The Southern Poverty Law Center ("SPLC") reports that "[i]t is impossible to know how many sovereigns there are in the U.S. today, in part because there is no central leadership and no organized group that members can join." *Id.* By all accounts, Mr. Nissen is a self-taught, lone actor, in terms of applying and exercising his sovereign citizen ideology. The SPLC estimates the total number of individuals who espouse the sovereign citizens ideology at

300,000. *Id.* In contrast, "[b]y 2018, over 1.8 million defendants had been sentenced under the guidelines." *Federal Sentencing: The Basics*, The United States Sentencing Commission, p. 5 (2018), https://bit.ly/3az5rhw. Assuming not all of the estimated 300,000 sovereign citizens are criminal defendants, such cases are a very small minority of defendants and outside the heartland of cases engaged by federal sentencing courts.

## ARGUMENT

The Court should grant both a departure and a variance from the Guidelines sentence, because the circumstances of this case are outside the "heartland of cases" which the Sentencing Commission considered when establishing the Guidelines. The facts and circumstances of this case are unique, qualifying Mr. Nissen for a downward departure based on diminished capacity and a downward variance based on a consideration of the 18 U.S.C. § 3553(a) factors to the Guidelines sentence of 41-51 months.

> A downward departure must conform to the Guidelines and give a specific basis for why the Guidelines do not properly account for the defendant's situation. A variance, on the other hand, is based entirely on the sentencing court's discretionary authority as long as the court justifies its sentence based on the § 3553(a) factors.

*United States v. Barnes*, 890 F.3d 910, 920 n. 1 (10th Cir. 2018).

The threshold question in the Court's consideration of whether to grant either or both a departure or variance is a determination of whether a case lies outside the heartland of typical cases contemplated by Congress when it created the Sentencing Guidelines. *U.S. v. Martinez-Barragan*, 545 F.3d 894, 900 (10th Cir. 2008) (*citing Rita v. United States*, 551 U.S. 338, 351 (2007) ("the Supreme Court specifically endorsed the use of this technique as part of the weighing of the § 3553(a) factors.")).

## Mr. Nissen's Case Warrants a Downward Departure Based on His Diminished Capacity Under U.S.S.G. § 5K2.13.

A downward departure from the Guidelines sentence if warranted based on Mr. Nissen's diminished capacity. The PSR did not take into account Mr. Nissen's diminished capacity in calculating his Guidelines sentence. Doc. 88, ¶ 82. Mr. Nissen, however, suffers from a significant mental impairment, which contributed to his specific offense, and a downward departure under U.S.S.G. Section 5K2.13 is warranted.

"A downward departure must conform to the Guidelines and give a specific basis for why the Guidelines do not properly account for the defendant's situation." *United States v. Barnes*, 890 F.3d 910, 920 n. 1 (10th Cir. 2018). Under U.S.S.G. § 5H1.3,

> Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.

*U.S. v. Lovato*, 798 F. Supp. 2d 1257, 1259 (D.N.M. 2011) (*quoting* U.S.S.G. § 5H1.3); see *United States v. Naramor*, 726 F.3d 1160, 1168 (10th Cir. 2013) (same).

"Diminished capacity is an 'encouraged factor' under the Guidelines -- a specific factor provided by the Commission 'to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines.' *United States v. Gutierrez-Hernandez*, No. CR 11-1862 JB, at *10 (D.N.M. Mar. 31, 2012) (*quoting United States v. Neal*, 249 F.3d 1251, 1256 (10th Cir. 2001) (*citing* U.S.S.G. § 5K2.0)).

> A 'significantly reduced mental capacity' means that the defendant "has a significantly impaired ability to (A) understand the wrongfulness of the behavior compromising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.

6

*U.S. v. Nunemacher*, 362 F.3d 682, 690 (10th Cir. 2004) (*quoting* U.S.S.G. § 5K2.13, Comm., Appl. n. 1. U.S.S.G. § 5K2.13 "requires significant impairment specific to the offense itself. . ." *Id.*

Should the Court determine a departure under Section 5K2.13 is warranted "'the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.'" *U.S. v. Cordova*, 337 F.3d 1246, 1249 (10th Cir. 2003) (*quoting* U.S.S.G. § 5K2.13).

