# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                               No. CR 19-0077 JB

MICHAEL JAMES NISSEN,

      Defendant.

## UNSEALED[1] MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion for Temporary Transfer of Defendant to FMC - Butner to Determine Competency, filed May 3, 2020 (Doc. 137)("Motion"). The Court held a hearing examining Defendant Michael James Nissen's competency on May 7, 2020.  See Clerk's Minutes at 1, filed May 7, 2020 (Doc. 144).  The primary issue is whether Nissen has demonstrated, by a preponderance of the evidence, that he presently suffers from a mental illness that renders him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. The Court concludes that Nissen has demonstrated, by a preponderance of the evidence, that he presently suffers from a mental disease or defect that renders him mentally incompetent to proceed with his sentencing.  Accordingly, the Court grants the Motion pursuant to 18 U.S.C. § 4241(d) and transfers Nissen to the custody of the Attorney General of United States for evaluation and treatment.

---

[1]In its Sealed Memorandum Opinion and Order at 1 n.1, filed June 12, 202 (Doc. 148), the Court "orders that the parties submit to the Court any proposed redactions on the Memorandum Opinion and Order . . . within fourteen calendar days of the date that this Memorandum Opinion and Order is filed."  Having not received any proposed redactions, the Court unseals the Memorandum Opinion and Order.

**FINDINGS OF FACT**

The Court makes the following findings of fact.  The Court's findings of fact, where possible, will proceed chronologically.  The Court makes its findings based upon its review of: (i) the report that Mercedes Marshal, Ph.D., submitted on June 8, 2019, see Psychological Competency Evaluation, filed June 10, 2019 (Doc. 29)("Marshall Report"); (ii) the Revised Presentence Investigation Report, filed November 7, 2019 (Doc. 88)("Revised PSR")[2]; (iii) the report of the first evaluation that Julie M. Brovko, Ph.D., attempted on April 30, 2020, see Forensic Psychological Report, filed May 7, 2020 (Doc. 141)("First Brovko Report"); and (iv) the report of the second evaluation that Dr. Brovko attempted on May 13, 2020, see Forensic Psychological Report - update, filed June 8, 2020 (Doc. 147)("Second Brovko Report").  Because Nissen did not

---

[2]The USPO disclosed the initial PSR on October 4, 2019.  See Presentence Investigation Report, disclosed October 4, 2019 (Doc. 83).  The USPO disclosed a revised PSR on December 3, 2019.  See Revised PSR at 1.  In a memorandum attached to the Revised PSR, Shaun Ward, United States Probation Officer, notes that the USPO made the following changes in the Revised PSR:

Release Status: This section was updated to reflect the current time in custody.

Offense Conduct: This section was revised and is the version provided by the government as this was a jury trial case.  Several paragraphs in this section were moved to the "Offense Behavior Not Part of Relevant Conduct" section.

Victim Impact: Paragraph 16 now includes information about a victim impact statement that was received.

Offense Level Computation: The paragraphs in this section has been revised to include a specific offense characteristic and victim related adjustments.  The resulting total offense level is now 22.

Custody: Paragraph 65 has been revised with the corrected offense level.

Fines: Paragraph 76 has been revised with the new fine range.

Memorandum from Shaun Ward, United States Probation Officer, to the Court at 1 (dated December 3, 2019), filed December 3, 2019 (Doc. 92).

speak with the United States Probation Office as it prepared the Revised PSR, and because Nissen has largely not cooperated with Dr. Brovko's evaluation attempts, Nissen's biographical information is scant.  See Revised PSR ¶ 14, at 6; First Brovko Report at 2; Second Brovko Report at 2.

1.     Nissen was born on March 8, 1955, and has lived in Albuquerque, New Mexico, his entire life.  See Revised PSR at 3.

2.     Nissen dropped out of high school during his junior year.  See Revised PSR ¶ 60, at 14.

3.     Nissen worked for several years as a plumber with his father, but lately has been working "odd jobs" fixing appliances.  Revised PSR ¶ 61, at 14.

4.     Nissen is six feet and two inches tall, and weighs approximately 220 pounds.  See Revised PSR ¶ 56, at 12.

5.     Some of Nissen's biological family members have been diagnosed with schizophrenia.  See Marshall Report at 9.

6.     Nissen was married for eight years, but his wife "left [him] three years ago because she was scared with all the stuff [he] was telling her."  Marshall Report at 7.

7.     Excluding the current federal charges, Nissen has no juvenile or adult criminal convictions.  See Revised PSR ¶¶ 41-42, at 8-9.

8.     Nissen is fixated on the sovereign citizens Movement, a conspiracy theory that posits that a secret judicial regime bent on enslaving American citizens is the United States' true governing force, that judges are part of this cabal, and that individuals who are aware of this scheme can attain diplomatic and sovereign immunity from prosecution or detention.  See Revised PSR ¶ 46, at 9.

9.      The theory's adherents believe that, by invoking certain baroque procedures, they obtain diplomatic and sovereign immunity from paying taxes, traffic stops by law enforcement, and other legal restrictions.  See United States v. Nissen, 2020 WL 1929526, at *21 n.7 (D.N.M. April 21, 2020)(Browning, J.).

10.     Nissen also believes that "Jesuits" and "Masons" control society and government. Marshall Report at 7.

11.     On the evening of November 2, 2018, New Mexico State Police ("NM State Police") officer Jordan Burd stopped Nissen on Interstate 40 in Torrance County, New Mexico, near mile marker 194, and issued several traffic citations while Nissen attempted to show Burd YouTube videos explaining the sovereign citizens Movement.  See Revised PSR ¶ 6, at 4.

12.     About a half-hour later, Nissen called NM State Police dispatch six times and threatened to kill Burd.  See Revised PSR at ¶ 8, at 4.

13.     In the calls, Nissen said that an NM State Police officer had just given him several citations.  See Revised PSR ¶ 8, at 4-5.

14.     Nissen then said:

You guys got some of the stupidest fucking pigs on the road.  The next time someone violates me like that on the road, I'm gonna put a bullet in that fucking pig's head . . . .  He violated my Fourth Amendment constitution, he violated my Second and my First Amendment and the next time he does it I'm gonna plea the Fifth, but next time I'm gonna take my revolver out and put that motherfucker drop dead.

Revised PSR ¶ 8, at 5.

15.     On November 26, 2018, Nissen again called NM State Police, this time calling the administrative line rather than dispatch.  See Revised PSR ¶ 10, at 5.

