**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MICHAEL JAMES NISSEN,

      Petitioner,

vs.                                          No. CIV 21-0505 JB/SMV
                                                          No. CR 19-0077 JB

UNITED STATES OF AMERICA,

      Respondent.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Affidavit of Due Process of Law Violation for Excluding Movant from Proceedings on Ruling Dismissing 28 U.S.C. § 2255, filed July 6, 2021 (CIV Doc. 10)("Due Process Motion"); (ii) the Affidavit of Formal Objection of Memorandum Opinion of Order and Final Judgment, filed July 9, 2021 (CIV Doc. 11)("Objection Motion"); (iii) the Notice of Motion to Leave for Addendum to 28 U.S.C. § 2255 Motion, filed August 2, 2021 (Doc. 16)("Add. I"); and (iv) the Notice of Motion to Leave for 3rd Addendum to 28 U.S.C. § 2255 Motion, filed August 9, 2021 (Doc. 16)("Add. II"). The Court construes Petitioner Michael James Nissen's filings as a motion to alter or amend the judgment under rule 59(e) of the Federal Rules of Civil Procedure, and denies that motion, because Nissen has not identified an intervening change in the controlling law, new evidence previously unavailable, or the need to correct clear error or prevent manifest injustice.

**PROCEDURAL BACKGROUND**

Following a jury trial, a jury found Nissen guilty of two counts of Interstate Communication Containing Threat to Injure the Person of Another in violation 18 U.S.C. § 875(c). See Verdict, filed August 7, 2019 (CR Doc. 73). On June 1, 2021, Nissen filed a Motion Under

28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, filed June 1, 2021 (CIV Doc. 1; CR Doc. 188)("2255 Motion").  In the 2255 Motion, Nissen argues that he is "[b]eing denied due process of law and equal protection clauses of the Constitution."  2255 Motion at 4.  Nissen seeks to "vacate void judgment for being denied due process of law."  2255 Motion at 12.  After Nissen filed the 2255 Motion, the Court sentenced Nissen on June 18, 2021. See Sentencing Minute Sheet, filed June 18, 2021 (CR Doc. 213).  The Court then dismissed Nissen's 2255 Motion as premature.  See Memorandum Opinion and Order at 1, filed June 30, 2021.  (CIV Doc. 8)(" MOO").  The Court entered Final Judgment dismissing the civil proceeding. See Final Judgment at 1, filed June 30, 2021 (CIV Doc. 9).

On the same day that the Court entered the MOO and the Final Judgment, Nissen signed the Due Process Motion and the Clerk of the Court received the filing on July 6, 2021.  See Due Process Motion at 5-6.  In the Due Process Motion, Nissen argues that there are "due process violations . . . leading to 28 U.S.C. § 2255."  Due Process Motion at 4.   "In addition," Nissen requests "a Certificate of Appealability of this due process of law violation . . . by this war powers court."  Due Process Motion at 5-6.  On July 7, 2021, Nissen signed Objection Motion, which the Clerk of the Court received on July 9, 2021.  See Objection Motion at 1-2.  In the Objection Motion, Nissen objects to the MOO and the Final Judgment, because those filings are "a cabalistic hodgepodge of gobbleycocked linguistic functional legal gibberish construed by a corporation administrative agency martial law court that continues to deny the Movant . . . also known as the defendant . . . Constitutional due process and equal protection of the law guaranteed by the Constitution."  Objection Motion at 2-3.  Nissen also argues the MOO

is a judgment not substantiated by actual fact but mere opinion of a corperational administrative agency who has no subject matter jurisdiction of the living man.  The representative of the court is a fictional deity issuing opinions of his Monarchy King of their church.  In addition the Final Judgment . . . is pure oratory fiction.

Objection Motion at 3. Nissen also contends that his 2255 Motion was not premature, because "Nissen evidently recorded and documented the existence of extraordinary circumstances . . . ." Objection Motion at 4.  Nissen then sent a Request of a Certificate of Appealability to the United States Court of Appeals for the Tenth Circuit.  See Misdirected Notice of Appeal at 3-9, filed  July 15, 2021 (CIV Doc. 12)(attaching Nissen's Request of a Certificate of Appealability).  The United States Court of Appeals for the Tenth Circuit's Clerk of the Court, Christopher M. Wolpert, sent the filing to the United States District Court for the District of New Mexico's Clerk of the Court, Mitchell R. Elfers, stating that the Tenth Circuit construed the Request of a Certificate of Appealability as a misdirected notice of appeal.  See Misdirected Notice of Appeal at 1.  Elfers docketed Nissen's filing as a notice of appeal and transmitted a preliminary record to the Tenth Circuit.  See Transmission of Preliminary Record to US Court of Appeals at 1, filed July 16, 2021 (CIV Doc. 13).  Then, on August 2, 2021, Nissen filed the Add. I, and on August 9, 2021, Nissen filed the Add. II, listing thirty-two grounds why the Court should grant his 2255 Motion.  See Add. I at 1-23;  Add. II at 1-3.

