# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,                                        No. CR 19-0077 JB

vs.

MICHAEL NISSEN,

    Defendant.

## NOTICE OF DEFENDANT'S REFUSAL TO CONSULT WITH COUNSEL

COMES NOW Brian Pori, appointed counsel for the Defendant Michael Nissen, and in his capacity as an Officer of this Honorable Court, respectfully informs the Court and the United States of Mr. Nissen's refusal to consult with appointed counsel with a reasonable degree of rational understanding.   Defense Counsel is aware that the evidence of Mr. Nissen's competence has been thoroughly litigated and has been disputed by the United States (Doc. 139) and that this Honorable Court has previously determined that Mr. Nissen was competent to proceed to a sentencing hearing (Doc. 199).  Nevertheless, Defense Counsel respectfully submits that Mr. Nissen's persistent refusal to cooperate with any of his appointed counsel and his current unwillingness to discuss any aspect of this case with undersigned counsel means that counsel cannot act as the diligent and conscientious advocate envisioned by the Sixth Amendment.

### *Summary of the Proceedings*

A Grand Jury charged Mr. Nissen with two counts of threatening communication directed at New Mexico State Police (in violation of 18 U.S.C. § 875, subd. [c]) and a jury ultimately found Mr. Nissen guilty of both charges.  (Doc. 73.)  The jury's verdict represents Mr. Nissen's only criminal conviction as an adult.

Mr. Nissen has a consistent pattern of refusing to cooperate with his appointed attorneys in this case and undersigned defense counsel is now the seventh, local attorney to represent Mr. Nissen in these proceedings.  Each of Mr. Nissen's appointed attorneys has consistently reported that Mr. Nissen cannot, or will not, cooperate with them.  (See, e.g., Doc. 17, 74, 100, 118, 198.)[1]

On January 31, 2019, Assistant Federal Public Defender Melissa Morris filed an *Ex Parte* Motion for a Psychologial Examination to determine if Mr. Nissen was competent to stand trial. (Doc. 17.)  Five days later this Honorable Court entered an Order directing a local psychologist to evaluate Mr. Nissen to determine if he understood the charges against him and if he had the capacity to assist his lawyer with a reasonable degree of rational understanding.  (Doc. 18.)

In response to the Court's Order, Dr. Mercedes Marshall evaluated Mr. Nissen.  In a report filed with the Court Dr. Marshall opined that, even though Mr. Nissen was intelligent, understood the charges against him and was reasonably oriented to persons, places and his

---

[1]  The only defense lawyer who did not raise an issue regarding Mr. Nissan's ability to assist his lawyer with a degree of rational understanding was Attorney Ken Gleria, who was retained to defend Mr. Nissen and who ultimately stipulated to his competence. (Doc. 40.) However, following the return of the jury's verdict, Mr. Nissen refused to speak with Mr. Gleria and asked for him to be removed from the case.  (Doc. 76, 79.)

present situation, he could not assist with his own defense because of a Delusional Disorder. (Doc. 29.)  Dr. Marshall described Mr. Nissen as having "incessantly racing, rambling and tangential speech" (*Id*. at p. 4.) and that the "content of his verbalizations was replete with paranoid statements, religiosity and grandiose notions about his special abilities."  (*Id.* at p. 7.) Dr. Marshall noted that Mr. Nissen's had limited insight into his own psychological functioning and that, even though he did not want to be viewed as mentally ill, his thinking was infused with paranoid ideas, perseverations and conspiracy theories.  (*Ibid*.)  Dr. Marshall noted that Mr. Nissen's behavior was consistent with a specialized, mental health thought disorder and that "it would be impossible to accurately and consistently malinger the syndrome manifested by Mr. Nissen." (*Id.* at p. 8.)  Dr. Marshall concluded her assessment by recommending that Mr. Nissen be evaluated to determine whether he could benefit from psychotropic medication, even though she acknowledged that he would likely be resistant to any kind of mental health treatment.

After the jury returned its verdict, Mr. Nissen refused to speak with trial counsel Ken Gleria and asked this Honorable Court to appoint substitute counsel.  Attorney Susan Porter was then appointed to represent Mr. Nissen but she quickly asked to withdraw after Mr. Nissen refused to meet with her.  (Doc. 100.)  Attorney Joe Romero was next appointed to represent Mr. Nissen and Mr. Romero again asked the Court to determine whether Mr. Nissen was competent to proceed in this case.  (Doc. 123.)  Attorney Romero described Mr. Nissen's behavior during their attorney client conferences as "emotional, loud, combative and insulting" and noted that this "antagonistic and uncooperative interaction" mirrored the interactions he had with Ms. Porter.  (*Ibid*.)  Attorney Romero also reported that Mr. Nissen continued to exhibit irrational and delusional thoughts.  (*Ibid.)*

In response to Mr. Romero's concerns, this Honorable Court entered another order for an evaluation of Mr. Nissen. (Doc. 127.)  Unfortunately Mr. Nissen refused to cooperate with the appointed psychologist, Dr. Julie Brovko.  (Doc. 141/142/147.)