"'Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline.'" *U.S. v. Martinez-Barragan*, 545 F.3d 894, 900 (10th Cir. 2008) (*quoting Koon v. United States*, 518 U.S. 81, 98 (1996)); (*citing* U.S.S.G. § 1A1.1 editorial note, ch. 1, pt. A, introductory cmt. n. 4(b) ("The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes.")).

**Mr. Nissen's Case Warrants a Downward Variance on the Guidelines Sentence of 41-51 Months.**

A downward variance on Mr. Nissen's Guidelines sentence of 41-51 months is warranted based on a consideration of the factors under 18 U.S.C. § 3553(a), particularly considering Mr. Nissen's mental health under U.S.S.G. § 5H1.3. The facts of Mr. Nissen's case are outside the heartland of typical cases considered by Congress when drafting the Sentencing Guidelines.

"*United States v. Booker*, 543 U.S. 220 (2005), [] made the sentencing guidelines advisory rather than mandatory and 'allow[ed] district courts to exercise discretion to vary from the guideline range if a variance would be appropriate under the § 3553(a) factors.' *United*

7

*States v. Barnes*, 890 F.3d 910, 920 n. 1 (10th Cir. 2018) (*quoting United States v. Beltran*, 571 F.3d 1013, 1019 (10th Cir. 2009)).

"A 'variance . . . occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of factors outlined in 18 U.S.C. § 3553(a)." *United States v. Robinson*, 741 F.3d 588, 600 (5th Cir. 2014). A variance by the sentencing court must be reasonable and justified by the facts of the case. *Gall v. United States*, 552 U.S. 38 (2007).

The variance does not require extraordinary circumstances to depart from the Sentencing Guidelines. *Id.* "The Court's task is . . . to come up with a sentence that accurately reflects the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Yazzie*, No. CR 10-1761 JB, 2014 WL 1948244, at *30 (D.N.M. May 7, 2014) (*citing United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007)); *see also United States v. Marcellus*, No. CR 10-3452 JB, 2012 WL 4949369, at *5 (D.N.M. Sept. 5, 2012) (same); *U.S. v. Lovato*, 798 F. Supp. 2d 1257, 1260 (D.N.M. 2011) (same). The 18 U.S.C. § 3553(a) factors to be considered for imposing a variance to a Guidelines sentence are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established [under the Guidelines]
> (5) any pertinent policy statement issued by the Sentencing Commission
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7).

**18 U.S.C. § 3553(a)(1)-(7) Factors as Applied to Mr. Nissen:**

**(1) The nature of the offense and history and characteristics of the defendant.**

Mr. Nissen's total criminal history score is zero.  Doc. 88, PSR, ¶ 44.  Mr. Nissen has no juvenile adjudications and at the ripe age of fifty-five had no adult criminal history.  *Id.,* ¶¶ 41-42.  Though Mr. Nissen has a great deal to say and he expresses his beliefs with vigor, he has never acted out on his alleged threats towards law enforcement or anyone else.  Indeed, in June of 2019, Dr. Marshall determined that "[i]n terms of dangerousness, Mr. Nissen was not found, at the time of the evaluation, [to] be a danger to himself or others."  Doc. 29, at 9.[3]  Dr. Marshall also reported that the warden at CCCF assessed Mr. Nissen as "'not violent,'" and that he was placed in high security "'for his own protection.'"  Doc. 29, at 3.

Regarding Mr. Nissen's personal characteristics, Dr. Marshall found Mr. Nissen "to have a serious mental illness."  Doc. 29, at 8.  Dr. Marshall observed,

> Due to a serious mental illness and paranoid delusional thinking at the time of the evaluation, Mr. Nissen's thinking was affected by irrational and illogical thoughts that are resulting from a poor reality testing and more probable than not a thought disorder.  Mr. Nissen has limited logical and rational insight into his own functioning.  Mr. Nissen meets the criteria for Delusional Disorder, mixed with paranoid and grandiose delusions.  Schizophrenia could not be ruled out at this time but it is examiner's clinical opinion that a schizophrenic process is more probable than not.

*Id.* at 8-9.