16.     When Nissen thought that the NM State Police employee was not assisting him quickly enough, Nissen became verbally combative and threatened to shoot the NM State Police employee in the head.  See Revised PSR ¶ 10, at 5.

17.     These are the acts for which Nissen was indicted, see Indictment at 1, filed January 10, 2019 (Doc. 12), and convicted; specifically, two counts of transmitting threats in interstate commerce, in violation of 18 U.S.C. § 875(c), see Jury Verdict at 1, filed August 7, 2019 (Doc. 73).

18.     On November 27, 2018, law enforcement officers were working on an assignment that, coincidentally, was very near to Nissen's home in Albuquerque.  See Revised PSR ¶ 11, at 5.

19.      Due to law enforcement's prior interactions with Nissen, an NM State Police crisis intervention officer was sent to Nissen's home to verify whether he would be a threat to officers working near his home.  See Revised PSR ¶ 11, at 5.

20.     The officer spoke with Nissen by telephone for over an hour, during which Nissen spoke about several subjects, ranging from his constitutional rights to his conspiracy theories.  See Revised PSR ¶ 11, at 5.

21.     Nissen told the officer that Nissen was "on a secret mission from the Prime Creator," and that the CIA wanted to clone him because he is the perfect man.  Revised PSR ¶ 11, at 5.

22.     Nissen also said that he "always carries a .357 Magnum handgun and a shotgun everywhere he goes."  Revised PSR ¶ 11, at 5.

23.     On December 11, 2018, Nissen, dressed in a hooded sweater, went to the main entrance of NM State Police's District 5 office.  See Revised PSR ¶ 38, at 8.

24.     Speaking into an intercom, Nissen kept his face covered, identified himself as Bob Jones, and said that he was there to deliver flowers.  See Revised PSR ¶ 38, at 8.

Case 1:19-cr-00077-JB-SMV   Document 218   Filed 07/27/21   Page 6 of 30


25.     The NM State Police employee to whom Nissen spoke was the same that he had threatened on November 26, 2018, and recognized Nissen.  <u>See</u> Revised PSR ¶ 38, at 8.

26.     Nissen began cursing and left an object directly in front of the office's door.  <u>See</u> Revised PSR ¶ 38, at 8.

27.     Fearing that Nissen left a bomb, NM State Police evacuated the entire building and called the NM State Police's Bomb Squad.  <u>See</u> Revised PSR ¶ 38, at 8.  NM State Police later identified that object as a bleach bottle that had been painted black, with flowers and two envelopes protruding from its top.  <u>See</u> Revised PSR ¶ 38, at 8.  The envelopes contained written materials about sovereign citizens[3] and constitutional issues.  <u>See</u> Revised PSR ¶ 38, at 8.

28.     NM State Police "spent significant resources responding to Nissen's behavior." Revised PSR ¶ 38, at 8.  The station was "shut down for at least two hours and numerous agencies were called to assist."  Revised PSR ¶ 39, at 8.

29.     When NM State Police officers located Nissen after the event, Nissen "laughed and joked about the incident."  Revised PSR ¶ 39, at 8.

30.     NM State Police issued a "trespass order" and took Nissen to the University of New Mexico Hospital Mental Health Center for evaluation.  Revised PSR ¶ 39, at 8.

31.     Hospital staff were unable to evaluate Nissen, who became agitated and aggressive. <u>See</u> Revised PSR ¶ 39, at 8.

32.     NM State Police officers released Nissen from custody the following day.  <u>See</u> Revised PSR ¶ 39, at 8.

---

[3]In a previous Memorandum Opinion and Order, the Court discussed the so-called sovereign citizens Movement's background and beliefs, and the Court debunked some of the sovereign citizens Movement's foundational legal claims.  See <u>United States v. Nissen</u>, 2020 WL 1929526, at *21 n.7 (D.N.M. April 21, 2020)(Browning, J.)("MOO").

33.     On December 13, 2018, Nissen visited the Bernalillo County Sheriff's Office and spoke with deputies to complain about the NM State Police.  See Revised PSR ¶ 40, at 8.

34.     Nissen said that he was stopped by mile marker 194 on I-40, and that, after the stop, he called NM State Police dispatch "just to get it done and then it got a little crazy . . . .  I didn't make no threatening calls, but I kept calling them about the law."  Revised PSR ¶ 40, at 8.

35.     Nissen also told Bernalillo County Sheriff's Deputies that he owned multiple firearms, including rifles and a revolver, that he uses to "protect himself from 'rogue cops.'" Revised PSR ¶ 40, at 8.

36.     Nissen was arrested pursuant to a federal arrest warrant on December 19, 2018.  See Revised PSR ¶ 46, at 11.

37.      Nissen has been in the continuous custody of the United States Marshal's Service at the Cibola County Detention Center since December 19, 2018.  See Revised PSR ¶ 46, at 11.

38.     On February 5, 2019, at Nissen's request, the Court ordered that Nissen be locally evaluated for mental competency to stand trial.   See Order for Local Evaluation of Mental Competency at 1, filed February 5, 2019 (Doc. 18).

39.     Dr. Marshall met with Nissen at the Cibola County Detention Center on March 7, 2019.  See Marshall Report at 1.

40.     Dr. Marshall conducted a full-day competency interview, made clinical observations, and administered a mental status examination.  See Marshall Report at 1.

41.     Dr. Marshall had significant challenges "from the outset" gaining Nissen's cooperation.  Marshall Report at 2.

- 7 -

42.     Although Nissen told Dr. Marshall that he would not answer any questions, Nissen engaged Dr. Marshall with "incessant, racing, rambling, and tangential speech."  Marshall Report at 4.

43.     Dr. Marshall also reports that she had to repeatedly assure Nissen of her neutrality and that she did not "belong[] to those that he considers enemies."  Marshall Report at 7.

44.     Dr. Marshall concluded that Nissen is "highly intelligent . . . based on his vocabulary and communication skills. . . .  [E]ven if Mr. Nissen had fully cooperated with the present evaluation, the examiner would have decided that an intelligence test was not necessary as his above average (and probably higher) intellectual ability was clearly obvious."  Marshall Report at 4.

45.     Dr. Marshall also asserts, however, that Nissen exhibited "inability to reason logically."  Marshall Report at 9.

46.     Dr. Marshall notes that Nissen "vacillated from trusting the examiner to not trusting the examiner to questioning whether he could trust the examiner."  Marshall Report at 6.

47.     "Whenever Mr. Nissen misinterpreted that the examiner might not be credulous of his assertions, his communications became very intense as if pontificating in an attempt to convince the examiner of his beliefs."  Marshall Report at 6.