On July 6, 2021, in his criminal case, Nissen filed a pro se appeal.  See Notice of Appeal, filed July 6, 2021 (CR Doc. 214)("Pro Se CR Appeal").  In his Pro Se CR Appeal, Nissen states that he is appealing the Court's "Order/Judgment" filed on June 18, 2021, which is the Court's Objections MOO.  Pro Se CR Appeal at 1.  On July 8, 2021, the Tenth Circuit entered an Order in the criminal case, stating:

> On July 6, 2021, Michael Nissen filed a pro se notice of appeal following his June 18, 2021 sentencing hearing.  A review of the district court docket shows that although Mr. Nissen has been sentenced, the district court has not yet entered the criminal judgment.  Therefore, the notice of appeal is premature but will ripen when the criminal judgment is entered.  See Fed. R. App. P. 4(b)(2) (filing notice of appeal before entry of judgment); United States v. Walker, 915 F.2d 1463, 1465 (10th Cir. 1990).  Accordingly, this matter is abated pending entry of a criminal judgment by the district court.  We note that the district court entered final judgment

as to a premature 28 U.S.C. § 2255 motion on June 30, 2021 but has not entered the criminal judgment.

. . . .

Within 60 days from the date of this order, attorney Romero shall file a status report with this court regarding criminal proceedings if the district court has not yet entered the criminal judgment.

Order at 1-2, filed July 8, 2021 (CR Doc. 217)("10th Cir. Order").

## LAW REGARDING MOTION TO ALTER OR AMEND UNDER RULE 59(E)

Motions to reconsider in civil cases fall into three categories:

(i) a motion to reconsider filed within twenty-eight[1] days of the entry of judgment is treated as a motion to alter or amend the judgment under rule 59(e); (ii) a motion to reconsider filed more than [twenty-eight] days after judgment is considered a motion for relief from judgment under rule 60(b); and (iii) a motion to reconsider any order that is not final is a general motion directed at the Court's inherent power to reopen any interlocutory matter in its discretion.

Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. 453, 462 (D.N.M. 2009)(Browning, J.)(citing Price v. Philpot, 420 F.3d 1158, 1167 & n.9 (10th Cir. 2005)), superseded by statute as stated in 2019 WL 1085179.  See Computerized Thermal Imaging, Inc. v. Bloomberg. L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).

---

[1]Former rule 59 provided for a ten-day period after entry of judgment to file motions to reconsider.  In 2009, the rule was amended, extending the filing period to twenty-eight days:

Experience has proved that in many cases it is not possible to prepare a satisfactory post-judgment motion in 10 days, even under the former rule that excluded intermediate Saturdays, Sundays, and legal holidays.  These time periods are particularly sensitive because Appellate Rule 4 integrates the time to appeal with a timely motion under these rules.  Rather than introduce the prospect of uncertainty in appeal time by amending Rule 6(b) to permit additional time, the former 10-day periods are expanded to 28 days.

Fed. R. Civ. P. 59 advisory committee's notes.

Whether a motion for reconsideration should be considered a motion under rule 59 or rule 60 is not only a question of timing, but also "depends upon the reasons expressed by the movant." Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 680 F.3d 1194, 1200 (10th Cir. 2011). Where the motion "involves 'reconsideration of matters properly encompassed in a decision on the merits,'" a court considers the motion under rule 59(e). Phelps v. Hamilton, 122 F.3d 1309, 1323-24 (10th Cir. 1997)(quoting Martinez v. Sullivan, 874 F.2d 751, 753 (10th Cir. 1989)). In other words, if the reconsideration motion seeks to alter the district court's substantive ruling, then it should be considered a rule 59 motion and be subject to rule 59's constraints. See Phelps v. Hamilton, 122 F.3d at 1324. "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion to alter or amend under rule 59(e), however, is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Servants of Paraclete v. Does, 204 F.3d at 1012. A district court has considerable discretion in ruling on a motion to reconsider. See Phelps v. Hamilton, 122 F.3d at 1324.

The Tenth Circuit reviews a district court's ruling on a motion to alter or amend "under an abuse of discretion standard." Phelps v. Hamilton, 122 F.3d at 1324. Under that standard "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." 122 F.3d at 1324. "The purpose [of a rule 59(e) motion is to correct manifest errors of law or to present newly discovered evidence." Monge v. RG Petro-Machinery (Group) Co. Ltd., 701 F.3d 598, 611 (10th Cir. 2012)(internal quotation marks omitted)(quoting

Webber v. Mefford, 43 F.3d 1340, 1345 (10th Cir. 1994)). "Where the motion requests a substantive change in the district court's judgment or otherwise questions its substantive correctness, the motion is a Rule 59 motion, regardless of its label." Yost v. Stout, 607 F.3d 1239, 1243 (10th Cir. 2010).

The Tenth Circuit has determined that the "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another." Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1252 (10th Cir. 2011)(citing Been v. O.K. Indus., Inc., 495 F.3d at 1225). In this context, "the doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" Been v. O.K. Indus., Inc., 495 F.3d at 1225 (quoting Avitia v. Metro. Club of Chi., Inc., 49 F.3d 1219, 1227 (7th Cir. 1995)). "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., 495 F.3d at 1225. In short, a district court can use whatever standard it wants to review an earlier interlocutory order. It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether.

The best approach, in the Court's eyes, is to analyze motions to reconsider differently depending on three factors. Cf. Been v. O.K. Indus., Inc., 495 F.3d at 1225 ("[T]he doctrine is merely a 'presumption, one whose strength varies with the circumstances.'")(quoting Avitia v. Metro. Club of Chi., Inc., 49 F.3d 1219, 1227 (7th Cir. 1995)). First, the Court should restrict its review of a motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges. How "thoroughly" a point was addressed depends both on the amount of time and energy the Court

spent on it, and on the amount of time and energy that the parties spent on it -- in briefing and orally arguing the issue, but especially if they developed evidence on the issue.  A movant for reconsideration thus faces a steeper uphill challenge when the prior ruling was on a criminal suppression motion, class certification motion, or preliminary injunction,[2] than when the prior ruling is, e.g., a short discovery ruling.  The Court should also look, not to the prior ruling's overall thoroughness, but to the thoroughness with which the Court addressed the exact point or points that the motion to reconsider challenges.  A movant for reconsideration thus faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to reconsider that rehashes the same arguments from the first motion, and essentially asks the Court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.