After Mr. Nissen refused to cooperate with Dr. Brovko's evaluation, this Honorable Court committed Mr. Nissen to the custody of the United States Attorney General so that he could be evaluated in a Federal Medical Center to determine if he was competent to proceed to sentencing.  (Doc. 148.)  Although the Court presciently predicted that evaluators in the Bureau of Prisons were likely to determine that Mr. Nissen was competent to proceed to sentencing, the Court relied on Mr. Nissen's persistent inability to work cooperatively with any of his attorneys to conclude that there was a genuine question regarding Mr. Nissen's competence to proceed to sentencing.

Mr. Nissen was confined in the Federal Medical Center in Butner, North Carolina where he was "treated" in an effort to be restore him to competence.  During his confinement Mr. Nissen candidly admitted that he did not trust any of his lawyers and consistently refused to cooperate with an evaluation, engage with the nursing staff or speak with a psychiatrist.  (Doc. 169, pp. 4-5.)  The evaluation noted that Mr. Nissen "frequently presented as verbally combative, evasive and non-cooperative."  (*Id.* at p. 9.)  However, even though Mr. Nissen refused to submit to any psychological testing, the psychological intern at FMC Butner diagnosed him with a personality disorder, not a thought disorder, based on his "pervasive pattern of disregard for and violation of the rights of others."  (*Id.* at p. 6.)  This psychologist concluded that Mr. Nissen was competent to proceed to sentencing but would likely continue to assert his "strongly held beliefs."  (*Id.* at p. 11.)

Mr. Nissen was ultimately sentenced to 41 months in the custody of the United States Bureau of Prisons followed by three years of supervised release.  (Doc. 211.)  After serving his custodial sentence, Mr. Nissen immediately violated the terms of his supervised release by failing to follow the instructions of his Probation Officer and, after a final hearing, this Honorable Court sentenced him to three months in jail for the violation.  (Doc. 316.)

As soon as he was released from the three-month sentence, Mr. Nissen refused to sign the form listing the conditions of his supervised release.  When Probation officials explained to him the reasons why they needed his cooperation, Mr. Nissen became agitated, said he was not going to comply with his probation conditions and indicated that U.S. Probation had no "business" deciding where he would live.

When he appeared before the Honorable Kirtan Khalsa, United States Magistrate Judge, for a preliminary hearing on the latest alleged violation of his supervised release, Mr. Nissen refused to speak with appointed counsel and consistently insulted him.  Mr. Nissen then proceeded to disrupt the proceedings despite repeated warnings from Judge Khalsa and consistently interjected with odd references to the Dictionary Act of 1871 and the Adjudicatory Act of 1873: at one point Mr. Nissen even went so far as to refer to the "presumption of assumption of parliamentary actions."

## *Argument*

Appointed counsel for Mr. Nissen is aware of the Court's previous rulings regarding Mr. Nissen's competence and is prepared to accept the Court's ruling as the law of the case in this matter.  In addition, appointed counsel is aware of his Order of Appointment and is willing to act as defense counsel for Mr. Nissen at the pending final hearing on the revocation of supervised

release.  Nevertheless, counsel is obligated as an Officer of the Court to report that Mr. Nissen

has refused to cooperate with him or consent to his appointment and, as a result counsel is

convinced that Mr. Nissen is not capable of assisting appointed counsel with a rational degree of

understanding so that appointed counsel cannot act as the diligent and conscientious advocate

which the Sixth Amendment requires.

The criminal trial of an incompetent defendant violates the Due Process Clause of the

Fifth Amendment.  *Cooper v. Oklahoma,* 517 U.S. 348, 354 (1996).  Therfore, a defendant

cannot be forced to stand trial unless he has a rational and factual understanding of the

proceedings and can assist his lawyer with a "reasonable degree of rational understanding."

*Dusky v. United States,* 362 U.S. 402 (1960).  This rule has deep roots in our common law

heritage and represents the common sense notion that a person should not be subjected to the

ordeal of a trial if he lacks the "advice and caution that he ought to have."  *Medina v. California,*

565 U.AS. 437, 446 (1997).  Defendant's inability to assist his attorney can be probative

evidence of his incompetence and "defense counsel will often have the best independent view of

the defendant's ability to participate in his own defense."  *Id.* at 450.