**(2) The need or purpose of sentencing.**

18 U.S.C. § 2553(a)(2) outlines the considerations for the need or purpose of the sentence imposed:

> A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> B. to afford adequate deterrence to criminal conduct;

---

[3] In the context of Mr. Nissen's potential "dangerousness," Dr. Marshall also stated that Mr. Nissen, "should be considered for psychotropic medication to improve thinking and reduce the risk of harm to self and others" and that it is "essential" for Mr. Nissen to undergo a "regular" mental health assessment to determine his "risk to self or others once he is released into the community." *Id.*

    C. to protect the public from further crimes of the defendant; and
    D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 2553(a)(2)(A)-(D).

  Mr. Nissen's requested sentence of time served – which would be a not so insignificant seventeen (17) months - and supervised release requiring that Mr. Nissen participate in mental health treatment addresses these factors. As a so-called sovereign citizen, Mr. Nissen considers the federal government and its authority over him to be illegitimate. Further incarceration would likely fuel Mr. Nissen's sovereign ideologies which are exacerbated by his significant mental health condition and encourage Mr. Nissen's disrespect for the law and the government's authority, rather than "promote respect for the law." *Sovereign Citizens: A Growing Domestic Threat to Law Enforcement*, FBI Law Enforcement Bulletin (Sept. 1, 2011), https://bit.ly/2XV3NnY.

  18 USC §3553(a)(2)(D) allows the Court to consider the defendant's need for medical care when considering a variance. Mr. Nissen primary needs include mental health treatment and medication. A sentence of time-served and Mr. Nissen's required participation in mental health treatment under supervised release would facilitate Mr. Nissen's hopeful successful transition back to society. Dr. Marshall has assessed that Mr. Nissen is not an actual danger to others or to himself. *See* Doc. 29, at 9 (Dr. Marshall stated that "[i]n terms of dangerousness, Mr. Nissen was not found, at the time of the evaluation, [to] be a danger to himself or others."). The CCCF warden, however, has determined that Mr. Nissen needs protection from others while incarcerated. Doc. 29, at 3 (the warden at CCCF stated that Mr. Nissen was placed in high security "'for his own protection.'").

In *U.S. v. Rausch,* the court favorably considered a lesser sentence and granted supervised release based on the defendant's "extremely poor health and the complexity of [the defendant's] needs for medical care [which] override any value that further imprisonment would have." 570 F. Supp. 2d 1295, 1308 (D. Colo. 2008). In addition, the court reasoned that the defendant's "vulnerability to victimization in prison is an unnecessary and unacceptably high risk." *Id.* The need for Mr. Nissen to get psychiatric help in a non-governmental setting and in which Mr. Nissen is not segregated due to his unique need for protection supports a downward variance to time served and supervised release.

> **(3) The kinds of sentences available and (4) the sentencing range established by the Sentencing Guidelines.**

Mr. Nissen's total offense level is 22 and his criminal history score is zero. Doc. 88, ¶¶ 18-37, 41-444. The Guidelines range for this offense level is 41-51 months. Doc. 88, ¶ 65.

Mr. Nissen is subject to supervised release, incarceration, fines, and restitution under the Sentencing Guidelines. Doc 88, ¶¶ 64-81. Undersigned counsel requests a variance in Mr. Nissen's Guidelines sentence to time-served and supervised release requiring Mr. Nissen's participation in mental health treatment. The PSR assesses that under USSG §5D1.2(a)(2), both offenses of conviction are Class D felonies, subjecting Mr. Nissen to a term of supervised release for each offense is one (1) to three (3) years. *Id.*, ¶ 69.

Given Mr. Nissen's unique personal characteristics and a need for psychiatric treatment and medication, a variance on Mr. Nissen's Guidelines sentence to time-served and supervised release is appropriate. *See* 18 U.S.C. § 3582(a) ("The court . . . shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that *imprisonment is not an appropriate means of promoting correction and rehabilitation*." (emphasis added)). Obviously,

should Mr. Nissen choose not to conform to the conditions imposed on his supervised release, the Court could revoke Mr. Nissen's supervised release and incarcerate him.