48.     Dr. Marshall also says that Nissen was never violent with her but, "at times, he became so intense that he presented as intimidating especially when he perceived that the examiner might not believe him."  Marshall Report at 7.

49.     Dr. Marshall concluded that Nissen has "a serious mental illness."  Marshall Report at 8.

50.     "Due to serious mental illness and paranoid delusional thinking at the time of the evaluation, Mr. Nissen's thinking was affected by irrational and illogical thoughts that are resulting from a poor reality testing and more probable than not a thought disorder."  Marshall Report at 8.

51.     Nissen "meets the criteria for Delusional Disorder, mixed with paranoid and grandiose delusions."  Marshall Report at 9.

52.     Dr. Marshall further concludes that "schizophrenic process is more probable than not."  Marshall Report at 9.

53.     Dr. Marshall also states that Nissen is possibly bipolar.  See Marshall Report at 9.

54.     "It is commonly accepted in the psychiatric profession that the best intervention for individuals diagnosed with a serious mental illness and/or a thought disorder is psychotropic medication."  Marshall Report at 9.

55.     Dr. Marshall concludes that Nissen is not malingering or falsely conveying mental illness.  See Marshall Report at 8 ("It would be impossible to accurately and consistently malinger the syndrome manifested by Mr. Nissen in a sustained fashion through the course of a greater than four-hour Clinical Interview.")

56.     Dr. Marshall states that "Nissen needs a Psychiatric Evaluation to assess appropriate  medications to address his serious compromised thinking process."  Marshall Report at 9.

57.     Dr. Marshall opines that "it is essential that Mr. Nissen is assessed by a mental health provider on a regular basis to determine risk to self or others once [he is] released to the community."  Marshall Report at 9.

58.     Dr. Marshall concludes that Nissen is unlikely to voluntarily accept mental-health medication.  See Marshall Report at 11.

59.     During the interview with Dr. Marshall, Nissen lucidly explained his potential sentencing range under the United States Sentencing Commission Guidelines Manual.  See Marshall Report at 7.

60.     Dr. Marshall concludes that Nissen "has factual understanding of the charges against him and the penalties if he were to be found guilty."  Marshall Report at 9.

61.     Nissen has "factual understanding of the behaviors necessary to testify relevantly," although this ability is "compromised by his lack of rational understanding and paranoid perceptions where he could attribute malice where none may exist."  Marshall Report at 10.

62.     Dr. Marshall concludes that Nissen's "reasoning and ability to assist with his own defense [is] limited given he has serious mental illness that includes paranoid delusional thinking."  Marshall Report at 11.

63.     Dr. Marshall concludes that, if Nissen's attorney "can gain Mr. Nissen's trust," Nissen "has the ability to accept legal advice" and "consider options presented and make a reasonable choice."  Marshall Report at 11-12.

64.     Dr. Marshall predicted, however, that Nissen may irrationally and unpredictably mistrust counsel.  See Marshall Report at 12.

65.     In sum, Dr. Marshall concludes that, although Nissen "is presently insane, he is found to be factually but limitedly rationally competent" as long as he trusts his attorney.  Marshall Report at 12.

66.     Based on Dr. Marshall's Report, Nissen stipulated to his competency, and the Court concluded that Nissen was competent to stand trial.  See Stipulated Order to Finding of Competency at 1, filed July 26, 2019 (Doc. 40).

67.    At trial, Nissen was shackled carefully so that the shackles were not visible to the jury, on the United States Marshals Service's recommendation "[b]ased on his past behavior of being extremely aggressive towards [Marshals] and attorneys."  Email from Sean Cozart to Carol Bevel at 1 (dated August 1, 2019), filed August 5, 2019 (Doc. 61).  See Draft Transcript of Motions Hearing at 63:4-66:18 (taken August 1, 2019)(Court, Gleria, Mysliwiec)("Aug. 1 Tr.").[4]

68.    Nissen comported himself well at the trial and acted under his counsel's advice. See generally Transcript of Jury Trial Volume 1 (taken August 6, 2018), filed December 5, 2019 (Doc. 94)("Aug. 6 Tr.").

69.    Nissen was convicted at trial on two counts of transmitting threatening communications in violation of 18 U.S.C. § 875(c).  See Jury Verdict at 1, filed August 7, 2019 (Doc. 73).

70.    Five attorneys -- Melissa A. Morris, Kenneth Gleria, Jack Mkhitarian, Susan Porter, and Joe M. Romero -- have represented Nissen throughout this case's pendency, three of whom -- Mr. Gleria, Mr. Mkhitarian, and Ms. Porter -- sought to withdraw based on breakdown of the attorney-client relationship.  See Motion to Withdraw at 1, filed August 21, 2019 (Doc. 76)(noting breakdown of the attorney-client relationship due to Nissen's frustration with counsel's unwillingness to advance Nissen's sovereign citizens views); Motion to Withdraw at 1, filed January 8, 2020 (Doc. 100)(same).

71.    Nissen has exhibited difficulty maintaining working relationships with his attorneys and at various times has accused his attorneys of misconduct such as "obviously treacherous treason."  Supplement to Motion to Withdraw at 1, filed August 26, 2019 (Doc. 77).

---

[4]The Court's citations to the Aug. 1 Tr. refer to the court reporter's unedited draft transcript. Accordingly, page and line numbers are subject to slight change in the final version.

72.     Nissen has had difficulty comporting himself during hearings before the Court since the trial.  See, e.g.,  Transcript of Motion Hearing at 9:13-23(taken March 23, 2020)(Court, Nissen), filed April 6, 2020 (Doc. 132); id. at 24:3-7 (Nissen, Court); Draft Transcript of Motion Hearing at 3:15-4:12 (held May 7, 2020)(Court, Nissen)("May 7 Tr.").[5]

73.     On February 21, 2020, Nissen filed a 42 U.S.C. § 1983 action against the Court. See Nissen v. Browning, No. CIV 20-0151 PJK, Complaint for Violation of Civil Rights, filed February 21, 2020 (Doc. 1)("Complaint").

74.     In the Complaint, Nissen contends that the Court violated Nissen's "First, Fourth, Fifth, Eighth, Tenth[,] Elev[e]nth, Fourteenth, [and] Twenty-Third Constitutional Amendments." Complaint at 3.

75.     The Honorable Paul J. Kelly, Senior United States Circuit Judge for the United States Court of Appeals for the Tenth Circuit, sitting by designation, dismissed the Complaint on March 11, 2020.  See Nissen v. Browning, No. CIV 20-0151, Order at 1, filed March 11, 2020 (Doc. 3).