Second, the Court should consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence that the parties may produce, and use those factors to assess the degree of reasonable reliance which the opposing party has placed in the Court's prior ruling.  See 18B Charles Alan Wright, et al., Federal

---

[2]The Court typically makes findings of fact and conclusions of law in ruling on these motions.  At first glance, it appears that the Federal Rules of Civil Procedure set forth additional standards -- beyond that which applies to other interlocutory orders -- for amending findings of fact and conclusions of law: "**Amended or Additional Findings.**  On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings -- or make additional findings -- and may amend the judgment accordingly.  The motion may accompany a motion for a new trial under Rule 59."  Fed. R. Civ. P. 52(b).  This rule appears to limit motions to reconsider orders with findings of fact and conclusions of law to twenty-eight days.  The rule's use of the term "entry of judgment," its reference to rule 59, and its adoption of the same time period that applies to motions to alter or amend a judgment, all lead the Court to conclude, however, that rule 52(b) -- and its twenty-eight-day time limit -- does not apply to interlocutory orders.  The time limit applies only to findings of fact and conclusions of law supporting a case-ending judgment -- such as those entered after a bench trial -- and to those giving rise to an interlocutory appeal that, if filed, divests the district court of its jurisdiction -- such as those entered in support of a preliminary injunction.

Practice & Procedure § 4478.1 (2d ed. 2018)("Stability becomes increasingly important as the proceeding nears final disposition . . . .  Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling.").  For example, if a defendant (i) spends tens of thousands of dollars removing legacy computer hardware from long-term storage; then (ii) obtains a protective order in which the Court decides that the defendant need not produce the hardware in discovery; then (iii) returns the hardware to long-term storage, sustaining thousands more in expenses; and (iv) several months pass, then the plaintiffs should face a higher burden in moving the Court to reconsider its prior ruling than they faced in fighting the motion for protective order the first time.

Third, the Court should consider the factors from Servants of the Paraclete v. Does.  The Court should be more inclined to grant motions for reconsideration if the movant presents: (i) new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework; (ii)  new evidence -- especially if the movant has a good reason why the evidence was not presented the first time around; or (iii) a clear indication -- one that manifests itself without the need for in-depth analysis or review of the facts -- that the Court erred.

These three factors should influence the degree to which the Court restricts its review of a prior ruling, but they do not necessarily mean that the Court should always apply a deferential standard of review.  The Court should pause before applying a standard of review to its own interlocutory orders that is more deferential than the standard that the Court of Appeals will apply to it, unless the Court concludes that the alleged error in the prior ruling was harmless, or the party moving for reconsideration waived its right to appeal the alleged error by not raising the appropriate argument.  Even in circumstances where the Court concludes that it is insulated from reversal on appeal, there are principled reasons for applying a de novo standard.  After all, if the

Court was wrong in its earlier decision, then, generally speaking, it is unjust to maintain that result -- although the Court should weigh this injustice against any injustice that would result from upending the parties' reliance on the earlier ruling, which is the balancing test that the three factors above represent.

What the Court means by "restricting its review" is less about applying a deferential standard of review -- although that may be appropriate in some circumstances -- and more about reducing (i) the depth of the Court's analysis the second time around -- thus conserving judicial resources; and (ii) the impositions that relitigation of the prior ruling will impose on the party opposing the motion for reconsideration.  The Court should consider the time and expense that the party opposing reconsideration spent in winning the earlier ruling, and should try to prevent that party from having to bear the same impositions again.  Basically, even if the Court ultimately analyzes a motion to reconsider under the same standard which it analyzed the motion that produces the earlier ruling, it should analyze the motion in a different way -- one focused on reducing the litigation burdens of the party opposing reconsideration.  For example, when a party moves the Court for a preliminary injunction, standard practice is that the Court holds an evidentiary hearing as a matter of course, regardless whether it looks as if the party has a good chance of prevailing.  If the party loses and the Court denies the injunction, however, and the party moves for reconsideration, the party should not be entitled to the presumption of an evidentiary hearing merely because he or she received that presumption the first time the Court considered the motion.

In light of these statements, it is perhaps better to characterize the increased burden that a movant for reconsideration faces as one of production and not of persuasion.  The Court analyzes motions to reconsider by starting where it ended in the prior ruling -- not by starting anew.  Parties

opposing reconsideration can do the same, and they may stand on whatever evidence and argument they used to win the earlier ruling.  Movants for reconsideration, on the other hand, carry the full burden of production: they must persuade the Court, using only the evidence and argument they put before it, that it should change its prior ruling; they must do all of the legwork, and not rely on the Court to do any supplemental fact-finding or legal research; and they must convincingly refute both the counterarguments and evidence that the opposing party used to win the prior ruling and any new arguments and evidence that the opposing party produces while opposing the motion to reconsider.  Unlike the motion that produced the prior ruling, a motion to reconsider is not -- and is not supposed to be -- a fair fight procedurally.  The deck is stacked against a movant for reconsideration, and if such a movant hopes to prevail, he or she must have not only a winning legal position, but the work ethic and tenacity to single-handedly lead the Court to his or her way of thinking.