When a lawyer has reason to believe that her client may not be mentally competent to

stand trial she has an obligation, as an officer of the court, to make her concerns known, even if

it is contrary to the client's wishes.  *United States v. Boigegrain,* 155 F.3d 1181, 1187 (10th Cir.

1998).  In addition, counsel has a professional duty to raise the issue of the defendant's

competence whenever counsel has a good faith doubt about the client's ability to proceed.  *Ibid,*

citing the American Bar Association, Standards for Criminal Justice, Standarfd 7-4.2.  If defense

counsel believes that the defendant is unable to consult with her with a reasonable degree of

rational understanding, counsel cannot blindly accede to the client's directive to forgo a

challenge to competence. *Ibid.* However, counsel's decision is complicated "because of the

sometimes severe consequences traditionally attendant upon a determination of competence."

Consequently, the Court in *Boigegrain* recognized that there may be some circumstances when

defense counsel may conclude that it is better for a "technically incompetent defendant to

proceed to a trial." *Id.* at 1187-88.

Finally, the Sixth Amendment demands that a lawyer act as a diligent and conscientious

advocate for his client. *United States v. Cronic,* 466 U.S. 648, 656 (1984). If a lawyer in a

criminal case does not as an advocate for the accused, then the process loses its fundamental

characteristic as a confrontation between adversaries. *Id.* at 656-657.

From the moment Appointed Counsel met with Mr. Nissen, counsel encountered the

person so clearly and consistently described by Dr. Marshall, and attorneys Morris, Porter and

Romero – an individual who was loud, combative and insulting. Mr. Nissen immediately

exhibited the paranoia and delusion described by Dr. Marshall and his refusal to cooperate

merely provided words which describe his persistent, fixed opinion that the proceedings against

him, and all who participate in it, are unjust and illegal. As Mr. Nissen continued to interrupt the

proceedings, despite warnings from the Magistrate Judge, and impose rambling and

incomprehensible references to "testamentary capacity" and "the Crown Court" it was clear to

Appointed Counsel that the Court was confronting a man who lost everything he valued in this

life in service to an insane delusion.

Appointed Counsel recognizes that counsel for the United States views Mr. Nissen's

behavior as "defiant and obstructive but not incompetent." (Doc. 139.) Counsel also appreciates

that abnormal psychology is an inexact science and that the subtleties and nuances of psychological diagnosis is based on medical impressions drawn from subjective analysis and filtered through the lived experience of the psychological evaluator.  Finally defense counsel must concede that this is one of the rare cases where the Court, not appointed counsel, may be in a better position to determine objectively whether Mr. Nissen is in his right mind.  Nevertheless counsel respectfully submits that Mr. Nissen is suffering from a mental disease or defect which prevents him from appreciating the wrongfulness of his conduct and which compels him to break the law even if a "policeman were sitting on his shoulder."

Mr. Nissen is not able to follow the directions of anyone.  Mr. Nissen simply fails to appreciate that he has been convicted of a crime and is subject to the jurisdiction of the Court. Mr. Nissen did not even make it outside of the Pete Domenici United States Courthouse in Albuquerque before he violated his supervised release for the second time.  His obdurate attitude, his rapid, pressured speech and his absolute inability to consult with someone meant to give him a guiding hand together demonstrate to appointed counsel that Mr. Nissen is simply not competent to defend himself against the organized forces of society.

WHEREFORE, mindful of the Court's prior rulings and willing to proceed as appointed counsel despite the significant limitations presented, defense counsel respectfully submits that without any cooperation from Mr. Nissen or even his consent to proceed, counsel cannot act as the diligent and conscientious advocate which Mr. Nissen so desperately needs and which the Sixth Amendment of the United States Constitution requires.

Respectfully submitted,

*/s Brian A. Pori 3/25/22*
Brian A. Pori, Attorney at Law
204 Bryn Mawr NE
Albuquerque, NM 87106
(505) 206-6289

Counsel for Defendant Michael Nissen

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of March 2022 I filed the foregoing Notice through the District Court CM/ECF electronic filing program which caused a copy of the pleading to be electronically delivered to counsel for the United States addressed as follows:

Paul Mysliwiec, Esq.
United States Attorney's Office
P.O. Box 607
Albuquerque, NM 87103

*/s Brian A. Pori 3/25/22*
Brian A. Pori