### (5) Pertinent policy statements issued by the Sentencing Commission;

The Guidelines policy addressing mental health and emotional conditions of the defendant states that "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3.  The policy goes on to state that "[i]n certain cases a downward departure may be appropriate to accomplish a specific treatment purpose." *Id.* Finally, the policy states that "[m]ental and emotional conditions may be relevant in determining the conditions of probation or supervised release; *e.g.*, participation in a mental health program." *Id.*

Mr. Nissen's mental health condition – namely observed insanity, paranoid and grandiose delusions, and signs of schizophrenia, and diagnosed Delusional Disorder – plays a leading role in Mr. Nissen's offense conduct.  His mental health conditions are indeed present "to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3.  A downward variance here is necessary to achieve the mental health treatment of Mr. Nissen advised by both Dr. Marshall (Doc. 29, at 11-12).

**<u>The need to avoid unwarranted disparities among similar offenders.</u>**

The Guidelines and caselaw allow for the Court to vary or depart from the Guidelines sentence when the circumstances and facts of the case fall outside the "heartland of cases." *U.S. v. Martinez-Barragan*, 545 F.3d 894, 900 (10th Cir. 2008) (*quoting Koon v. United States*, 518 U.S. 81, 98 (1996) ("'Before a departure is permitted, certain aspects of the case must be found

unusual enough for it to fall outside the heartland of cases in the Guideline.'"); *see also* U.S.S.G. § 1A1.1 editorial note, ch. 1, pt. A, introductory cmt. n. 4(b) ("The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes.")).

Mr. Nissen requests a sentence that is commensurate with similar cases and circumstances. In *United States v. Marcellus*, No. CR 10-3452 JB, 2012 WL 4949369 (D.N.M. Sept. 5, 2012), this Court granted a downward variance based on factors very similar to the factors present in Mr. Nissen's case, to wit: mental illness which appeared to contribute to the offense conduct, minimal to no criminal history, and a non-violent offense. In *Marcellus*, this Court did not grant a downward departure based on factors present in *Marcellus*, not present in Mr. Nissen's case. That is, in *Marcellus*, the offense involved a well thought out and sophisticate scheme, the defendant had a felony conviction committed close in time to the instant offense, and the Court concluded that the mental health condition would likely not have stopped the defendant from committing the offense. *Id.* At *4. On the contrary, in Mr. Nissen's case, his paranoid delusional thinking arguably played a more significant role in his offense conduct.

While this Court in *Marcellus* denied the defendant's request for a downward departure and for a "time served" downward variance, the Court did grant a seven-level downward variance of 19 months based in significant part on his mental health condition. *Id.* at **4-5.

The Court here would be justified in granting a lower sentence than in *Marcellus* of approximately 19 months, and supervised release. A longer prison sentence is not in Mr. Nissen's nor society's best interest given Mr. Nissen's significant mental health issues, vulnerability in prison, as well as the propensity for Mr. Nissen's sovereign ideology to be exacerbated in prison. Mr. Nissen requires mental health treatment, not prison. *See also U.S. v.*

*Lovato*, 798 F. Supp. 2d 1257, 1259 (D.N.M. 2011) (the court varied downward three levels based in part on the defendant serious mental health condition).

## CONCLUSION

Wherefore, for the foregoing reasons, Mr. Nissen respectfully requests that this Court grant a downward departure to the Guidelines sentence based on his diminished capacity under U.S.S.G. § 5K2.13, and a downward variance, suggested by the PSR, based on a consideration of the factors outlined in 18 U.S.C. § 3553(a), thus warranting a sentence in this case of time-served and supervised release requiring that Mr. Nissen participate in mental health treatment.

Respectfully Submitted,
*/s/ Joe M. Romero, Jr.*
Joe M. Romero, Jr.
Romero & Winder, PC
Attorney for Michael Nissen
1905 Lomas, Blvd. N.W.
Albuquerque, N.M. 87104
(505) 843-9776
EM: joe@romeroandwinder.com

### Certificate of Service

I hereby certify that, on April 30, 2020, the foregoing pleading was filed electronically pursuant to CM/ECF procedures for the District of New Mexico, which caused the parties and/or their counsel to be served by electronic transmission, as more fully reflected by the Notice of Electronic Filing.

*/s/ Joe M. Romero, Jr.*
Joe M. Romero, Jr.