76.     Nissen has filed a series of motions on his own, against his counsel's advice, and asserts bizarre and incomprehensible theories in his defense.  See Motion for Discovery of Grand Jury Minutes at 1, filed December 30, 2019 (Doc. 98);  Motion for Leave to Amend by Addendum, filed January 15, 2020 (Doc. 106); Motion to Dismiss Information on Two Counts of Convictions for Lack of Jurisdiction, filed January 24, 2020 (Doc. 109); Motion for Judgment of Acquittal After Guilty Verdict, or, In the Alternative, For a New Trial, filed January 24, 2020 (Doc. 110); Motion for Acquittal, or to Dismiss Information on Two Counts for Prosecutorial Misconduct,

_____

[5]The Court's citations to the May 7 Tr. refers to the court reporter's unedited draft transcript.  Accordingly, page and line numbers are subject to slight change in the final version.

filed January 27, 2020 (Doc. 111); Notice of Motion for Acquittal, Overturn Guilty Verdict, or Dismiss Information of Conviction of Counts I and II, filed February 6, 2020 (Doc. 112); Motion to Dismiss Information of Illegal Convictions on Counts I and II for Federal Abuse of Arbitrary Power and Judicial Misconduct, filed February 19, 2020 (Doc. 113);

1.     **The First Brovko Report.**

75.     On April 30, 2020, Dr. Brovko attempted to evaluate Nissen's mental competency.  See First Brovko Report at 1.

76.     Dr. Brovko states that "[n]o opinion on competency can be offered at this time," because Nissen refuses to meet with Dr. Brovko.  April 30 Evaluation at 2.

77.     Dr. Brovko reports that Nissen "seemed agitated congruent with a labile affect," and that Nissen "exhibited paranoid ideation and tangential thought processes."  First Brovko Report at 3.

78.     Dr. Kuhl, a postdoctoral fellow working under Dr. Brovko's supervision, also reports that Nissen "seemed fixated on [his belief] that his lawyer was not working with him nor had his best interest in mind."  First Brovko Report at 3.

79.      Dr. Brovko recommends that Nissen "be admitted to an inpatient, federal facility that conducts forensic and mental health evaluations," which "will allow evaluators to monitor Mr. Nissen over a longer period of time for the presence of current mental health symptoms and assist in gathering information about his competency abilities."  April 30 Evaluation at 3-4.

80.     At a competency hearing held on May 7, 2020, Nissen promised the Court that he would cooperate with Dr. Brovko for a competency evaluation.  See May 7 Tr. at 38:18-20 (Nissen).

2.     **The Second Brovko Report.**

81.     Dr. Brovko again attempted to meet with Nissen on May 13, 2020.  See Second Brovko Report at 1.

82.     Nissen refused to participate in the evaluation, "expressed a number of concerns about participating in an evaluation ordered by the Court," and these concerns "appear to be related to his beliefs in the sovereign citizens Movement."  Second Brovko Report at 2.

83.     Because Nissen refused to participate in the evaluation, Dr. Brovko could not determine if Nissen's "beliefs also contain delusional content."  Second Brovko Report at 2.

84.     Dr. Brovko recommends that Nissen "be admitted to an inpatient, federal facility that conducts forensic and mental health evaluations," which will "allow evaluators to monitor Mr. Nissen over a longer period of time for the presence of current mental health problems and assist in gathering information about his competency abilities."  Second Brovko Report at 3.

## PROCEDURAL HISTORY

Nissen requests that the Court transfer him to a federal medical center ("FMC") for extended evaluation to determine whether Nissen is mentally competent to proceed.  See Motion at 1.  The United States opposes this request, citing Dr. Marshall's conclusion that Nissen is intelligent and mentally competent.  See United States' Response to Defense Motion to Send Defendant to a Federal Medical Facility to Determine Competency at 1, filed May 5, 2020 (Doc. 139)("Response").  The Court held a hearing.  See May 7 Tr. at 1:1.

1.      **The Motion.**

Nissen's counsel says that Nissen routinely ignores counsel's advice and refuses to "assist in preparing for his sentencing hearing."  Motion at 2.  Nissen's counsel says that Nissen insists that he "is being unlawfully persecuted," and that Nissen's demeanor with counsel "often became emotional, loud, irrational, and insulting."  Motion at 2.  Nissen's counsel asserts that "it was

apparent to undersigned counsel, as a lay person and not a mental health expert, that Defendant was exhibiting irrational and delusional thought processes." Motion at 2. Nissen's counsel thus contends that "there is reasonable cause to believe [that he] may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Motion at 3. Nissen counsel requests that the Court transfer him

> to the custody of the Attorney General, specifically to Federal Medical Center (FMC) - Butner or some other like facility for a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future Defendant will attain the capacity permit the proceedings to go forward pursuant to 18 U.S.C. § 4241(d).

Motion at 3.

2.      **The Response**.

The United States opposes the Motion. <u>See</u> Response at 1. The United States notes that Dr. Marshall found Nissen mentally competent to stand trial in July, 2019, and that no forensic psychologist has since concluded that Nissen is mentally incompetent. <u>See</u> Response at 1. The United States says that Nissen cites 18 U.S.C. §§ 4241 and 4246 to support his request. <u>See</u> Response at 1 (citing Motion at 1). The United States asserts that § 4241 requires the Court to hold a hearing to determine Nissen's competency or request an evaluation before such a hearing, "'if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" Response at 1 (quoting 18 U.S.C. § 4241). The United States further asserts that § 4246 is inapplicable, because Nissen is not in the BOP's custody, as § 4246 requires. <u>See</u> Response at 2 (citing 18 U.S.C. § 4246). The United States instead contends that § 4247(b) governs Nissen's

request, and the United States contends that § 4247(b) allows the Court to commit Nissen to the Attorney General of the United States' custody for up to thirty days. <u>See</u> Response at 2.

The United States thus acknowledges that the Court has the authority to transfer Nissen for evaluation at an FMC, but the United States contends that the "record does not support the need for such an order." Response at 2. The United States asserts that the Court should rely on Dr. Marshall's report, because it is the most recent psychological determination. <u>See</u> Response at 2-3. The United States says that the primary evidence of Nissen's incompetence is thus his refusal to cooperate with counsel, which the United States says is minimally probative, because Nissen cooperated with former counsel up to and including his jury trial. <u>See</u> Response at 3. The United States posits that the record regarding Nissen's mental health is relevant to Nissen's sentencing under 18 U.S.C. § 3553(a), but the United States contends that the record does not support transfer to an FMC for further evaluation. <u>See</u> Response at 3. Accordingly, the United States requests that the Court deny the Motion. <u>See</u> Response at 3.