The Court has recently commented on parties rearguing the same issues on a rule 59(e) motion:

> Under rule 59(e)'s framework, the Court is not restricted to rule 50(b)'s remedies and may alter the judgment when there is: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice."  <u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012.  The Tenth Circuit has noted that motions to alter, amend, or reconsider should not rehash old arguments, or advance new arguments or facts that could have been raised earlier.  <u>See</u> <u>United States v. Amado</u>, 841 F.3d [867], 871 [(10th Cir. 2016)]("A proper motion to reconsider does not simply state facts previously available or make arguments previously made."); <u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012 ("Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.").  As the Court has already noted, the Defendants' Motion raises the same arguments that the Defendants previously argued during their Motion to Alter.  The Court, however, also concludes that <u>Servants of Paraclete v. Does</u> does not force the Court to deny a motion to amend or alter, simply because it raises identical issues; rather, it affords the Court the option to deny that motion for reasons of judicial efficiency.  A court need not

review a motion to alter or amend with the same rigor if the motion raises issues already considered, because it would waste time by forcing a judge to rewrite an opinion already rendered.  If, on the other hand, a party raises an identical issue on a motion to alter, and, upon the district judge's reflection, perhaps after passions have cooled, he or she concludes that he or she erred previously, <u>Servants of Paraclete v. Does</u> does not chain that district judge to an erroneous legal conclusion. There is no sound reason for a district judge to be unable to change a ruling he or she has made if he or she has become concerned that he or she is wrong.

<u>Nelson v. City of Albuquerque</u>, 283 F. Supp. 3d 1048, 1099 (D.N.M. 2017)(Browning, J.)(altering a judgment, because officers were entitled to qualified immunity).

## <u>LAW REGARDING RULE 60(b)</u>

Rule 60(b) allows a court to relieve a party from a judgment or order.  <u>See</u> Fed. R. Civ. P. 60(b).  "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule."  <u>Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.</u>, 715 F.2d 1442, 1444 (10th Cir. 1983).  Rule 60(b) "is not a substitute for appeal and must be considered with the need for finality of judgment."  <u>Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.</u>, 715 F.2d at 1444 (citing <u>Brown v. McCormick</u>, 608 F.2d 410, 413 (10th Cir. 1979)).  The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice.  <u>Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.</u>, 715 F.2d at 1444 (quoting <u>Seven Elves, Inc. v. Eskenazi</u>, 635 F.2d 396, 401 (5th Cir. 1981)).  Once a case is "unconditionally dismiss[ed],"[3] the Court loses all jurisdiction over the case other than the ability

---

[3]Rule 41(a)(2), which governs all dismissals undertaken by way of a court order, grants courts discretion to condition dismissal "on terms that the court considers proper," Fed. R. Civ. P. 41(a)(2), formerly, "on terms and conditions as the court deems proper," <u>Smith v. Phillips</u>, 881 F.2d 902, 904-05 (10th Cir. 1989)(quoting Fed. R. Civ. P. 41(a)(2) (1988)).  Such conditions "could include retention of some jurisdiction by the court."  <u>Smith v. Phillips</u>, 881 F.2d at 905 (citing <u>McCall-Bey v. Franzen</u>, 777 F.2d 1178, 1188-90 (7th Cir. 1985)).  The Tenth Circuit has stated that, if the dismissal is pursuant to rule 40(a)(1)(A)(ii), undertaken without a court order, then the court "is powerless to condition dismissal . . . upon a retention of jurisdiction."  <u>Smith v.</u>

to hear motions under rule 60(b).  Smith v. Phillips, 881 F.2d 902, 904 (10th Cir. 1989)("We agree

with the [United States Court of Appeals for the] Seventh Circuit that '[a]n unconditional dismissal

terminates federal jurisdiction except for the limited purpose of reopening and setting aside the

judgment of dismissal within the scope allowed by [Fed. R. Civ. P.] 60(b).'")(alterations in

original)(quoting McCall-Bey v. Franzen, 777 F.2d 1178, 1190 (7th Cir. 1985)).  See Thompson

v. THI of N.M. at Casa Arena, 2008 WL 5999653, at *28 (requiring, after dismissing a complaint,

that a plaintiff reopen the case before amending the complaint, because "[w]hen a complaint has

---

Phillips, 881 F.2d at 905.  This rule is likely no longer true; the district court can probably attach
a condition retaining jurisdiction, but only if the parties agree.

> Even when . . . the dismissal is pursuant to Rule 41(a)(1)(ii) [(now rule
> 41(a)(1)(A)(ii))] (which does not by its terms empower a district court to attach
> conditions to the parties' stipulation of dismissal) we think the court is authorized
> to embody the settlement contract in its dismissal order or, what has the same effect,
> retain jurisdiction over the settlement contract) [sic] if the parties agree.

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381-82 (1994).

The only factors counseling hesitation in endorsing the view that a court may retain
jurisdiction of a case dismissed pursuant to rule 41(a)(1)(A) are that: (i) the proclamation in
Kokkonen v. Guardian Life Insurance Co. of America was dicta, and "[i]t is to the holdings of [the
Supreme Court's] cases, rather than their dicta, that we must attend," 511 U.S. 375, 379; and
(ii) the Court refers to "embody[ing] the settlement contract in its dismissal order," but rule
41(a)(1)(A) provides -- in its very title -- that it pertains to dismissals effectuated "*Without a Court
Order*," Fed. R. Civ. P. 41(a)(1)(A) (emphasis in original).  Smith v. Phillips must, however, be
interpreted in light of the Supreme Court's subsequent decision in Kokkonen v. Guardian Life
Insurance Co. of America, 511 U.S. 375 (1994), in which the Supreme Court held that a district
court's ancillary jurisdiction does not extend to the post-dismissal enforcement of federal case
settlement agreements, unless: (i) there is an independent basis of federal subject-matter
jurisdiction to hear the claims; (ii) the court incorporated the terms of the settlement agreement
into its order of dismissal; or (iii) the court includes a term "'retaining jurisdiction'" in its order of
dismissal.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 381.  That decision continues
to permit district courts to condition dismissals under rule 41(a)(2), see 511 U.S. at 381, and
appears to have no bearing on courts' power to reopen cases pursuant to rule 60(b), see 511 U.S.
at 378 (noting, without opining on, the practice of "[s]ome Courts of Appeals" to
"reopen[ ] . . . dismissed suit[s] by reason of breach of the agreement that was the basis for
dismissal").