       **3.**      <u>**The May 7, 2020, Hearing**</u>.

The Court held a hearing on the Motion, the Marshall Report, and the First Brovko Report on May 7, 2020. <u>See</u> May 7 Tr. at 1:1. Nissen began the hearing by asserting that he does not consent to the hearing and contended that Mr. Romero acted without his consent in requesting the competency evaluation. <u>See</u> May 7 Tr. at 2:23-3:3 (Nissen). As Mr. Romero began summarizing the Motion's background, Nissen interrupted several times, and so the Court had Nissen temporarily removed from the courtroom so that the Court could hear Mr. Romero; the Court promised Nissen that he would be permitted promptly back into the courtroom with an opportunity to speak. <u>See</u> May 7 Tr. at 3:23-4:13 (Nissen, Court, Romero). Mr. Romero then noted that he requested local evaluation of Nissen's mental competency to determine whether Nissen is capable

of assisting counsel and to obtain factual information that could support a request for a downward departure or variance in Nissen's sentence. See May 7 Tr. at 4:19-5:16 (Romero). Mr. Romero noted that Dr. Marshall conditioned her finding that Nissen is competent on whether Nissen trusts his attorney, and Mr. Romero said that Nissen has transparently communicated that he mistrusts Mr. Romero. See May 7 Tr. at 6:11-6:20 (Romero). Mr. Romero also noted that Nissen refused to meet with the United States Probation Officer assigned to his case, rendering the PSR incomplete regarding Nissen's personal and biographical information that is relevant to Nissen's sentence. See May 7 Tr. at 6:24-7:8 (Romero). Mr. Romero also related that Dr. Brovko told him that, even if Nissen refused to cooperate with evaluators at an FMC, forensic psychologists at an FMC would still be able to develop an opinion of Nissen's mental competency, because they could observe him over an extended period of time. See May 7 Tr. at 8:19-25 (Romero). The Court then brought Nissen back into the Courtroom. See May 7 Tr. at 9:11-16 (Court, Nissen).

The United States responded that, although the Assistant United States Attorney is "not a doctor, . . . [Nissen's] behavior is not what we'd expect from defendants, but it's not involuntary." May 7 Tr. at 10:7-8 (Mysliwiec). The United States contended that the "legal question we have is whether Mr. Nissen is capable of assisting in his own defense. Clearly he is choosing not to work with several lawyers in a row[.]" May 7 Tr. at 11:16-18 (Mysliwiec). The United States said that, because Nissen behaved well at his trial and worked well with his two trial attorneys, the Court can conclude that Nissen is competent but merely choosing now not to cooperate. See May 7 Tr. at 12:14-20 (Mysliwiec). The United States later said that it did not "know what medication would cause Mr. Nissen to understand that [each of the attorneys he has had through the case] are on his side and doing their best to help him," but the United States acknowledged its "lack of

pharmaceutical training." May 7 Tr. at 18:22-25 (Mysliwiec). The United States accordingly requested that the Court proceed with sentencing Nissen. See 12:23-24 (Mysliwiec).

The Court asked the United States whether it was comfortable proceeding with sentencing given that Nissen is now raising the issue of his competency, and whether the United States would like to defend such a record before the United States Court of Appeals for the Tenth Circuit or in a subsequent collateral proceeding. See May 7 Tr. at 13:2-10 (Court). The United States responded that it "would be honored to defend this court sentencing him today, and the [United States'] position is he's ready to be sentenced." May 7 Tr. at 13:12-15 (Mysliwiec). The United States later acknowledged, however, that, if the Court concludes that Nissen has demonstrated, by a preponderance of the evidence, that he is mentally incompetent, "then sending him to [an FMC to] get that help seems like the right to thing to do." May 7 Tr. at 21:1-7 (Mysliwiec). The Court responded that, based on Dr. Marshall's report, the Court's experience with Nissen, and the representations of Nissen's counsel, it was inclined to grant the Motion. See May 7 Tr. at 18:13-21 (Court). The USPO reported that Nissen has been in custody for seventeen months, see May 7 Tr. at 23:8-9 (Bartholomew), and the Court noted its concern that, if Nissen is to be transferred to an FMC, he should be transferred soon so that Nissen's time in custody does not exceed his eventual sentence, see May 7 Tr. at 25:8-16 (Court). Nissen responded that, even if the Court issues a time-served sentence, evaluation at an FMC will provide the Court with more accurate information to craft terms of supervised release that are most helpful to Nissen and further the § 3553(a) policies. See May 7 Tr. at 26:13-25 (Romero).

The Court then solicited Nissen's thoughts. See May 7 Tr. at 28:17-21 (Court). The Court asked Nissen whether he had thought about "sitting down with a psychiatrist or psychologist that [the Court] allowed Mr. Romero to hire to just see if that can kind of help us with this[.]" May 7

Tr. at 29:7-10 (Court).  Nissen responded that he has been uncooperative with his attorneys, because he is unsatisfied with their representation.  See May 7 Tr. at 29:14-17 (Nissen).  Nissen said that Dr. Marshall's report indicated that he is "not a danger to anyone, law enforcement, myself, or enemies.  As much as she says I'm paranoid, grandiose delusions or other words, there's the contrary that makes me look like I'm okay as well."  May 7 Tr. at 30:8-12 (Nissen).  Nissen further said that "when you look under the word insanity, I don't know how the Court can find me insane after everything we've been through.  That's ludicrous for Mr. Romero to go there."  May 7 Tr. at 31:9-12 (Nissen).  Nissen then requested that the Court issue his sentence.  See May 7 Tr. at 32:23 (Nissen).  The Court said it was inclined to send Nissen for evaluation at an FMC, and asked Nissen where he would be willing to talk to a local forensic psychologist whose immediate report could obviate the need to transfer Nissen.  See May 7 Tr. at 7-10 (Court).  Nissen said that he would, in any event, refuse medication, but Nissen assured the Court that he would cooperate with evaluation at an FMC or with a local forensic psychologist.  See May 7 Tr. at 34:1-11 (Nissen).  Nissen assured the Court that he would cooperate with Dr. Brovko, because "she's one of the two individuals throughout this entire system involved in the legal side of all this that kept her word."  May 7 Tr. at 37:19-21 (Nissen).  The Court accordingly vacated Nissen's sentencing hearing and requested that Nissen be locally evaluated.  See May 7 Tr. at 41:7-9 (Court).