been dismissed, there is nothing to amend. . . . Allowing amendment of a dismissed complaint would also evade the specific grounds, such as rule 60(b), that the Federal Rules of Civil Procedure have established for court action on cases in which final judgment has been entered").

Motions to obtain relief from a judgment or order based on "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), must be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding," Fed. R. Civ. P. 60(c)(1). See Blanchard v. Cortes-Molina, 453 F.3d 40, 44 (1st Cir. 2006)("[R]elief from judgment for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' must be sought within one year of the judgment.")(quoting Fed. R. Civ. P. 60(b)). This deadline may not be extended and is not subject to the court's discretion. See Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)."). The pendency of an appeal does not toll the time requirement for pursuing a motion under rule 60(b). See Fed. R. Civ. P. 60(c)(1); Griffin v. Reid, 259 F. App'x 121, 123 (10th Cir. 2007);[4] Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll or

---

[4]Griffin v. Reid is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Griffin v. Reid, Pyeatt v. Does, 19 F. App'x 785 (10th Cir. 2001), and Chavez v. Primus Auto. Fin. Servs., 125 F.3d 861, 1997 WL 634090 (10th Cir. 1997), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

extend the one-year time limit of Rule 60(b).").  No time limit applies to rule 60(b)(6), other than
that the motion be made within a reasonable time.  See Fed. R. Civ. P. 60(c)(1).

    1.    **Rule 60(b)(1).**

        The Tenth Circuit uses three factors in determining whether a judgment may be set aside
in accordance with rule 60(b)(1): (i) whether the moving party's culpable conduct caused the
default; (ii) whether the moving party has a meritorious defense; and (iii) whether setting aside the
judgment will prejudice the nonmoving party.  See United States v. Timers Preserve, 999 F.2d
452, 454 (10th Cir. 1993).  Under some circumstances, for instance, a party can rely on rule
60(b)(1) for a mistake by their attorney or when their attorney acted without their authority.  See
Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon
mistake are intended to provide relief to a party . . . when the party has made an excusable litigation
mistake or an attorney has acted without authority . . . .").  Mistake in this context entails either
acting without the client's consent or making a litigation mistake, such as failing to file or comply
with deadlines.  See Yapp v. Excel Corp., 186 F.3d at 1231.  If the alleged incident entails a
mistake, then it must be excusable, meaning that the party was not at fault.  See Pioneer Inv. Servs.
v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)("This leaves, of course, the Rule's
requirement that the party's neglect be 'excusable.'"); Cashner v. Freedom Stores, Inc., 98 F.3d
572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined
to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled
decision by the party."); Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir.
1990)(holding attorney carelessness is not a basis for relief under Rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result of an attorney's deliberate litigation tactics.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 577. This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. at 397 (internal quotation marks omitted)(quoting Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962)).  The Tenth Circuit has held that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct" and has noted that those "who act through agents are customarily bound," even though, when "an attorney is poorly prepared to cross-examine an expert witness, the client suffers the consequences."  Gripe v. City of Enid, 312 F.3d 1184, 1189 (10th Cir. 2002).  The Court has previously stated:

> There is a tension between how the law treats attorney actions that are without authority, thus permitting relief under rule 60(b), and how the law treats those attorney actions which are inexcusable litigations decisions, thus failing to qualify for relief; although the distinction between those actions may not always be logical, it is well established.

Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at *7 (D.N.M. May 10, 2012)(Browning, J.).[5]

---

[5]The Supreme Court has recognized that individuals must be "held accountable for the acts and omissions of their chosen counsel," and that the "proper focus is upon whether the neglect of respondents and their counsel was excusable."  Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. at 397 (emphasis in original).  At the same time, the Tenth Circuit has held that, when counsel acts without authority, rule 60(b)(1) provides relief from judgment.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 576 ("[A]s a general proposition, the 'mistake' provision in Rule 60(b)(1) provides for the reconsideration of judgment only where . . . an attorney in the litigation has acted without authority from a party . . . .")(quoting Fed. R. Civ P. 60(b)(1).  "There is a tension

between these decisions, because, ordinarily, a client will not authorize his or her attorney to act in a negligent manner or to make a mistake." Wilson v. Jara, 2012 WL 1684595, at *7 n.7. When the client acknowledges that he or she has hired the attorney, there is a difference between decisions which terminate the litigation, such as settlement or a stipulation of dismissal, and other litigation decisions, because decisions to terminate the litigation are ordinarily left to the client. See Chavez v. Primus Auto. Fin. Servs., 125 F.3d 861, 1997 WL 634090, at *4-5 (10th Cir. 1997)(citing Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc., 1988-NMSC-010 ¶ 3, 749 P.2d 90, 92; Bolles v. Smith, 1979-NMSC-019 ¶ 11, 526, 591 P.2d 278, 280). "Otherwise the Court has difficulty explaining attorney decisions which are made without authority and attorney decisions for which it is acceptable that the client suffer the consequences." Wilson v. Jara, 2012 WL 1684595, at *7 n.7.