## LAW REGARDING MENTAL COMPETENCY AND EXAMINATIONS

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."  Drope v. Missouri, 420 U.S. 162, 171 (1975).  The Supreme Court of the United States of America has "approved a test of incompetence which seeks to ascertain whether a criminal defendant 'has sufficient present

ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him.'" Drope v. Missouri, 420 U.S. at 172 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).  "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." Drope v. Missouri, 420 U.S. at 171 (citing Pate v. Robinson, 383 U.S. 375 (1966)).  The defendant cannot waive the issue of a defendant's competence to proceed.  See Pate v. Robinson, 383 U.S. at 384. Mental competency is a fluid concept, and so a finding that a defendant is mentally competent does not necessarily bind the court throughout the prosecution's pendency.  See Drope v. Missouri, 420 U.S. at 179-80.  Due process does not require a greater burden of proof in a competency hearing than a finding by a preponderance of the evidence.  See Medina v. California, 505 U.S. 437, 446-52 (1992).  More recently, the Supreme Court has said that the competency requirement "has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel." Godinez v. Moran, 509 U.S. 389, 402 (1993).

A competency determination is factual rather than legal. United States v. Mackovich, 209 F.3d 1227, 1232 (10th Cir. 2000).  In determining competency, the court "'may rely on a number of factors, including medical opinion and the court's observation of the defendant.'" United States v. Boigegrain, 155 F.3d 1181, 1189 (10th Cir. 1998)(quoting United States v. Nichols, 56 F.3d 403, 411 (2d Cir. 1995)).  A defendant's history of irrational behavior is relevant to concluding the defendant's mental competency.  See Drope v. Missouri, 420 U.S. at 172 n.9 (citing Pate v. Robinson, 383 U.S. at 384).  A defense counsel's opinion that "the defendant is not a person of sound mind and should have a further psychiatric examination before the case should be forced to trial" may be sufficient to raise the issue of competency.  See Drope v. Missouri, 420 U.S. at 177.

A defendant's refusal to participate in psychological evaluation is not necessarily evidence of the defendant mental incompetency, particularly where there is reason to believe the defendant "may be malingering or manipulating the system."  United States v. Mitchell, 706 F. Supp. 2d 1148, 1151 (D. Utah 2010)(Kimball, J.)(citing United States v. Gigante, 925 F. Supp. 967, 976 (E.D.N.Y.1996)(Nickerson, J.)).

1.      **Procedure for Determining Mental Competency.**

Under 18 U.S.C. § 4241(a), on the defendant's, the United States', or the court's own motion, the trial court must order a hearing to determine the defendant's competency to stand trial if there is reasonable cause to believe that the defendant is incompetent.  See 18 U.S.C. § 4241(a). 18 U.S.C. § 4241(b) provides that a court may order a psychological examination pursuant to 18 U.S.C. § 4247(b) and (c) before the hearing.  See 18 U.S.C. § 4241(b).  Section 4241(a) provides that such a motion can be made at any time up to sentencing.  See 18 U.S.C. § 4241(a).  Section 4241(c) requires that courts conduct competency hearings pursuant to 18 U.S.C. § 4247(d), which provides for: (i) representation of the defendant by counsel; (ii) an opportunity for him to testify, to present evidence, and to subpoena witnesses on his behalf; and (iii) the opportunity to confront and to cross examine witnesses.  See 18 U.S.C. §§ 4241(c), 4247(d).  The court then makes its determination and disposition pursuant to 18 U.S.C. § 4241(d) regarding whether the defendant is competent to stand trial.  Section 4241(d) provides:

> (d)      Determination and disposition. -- If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.  The Attorney General shall hospitalize the defendant for treatment in a suitable facility --
>
> (1)      for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a

substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2)    for an additional reasonable period of time until --

(A)    his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

(B)    the pending charges against him are disposed of according to law;  whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

18 U.S.C. § 4241(d).

A court "must first determine, by a preponderance of the evidence, whether the Defendant suffers from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." United States v. Morales-Gonzales, 376 F. Supp. 2d 1066, 1070 (D.N.M. 2004)(Browning, J.)(internal quotation marks omitted).  If the court concludes that the defendant is competent, then the case will proceed.  See United States v. Morales-Gonzales, 376 F. Supp. 2d at 1070.  If the court concludes that the defendant lacks sufficient mental competency to proceed to trial, the statutory directive is clear.  See United States v. Morales-Gonzales, 376 F. Supp. 2d at 1070.  "'[I]f there is a finding of incompetence to stand trial, there must be a period of hospitalization.'"  United States v. Morales-Gonzales, 376 F. Supp. 2d at 1070 (alteration in original)(quoting United States v. Azure, 279 F. Supp. 2d 1093, 1095 (D.N.D. 2003)(Hovland, J.)).

- 22 -

**ANALYSIS**

The Court concludes that Nissen has demonstrated, by a preponderance of the evidence, that he is "presently . . . suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Accordingly, the Court grants the Motion and will transfer Nissen to an FMC for inpatient evaluation to determine Nissen's competency. Nissen has refused to cooperate with recent evaluations, so the Court bases its determination on Dr. Marshall's report, Mr. Romero's representations, Dr. Brovko's reports, and the Court's observations of Nissen.

A defendant must prove mental incompetency to stand trial by a preponderance of the evidence. See Allen v. Mullin, 368 F.3d at 1239 ("A substantive competency claim, on the other hand, requires the higher standard of proof of incompetency by a preponderance of the evidence."); United States v. Sanchez-Gonzales, 109 F. App'x at 290. "In a competency hearing, the 'emphasis is on [the defendant's] capacity to consult with counsel and to comprehend the proceedings.'" Medina v. California, 505 U.S. at 448 (plurality)(quoting Pate v. Robinson, 383 U.S. at 388 (Harlan, J., dissenting)). The well-settled test for considering competency to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him." Allen v. Mullin, 368 F.3d at 1238-39 (internal quotations marks and citation omitted). Cf. 18 U.S.C. § 4241(a) (providing that there is incompetence "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense").