In Chavez v. Primus Automotive Financial Services, the Tenth Circuit recognized that "the mere employment of an attorney does not give him the actual, implied or apparent authority to compromise his client's case." 1997 WL 634090, at *4. Few Tenth Circuit cases analyze whether an attorney has acted without authority. The cases in which the Tenth Circuit has found a lack of authority appear to fall into two categories: (i) cases in which the attorney entered an appearance without the client's knowledge, see FDIC v. Oaklawn Apartments, 959 F.2d 170, 175-76 (10th Cir. 1992)(finding that there were factual issues which the district court needed to resolve where "[t]here is nothing in the record indicating when Appellants became aware of the lawsuit and of Newcombe's purported representation"); and (ii) cases in which the attorney's actions terminate the litigation, see Thomas v. Colo. Tr. Deed Funds, Inc., 366 F.2d 136, 139-40 (10th Cir. 1966)(finding that, as to one of the plaintiffs, "the record shows that he did not participate in the transactions and negotiations with the S.E.C. and did not consent to the execution of the stipulation of the judgment"); Cashner v. Freedom Stores, Inc., 98 F.3d at 577 (citing with approval Surety Ins. Co. of Cal. v. Williams, 729 F.2d 581, 582-83 (8th Cir. 1984), which held that a "judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry"). Because decisions that terminate the litigation are ordinarily the client's prerogative, those decisions fit more squarely within rule 60(b)(1)'s "lack of consent" prong.

Decisions where the purported client is unaware of the litigation, or of the attorney's attempt to act on his or her behalf, would also fit within rule 60(b)(1)'s "lack of consent" prong, because an individual has the right to choose his or her own attorney, or to decide whether he or she wishes to have any attorney. Other litigation decisions are made jointly or are within the attorney's control, see Model Code of Prof'l Conduct R. 1.2 cmt. 1 (2011)("With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client . . . and may take such action as is impliedly authorized to carry out the representation."); Pittman ex rel. Sykes v. Franklin, 282 F. App'x 418, 427 n.6 (6th Cir. 2008)(unpublished)("[T]he decision to allege comparative fault as an affirmative defense falls within a narrow band of circumstances in which an attorney may act without consulting his or her client."), and, thus, to give final judgments meaning and allow cases to terminate, it is logical that those decisions must fall within the "excusable litigation mistake" prong, or be based on a substantive mistake of law or fact.

Although the Tenth Circuit does not appear to have expressed its views on where the line is drawn between attorneys acting without consent and litigation mistakes, or acknowledged the tension between these two categories, the Court concludes that the appropriate division is, when

2.      **Rule 60(b)(6).**

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or

proceeding for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  No time limit

applies to rule 60(b)(6), save that the motion be made within a reasonable time.  See Fed. R. Civ.

P. 60(c)(1).  "Thus, to the extent it is applicable, clause (6) appears to offer a means of escape from

the one-year limit that applies to motions under clauses (1), (2), and (3)."  11 Charles Alan Wright,

Arthur R. Miller & Mary Kane, Federal Practice & Procedure § 2864, at 490 (2d ed. 2012).  In

Pioneer Investment Services Co. v. Brunswick Associates Ltd., the Supreme Court reasoned that,

to avoid abrogating the one-year time limit for rule 60(b)(1) to (3), rule 60(b)'s "provisions are

mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect'

may not seek relief more than a year after the judgment by resorting to subsection (6)."  507 U.S.

at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863, 863 n.11 (1988)).

"If the reasons offered for relief from judgment could be considered under one of the more specific

clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)."  12 James

Wm. Moore et al., Moore's Federal Practice, Civil § 60.48[2], at 60-182 (3d ed. 2013).  Accord

Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 n.11 ("This logic, of course, extends

---

the client is aware that the attorney is acting on his or her behalf, between decisions which dispose
of the case and ordinarily require client consent, and other routine attorney decisions which take
place over the course of the case.  The Court also notes that rules of professional conduct require,
"[i]n a criminal case," for a lawyer to "abide by the client's decision, after consultation with the
lawyer, as to the plea to be entered, whether to waive a jury trial and whether the client will testify."
Model Rules of Prof'l Conduct R. 1.2(a).  While a decision on the plea to be entered in a criminal
case is comparable to whether to settle a civil case, the Court has not located any decisions
permitting rule 60(b) relief when a civil attorney waives his or her client's right to jury trial.  One
unpublished decision from the United States Court of Appeals for the Fourth Circuit discusses
briefly a scenario where, without resolving the issue's merits, a criminal defendant raised through
a rule 60(b) motion in a habeas preceding that "his trial counsel had prevented him from testifying
in his defense."  United States v. McMahan, 8 F. App'x 272, 274 (4th Cir. 2001)(unpublished).

beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive.").

Rule 60(b)(6) is a "'grand reservoir of equitable power to do justice in a particular case.'" Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(quoting Pierce v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)). "The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 (quoting Klapprott v. United States, 335 U.S. 601, 614-15 (1949)). Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief. See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence."). Legal error that provides a basis for relief under rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)]. In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured." Pierce, 518 F.2d at 723. However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6). Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

Van Skiver v. United States, 952 F.2d at 1244-45.

"Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'" Wright et al., supra, § 2864, at 483 (quoting Fed. R. CIV. P. 60(b)(6)). See Marcotte, In re Ortega v. Burlington N. Santa Fe Rail Corp., No. CIV 04-0836 JB/RLP, 2007 WL 5685130, at *29 (D.N.M. Oct. 11, 2007)(Browning, J.)("Rule 60(b)(6), given its more liberal time restraints, is reserved for the most egregious cases.). The Supreme Court expounded:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay. If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable. In Klaprott [v. United States, 335 U.S. 601 (1949)], for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control. Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 & n.11; Ackerman v. United States, 340 U.S. 193, 197-200 (1950); Klaprott v. United States, 335 U.S. at 613-14). See Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."(quoting Ackerman v. United States, 340 U.S. at 199)). In Gonzalez v. Crosby, the Supreme Court found a change in the law during the pendency of a habeas petition was not an extraordinary circumstance. See 545 U.S. at 537.

When the Supreme Court first addressed rule 60(b)(6) a year after it was introduced to the federal rules, while the Justices were sharply divided on other issues, no dispute arose from the statement of the Honorable Hugo Black, former Associate Justice of the Supreme Court: "[O]f course, the one year limitation would control if no more than 'neglect' was disclosed by the petition. In that event the petitioner could not avail himself of the broad 'any other reason' clause

of 60(b)."  Klapprott v. United States, 335 U.S. at 613 (quoting Fed. R. Civ. P. 60(b)).  See Wright et al., supra, § 2864, at 493.

Examples where courts apply rule 60(b)(6) include "settlement agreements when one party fails to comply" and courts use the rule "to return the parties to the status quo," or in cases where fraud is used by a "party's own counsel, by a codefendant, or by a third-party witness," which does not fit within rule 60(b)(3)'s provision for fraud by an adverse party.  Wright et al., supra, § 2864, at 485, 487.  The most common application is to grant relief "when the losing party fails to receive notice of the entry of judgment in time to file an appeal."[6]  Wright et al., supra, § 2864, at 488. When moving for relief pursuant to rule 60(b)(6), it is not enough to argue the same issues that a court has already addressed.  See Pyeatt v. Does, 19 F. App'x 785, 788 (10th Cir. 2001)(concluding that a motion to reconsider that "simply reasserts information considered by the district court in its initial determination . . . does not meet the extraordinary circumstances standard required for Rule 60(b)(6) relief").

## LAW REGARDING 28 U.S.C. § 2255

Section 2255 provides:

A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

---

[6]According to commentators,

[m]ost of those cases, however, predate the 1991 amendment to Appellate Rule 4(a)(6), which now provides relief from the strict appellate filing rule if the party did not learn of the entry of the judgment.  In light of that change, most courts have held that resort to Rule 60(b) as a means of extending the appeal time no longer is appropriate, although the Rule 60(b) approach is still utilized in some courts, primarily in the [United States Court of Appeals for the] Sixth Circuit.

Wright et al., supra, § 2864, at 489-90 (citations omitted).  See Clark v. Lavallie, 204 F.3d 1038, 1041 (10th Cir. 2000)("Rules 4(a)(6) and 77(d) 'preclude[] the use of Fed. R. Civ. P. 60(b)(6) to cure problems of lack of notice.'" (citations omitted)).

the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  The defendant is to file the initial motion under 28 U.S.C. § 2255 with the court that imposed the sentence for that court's consideration.  See Browning v. United States, 241 F.3d 1262, 1264 (10th Cir. 2001).  Rule 4(b) of the Rules Governing Section 2255 Proceedings states:

The judge who receives the motion must promptly examine it.  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

Rules Governing Habeas Proceedings 4(b).  Section 2255 provides that a United States Court of Appeals panel must certify a second or successive motion in accordance with § 2244 to contain: (i) newly discovered evidence that would be sufficient to establish by clear-and-convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (ii) a new rule of constitutional law that was previously unavailable and the Supreme Court made retroactive to cases on collateral review.  See 28 U.S.C. § 2255(h).  Section 2244 requires that, before a second or successive application is filed in the district court, the applicant shall move the appropriate court of appeals for an order authorizing the district court to consider the application.  See 28 U.S.C. § 2244(b)(3)(A).  A district court lacks jurisdiction to consider a second or successive motion absent the requisite authorization.  See 28 U.S.C. § 2244.

## ANALYSIS

Nissen's filings challenge the Court's MOO and Final Judgment on the grounds that the Court denied Nissen of due process in dismissing his 2255 Motion.  See Due Process Motion at 2-3; Objection Motion at 9; Add. I at 1-23; Add. II at 1-3.  There is no provision or requirement in the Federal Rules of Civil or Appellate Procedure for filing post-judgment affidavits or objections;

as a threshold matter, therefore, the Court must determine how to construe Nissen's filings.  The Court construes Nissen's filings as a motion to alter or amend a judgment under rule 59(e) of the Federal Rules of Civil Procedure.  See Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. 453, 462 (D.N.M. 2009)(Browning, J.)(citing Price v. Philpot, 420 F.3d 1158, 1167 & n.9 (10th Cir. 2005)), superseded by statute as stated in 2019 WL 1085179; Computerized Thermal Imaging, Inc. v. Bloomberg. L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).  Nissen filled the Due Process Motion and the Objection Motion within twenty-eight days after entry of the Final Judgment.  See Due Process Motion at 1; Objection Motion at 1.  As such, both the Due Process Motion and the Objection Motion are timely for purposes of rule 59(e).  See Fed. R. Civ. P. 59(e).  The Due Process Motion and the Objection Motion also raise matters that could come within the scope of rule 60(b) of the Federal Rules of Civil Procedure.  Because both the Due Process Motion and the Objection Motion are timely under rule 59(e), and the analysis under rule 60(b) would be duplicative of rule 59(e), the remedy under rule 59(e) is sufficient for determination of the issues raised in Nissen's filings, the Due Process Motion and the Objection Motion are more properly treated as a motion under rule 59(e) rather than under rule 60(b).  See Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 680 F.3d 1194, 1200 (10th Cir. 2011); Van Skiver v. United States, 952 F.2d at 1243; Phelps v. Hamilton, 122 F.3d 1309, 1323-24 (10th Cir. 1997)(concluding that, where the motion "involves 'reconsideration of matters properly encompassed in a decision on the merits,'" a court considers the motion under rule 59(e))(quoting Martinez v. Sullivan, 874 F.2d 751, 753 (10th Cir. 1989)).  Nissen's Add. I and Add. II, as addendums to his Objection Motion,