That Dr. Marshall concluded, in 2019, that Nissen is mentally competent gives the Court pause, but Dr. Marshall's conclusion does not guarantee Nissen's present competency. Cf. United States v. Sandoval, 365 F. Supp. 2d 319, 320 (E.D.N.Y. 2005)(Gershon, J.)(concluding that, although the defendant had previously been found competent, the defendant's delusions had since progressed to the point of mental incompetency). Similarly, Nissen's assertions that he is mentally competent do not foreclose a finding of mental incompetence. See, e.g., United States v. Sandoval, 365 F. Supp. 2d at 320. Instead, the Court must determine, from all the evidence available to it, whether Nissen is presently suffering from mental illness that renders him incapable of assisting counsel in his defense. See 18 U.S.C. § 4241(a).

In determining a defendant's competency, "it is not enough . . . that the defendant is oriented to time and place and has some recollection of events." Dusky v. United States, 362 U.S. at 402. Nor is it enough that "the defendant can make a recitation of the charges . . . for proper assistance in the defense requires an understanding that is 'rational as well as factual.'" United States v. Hemsi, 901 F.2d 293, 295 (2d Cir. 1990)(quoting Dusky v. United States, 362 U.S. at 402).

> If the defendant can engage in such a rational evaluation and discussion (with the evaluator or his attorney), perhaps he could be considered competent to stand trial; but if no such rational discussion can take place as the result of lack of insight caused by mental illness, the defendant should be considered incompetent to stand trial.

Andrew D. Reisner et al., Competency to Stand Trial and Defendants Who Lack Insight Into Their Mental Illness, 41 J. Am. Acad. Psychiatry Law 85, 88 (2013). "A specific persecutory delusion about the attorney, for instance, may make it impossible for the defendant to consider and benefit from the rational advice of an attorney . . . . Strong paranoid delusions, almost by definition, suggest that the defendant does not have the insight to recognize that the delusion is a sign of

mental illness."  Reisner et al., Competency to Stand Trial and Defendants Who Lack Insight Into Their Mental Illness, 41 J. Am. Acad. Psychiatry Law at 89.

There is considerable similarity between this case and United States v. Sandoval.  In United States v. Sandoval, the defendant was charged with heroin trafficking, and, early in the case's litigation, a forensic psychologist evaluated the defendant and concluded that he was mentally competent.  See 365 F. Supp. 2d at 320.  The defendant repeatedly "set forth his bizarre views about the nature and history of the United States, the difference between an 'attorney' and a 'counselor,' and the significance of the Uniform Commercial Code ('U.C.C.') and the copyright laws, which he believe[d] will somehow help him to defend against [the] drug prosecution."  365 F. Supp. 2d at 321.  The defendant had also filed liens against the court, his attorneys, and the prosecutor, "claiming that the use of his name is a copyright violation and that, among other things, every time someone in court calls him by name, that person owes him one million dollars."  365 F. Supp. 2d at 321.  After the Honorable Nina Gershon, United States District Judge for the United States District Court for the Eastern District of New York, ordered the defendant to cease filing such liens and the defendant complied with the court's order, and the United States relied on the defendant's compliance in arguing that the defendant was mentally competent.  See 365 F. Supp. 2d at 321 n.1.  Judge Gershon received conflicting conclusions from forensic psychologists, including one in which the psychologist concluded that the defendant's paranoid beliefs were not indicative of mental illness, because "a subculture of other inmates [shared] similar views."  365 F. Supp. 2d at 322.  Three court-appointed attorneys tried and failed to develop a relationship with the defendant, who viewed the attorneys' unwillingness to advance his beliefs as evidence that the attorneys were out to get him.  See 365 F. Supp. 2d at 321, 323.  Judge Gershon then directed further evaluation of the defendant's competency and three forensic psychologists concluded that

the defendant was mentally competent.  See 365 F. Supp. 2d at 323.  Judge Gershon concluded that the defendant was mentally incompetent.  See 365 F. Supp. 2d. at 326.  Judge Gershon noted the limitations of the forensic psychologists' conclusions, because each offered differing opinions, and so Judge Gershon relied "heavily" on defense counsel's opinions.  365 F. Supp. 2d at 326.  Judge Gershon also noted the defendant's inability to separate his views of the Uniform Commercial Code from the law applicable to his defense and the defendant's resulting inability to trust counsel.  See 365 F. Supp. 2d at 326.

Here, Nissen is unable to engage his attorneys and rationally evaluate the charges against him to assist counsel.  As a preliminary matter, Dr. Brovko's opinions on Nissen's mental competency are limited in their probativeness, because Nissen refused to cooperate with Dr. Brovko's repeated attempts to evaluate Nissen.  See Findings of Fact ("FOF"), supra ¶¶ 75-84, at 13-14.  The Court in effect has only Dr. Marshall's conclusion that Nissen is competent only if he trusts his attorney.  The Court accordingly relies on Mr. Romero's views of Nissen's competence, because defense counsel will "often have the best-informed view of the defendant's ability to participate in his defense."  Medina v. California, 505 U.S. 437, 450 (1992).  Mr. Romero is unable to communicate with Nissen, much less gain Nissen's trust, in part because Mr. Romero's unwillingness to advance Nissen's theories makes Nissen believe that Mr. Romero is not acting at Nissen's direction.   See, e.g., Draft Transcript of Motion Hearing at 5:19-22 (taken March 23, 2020)(Nissen)("March 23 Tr.")[6](interrupting Mr. Romero's explanation of his unwillingness to advance Nissen's views, Nissen asserted that, "under the code of conduct, you're supposed to do as I ask, and represent me in the form I wish and seek this done.  You are not doing it.").

---

[6]The Court's citations to the March 23 Tr. refer to the court reporter's unedited draft transcript.  Accordingly, page and line numbers are subject to slight change in the final version.

Dr. Marshall similarly noted that Nissen became agitated and aggressive whenever he interpreted Dr. Marshall as not sharing his beliefs.  See FOF ¶ 47, at 8.  From the Court's extensive experience with Mr. Romero, Court accords weight to Mr. Romero's opinion regarding Nissen's ability to assist counsel.  Similarly, that Nissen has been unable to maintain relationships with four attorneys is strong evidence of Nissen's incompetency.  See Medina v. California, 55 U.S. at 450 ("[T]he defendant's inability to assist counsel, can, in and of itself, constitute probative evidence of incompetence[.]").  Further, although Dr. Marshall concludes that Nissen is mentally competent to assist counsel, Dr. Marshall conditions her conclusion on Nissen's ability to trust counsel.  See FOF ¶¶ 63-66, at 10 (citing Marshall Report at 12).  Dr. Marshall noted, however, that Nissen's trust is subject to irrational and unpredictable change.  See FOF ¶ 65, at 10.  Since trial, Nissen has been irrationally and unpredictably incapable of trusting his attorneys, rendering apposite Dr. Marshall's opinion that Nissen is not competent.  Accordingly, contrary to the United States' contention that no psychologist has deemed Nissen incompetent, Nissen is not mentally competent under Dr. Marshall's diagnosis.