do not change the Court's analysis.  The Court, therefore, will construe Nissen's filings as a motion to alter or amend the judgment made pursuant to rule 59(e).[7]

The Court will deny Nissen's rule 59(e) motion, because Nissen has not identified an intervening change in the controlling law, new evidence previously unavailable, or the need to correct clear error or prevent manifest injustice.  See Servants of Paraclete v. Does, 204 F.3d at 1012; Van Skiver v. United States, 952 F.2d at 1243.  The Court dismissed Nissen's 2255 Motion as premature, because "Nissen's conviction is not final, judgment has not been entered, and he has not yet had an opportunity to file a direct appeal."  MOO at 2.  The Court dismissed the case under rule 4(b) of the Rules Governing Section 2255 Proceedings, because Nissen clearly was "not entitled to relief."  Rule 4(b) of the Rules Governing Section 2255 Proceedings. See MOO at 2-3. In his recent filings, Nissen does not present any intervening change in the controlling law, new evidence previously unavailable, or the need to correct clear error or prevent manifest injustice in support of his rule 59(e) motion.  See Brumark Corp. v. Samson Resources Corp., 57 F.3d at 948. Instead, he disagrees that his 2255 Motion is premature: "Nissen's 2255 Motion is not premature, because Nissen evidently recorded and documented the existence of extraordinary circumstances of several instance of substantial showing of being denied due process and equal protection of law . . . ."  Objection Motion at 4-5.  Nissen should raise his due process and equal protection challenges to his criminal conviction and sentence in a direct appeal to the Tenth Circuit, not under

---

[7]In his filings in his civil case, Nissen does not express any intent to appeal, nor does he identify the name of any court to which an appeal is taken.  See Due Process Motion at 2-3; Objection Motion at 9; Add. I at 1-23; Add. II at 1-3.  Nissen's filings also do not comply with the requirements of rule 3(c)(1) of the Federal Rules of Appellate Procedure and the Court declines to construe the filings as a notice of appeal.   Further, because the Clerk of the Clerk, Elfers, has docketed Nissen's Misdirected Notice Of Appeal, and has transmitted the preliminary record to the Tenth Circuit, it is unnecessary for the Court to treat Nissen's filings as a notice of appeal in his civil case.

a § 2255 motion with the Court.  As the Court already has advised Nissen, his 2255 Motion is premature until the direct appeal has been resolved.  See MOO at 2; See also United States. v. Cook, 997 F.2d 1312, 1319 (10th Cir. 1993); United States v. Folse, No. CIV 16-0196 JB/WPL, 2016 WL 1425828, at *1-2 (D.N.M. Mar. 31, 2016)(Browning, J.)(dismissing a defendant's § 2255 motion, because the defendant's "conviction is not final, because he has not been sentenced, judgment has not been entered, and he has not yet had an opportunity to file a direct appeal.").  Because Nissen does not present any new issues or evidence the Court did not consider in its MOO, the Court will deny Nissen's rule 59(e) motion to alter or amend the Final Judgment. See Van Skiver v. United States, 952 F.2d at 1243; Servants of Paraclete v. Does, 204 F.3d at 1012.

Nissen also contends that the Court must issue a Certificate of Appealability.  See Due Process Motion at 5-6 (requesting "a Certificate of Appealability of this due process of law violation . . . by this war powers court").  The Court, in its MOO, however, denied Nissen "a certificate of appealability under rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts."  MOO at 3.  Nissen presents no additional basis for the Court to reconsider that denial.  See Due Process Motion at 5-6.  The Court therefore denies Nissen's renewed request for a Certificate of Appealability.

**IT IS ORDERED** that: (i) the Affidavit of Due Process of Law Violation for Excluding Movant from Proceedings on Ruling Dismissing 28 U.S.C. § 2255, filed July 6, 2021 (CIV Doc. 10), is denied; (ii) the Affidavit of Formal Objection of Memorandum Opinion of Order and Final Judgment, filed July 9, 2021 (CIV Doc. 11), is denied; (iii) the Notice of Motion to Leave for Addendum to 28 U.S.C. § 2255 Motion, filed August 2, 2021 (Doc. 16), is denied; (iv) the Notice of Motion to Leave for 3rd Addendum to 28 U.S.C. § 2255 Motion, filed August 9, 2021 (Doc.

16), is denied; and (v) the Clerk of the Court is directed to transmit a copy of this Memorandum

Opinion and Order to the United States Court of Appeals for the Tenth Circuit as a supplemental

record.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel in No. CIV 21-0505 JB/SMV:*

Michael Nissen
Milan, New Mexico

    *Plaintiff Pro Se*

Fred J. Federici
  Acting United States Attorney
Paul J. Mysliwiec
Alexander M.M. Uballez
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

- 25 -