Contrary to the United States' characterization of Nissen's behavior as "obstreperousness," May 7 Tr. at 18:12 (Mysliwiec), Nissen is unable to assist counsel because of his involuntary adherence to delusion.  It may be that Nissen's beliefs themselves are evidence of his mental incompetency, and the BOB will need to determine whether that is the case.  Dr. Marshall relied upon Nissen's bizarre beliefs to conclude that Nissen suffers from "a serious mental illness," likely Delusional Disorder "mixed with paranoid and grandiose delusions."  Marshall Report at 8-9. Dr. Marshall further relied on Nissen's beliefs and his irrational adherence to them as evidence that he likely suffers from schizophrenia.  See Marshall Report at 9.  Of course, that Nissen holds out-of-the-mainstream views on the law and politics is not, in and of itself, evidence that Nissen

is not mentally competent.  The issue, however, is whether Nissen's views and the strength of his

adherence to them are demonstrative of mental illness that inhibits his ability to understand the

proceedings against him and assist counsel with his defense.  See Dusky v. United States, 362 U.S.

at 402.

> A specific persecutory delusion about the attorney, for instance, may make
> it impossible for the defendant to consider and benefit from the rational advice of
> an attorney . . . .  Strong paranoid delusions, almost by definition, suggest that the
> defendant does not have the insight to recognize that the delusion is a sign of mental
> illness.

Reisner et al., Competency to Stand Trial and Defendants Who Lack Insight Into Their Mental

Illness, 41 J. Am. Acad. Psychiatry Law at 89.[7]  Here, Nissen persecutory delusions about his

attorneys make it difficult, if not impossible, for Nissen to benefit from his attorneys' advice, and

---

[7]Nissen's adherence to his views does not appear to be volitional and prevents him from understanding the proceedings against and assisting his attorney.  Although others may share Nissen's conspiracy theories, the extent to which those beliefs inhibit his ability to assist counsel may not be volitional and strongly indicates mental incompetency.  In United States v. Sandoval, Judge Gershon addressed a forensic psychologist's conclusion that the defendant's bizarre beliefs were not evidence of delusional thinking, because others shared the defendant's views, rendering him, in the psychologist's opinion, part of a "subculture" of similar-thinking inmates. 365 F. Supp. 2d at 324-25.  Judge Gershon noted, however, that "it was undisputed that acting contrary to one's interests may be indicative of delusional, rather than volitional, behavior, yet the doctors were unaware of any benefit that the defendant was receiving from acting as he is doing."  365 F. Supp. 2d at 325.  Here, Nissen's sovereign-citizen theories may render him not just unable to assist counsel, but also unable to comprehend the proceedings against him.  Nissen may be incapable of accepting these proceedings' legitimacy, because they conflict with his belief that he has sovereign and diplomatic immunity against prosecution.  See Motion for Acquittal, or to Dismiss Information on Two Counts for Prosecutorial Misconduct at 6-10.  Nissen's irrational adherence to these beliefs also renders him incapable of understanding the nature and consequences of the proceedings against him.  That Nissen appears now to be following the Court's instruction that he refrain from continuing to file such motions is not evidence of his mental competency, because the issue "is not whether the defendant is capable of obeying court orders; it is whether he is capable of 'understand[ing] the nature and consequences of the proceedings against him' and of 'assist[ing] properly in his defense.'"  United States v. Sandoval, 365 F. Supp. 2d at 320 (quoting 18 U.S.C. § 4241(d)).  Further, Nissen recently filed another letter reasserting the same bizarre views that have inhibited his counsels' ability to defend him.  See Letter from Michael Nissen to Court at 2 (dated May 21, 2020), filed May 26, 2020 (Doc. 145)(accusing the Court of treason).

Nissen does not appear to have to insight to recognize that the delusions are symptomatic of mental illness.

Dr. Marshall also concludes that Nissen's conspiracy theories demonstrate "severe mental illness" and that Nissen "meets criteria for Delusional Disorder" and possibly schizophrenia. Marshall Report at 8-9.  See FOF ¶ 51, at 8.  Dr. Marshall conditions her conclusion that Nissen is competent on the fact that he trusted his attorney at the time.  See FOF ¶¶ 63-66, at 10.  The BOP will need to determine whether Nissen's delusions now render him unable to trust and assist counsel.  Nor can the Court, on the present record, conclude that Nissen is malingering, because Dr. Marshall concluded that "it would be impossible to accurately and consistently malinger the syndrome manifested by Mr. Nissen in a sustained fashion through the course of a greater than four-hour Clinical Interview."  Marshall Report at 8.  The Court notes from its own experience with Nissen that Nissen continues to exhibit the characteristics on which Dr. Marshall relied in reaching her conclusion.  Finally, although Dr. Brovko was unable to render a clinical diagnosis of Nissen, Dr. Brovko nonetheless recommends that Nissen "be admitted to an inpatient, federal facility that conducts forensic and mental health evaluations."  First Brovko Report at 3; Second Brovko Report at 2.  Accordingly, a preponderance of the evidence demonstrates that Nissen is mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense.  The Court commits Nissen to the custody of the Attorney General for evaluation and treatment pursuant to 18 U.S.C. § 4241(d) for a reasonable period not to exceed four months.

The Court predicts, based on its experience, that the BOP will find Nissen competent.  On the record, however, all the Court has is Dr. Marshall's report, which says that Nissen is competent only if he trusts his attorney.  Nissen does not trust Mr. Romero and has not trusted his previous

three attorneys for reasons that indicate mental incompetency.  On the present record, the Court finds, based on Dr. Marshall's report, that Nissen is not presently competent to proceed with sentencing.

IT IS ORDERED that (i) the Motion for Temporary Transfer of Defendant to FMC - Butner to Determine Competency, filed May 3, 2020 (Doc. 137), is granted; and (ii) Nissen is committed to the custody of the Attorney General for treatment and evaluation at a federal medical center pursuant to 18 U.S.C. § 4241(d).

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
   United States Attorney
Jack Burkhead
Paul Mysliwiec
Alexander Mamoru Max Uballez
   Assistant United States Attorneys
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Joe M. Romero, Jr.
Romero & Winder, PC
Albuquerque, New Mexico

   *Attorneys for the Defendant*

- 30 -